Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
    KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone:  (212) 254-1111
Facsimile:  (212) 674-4614

Terry Gross (TG 3249)
GROSS, BELSKY & ALONSO LLP
180 Montgomery Street, # 2200
San Francisco, California 94104
Telephone:  (415) 514-0200
Facsimile:  (415) 544-0201

*Attorneys for Empresa Nacional de Telecomunicaciones Entel S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 08-cv-4247 (LTS) |
| v. | : | |
| | : | |
| REPUBLIC OF BOLIVIA, and EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A., | : | |
| | : | |
| Defendants. | : | |

# SECOND DECLARATION OF ALEJANDRO SALINAS VILELA IN SUPPORT OF DEFENDANT EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A.'S OPPOSITION TO MOTION TO CONFIRM *EX PARTE* ORDER OF PREJUDGMENT ATTACHMENT

Michael Krinsky (MK4503)
Eric M Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
 KRINSKY & LIEBERMAN, P C
111 Broadway, 11th Floor
New York  New York 10006
Telephone  (212) 254-1111
Facsimile   (212) 674-4614

Attorneys for Empresa Nacional de
Telecomunicaciones Entel, S A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

E T I EURO TELECOM
INTERNATIONAL, N V ,

                    Plaintiff,

        v

REPUBLIC OF BOLIVIA, and
EMPRESA NACIONAL DE
TELECOMUNICACIONES ENTEL, S A ,

                    Defendants

Case No  08-cv-4247 (LTS)

---

## DECLARATION OF DR. ALEJANDRO SALINAS VILELA

I, DR ALEJANDRO SALINAS VILELA, declare under penalty of perjury of the laws of the United States of America that the following is true and correct

1       I am the Manager of the Legal Department at the Empresa Nacional de Telecomunicaciones, S A  (" ENTEL"), and have held this position since May 13, 2008  I am a lawyer and a member of the National Bar Association of Bolivia and of the Bar of La Paz  I am a Professor of Regulatory and Hydrocarbon Law at the Bolivian Catholic

University School of Law in La Paz, Bolivia  I received my law degree in 1998 from the Bolivian Catholic University School of Law  I received a degree entitled Specialization in Administrative Law (which is equivalent to a master's degree) from Simon Bolivar University in La Paz, Bolivia in 1999  I received a M A  in International Business Law from University of Francisco de Vittoria in Madrid, Spain, in 2002   I received a Postgraduate Degree in Law in public services from Castilla La Mancha University in Toledo, Spain in 2004  I submit this declaration in support of the opposition to the Motion to Confirm Order of Attachment filed by E T I  Euro Telecom International N V ("ETI")

2       ENTEL provides essential public services to the people of Bolivia ENTEL's services were described in Administrative Resolution No  2008/1056 of the Superintendent of Telecommunications of May 1, 2008, as follows   "[ENTEL has] concession contracts      for the provision of Local Services (including circuit leases, rural services and satellite services) of Public Telephones Movil Services, Personal communications, Long Distance Communications and Data Transmission within the whole territory of Bolivia, [and] ENTEL S A  [is] the dominant operator in the following services  National and International Long Distance Communications, Public Phones, Data Transmission, Premises and Circuit Rental (in some areas), all of which are therefore considered to be non-competitive,      [and ENTEL] is at present the main entity in charge of carrying most of the National and International Long Distance calls of the telecommunications market operators, as well as of other telecommunications services"  ENTEL provides telecommunications services to private and public corporations, including private Bolivian corporations and private individuals, as well as to the Republic  A copy of this Administrative Resolution is attached to the Declaration of Javier Castro as Exhibit C

3       ENTEL, as a corporation constituted under the laws of the Republic of Bolivia, has a separate juridical personality under Bolivian law  According to Bolivian

2

law, ENTEL is not responsible for the debts or obligations of its shareholders, including without limitation the Republic of Bolivia. Likewise, ENTEL is not responsible for the debts or obligations of any third parties. ENTEL's assets and liabilities are its own and are not the assets and liabilities of its shareholders. Likewise, ENTEL's assets and liabilities are not the assets or liabilities of any third parties, including the Republic of Bolivia.

4    The Bolivian Commercial Code was adopted in Decree Law 14379, and these provisions have been in existence since February 25, 1977. Article 133 of the Commercial Code states that ' commercial companies have will acquire legal personhood

as soon as they are registered in the Commercial Registry, with no need for any other requirement.' True and correct copies of Article 133 of the Commercial Code and other relevant provisions cited in this declaration, are attached hereto as Exhibit A.

5    Article 54 of the Civil Code of Bolivia states that "legal persons have legal capacity." Article 42 defines legal persons, stating that "The following are legal persons

(3) civil and mercantile companies." True and correct copies of Articles 52 and 54 of the Civil Code are attached hereto as Exhibit B.

6    ENTEL (Empresa Nacional de Telecomunicaciones) was created through Decree Law 7441 of December 22, 1965, for the stated reasons: "It is absolutely necessary to adopt a defined, substantial policy with regard to the exploitation, functioning, and expansion of the Telecommunications Services in Bolivia, so that they may contribute effectively, positively and constantly to the economic and social development of the Nation [as] the actual structure and work procedures that are still employed in the national Telecommunications services, already made obsolete by advances in technology, have ceased to be adequate and sufficient to meet the ever greater demands of public and private activity" and that "it is essential to implement the agreements reached with regard to the improvement and expansion of the physical and/or electronic circuits with the neighboring countries, within the scope of the planned

3

Interamerican Telecommunications Network (RIT)" ENTEL was created as "a mixed economy company    based on the principle of combining public and private interests [and] the financial participation of both" A true and correct copy of Decree Law 7441 is attached hereto as Exhibit C

7    By Supreme Decree 08527 of October 30, 1968, the Bolivian Government determined that ENTEL would have exclusive telecommunication concessions, and that 'ENTEL will install and operate all international telecommunications services respecting the actual concessions," and that "ENTEL must be in charge of exploiting all telecommunication services, to which end the Ministry of Public Works, Communications and Transportation will determine the schedule for transferring [these services to ENTEL" A true and correct copy of Supreme Decree 08527 is attached hereto as Exhibit D

8    In June 1970, Supreme Decree 09250 converted ENTEL to an entirely state-owned enterprise    A true and correct copy of Supreme Decree 09250 is attached hereto as Exhibit E

9    On June 7, 1995, Supreme Decree 24025 of June 7, 1995, issued in accordance with Law 1544 of March 21, 1994 (Law of Capitalization), transformed ENTEL into a mixed economy society (an "SAM") This was registered in the General Commerce and Share Based Companies Registry Office on July 18, 1995 under Administrative Resolution No 02-05424/95 True and correct copies of Supreme Decree 24025, relevant sections of Law 1544, and Administrative Resolution No 02-05424/95 are attached hereto as Exhibits G, H and I

10    On November 27, 1995, ENTEL's Extraordinary Shareholders meeting approved the transformation of ENTEL from a mixed economic society (SAM) to a PLC (a Sociedad Anonima, or "SA') ENTEL S A was registered in the General Commerce and Share Based Companies Registry Office on January 16, 1996, under Administrative Resolution No 02-06838/96, and a Certification of Registration was issued on January 9

16. 1996   True and correct copies of Administrative Resolution No 02-06838/96 and the Certificate of Registration of January 16, 1996 are attached hereto together as Exhibit J

11      As noted in Paragraph 4, Article 133 of the Commercial Code states that 'commercial companies have will acquire legal personhood    as soon as they are registered in the Commercial Registry, with no need for any other requirement " Since ENTEL is a Sociedad Anonima, and has been registered on the Registry maintained by the General Commerce and Share Based Companies Registry Office of the Republic of Bolivia, pursuant to Article 133 of the Commercial Code, ENTEL has a separate juridical personality  See Article 133 (Exhibit A)

12      Under Bolivian law, sociedades anonimas (an "SA'), as well as sociedades anonimas mixtas (an "SAM"), are not responsible for the debts of their shareholders, nor are their shareholders responsible for the debts of such companies Article 217 of the Commercial Code, concerning SAs, states that "the liability of the partners is limited to the amount of stock for which they subscribed ' See Exhibit A for a copy of Article 217  Dr Carlos Morales Guillen, a well known and respected Bolivian jurist and the author of a commentary on the Bolivian Commercial Code, in his analysis of Commercial Code Article 217, states that a corporation is a "legal entity that conducts business with the assets contributed by its shareholders and distributes any accrued profits, and whose essential characteristic lies in the limited liability of all the shareholders none of which are personally liable for the company's debts " Morales Guillen, *Codigo de Comercio, Concordado y Anotado*, Art 217, p 278-79 (2d ed 1999), quoting Vivante, an Italian jurist

13      These principles apply when the Republic is a shareholder of the company, as with SAMs, which are defined in Article 424 of the Commercial Code as "The companies formed between the State, prefectures, municipalities, corporations, public companies or other entities dependent on the State, and private capital, are mixed-economy companies for the operation of companies that are in the collective interest, or

5

for the establishment, promotion or development of industrial, commercial or service activities " *See* Exhibit A for a copy of Article 424 of the Commercial Code

14      Bolivian law also provides that SAs and SAMs have the right to own their own property and assets, and to contract in their own name  As noted above, Article 133 of the Commercial Code provides that companies acquire legal personality  An entity that has legal personality has the right to own property and to contract in its own name

15      ENTEL, as a sociedad anonima, is required to have and operate under its own bylaws  Article 220 4 of the Commercial Code states that  "REQUIREMENTS FOR FORMATION VIA A SINGLE DOCUMENT   to form a sociedad anonima with a single document  the charter must contain     (4) that the company's Bylaws be approved by its shareholders "  A true and correct copy of ENTEL's bylaws is attached hereto as Exhibit K

16      ENTEL has title to its own money, and maintains its own bank accounts, both in Bolivia and in foreign countries  No shareholder of a sociedad anonima has the right to withdraw funds from the company's bank accounts  Thus, even though the Republic of Bolivia is a majority shareholder in ENTEL, it has no right to withdraw funds from ENTEL's bank accounts

17      ENTEL does not make any payments to the Republic of Bolivia, except those payments of taxes and fees that are made by any company to the government, or those payments of dividends like those that are made by any company to its shareholders

18      ENTEL has no authority to contract in the name of the Republic, nor does the Republic have any authority to contract in the name of ENTEL

19      ENTEL is subject to the regulatory supervision of the Republic, just as other fully privately owned entities are, and just as it was before the shares in ENTEL were transferred to the Republic  All telecommunications companies are subject to the supervision of the Superintendent of Telecommunications, pursuant to Article 1 of Law 1632, the Telecommunications Law   "All national and foreign individuals and legal

persons carrying out activities [concerning telecommunications] originating or ending within the national territory        are subject to the provisions [of this law] ' Thus, FNTEL  which is operated as a distinct telecommunications enterprise, is subject to general supervision by the Superintendent of Telecommunications in the same manner as any other telecommunications company  A true and correct copy of relevant provisions of Law 1632 are attached hereto as Exhibit L

20    The Republic of Bolivia does control the day to day operations of ENTEL

21    ENTEL is responsible for its own financing and maintains its own operating facilities

22    ENTEL hires its own employees, just like any other company, and is not instructed by the Republic as to who to hire

23    2 5329% of ENTEL's shares are held by private individuals, who are not associated with the Republic  These minority shareholders participate in ENTEL's shareholders meetings, and this participation is reflected in the minutes of ENTEL's shareholder meetings

24    On April 23, 2007, the President of Bolivia issued Supreme Decree 29101  Pursuant to this Supreme Decree, the Republic of Bolivia became the owner of all shares that previously had been held by the pension fund managers AFP Futuro de Bolivia S A and BBVA Prevision AFP S A  Each of these two funds had held 3,037.729 shares of Entel, for a total of 6,075,458 shares of ENTEL  These shares are 47 4671% of all the shares issued by the company  Pursuant to this Supreme Decree, Article 1, "The object of this Supreme Decree is to transfer to the Bolivian State" the shares previously held by these pension funds  According to Article 2 II of the Supreme Decree, the prior owners of the shares were instructed "to change the ownership of the shares        to the 'Ministry of Public Works, Services and Housing for the Bolivian State '"  President Morales stated in this Supreme Decree that the reason for his action was "that the object of the use of natural and human resources shall be national independence and the development of ⟩

7

the country, in order to safeguard State security and seek the welfare of the Bolivian people" and to undo the "systematic dismantling of strategic State-owned companies which led to their being transferred into private hands through the anti-national process of privatization and capitalization" A copy of Supreme Decree 29101 is attached to the Declaration of Javier Castro as Exhibit A

25      On April 24, 2007, in the Letter Ref No EDV-GV No 0926/07, the Bolivian Stock Registry certified that the pension funds' former shares were registered in the name of the Ministry of Public Works, Services and Housing  In advance of the shareholders meeting of ENTEL held on February 26, 2008, the Bolivian Stock Registry issued Certificate of Accreditation of Ownership No 00912, stating that the Ministry of Public Works Services and Housing was the owner of these 6,080,050 shares of ENTEL The Minister of Public Works, in the Letter Ref No MOPSV-DESP-0345/2008 sent to the President of ENTEL, notified ENTEL of the change of the name of the registered shareholder to the Ministry of Public Works, Services and Housing  True and correct copies of these three documents are attached hereto as Exhibit M

26      ENTEL is managed by a board of directors who are appointed by ENTEL's shareholders for a two year term  Bylaws, Articles 51 (Ex K)

27      All members of ENTEL s board of directors are private individuals, and none are government employees or ministers  Article 310 of the Commercial Code prohibits government officials, with jurisdiction over the area of a company, from serving as a director of any such company for two years after they leave public service  IMPEDIMENTS AND PROHIBITIONS FOR BEING DIRECTORS  The following cannot be directors      (5) Public officials with competence and jurisdiction in relation to the object of the company, for two years after cessation of his functions " See Exhibit A for a copy of Article 310 of the Commercial Code

28      On May 1, 2008, the Superintendent of Telecommunications appointed Joel Flores as the Intervenor with responsibility to manage the affairs of ENTEL for a

8

period of 90 days  The process of intervention is well established in Bolivian law

29     In Bolivia, pursuant to Law 1600 of the Sectoral Regulation System ('SIRESE") all the companies that provide services to the public in general are supervised and controlled by the Sectoral Regulation System, composed of Superintendents for five sectors of public services  These sectors are telecommunications, hydrocarbons, transport, water and electricity  Law 1600, Article 1  Article 10(f) of Law 1600 states  "The general duties of the Sectoral Superintendents include, besides the specific duties established in the sectoral legal standards     (f) to intervene in the companies and entities under their regulatory jurisdiction and to appoint the state interventors in accordance with the sectoral legal standards "  Law 1600, Article 10(f)  A true and correct copy of Articles 1 and 10(f) of Law 1600 is attached hereto as Exhibit N

30     In 1994, President Gonzalo Sanchez de Lozada commenced the privatization of Empresa Nacional de las Telecomunicaciones, through Law No 1544, the Capitalization Act, of March 21. 1994  In June 1995, Empresa Nacional de las Telecomunicaciones became partially State-owned company, and later a wholly private company  Thus, it was only as of June 1995 that there was any private ownership of telecommunications services in Bolivia, any need for a Superintendent of Telecommunications, or any need for the Superintendent to have the power of intervention in telecommunication companies  Therefore, President Gonzalo Sanchez de Lozada created a Superintendent of Telecommunications with the power of intervention in 1995

31     Law 1632 of Telecommunications of July 5, 1995 was enacted to establish the Superintendent of Telecommunications  This Law also provides for intervention by the Superintendent of Telecommunications  Article 17 provides that  "PREVENTIVE INTERVENTION  When the continuity of the provision of Telecommunication Services is at risk, and within the limits of his authority he [the Superintendent of

9

Telecommunications] will appoint an intervenor for a period of 90 days, according to the procedure determined in the regulations " *See* Exhibit L for a true and correct copy of Article 17 of Law 1632

32    Supreme Decree 24132 of September 27, 1995, established Regulations for the Law of Telecommunications   Articles 104-111 provide procedures for intervention in telecommunication companies   Articles 104 and 106 of these Regulations were modified by Supreme Decree 29543 of May 1  2008   Article 104 of the Regulations states that    "If the Office of the Superintendent of Telecommunications believes that a holder of a license for a Noncompetitive Service in telecommunications has placed the continuity of service at risk, either due to serious irregularities in operations or due to a situation of illiquidity involving a high probability of suspension of payments or other action that might cause a state of bankruptcy for the company or an interruption in the provision of the services, it will, via a duly justified Administrative Resolution appoint a technically qualified Intervenor who will supervise, administer or operate the licensee company, as necessary, for the period established in the Law of Telecommunications " A true and correct copy of Articles 105-111 of Supreme Decree 24132 and Article 104 and 106 of Supreme Decree 29543 is attached hereto together as Exhibit O

33    Each of the other regulated sectors has similar provisions for intervention, that have been in place for many years   The procedures for intervention for the Office of the Superintendent for Transportation for national aeronautical services and concessionary airport services are stated in Articles 24-25 of Supreme Decree 24718 of July 22, 1997, modified by Supreme Decree 28619 of February 9, 2006   The procedures for intervention for the Office of the Superintendent for Transportation concerning railroads are stated in Articles 52-56 of Supreme Decree 24179 of December 8, 1995   Article 61 of Supreme Decree 24043 of June 28, 1995 of Approved Regulations of the Law of Electricity provides for intervention by the Superintendent of Electricity   There are or were similar provisions for intervention by the Superintendents of Water and the

Supermtendent of Hydrocarbons

34    For example, the Supermtendent of Transportation appointed an Interventor for Lloyd Aereo Boliviano S A on February 20, 2006, by Administrative Resolution No R A SC-STR-DS-RA-0040/2006

35    The express reason for the intervention in this matter, as stated in Regulatory Administrative Resolution No 2008/1056 of May 1, 2008 issued by the Supermtendent of Telecommunications This Administrative Resolution states 'Considering that the government has provided for the nationalization of ENTEL S A , which involves transferring private shares to the Bolivian state, it is probable that some persons or groups of persons that feel affected, may interrupt the normal delivery of telecommunication services, a situation that could even generate the interruption of services provided by those remaining operators in the market that are interconnected with ENTEL S A or that use its network to carry their calls or other communications, in such a scenario, users and/or paying subscribers in the telecommunications sectors would be unable to exercise their right to communicate" and that there may be "a risk to the continuity or regularity of delivery of public utilities, a situation that would constitute an emergency therefore, there is a pressing need for the Supermtendency of Telecommunications to issue an urgent Administrative Resolution     for the purpose of providing for the intervention of ENTEL S A ' A true and correct copy of this Administrative Resolution is attached as Exhibit C to the Declaration of Dr Javier Castro

36    Intervention has under Bolivian law, a transitory nature Article 17 of Law 1632 of Telecommunications provides that the Supermtendent can "designate an intervetor for the period of 90 days " (See Exhibit K for a copy of Article 17 ) Administrative Resolution No 2008/1056 of May 1, 2008 provides that Sr Flores is appointed as Interventor for a period of 90 days (See Exhibit C to Declaration of Javier Castro for a copy of this Administrative Resolution ) Article 109 of Supreme Decree

24132 provides that this period can be renewed for a similar time by the General Superintendent of the Sectorial Regulation System (SIRESE), only if the Telecommunications Superintendent recommends to the General Superintendent for a continuation of the intervention for another 90 day period if he finds that the interventor has not yet accomplished the objection of the intervention   *See* Exhibit O for a true and correct copy of Supreme Decree 24132

37    Interventors are not regular government employees   They have no entitlement to benefits provided to government employees   ENTEL is paying the salary of the Interventor, and not the government   The Republic has not provided any appropriations to ENTEL to pay for the Interventor

38    Interventors are not authorized to sell assets of the company   Article 106 of the Regulations for the Law of Telecommunications, as modified by Supreme Decree 29543, provides   "The designated Interventor will have the power to take the actions necessary to ensure the continuity of service without interruption and will be responsible for his decisions and actions   He will take over the legal personality and the legal representation of the company subject to intervention       He may also perform all actions necessary to safeguard the assets of the company, including its value, but may not dispose thereof "   *See* Exhibit O for a copy of Supreme Decree 29543

39    Interventors report to the Superintendent that has appointed them Interventors do not report to any government ministry   Article 107 of Supreme Decree 24132   Thus the Interventor at ENTEL, Sr Joel Flores, reports only to the Superintendent of Telecommunications, and not to the Ministry of Public Works, Services and Housing   The Superintendent of Telecommunications is not a part of the Ministry of Public Works, Services and Housing   Rather, the Superintendent of Telecommunications, as with all the Superintendents, report to the General Superintendent, and all are part of the Sectorial Regulation System (SIRESE)   Article 2 of Law 1600 provides that "The Sectorial Regulation System (SIRESE)       is under the

tuition of the Ministry of Finance and Economic Development " *See* Exhibit N for a true and correct copy of Article 2 of Law 1600

40 An interventor's report is not due until "fifteen (15) days before the end of the term of intervention ' Article 107 of Supreme Decree 24132 (Exhibit O) Thus, an interventor is not required to make reports even to the Superintendent during the term of his appointment, other than this report near the end of the intervention

41 Neither the Republic nor the Ministry give orders to the Interventor The Interventor does not need ministerial approval to take actions. In fact, an Interventor is to act independently and does not need the prior approval of the appointing Superintendent in order to take actions The Interventor makes a report to the Superintendent fifteen days prior to the expiration of the intervention Article 107 of Supreme Decree 24132 (Exhibit O)

42 Since the beginning of the intervention, the Republic has not attempted to direct the Interventor in his actions, nor has the Republic attempted to have ENTEL pay for any of the Republic's expenses or otherwise divert ENTEL's assets to the Republic

43 Since May 1, 2008, when the intervention began, nothing has changed concerning ENTEL as a result of the nationalization of the shares of ETI, except that there is a different shareholder for the 50% formerly held by ETI The Bylaws of ENTEL are the same and remain in effect All the other limitations and regulations on ENTEL imposed by Bolivian law on ENTEL, which are the same as those imposed on all Bolivian companies, remain in effect

Executed on June 6, 2008, in La Paz, Bolivia

_____
ALEJANDRO SALINAS VILELA

13

**EXHIBIT A**

## COMMERCIAL CODE
## DECREE LAW No. 14379

**GENERAL HUGO BANZER SUAREZ**
**President of the Republic**

**WHEREAS:**

Via Supreme Decree No. 06038 of March 23, 1962, Codification Commissions were organized for the development of drafts for new legal corpuses, with the intention of renovating the old legal structure of the country.

By Supreme Decree No. 10416 of August 23, 1972, the Family, Commercial, Criminal and Criminal Procedures Codes were promulgated and implemented by reason of Supreme Decree No. 19772 of March 1, 1973.

Notwithstanding the promulgation of the Commercial Code by Supreme Resolution No. 167823 of May 7, 1973, and Supreme Decree No. 11007 of July 31, 1973, it was ordered that prior to and after its effective date, it be coordinated and revised in order to avoid contradictions and interpretations that could denature the spirit thereof, which work was entrusted to a Commission appointed for such purpose;

The above-cited Commission issued the Draft Commercial Code after careful, detailed study, reformulating the original draft and making it compatible with the new Civil Code and Civil Procedures Code approved and promulgated by Supreme Decree No. 12760 of August 6, 1975, and which went into force and effect on April 2, 1976.

With this new normative instrument, the general aspiration was concretized, endowing the country with a new legal corpus that, in addition to permitting the promotion and development of commercial activity in general in harmony with modern trends in the area, will positively assist with the plans and programs of the National Government for decisively stimulating the economic growth of the country and the prospects of the process of integration.

It is necessary to approve and promulgate it in order to regulate the legal relations deriving from commercial activity, thus supplementing the codification work begun in 1972;

**NOW, THEREFORE**
**IT IS RESOLVED:**

Article 133. (LEGAL PERSONHOOD OF COMPANIES, ANNULMENT OF CHARTER)

The companies will acquire legal personhood, i.e., the status of subjects of the law with the scope established in this Title, as soon as they are registered in the Commercial Registry, with no need for any other requirement.

The annulment of the charter declared by the courts does not have any retroactive effect and determines the dissolution and liquidation of the company.

Article 217. (CHARACTERISTICS). In a *sociedad anónima* [≈ corporation], the capital is represented by stocks. The liability of the partners is limited to the amount of stock for which they subscribed.

Article 220. (REQUIREMENTS FOR FORMATION VIA A SINGLE DOCUMENT). To form a *sociedad anónima* with a single document, the Articles of Incorporation must contain, in addition to the contents of Article 172, the following requirements:

4)    That the Bylaws be approved by the stockholders.

CHAPTER XII
MIXED-ECONOMY COMPANY

Article 424. (CHARACTERISTICS). The companies formed between the State, prefectures, municipalities, corporations, public companies or other entities dependent on the State, and private capital are mixed-economy companies for the operation of companies that are in the collective interest, or for the establishment, promotion or development of industrial, commercial or service activities.

Article 310. – (PERSONS PREVENTED OR PROHIBITED FROM BEING DIRECTORS). The following cannot be directors:

1)      Persons prevented or prohibited from conducting business, in conformity with the provisions of Article 19.

2)      Persons with a conflict of interest, litigation against or debts in arrears to the company.

3)      On one and the same Board of Directors, persons who are related to each other up to the fourth degree of consanguinity or second degree of affinity, inclusive.

4)      Trustees or persons who exercise auditing functions in the same.

5)      Public officials competent for or holding jurisdiction over matters related to the purpose of the company, up to two years after they cease their functions.

6)      Those sentenced for crimes committed in the formation, operation and liquidation of companies or other common crime, up to five years after having performed the sentence imposed (Article 329, Commercial Code).

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                             )    ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into <u>English</u> of <u>Article 310, Commercial Code of Bolivia</u> written in <u>Spanish</u>.

New York, June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**CODIGO DE COMERCIO**
**DECRETO LEY Nº 14379**

**GRAL. HUGO BANZER SUAREZ**
**Presidente de la República**

**CONSIDERANDO:**

Que, mediante Decreto Supremo Nº 06038 de 23 de marzo de 1962 fueron organizadas las Comisiones Codificadoras para la elaboración de proyectos de nuevos cuerpos legales, con el propósito de renovar la vieja estructura jurídica del país.

Que, por Decreto Supremo Nº 10426 de 23 de agosto de 1972, fueron promulgados los Códigos de Familia, de Comercio, Penal y de Procedimiento Penal, puestos en vigencia en virtud del Decreto Supremo Nº 19772 de 1º de marzo de 1973.

Que no obstante su promulgación, el Código de Comercio por Resolución Suprema Nº 167823 de 7 de mayo de 1973 y Decreto Supremo Nº 11007 de 31 de julio 1973, se dispuso que con carácter previo y antes de su vigencia sea coordinado y revisado con el fin de evitar contradicciones e interpretación que desnaturalicen el espíritu del mismo, trabajo que fue encomendado a una Comisión designada para tal efecto;

Que, la referida. Comisión ha entregado el Proyecto de Código de Comercio luego de efectuar un detenido y prolijo estudio, reformulado el primitivo proyecto y compatibilizándose con los nuevos Códigos Civil y Procedimiento Civil aprobados y promulgados por Decreto Supremo Nº 12760 de 6 de agosto de 1975 y puesto en vigencia a partir del 2 de abril de 1976.

Que, con este nuevo instrumento normativo, se concreta la general aspiración de dotar al país de un nuevo cuerpo legal que a más de permitir la promoción y desarrollo de la actividad comercial en general en armonía con las modernas corrientes que informan la materia, coadyuvará en forma positiva a los planes y programas del Gobierno Nacional para impulsar decididamente el fortalecimiento económico del país y las perspectivas que tiene el proceso de integración.

Que se hace necesario su aprobación y promulgación para regular las relaciones jurídicas derivadas de la actividad comercial, completando así la obra codificadora iniciada en 1972;

**POR TANTO;**
**SE RESUELVE:**

Art. 1º.- Apruébase y promúlgase como Ley de la República el Código de Comercio en su Título Preliminar y sus Cuatro Libros con 1.693 artículos y cinco disposiciones transitorias, en sustitución del texto promulgado mediante Decreto Supremo Nº 10426 de 23 de agosto de 1972.

Art. 2º El Código de Comercio entrará en vigencia en todo el territorio de la República a partir del 6 de agosto del presente año. (Vigente desde el lo. de enero de 1978).

Art. 3º Encomiéndase al Ministerio de Finanzas el estudio y conclusión de los siguientes proyectos: Ley de Bancos y otras entidades financieras; Ley de Entidades Aseguradoras; Ley Orgánica de la Comisión Nacional de Valores y el Reglamento de la Oferta Pública. Al Ministerio de Industria, Comercio y Turismo: el estudio y elaboración de los Proyectos de Reglamento del Registro de Comercio y de la Dirección de Sociedades por Acciones estableciendo su organización interna, funcionamiento, atribuciones y responsabilidades. Estos Proyectos serán presentados con la debida anticipación a la vigencia del Código de Comercio.

Art. 4º.- Abrógase el Código Mercantil de 13 de noviembre de 1834, sus Leyes complementarias y modificatorias, derogándose todas las disposiciones contrarias al presente Código.

Art. 133.- (PERSONALIDAD JURIDICA DE LAS SOCIEDADES, ANULACION DE ACTO CONSTITUTIVO)
Las sociedades adquirirán personalidad jurídica, esto es calidad de sujetos de derecho con el alcance establecido en éste Título, desde el momento de su inscripción en el Registro de Comercio, sin necesidad de otro requisito.
La anulación del acto constitutivo declarada judicialmente, no tiene efecto retroactivo y determina la disolución y liquidación de la sociedad.

Art. 134.- (SOCIEDADES IRREGULARES Y DE HECHO). Las sociedades de los tipos autorizados que no se constituyan regularmente y las sociedades de hecho que hubieran exteriorizado como tales frente a terceros, se reputarán existentes solamente para los efectos de la responsabilidad respecto de terceros y para ejercer los derechos emergentes de contratos válidamente celebrados.

En estos casos, no pueden los socios, fundados en el contrato social, ejercer derechos o reclamar obligaciones; sus relaciones recíprocas se rigen por el derecho común.

Art. 135.- (RESPONSABILIDADES). Los que efectúen operaciones en nombre de la sociedad irregular o de hecho y los que actúen jurídicamente como sus representantes, responden en forma solidaria e ilimitada del cumplimiento de lo realizado frente a terceros.

Todo interesado y aun los socios no culpables de la irregularidad, podrán demandar daños y perjuicios a los culpables y a los que obren como representantes o mandatarios de la sociedad.
Cualquier socio puede pedir la disolución y separación de la sociedad. La liquidación se rige por las normas de este Título. (Arts. 134, 173, 367 C. Comercio).

Art. I36.- (ACCION PARA COMPROBAR LA EXISTENCIA REGULAR DE UNA SOCIEDAD). Los terceros interesados podrán pedir al juez, en la vía sumaria, la comprobación de la existencia regular de la sociedad. Si no fuera probada la inscripción en el Registro de Comercio, el juez ordenará la liquidación de la sociedad y designará a los liquidadores. (Arts. 27, 33, 44,134 C. Comercio),,

Art. 137.- (NULIDAD DE SOCIEDADES ATIPICAS). Es nula la constitución de sociedades comerciales cuando éstas tengan una estructura diferente a los tipos autorizados por este Código.
Los requisitos esenciales no tipificantes hacen anulable el contrato; no obstante, podrán ser subsanados mientras no medie acción judicial.

Art. 138.- (VICIOS DEL CONSENTIMIENTO). Los vicios del consentimiento, declarados judicialmente cuando afecten al vínculo de alguno de los socios, producirán la anulación del contrato sólo con relación a ese socio; empero, cuando la participación del mismo sea esencial al objeto del contrato social, se procederá a la disolución y liquidación de la sociedad. (Arts. 473 C. Civil).

Art. 139.- (OBJETO ILICITO). La sociedad que tenga objeto ilícito es nula. Los socios administradores y quienes actúen en la gestión social, responderán ilimitada y solidariamente por el pasivo social y por los perjuicios causados. La nulidad podrá ser demandada por cualquier interesado o a denuncia del Ministerio Público, y el juez la substanciará por la vía sumaria. (Arts. 455, 485 C. Civil).
Ningún socio puede invocar la existencia de la sociedad para reclamar la restitución de sus aportes, la división de las ganancias o sustraerse de las pérdidas, ni aún para demandar a terceros.
Los terceros de buena fe pueden alegar contra los socios la existencia de la sociedad, sin que éstos puedan oponer la nulidad.
Declarada judicialmente la nulidad, se liquidará la sociedad por quien designe el juez; cualquier remanente, después de realizado el activo y pagado el pasivo social, se entregará al Estado. (Art. 166 C. Comercio).

Art. 140.- (ACTIVIDAD ILICITA O PROHIBIDA)
Cuando la sociedad de objeto lícito realice actividades ilícitas o prohibidas por disposiciones legales, el juez, a pedido de parte interesada o a denuncia del Ministerio Público, ordenará la suspensión de tales actividades hasta resolver la disolución y liquidación de la misma, conforme a lo dispuesto en el artículo anterior.

Art. 209.- (VOTOS NECESARIOS PARA. LAS RESOLUCIONES). Para modificar la escritura social, cambiar el objeto de la sociedad, aumentar o reducir el capital social, admitir nuevos socios, autorizar la transferencia de cuotas del capital y disolver la sociedad, se requerirá el voto de socios que representen dos tercios del capital.

Las demás resoluciones serán aprobadas por el voto de socios que constituyen más de la mitad del capital social.

Art. 210.- (CONCENTRACION DE LAS CUOTAS DE CAPITAL). La sociedad de responsabilidad limitada se disolverá de pleno derecho cuando todas las cuotas de capital se concentren en un solo socio, quien responderá, en forma solidaria e ilimitada, por las obligaciones sociales hasta la total liquidación de la sociedad.

La acción podrá ejercitarse por cualquier persona con interés legítimo. debiendo procederse por la vía sumaria. Probado el hecho, el juez designará a las liquidadores respectivos.

La acción no podrá ser enervada por la inclusión o aparición posterior de socios.

Art. 211.- (CONTROL). Los socios tienen el derecho de examinar la contabilidad, libros y documentos de la sociedad en cualquier tiempo. Podrá también establecerse un órgano de control y vigilancia cuyas facultades y funciones se regirán por las normas señaladas, para los síndicos en las sociedades anónimas, en cuanto aquellas sean aplicables.

La creación del órgano de control permanente no significa la pérdida del derecho al control individual por parte de los socios.

Art. 212.- (TRANSFERENCIA POR CAUSA DE MUERTE). La transferencia de cuotas por causa de muerte de alguno de los socios, se rige por el artículo 209 cuando no exista estipulación distinta en el contrato. Si el contrato social permite la incorporación de los herederos del socio, el pacto será obligatorio para los socios. En caso contrario, los socios tendrán derecho a adquirir las cuotas del socio fallecido en proporción a las cuotas de capital y por su valor comercial a la fecha de la muerte de éste. Si no se llegara a un acuerdo con respecto al precio y condiciones de pago, serán determinados por peritos designados por las partes o por el juez.

Art. 213.- (COPROPIEDAD). Cuando exista copropiedad de una cuota social se aplicarán las disposiciones del condominio. La sociedad puede exigir la unificación de la representación para ejercer los derechos y cumplir las obligaciones sociales.

Art. 214.- (CESION DE CUOTAS ENTRE SOCIOS). La cesión de cuotas es libre entre socios. salvo las limitaciones establecidas en el contrato social.

La cesión de cuentas, aún entre socios, implica la reforma de la escritura de constitución.

Art. 215.- (PREFERENCIA DE LOS DEMAS SOCIOS EN LA OFERTA DE CESION). El socio que se proponga ceder sus cuotas, comunicará su deseo por escrito a los demás socios, quienes, en el término de quince días de recibido el aviso, manifestarán si tienen interés en adquirirlas.

Si no hacen conocer su decisión en el plazo señalado, se presume su rechazo y el ofertante queda en libertad para vender sus cuotas a terceros.

Art. 216.- (DESACUERDO DE LOS SOCIOS EN LA CESION). Si los socios no hacen uso de la preferencia, la ejercen parcialmente o no se da la autorización de la mayoría prevista para la admisión de nuevos socios, la sociedad estará obligada a presentar, dentro de los sesenta días de la oferta, una o más personas que adquieran las cuotas.

Si dentro de los veinte días siguientes no se perfecciona la cesión, los demás socios optarán entre disolver la sociedad o excluir al socio interesado en ceder las cuotas, pagando su precio según peritaje.

CAPITULO V
SOCIEDAD ANONIMA

SECCION        I
DISPOSICIONES GENERALES

Art. 217.- (CARACTERISTICAS). En la sociedad anónima el capital está representado por acciones. La responsabilidad de los socios queda limitada al monto de las acciones que hayan suscrito

Art. 218.- (DENOMINACION). La sociedad anónima llevará una denominación referida al objeto principal de su giro, seguida de las palabras "Sociedad Anónima", o su abreviatura "S. A.".
La denominación debe ser diferente de cualquier otra sociedad existente.

SECCION II
CONSTITUCION

Art. 219.- (FORMA DE CONSTITUCION). La sociedad anónima puede constituirse en acto único por los fundadores o mediante suscripción pública de acciones.

Art. 220.- (REQUISITOS PARA CONSTITUIR POR ACTO UNICO). Para constituir una sociedad anónima en acto único la escritura de constitución debe contener, además de los señalados en el artículo 127, los siguientes requisitos:
1)      Que la integren tres accionistas por lo menos;
2)      Que el capital social se haya suscrito en su totalidad el cual no puede ser menor al cincuenta por ciento del capital autorizado. A los efectos de éste Capítulo: "Capital social" y "capital suscrito" tienen el mismo significado;
3)      Que de cada acción suscrita se haya pagado por lo menos un veinticinco por ciento de su valor en el momento de celebrarse el contrato constitutivo, y
4)      Que los estatutos de la sociedad sean aprobados por los accionistas.

Art. 221.-. (APORTACIONES EN DINERO). Los accionistas fundadores abrirán una cuenta corriente en un banco a nombre de la sociedad en formación y depositarán en ella sus aportes en dinero. Con cargo a esta cuenta pueden realizarse los gastos de constitución de la sociedad, según se establezca en la escritura social.

Art. 222.- (CONSTITUCION POR SUSCRIPCION PUBLICA). Si la constitución de la sociedad anónima fuera por suscripción pública, los promotores deben formular un programa de fundación suscrito por los mismos, que se someterá a la aprobación de la Dirección de Sociedades por Acciones y que debe contener:
1)      Nombre, edad, estado civil, nacionalidad, profesión, domicilio de los promotores y el número de su cédula de identidad.
2)      Clase y valor de las acciones, monto de las emisiones programadas, condiciones del contrato de suscripción y anticipos de pago a los que se obligan los suscriptores;
3)      Número de acciones correspondientes a los promotores;
4)      Proyectos de estatutos;
5)      Ventas o beneficios eventuales que los promotores proyectan reservarse;
6)      Plazo de suscripción, que no excederá de seis meses computables desde la fecha de aprobación del programa por la Dirección de Sociedades por Acciones.
7)      Contrato entre un Banco y los promotores por el cual aquél tomará a su cargo la preparación de la documentación correspondiente, la recepción de las suscripciones y los anticipos de pago en dinero.

Art. 223.- (APROBACION DEL PROGRAMA PARA OFRECER AL PUBLICO SUSCRIPCION DE ACCIONES). Para ofrecer al público la suscripción de acciones debe obtenerse de la Dirección de Sociedades por Acciones, previo el cumplimiento de las disposiciones legales y reglamentarias, la aprobación del programa de fundación y autorización para su publicidad. No se autorizará la suscripción de acciones por el público, sin que, previamente, se hubiera comprobado la exactitud de la valuación de los bienes aportados en especie y la suscripción íntegra de la parte del capital social correspondiente a los accionistas fundadores.
Aprobado el programa, éste debe inscribirse en el Registro de Comercio en el plazo de quince días; en caso contrario, la autorización caduca automáticamente.

Art. 224.- (CONTRATO DE SUSCRIPCION). El Contrato de suscripción será preparado por el banco en doble ejemplar y contendrá la transcripción del programa y además:
1)      El nombre, nacionalidad y domicilio del suscriptor;

habiendo asistido, hubiera hecho constar su disidencia y, en general, cuando la resolución sea contraria al orden público.

Igualmente, puede impugnarse la convocatoria a la reunión que no cumpla los preceptos señalados tanto en este Código como en los estatutos.

La acción deberá dirigirse contra la sociedad, dentro de los sesenta días siguientes a la reunión o de su publicación, con los documentos que amparen la demanda, debiendo tramitarse sumariamente. (Art. 302 Código Comercio).

Art. 303.- (DEMANDA PROBADA). En caso de probarse la demanda. el juez declarará nula y sin efecto alguno la resolución impugnada, pudiendo ordenar la suspensión de la convocatoria hasta que se cumplan los preceptos legales. (Arts. 514 a549 Código de procedimiento Civil).

Art. 304.- (RESPONSABILIDAD DE LOS ACCIONISTAS). Quienes voten en favor de las resoluciones declaradas posteriormente nulas, responden solidariamente por las consecuencias de las mismas, sin perjuicio de la responsabilidad de los directores y síndicos.

Art. 305.- (REVOCATORIA DE LA RESOLUCION IMPUGNADA). Revocada por junta posterior la resolución impugnada, no procede la demanda o continuación de la misma, subsistiendo, sin embargo, la responsabilidad por sus efectos o consecuencias directas hasta la fecha de revocación.

Art. 306.- (FIANZA PARA RESPONDER DEL JUICIO). Para el ejercicio de las acciones previstas en el artículo 302, los accionistas impugnantes constituirán fianza suficiente para responder por los daños y perjuicios que la sociedad sufriera, además de las resultas del juicio.

SECCION VIII
ADMINISTRACION Y REPRESENTACION

Art. 307.- (COMPOSICION DEL DIRECTORIO). La administración de toda sociedad anónima estará a cargo de un directorio compuesto por un mínimo de tres miembros, accionistas o no, designados por la junta de accionistas.

Los estatutos pueden señalar un número mayor de directores que no excederá de doce.

Art. 308.- (DESIGNACION EN FORMA PERIODICA y REVOCABLE). Los directores deben ser designados por la junta general ordinaria, por un periodo determinado, pudiendo ser reelegidos. Su designación es revocable por la junta general. (Art. 315 Código de Comercio).

Es nula cualquier otra forma de designación.

En los estatutos se regulará la manera de nombrar directores titulares y suplentes.

Cuando existan diversas clases de acciones, los estatutos pueden prever que cada una de ellas elija uno o más directores, normando la forma de elección y remoción.

Art. 309.- (CAPACIDAD REQUERIDA). Para desempeñar el cargo de director se precisará la capacidad requerida para ejercer el comercio.

Art. 310.- (IMPEDIDOS Y PROHIBIDOS PARA SER DIRECTORES). No pueden ser directores:
1)    Los impedidos y prohibidos para ejercer el comercio, conforme dispone el artículo 19.
2)    Los que tengan conflicto de intereses, asuntos litigiosos o deudas en mora con la sociedad;
3)    En un mismo directorio, los que tengan entre sí parentesco hasta el cuarto grado de consanguinidad o segundo de afinidad, inclusive;
4)    Los síndicos o personas que ejerzan funciones de fiscalización en la misma
5)    Los funcionarios públicos de competencia y jurisdicción en asuntos que se relacionen con el objeto de la sociedad, hasta dos años después del cese de sus funciones;
6)    Los sentenciados por delitos cometidos en la constitución, funcionamiento y liquidación de sociedades o por otro delito común, hasta cinco años después de haber cumplido la condena impuesta. (Art. 329 Código de Comercio).

La designación de representantes se inscribirá en el Registro de Comercio y surtirá todos los efectos legales, mientras no se inscriba una nueva designación.

Art. 421.- (CITACION Y EMPLAZAMIENTO EN JUICIO). La citación y emplazamiento en juicio de una sociedad constituida en el extranjero puede cumplirse válidamente en la República:
1)      En la persona del apoderado que intervino en el acto o contrato, origen del litigio, cuando se trate de un acto aislado;
2)      En la persona del representante permanente cuando se trate de sucursal o representación para el ejercicio habitual de actos de comercio.
Quienes actúen a nombre y representación de sociedades extranjeras sin observar las normas de este Capítulo, responderán personal, solidaria e ilimitadamente, frente a terceros por las obligaciones contraidas.

Art. 422.- (DISMINUCION DE CAPITAL). El capital asignado por la sociedad constituida en el extranjero para la explotación de sus negocios en el país, no puede reducirse sino con sujeción a lo prescrito en este Título con relación a las garantías de los acreedores establecidas en el país.

Art. 423.- (CONSTITUCION DE SOCIEDAD). La sociedad constituida en el extranjero, para constituir nueva sociedad en la República, debe acreditar que está organizada y habilitada legalmente de acuerdo con las leyes de su país de origen, mediante los documentos autenticados y debidamente legalizados en la forma señalada por este Capítulo. (Arts. 127, 229, 230 y 433 Código de Comercio, Art. 43 del D.L. Nº 16833 de 19 de julio de 1979).

CAPITULO XII
SOCIEDAD DE ECONOMIA MIXTA

Art. 424.- (CARACTERISTICAS) Son sociedades de economía mixta las formadas entre el Estado, prefecturas, municipalidades, corporaciones, empresas públicas u otras entidades dependientes del Estado y el capital privado, para la explotación de empresas que tengan por finalidad el interés colectivo o la implantación, el fomento o el desarrollo de actividades industriales, comerciales o de servicios.

Art. 425.- (PERSONA DE DERECHO PRIVADO). Las sociedades de economía mixta son personas de derecho privado y, salvo las disposiciones especiales establecidas en el presente Capítulo, estarán sujetas a las normas que rigen la constitución y el desenvolvimiento de las sociedades anónimas. (Arts. 217 a 355 Código de Comercio).

Art. 426.- (DENOMINACION). La sociedad de economía mixta, en su denominación, deberá necesariamente llevar, seguida de "Sociedad Anónima" o sus iniciales "S.A." la palabra "Mixta" o su abreviatura "S.A.M."

Art. 427.- (NUMERO DE SOCIOS). Toda sociedad de economía mixta podrá constituirse con dos o más socios.

Art. 428.- (REQUISITOS PARA LA CONSTITUCION)
Para la constitución de una sociedad de economía mixta se deben cumplir, obligatoriamente, los siguientes requisitos:
1)      Propuesta de los promotores al Ministerio del ramo o al organismo dependiente del Estado con el cual se desee formar sociedad o de éstos al capital privado;
2)      Suscripción de un convenio entre el interés privado y la entidad del sector público para la formación de la sociedad, con proyectos aprobados de la escritura de constitución y estatutos;
3)      Decreto Supremo que autorice la formación de la sociedad, apruebe el proyecto de contrato de constitución y estatutos y ordene su protocolización en la notaría respectiva, y luego, reconozca su personalidad jurídica, señalando el capital, porcentaje y participación del sector público y los privilegios que gozará la sociedad, siempre que se los otorguen;
4)      Depósito en un Banco del capital pagado; y
5)      Inscripción en el Registro de Comercio como sociedad de economía mixta. (D.S. 15 de diciembre de 1977.)

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                         )    ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  <u>English</u>  of   <u>Excerpts from the Commercial Code of Bolivia</u> written in  <u>Spanish</u>  .

New York, June 06, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 06, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate rendition into ___English___ of ___Commercial Code of Bolivia, Articles 217 and 220___
written in ___Spanish___ .

New York,  June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**EXHIBIT B**

CIVIL CODE

BOOK ONE

TITLE I
ON NATURAL PERSONS

CHAPTER I
On the Start and End of Personhood

TITLE II
ON LEGAL PERSONS

CHAPTER 1
General Provisions

Article 52. (GENERAL LISTING)
The following are legal persons:
1)    The Bolivian State, the Catholic Church, the Municipalities, the Universities and other public entities whose legal personhood is recognized by the Political Constitution and the laws. (Arts. 55 and 58 of the Civil Code; Art. 3 of the Political Constitution of the State)
2)    Mutual societies, union associations, corporative associations, assistance societies, benevolent societies, cultural associations in general, education, religious, sports or any other associations with licit goals, as well as foundations. They are regulated by the generic norms in this Chapter, without prejudice to the special laws and provisions concerning them. Orders, congregations and other institutions of the Catholic Church are governed internally by the provisions related to them (Art. 133, Political Constitution of the State).
3)    Civil and mercantile companies governed by the respective provisions of this Code and the Commercial Code and corresponding acts.


Article 54. (CAPACITY)
I.    Legal persons have legal capacity and the capacity to work within the limits set by the purposes determined by their formation.
II.    When agencies or branches are formed in areas other than that of the administration, they will also have a domicile in that location for the actions carried out and the obligations contracted by the agency or branch.

CODIGO CIVIL

LIBRO PRIMERO

TITULO I
DE LAS PERSONAS INDIVIDUALES

CAPITULO I
Del comienzo y fin de la personalidad

Art. 1o. (COMIENZO DE LA PERSONALIDAD).
I.      El nacimiento señala el comienzo de la personalidad.
II.     Al que está por nacer se lo considera nacido para todo lo que pudiera
favorecerle, y para ser tenido como persona basta nacer con vida.
III.    El nacimiento con vida se presume, salva la prueba contraria. siendo indiferente
que se produzca naturalmente o por procedimientos quirúrgicos. (Arts. 185 al 191
Código de Familia)
(Art. 6 Const. Pol. del Estado; Arts. 201, 239, 280 Código de Familia; Ley del Registro
Civil del 26 de noviembre de 1898 Art. 30; Art. 663 - 1008)

Art. 2o.- (FIN DE LA PERSONALIDAD Y CONMORIENCIA).
1. La muerte pone fin a la personalidad.
II. Cuando en un siniestro o accidente mueren varias personas y no puede comprobarse
la premoriencia para determinar un efecto jurídico, se considera que todas murieron al
mismo tiempo. (Arts. 383 y 384 Código de Familia)
(Arts. 1157, 1216, 1532 C. Civil; Art. 61 Ley de Registro Civil; Arts. 1 29, 167 Código de
Familia)

CAPITULO III
De la capacidad

De los derechos de la personalidad

Art. 3o- (CAPACIDAD JURíDICA; LIMITACIONES).
Toda persona tiene capacidad jurídica. Esta capacidad esperimenta limitaciones
parciales sólo en los casos especialmente determinados por la ley. (Arts. 590, 591, 592
Código Civil)

Art. 4o- (MAYORIA DE EDAD Y CAPACIDAD DE OBRAR).
1. La mayoría de edad se adquiere a los veintiún años cumplidos. II. El mayor de edad
tiene capacidad para realizar por sí mismo todos los actos de la vida civil.
(Art. 41 Const. Pol. del Estado.- Art. 249 Código de Familia)

Art. 5o. (INCAPACIDAD DE OBRAR).
1. Incapaces de obrar son:
1) Los menores de edad, salvo lo dispuesto en los parágrafos III y IV de este artículo y
las excepciones legales.
2)      Los interdictos deelarados.
II. Los actos civiles correspondientes a los incapaces de obrar se realizan por sus
representantes, con arreglo a la ley.

Art. 51o.. (DERECHOS CORRESPONDIENTES AL FALLECIDO PRESUNTO).
Si la persona respecto a la cual se ha deelarado el fallecimiento presunto regresa o se prueba su existencia en el momento de abrirse una sucesión, ella misma, o sus herederos o causahabientes pueden ejercer la petición de herencia u otro derecho, pero no pueden recuperar los bienes sino con arreglo a lo previsto por el Art. 45.

TITULO II
DE LAS PERSONAS COLECTIVAS

CAPITULO 1
Disposiciones generales

Art. 52o.. (ENUMERACION GENERAL).
Son personas colectivas:
1)      El Estado boliviano, la Iglesia Católica, los Municipios, las Universidades y demás entidades públicas con personalidad jurídica reconocida por la Constitución Política y las leyes. (Arts. 55 y 58 de Código Civil; Art. 3 de la Const. Pol. del Estado)
2)      Las asociaciones mutualistas, gremiales, corporativas, asistenciales, benéficas, culturales en general, educativas, religiosas, deportivas o cualesquiera otras con propósitos lícitos, así como las fundaciones. Ellas se regulan por las normas genéricas del Capítulo presente, sin perjuicio de las leyes y disposiciones especiales que les conciernen. Las órdenes, congregaciones y otros institutos dependientes de la Iglesia Católica se rigen internamente por las disposiciones que les son relativas. (Art. 133 Const. Pol. del Estado)
3)      Las sociedades civiles y mercantiles que se regulan por las disposiciones respectivas del Código presente y por las del Código de Comercio y leyes correspondientes.

Art. 53o- (ENTIDADES INTERNACIONALES).
Son también personas colectivas las organizaciones internacionales, la Santa Sede, los Estados extranjeros y sus organismos, conforme a las normas del Derecho Internacional.

Art. 54o-. (CAPACIDAD).
I. Las personas colectivas tienen capacidad jurídica  y capacidad de obrar dentro de los límites fijados por los fines que determinaron su constitución.
II. Cuando establezcan agencias o sucursales en lugar distinto al de su administración, se tendrá también como domicilio dicho lugar para los actos que realice y las obligaciones que contraiga la agencia o sucursal.

Art. 55-. (DOMICILIO).
I. El domicilio de las personas colectivas es el lugar fijado en el acto constitutivo, y a falta de éste, el lugar de su administración.
II. Cuando establezcan agencias o sucursales en lugar distinto al de su administración, se tendrá también como domicilio dicho lugar para los actos que realice y las obligaciones que contraiga la agencia o sucursal.

Art. 56.- (NOMBRE).
Las personas colectivas deben adoptar, a tiempo de constituirse, un nombre al cual es aplicable lo dispuesto por el artículo 12.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English   of   Excerpts from the Civil Code   written in   Spanish   .

New York,  June 04, 2008.

TransNet USA, Inc.

Kamran Bayegan, President

Sworn to and subscribed before me on
June 04, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**EXHIBIT C**

**Supreme Decree 07441**

**12/22/1965**

**EMPRESA NACIONAL DE TELECOMUNICACIONES (ENTEL) – CREASE**

General René Barrientos Ortuño – General Alfredo Ovando Candia
PRESIDENTS OF THE HONORABLE MILITARY JUNTA OF THE GOVERNMENT

WHEREAS:

It is absolutely necessary to adopt a defined, substantial policy with regard to the exploitation, functioning and expansion of Telecommunication Services in the country, so that they may contribute effectively, positively and constantly to the economic and social development of the Nation;

The actual structure and work procedures that are still employed in the national Telecommunication services, already made obsolete by advances in technology, have ceased to be adequate and sufficient to meet the ever greater demands of public and private activity, which demands find, in these media, their indispensable means of rapid contact and constructive relations;

Of the various studies carried out and subsequent reports on the technological and functional advances in the area as well as the examination of the international agreements and recommendations, we deduce the need and appropriateness of proceeding, gradually and methodically, with the integration, coordination and modernization of the public Telecommunication services that operate in the territory of the Republic, whose antiquated implementation and organization does not permit us to rely on dynamic, stable and secure systems that the progress of the country requires;

At the proper time, it is essential to implement the agreements reached with regard to the improvement and expansion of the physical and/or electronic circuits with the neighboring countries, within the scope of the planned Interamerican Telecommunications Network (RIT);

Moreover, in application of this same policy, it is appropriate to delimit, in a practical fashion, the aspects of exploitation and traffic from the aspects of regulation and oversight, so that each party may manage its functions by concentrating its efforts and orienting its work toward the sphere of its specific responsibility and competence, without improper overlaps and wasteful duplications;

WHEREAS:

The Commission created by Supreme Decree No. 06928 of October 14, 1964, whose work was expanded by a similar provision, No. 06984 of December 7 of the same year, has raised, through the Ministry of Public Works and Communications, the project of creating an entity that, under the name of "Empresa Nacional de Telecomunicaciones" and in the form of a Mixed-Economy Company, meaning based on the

principle of combining public and private interests, the financial participation of both and the satisfaction of a need of a general nature, englobes the current Telegraph and Radiocommunication services of the State, and the Automatic Telephone Companies that operate in various cities, thus supplementing the urban and inter-urban traffic factors, for an efficient and full set of public telecommunications within the territory of the country;

The reasons stated by this Commission and the structural guidelines set forth in the above-mentioned project, as well as other optional elements contributed by high State organizations, made the creation of such an entity necessary and recommendable, so that it can assume the central mission of modernizing, exploiting and expanding the national Telecommunication services.

IN THE COUNCIL OF MINISTERS
DECREE:

CHAPTER I
BASICS

**ARTICLE 1.**

Let there be created the EMPRESA NACIONAL DE TELECOMUNICACIONES (ENTEL) as a Mixed-Economy Company under public law, with an indefinite term; consequently, it will have full capacity to self-administer and to carry out all actions in its legal life, in conformity with the structure established by this Decree Law and in accordance with the provisions contemplated in its Organic Statutes and corresponding By-Laws.

**ARTICLE 2.**

The fundamental objectives that ENTEL will channel and implement are the modernization, exploitation and expansion of the urban, inter-urban and/or international public telecommunication services within the territory of Bolivia, according to the terms and conditions proposed and recommended by the progress in technology and operating experience.

**ARTICLE 3.**

The mission entrusted to ENTEL and the function that it is intended to develop will be managed under the regulatory and oversight jurisdiction of the Ministry of Public Works and Communications, a government authority entrusted with the higher oversight of all telecommunication services established or to be established in the country, together with the responsibility for compliance with the obligations deriving from the International Telecommunications Convention and its related regulations.

**CHAPTER II**
**PURPOSES**

**ARTICLE 4.**

ENTEL is intended to:

a) Render urban, inter-urban and/or international public telecommunications services, whether by telephone, telegraph, telex, links for radio broadcasting, links for television, the leasing of circuits for State, decentralized or private services, attention to "in transit" communications in international traffic, or any other service compatible with its specific purposes that are permitted by internal and/or international regulations;

b) Promote and direct the modernization and expansion of the public telecommunication systems, for which it will permanently maintain a research and planning department that will permit it to keep abreast of the technological and scientific advances in its sphere of activity;

c) Advise and cooperate with State organizations or decentralized institutions in the areas and subjects in which it specializes; and this, through the Ministry of Public Works and Communications or its representatives in the Company.

**ARTICLE 5.**

The following are not included in the objectives listed in the preceding article:

a) International telecommunications services handled by recognized private operating companies, subject to concessions;

b) Urban or inter-urban services not integrated into ENTEL as long as the respective concession is in effect and justified;

c) The national Defense and Security services of the State; radio broadcasting; television and special systems defined in the categories "Aviation mobile," "Maritime mobile," "Radiogoniometry," as well as those that were incompatible with the purpose of ENTEL.

**CHAPTER III**
**ORGANIZATION**

**ARTICLE 6.**

ENTEL will have its legal domicile in the City of La Paz.

**ARTICLE 7.**

In terms of territory, ENTEL will be divided into as many regions as necessary in the opinion of its administrative organ.

**ARTICLE 8.**

Organically, ENTEL will be governed by:

A National Board of Directors;

Regional Boards of Directors;

A General Management;

An Administrative Division;

A Technical Division;

Regional Managements.

**ARTICLE 9.**

The Board of Directors will be composed of the following members:

A Chairperson, who will be appointed by the Office of the President of the Republic, from a list of candidates proposed by the Ministry of Public Works and Communications;

A Representative of the Ministry of Public Works and Communications (Communications branch);

A Representative of the Ministry of the National Economy;

A Representative of the Ministry of National Defense;

A Representative of the Ministry of the Treasury and Statistics;

Five Representatives of Private Stockholders.

The General Manager will attend the sessions of the Board of Directors with the right to speak but not vote.

The members of the Board of Directors, except the Chairperson, will have their respective substitutes.

**ARTICLE 10.**

The term of the Chairperson will be four years, and that of the members of the Board of Directors will be five, and they may be re-elected.

**ARTICLE 11.**

The General Manager will be elected by the Board of Directors. He will have to be a person with broad experience and knowledge in the area of Telecommunications.

**ARTICLE 12.**

The composition and attributes of the Regional Boards of Directors, which will perform their functions under the control of the National Board of Directors, will be determined in the Organic Statutes of ENTEL.

**CHAPTER IV**
**CAPITAL**

## ARTICLE 13.

The capital of ENTEL will be made up of contributions from the public sector and the private sector. The contribution of the public sector will not be less than fifty-one percent (51%) of the total, and it will be made up of contributions from the State, the Municipalities and the autonomous and autarchic entities.

## ARTICLE 14.

The capital will be made up of:

a)      Contributions from the Public Sector

1.      Telegraphic and radiocommunication equipment and installations that will be transferred gradually to ENTEL.

2.      Lot of ISB/SSB HF radiocommunication equipment.

3.      Furnishings and fixtures for its capital assets.

4.      Participations by the State, the Municipalities and the autonomous and autarchic entities in Telephone Companies that will be integrated into ENTEL.

5.      Economic and other contributions.

b)      Contributions from the Private Sector.

1.      Real value of the securities of stockholders in the Telephone Companies that will be integrated into ENTEL.

2.      Subscription for the shares.

**CHAPTER V**
**FINANCIAL SYSTEM**

## ARTICLE 15.

To finance its development, ENTEL will make use, among other things, of the following sources:

a)      National, foreign and/or international organization loans;

b)    Issuance of stock;

c)    Issuance of bonds and other securities, whose redemption periods and interest rates will be determined on a case by case basis.

**ARTICLE 16.**

As often as necessary, and at least every two months, ENTEL will proceed with revaluing its Assets, including cash on hand in foreign currency and reserve funds and capital; and this, in conformity with the norms in its Organic Statutes.

**ARTICLE 17.**

ENTEL's rate system will be proposed by its Board of Directors to the Ministry of Public Works and Communications, for the necessary approval; it is essential that the rates cover:

a)    Operating expenses;

b)    Contributions to a Depreciation Fund;

c)    Contributions to an Amortization Fund;

d)    Return on Capital Invested.

ENTEL, as applicable, will adopt the measures pertinent to neutralizing the effects of any inflationary phenomena.

**ARTICLE 18.**

The rendering of the telecommunication services entrusted to ENTEL will be remunerated by the payment of the corresponding rates which will not be subject to exemption or discount for any institution, public or private entity or person, with the sole exception of the cases provided for in the International Telecommunications Convention.

**CHAPTER VI**
**ON PRIVATE SECTOR STOCKHOLDERS**

**ARTICLE 19.**

The subscribers to the urban telephone service and others that may be established and who subscribe for shares as users will be private stockholders in ENTEL.

The contribution from the subscriber stockholders, according to the regulations established by ENTEL for each case, will be covered:

a)    Only in shares for the entire amount;

b)      By shares and bonds jointly.

**ARTICLE 20.**

Aside from the collection of dividends, subscriber stockholders will have the right to vote in ENTEL only to elect the members of the Board of Directors who are representatives of the private sector, in accordance with the methods that are provided for this purpose in its Statutes.

**CHAPTER VII**
**PUBLIC SECTOR STOCKHOLDERS**

**ARTICLE 21.**

The public sector stockholders listed in Article 13 of this Decree Law will have the right to participate in the management of ENTEL through their representatives on the Board of Directors.

**ARTICLE 22.**

The State will necessarily have to reinvest its dividends. The Municipalities and autonomous and autarchic entities may, at their option, collect or reinvest the same.

**CHAPTER VIII**
**GENERAL PROVISIONS**

**ARTICLE 23.**

ENTEL is expressly exempted from the payment of any national, departmental and/or municipal tax, as well as the taxes and customs duties and tariffs on the importation of equipment, spare parts, vehicles and other implements necessary to compliance with its objectives.

**ARTICLE 24.**

ENTEL will enjoy free use of the surface, underground, maritime, lake and river routes for the placement of the installations it requires as well as of the air space for running lines or setting up other special-use means. For this purpose, the State, upon the justified request of ENTEL, will expropriate the goods that are necessary and/or will establish easements.

**ARTICLE 25.**

The State, as applicable, will see to the requirements of ENTEL in foreign currency and will sell it, through the Central Bank of Bolivia or the entity that may replace it, the foreign currency necessary for complying with its legally-contracted obligations.

**ARTICLE 26.**

ENTEL may agree with the Telecommunication Administrations of other nations on the rendering and/or exchange and international services, after approval by the Ministry for the branch and subject to the agreements in the matter signed by the Bolivian State.

With the same purpose and in the same form, it may participate in companies or sign traffic agreements with private international telecommunications companies.

**ARTICLE 27.**

The liquidation of the EMPRESA NACIONAL DE TELECOMUNICACIONES and the form in which it will be carried out, should such become necessary, will be determined by the express order of the Supreme Government.

**CHAPTER IX**
**TRANSITIONAL PROVISIONS**

**ARTICLE 28.**

While the first Board of Directors of ENTEL is being established, the Commission created by Supreme Decree No. 06928 of October 14, 1964 with the inclusion of a second representative of the Ministry of Public Works and Communications, another from the Ministry of Labor and Social Security, and another from the Office of the Comptroller General of the Republic, will act as the ORGANIZING COMMISSION with sufficient legal personhood and subject to the following mandate:

a)      To appoint, from among its ex-officio members and advisory members, an Executive Vice Chairperson and a Secretary General;

b)      To receive, within a period of thirty days counting from the date of written notification, the preliminary requests for integration of Telephone Companies;

c)      To order that, within a period of the following ninety days, the evaluation of the Assets and Liabilities of the Telephone Companies to be integrated into ENTEL be performed via a standardized process in order to establish the real value of their capital and stock. At the same time, to value the contributions in installations, equipment, furnishings, real estate and others from the Tax Services and Telegraph and Radiocommunication Services;

d)      To receive, within the following fifteen days, the notification of agreement or disagreement of the Companies with the evaluation performed since it will determine the bases for the formation of ENTEL;

e)      To draft and submit, within a period of one hundred fifty days, for the consideration and approval of the Executive Branch, through the Ministry of Public Works and Communications, the Organic Statutes that will govern the life and management of ENTEL;

f)    To propose the procedure for the gradual integration of the personnel who will form part of ENTEL. Similarly, to study and resolve, in a spirit of equity and justice, the emergent social aspects of this Decree Law;

g)    To initiate the systematic development of the services entrusted to it, using, in the initial phase, the existing installations and electronic equipment that may have been acquired or transferred for this purpose;

h)    To consider and channel the solution too all those unforeseen or special problems that may arise from the application of these provisions.

## ARTICLE 29.

After performing the mandate entrusted to it and once the pertinent formalities have been carried out, the ORGANIZING COMMISSION will ask the Office of the President of the Republic, the respective Ministers and the Private Sector Stockholders for the appointment of the Chairperson and the members of the First Board of Directors of ENTEL.

## ARTICLE 30.

For due performance of the mission entrusted to it, the ORGANIZING COMMISSION will receive the economic, administrative and technical assistance of the Ministry of Public Works and Communications and of the Telephone Companies that are being integrated into ENTEL, and the total expenses incurred will be considered as a capital contribution.

The COMMISSION will be empowered to make investments and pay expenses necessary to the performance of its mandate, including hiring technicians, experts and specialists.

## ARTICLE 31.

The functionaries that represent the Ministries of Public Works and Communications, the National Economy, National Defense, the Treasury and Statistics, Planning and Coordination, Labor and Social Security, and the Office of the Comptroller General of the Republic, as well as the representatives of the Telephone Companies that will form part of the ORGANIZING COMMISSION will be declared "in office" for the respective mandates, and they will enjoy one hundred percent of their wages and social benefits so that they may work full time on the important function assigned to them.

## ARTICLE 32.

The ORGANIZING COMMISSION of the Empresa Nacional de Telecomunicaciones (ENTEL) will begin its functions as soon as it is taken over by the head of Public Works and Communications.

The Ministers of State in the Offices for Public Works and Communications, the National Economy, National Defense, the Treasury and Statistics, Planning and Coordination, and Labor and Social Security, will be entrusted with the execution of and compliance with this Decree Law.

Issued in the Presidential Palace of the City of La Paz, on the twenty-second day of December, Nineteen Hundred Sixty-Five.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK    )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into __English__ of __Supreme Decree 07441__ written in __Spanish__ .

New York,  June 03, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

                              Sworn to and subscribed before me on
                              June 03, 2008.

                              _____
                              SUSAN E. GEDDES
                              Notary Public
                              State of New York
                              No.: 01GE4642769
                              Qualified in Nassau County
                              Commission Expires:
                              31 August 2009

Decreto Supremo 07441

22-12-1965

**EMPRESA NACIONAL DE TELECOMUNICACIONES (ENTEL) - CREASE**

Gral. René Barrientos Ortuño – Gral. Alfredo Ovando Candia
PRESIDENTES DE LA HONORABLE JUNTA MILITAR DE GOBIERNO

CONSIDERANDO:

Que, es de imperiosa necesidad adoptar una política definida y substancial en orden a la explotación, funcionamiento y expansión de los servicios de Telecomunicaciones en el país, a fin de que ellos contribuyan eficaz, positiva y permanentemente al desarrollo económico y social de la Nación;

Que, la actual estructura y los procedimientos de trabajo que aún se emplean en los servicios nacionales de Telecomunicaciones, ya superados por los avances de la técnica, han dejado de ser adecuados y suficientes para satisfacer las exigencias cada vez mayores de la actividad pública y privada, que tienen en esos medios sus indispensables vías de contacto rápido y de relación constructiva;

Que, de los diversos estudios practicados y de los consiguientes informes sobre los adelantos técnicos y funcionales de la materia, así como del examen de los acuerdos y recomendaciones internacionales, se desprende la necesidad y conveniencia de proceder, gradual y metódicamente, a la integración, coordinación y modernización de los servicios públicos de Telecomunicaciones que funcionan en el territorio de la República, cuya implementación y organización anticuadas no permiten contar con los sistemas dinámicos, estables y seguros que requiere el progreso del país;

Que, al propio tiempo, es preciso dar ejecución a los compromisos contraídos en cuanto a la mejora y ampliación de los circuitos físicos y/o electrónicos con los países vecinos, dentro de los alcances de la proyectada Red Interamericana de Telecomunicaciones (RIT);

Que, por otra parte, en aplicación de esa misma política conviene deslindar, de modo práctico, los aspectos de explotación y tráfico de los de regulación y fiscalización, para que cada cual desenvuelva sus funciones concentrando esfuerzos y orientando labores hacia la esfera de su específica responsabilidad y competencia, sin superposiciones impropias ni dualidades inconducentes;

CONSIDERANDO:

Que, la Comisión constituida por el Decreto Supremo Nº 06928 de 14 de octubre de 1964, y prorrogada en su tarea por similar disposición Nº 06984 de 7 de diciembre del mismo año, ha elevado, por conducto del Ministerio de Obras Públicas y Comunicaciones, al proyecto de creación de una entidad que, bajo el denominativo de "Empresa Nacional de Telecomunicaciones" y la forma de Sociedad de Economía Mixta significada ésta por el principio de co-interés público y privado, la participación

financiera de ambos y la satisfacción de una necesidad de orden general, englobe a los actuales servicios de Telégrafos y Radiocomunicaciones del Estado, y a las Empresas de Teléfonos Automáticos que funcionan en varias ciudades, complementando así los factores de tráfico urbano e inter-urbano, para la eficiente y cabal conjunción de las telecomunicaciones públicas en el ámbito territorial del país;

Que, las razones expuestas por dicha Comisión y los lineamientos estructurales planteados en el referido proyecto, así como otros elementos de juicio aportados por altos organismos de Estado, hacen necesaria y aconsejable la creación de aquella entidad, para que asuma la misión central de modernizar, explotar y ampliar los servicios nacionales de Telecomunicaciones.

EN CONSEJO DE MINISTROS,
DECRETAN:

**CAPITULO I**
**FUNDAMENTAL**

## ARTICULO 1°.-

Créase la EMPRESA NACIONAL DE TELECOMUNICACIONES (ENTEL), como Sociedad de Economía Mixta y de derecho público, con duración indefinida; teniendo por consecuencia, plena capacidad para auto administrarse y ejercer todos los actos de la vida jurídica, conforme a la estructura que establece el presente Decreto Ley, y con arreglo a las disposiciones que se hallen contempladas en su Estatuto Orgánico y sus correspondientes Reglamentos internos.

## ARTICULO 2°.-

Los objetivos fundamentales que encauzará y pondrá en práctica la ENTEL, son los de modernización, explotación y expansión de los servicios públicos de Telecomunicaciones urbanos, inter-urbanos y/o internacionales en el ámbito territorial de Bolivia, según los términos que plantean y aconsejan los progresos de la técnica y las experiencias operacionales.

## ARTICULO 3°.-

La misión que se le encomienda y la función que corresponderá desarrollar a ENTEL, se desenvolverán bajo la jurisdicción reguladora y fiscalizadora del Ministerio de Obras Públicas y Comunicaciones, autoridad gubernamental a la que compete la tuición superior de todos los servicios de Telecomunicaciones establecidas o por establecerse en el país, junto con la responsabilidad por el cumplimiento de las obligaciones derivadas del Convenio Internacional de Telecomunicaciones y de sus Reglamentos anexos.

**CAPITULO II**
**DE LOS FINES**

**ARTICULO 4°.-**

Corresponde a la ENTEL:

a) Prestar servicios públicos de Telecomunicaciones urbanos, inter-urbanos y/o internacionales, sean estos telefónicos, telegráficos, de telex, enlaces para radiodifusión, enlaces para televisión, arrendamiento de circuitos para servicios estatales, descentralizados o particulares, atención de las comunicaciones "en tránsito" del tráfico internacional, o cualquier otro servicio compatible con sus específicas finalidades, que está permitido por las regulaciones internas y/o internacionales;

b) Promover y encaminar la modernización y expansión de los sistemas públicos de Telecomunicaciones, para lo que mantendrá, permanentemente, un departamento de investigación y planificación que le permita situarse al nivel de los avances técnicos y científicos en el campo de su actividad;

c) Asesorar y cooperar a los organismos estatales o instituciones descentralizadas en los asuntos y materias de su especialidad; esto, por intermedio el Ministerio de Obras Públicas y Comunicaciones o de sus representantes en la Empresa.

**ARTICULO 5°.-**

No se hallan comprendidos en los objetivos enumerados en el artículo que antecede:

a) Los servicios de Telecomunicaciones internacionales, a cargo de empresas privadas de explotación reconocidas y sujetas a concesión;

b) Los servicios urbanos o inter-urbanos no integrados a ENTEL, mientras dure y se justifique la respectiva concesión;

c) Los servicios de Defensa Nacional y Seguridad del Estado; Radiodifusión; Televisión y los sistemas especiales definidos en las categorías de "Móvil Aeronáutico", "Móvil Marítimo", "Radioginiometría, así como aquellos otros que fueren incompatibles con la finalidad de la ENTEL.

**CAPITULO III**
**DE LA ORGANIZACION**

**ARTICULO 6°.-**

La ENTEL tendrá su domicilio legal en la ciudad de La Paz.

**ARTICULO 7°.-**

Territorialmente, la ENTEL se dividirá en cuantas regiones sean necesarias a juicio de su órgano de dirección.

**ARTICULO 8°.-**

Orgánicamente, la ENTEL estará regida por:

Un Directorio Nacional;

Directorios Regionales;

Una Gerencia General;

Una Sub-Gerencia Administrativa;

Una Sub-Gerencia Técnica;

Gerencias Regionales.

### ARTICULO 9°.-

El Directorio estará constituido por los siguientes miembros:

Un Presidente, que será nombrado por la Presidencia de la República, de terna propuesta por el Ministerio de Obras públicas y Comunicaciones;

Un Representante del Ministerio de Obras Públicas y Comunicaciones (ramo de Comunicaciones);

Un Representante del Ministerio de Economía Nacional;

Un Representante del Ministerio de Defensa Nacional;

Un Representante del Ministerio de Hacienda y Estadística;

Cinco Representantes de los Accionistas Privados.

El Gerente General concurrirá a las sesiones de Directorio con derecho a voz, pero sin voto.

Los miembros del Directorio, excepto el Presidente, tendrán su respectivo suplente.

### ARTICULO 10°.-

El mandato del Presidente será de cuatro años, y el de los Directores de cinco, pudiendo ser reelegidos.

### ARTICULO 11°.-

El Gerente General será elegido por el Directorio. Deberá ser persona con amplia experiencia y conocimiento en materia de Telecomunicaciones.

### ARTICULO 12°.-

La composición y atribuciones de los Directores Regionales, que cumplirán sus funciones bajo el control del Directorio Nacional, serán determinadas en el Estatuto Orgánico de la ENTEL.

**CAPITULO IV**
**DEL CAPITAL**

## ARTICULO 13°.-

El capital de la ENTEL se constituirá con los aportes del sector público y del sector privado. El del sector público no será inferior al cincuentiuno por ciento (51%) del total, y estará formado por los aportes del Estado, los Municipios y las entidades autónomas y autárquicas.

## ARTICULO 14°.-

La conformidad del capital se hará con:

a) Aportes del Sector Público

1. Equipos e instalaciones telegráficas y de radiocomunicaciones, que sean gradualmente transferidos a la ENTEL.

2. Lote de equipos de radiocomunicaciones ISB/SSB HF

3. Muebles e inmuebles de su dominio patrimonial.

4. Participaciones del Estado, de los Municipios y de las entidades autónomas y autárquicas en las Empresas Telefónicas que se integren a la ENTEL.

5. Aportaciones económicas y otras.

b) Aportes del Sector Privado

1. Valor real de los títulos de los accionistas de las Empresas Telefónicas que se integren a la ENTEL.

2. Suscripción de acciones.

**CAPITULO V**
**DEL REGIMEN FINANCIERO**

## ARTICULO 15°.-

Para el financiamiento de su desarrollo la ENTEL, recurrirá, entre otras, a las fuentes que se indican:

a) Créditos nacionales, extranjeros y/o de organismos internacionales;

b) Emisión de acciones;

c) Emisión de obligaciones y otros títulos, cuyos plazos de amortización y tasas de interés serán determinados en cada caso.

## ARTICULO 16°.-

Cuantas veces sea necesario, y por lo menos cada dos años, la ENTEL procederá a la revaluación de sus Activos, incluyendo las disponibilidades en moneda extranjera y fondos de reserva y capital; todo ello, de conformidad a las normas de su Estatuto Orgánico.

## ARTICULO 17°.-

El régimen tarifario de la ENTEL será propuesto por su Directorio ante el Ministerio de Obras Públicas y Comunicaciones, a los fines de la necesaria aprobación, siendo indispensable que las tarifas cubran:

a) Gastos de Explotación;

b) Aporte a un Fondo de Depreciación;

c) Aporte a un Fondo de Amortización;

d) Retribución al Capital Invertido.

La ENTEL adoptará en su caso, las medidas que fueren pertinentes para neutralizar los efectos de cualquier fenómeno inflacionario.

## ARTICULO 18°.-

La prestación de los servicios de telecomunicaciones encomendados a la ENTEL, se retribuirá con el pago de las correspondientes tarifas, que no serán pasibles de exención o rebaja a ninguna institución, entidad o persona pública o privada, con la única salvedad de los casos previstos en el Convenio Internacional de Telecomunicaciones.

**CAPITULO VI**
**DE LOS ACCIONISTAS DEL SECTOR PRIVADO**

## ARTICULO 19°.-

Serán accionistas privados de la ENTEL, los abonados del servicio telefónico urbano y de otros que pudieran establecerse y que suscriban acciones en calidad de usuarios.

El aporte de los abonados - accionistas, según las regulaciones que para cada caso establezca la ENTEL, será cubierto;

a) Sólo en acciones en su totalidad;

b) En acciones y obligaciones conjuntamente.

## ARTICULO 20°.-

Fuera de la percepción de dividendos, los abonados - accionistas tendrán en la ENTEL el derecho de voto sólo para elegir a los miembros del Directorio, representantes del sector privado, de acuerdo con las modalidades que, al efecto, prevea su Estatuto.

CAPITULO VII
DE LOS ACCIONISTAS DEL SECTOR PUBLICO

## ARTICULO 21°.-

Los accionistas del sector público, enumerados en el Artículo 13 de este Decreto Ley, tendrán derecho a participar en la conducción de la ENTEL por medio de sus representantes en el Directorio.

## ARTICULO 22°.-

El Estado reinvertirá, obligatoriamente, sus dividendos. Los Municipios, las entidades autónomas y autárquicas podrán, optativamente, percibirlos o reinvertirlos.

CAPITULO VIII
DE LAS DISPOSICIONES GENERALES

## ARTICULO 23°.-

La ENTEL queda, expresamente, liberada del pago de todo impuesto nacional, departamental y/o municipal, así como de gravámenes, derechos aduaneros y arancelarios sobre la importación de los equipos, repuestos, vehículos y demás implementos necesarios para el cumplimiento de sus objetivos.

## ARTICULO 24°.-

La ENTEL gozará del libre uso de las vías superficiales subterráneas marítimas, lacustres y fluviales, para el emplazamiento de las instalaciones que requiera, así también de los espacios aéreos para el tendido de líneas o el establecimiento de otros medios de uso especial. Al efecto, el Estado, a solicitud fundamentada de la ENTEL expropiará los bienes que le fueren necesarios y/o determinará servidumbres.

## ARTICULO 25°.-

El Estado, en su caso, atenderá los requerimientos de la ENTEL, en moneda extranjera y le venderá, por intermedio del Banco Central de Bolivia, o la entidad que pudiera sucederle, las divisas necesarias para el cumplimiento de sus obligaciones legalmente contraídas.

**ARTICULO 26°.-**

La ENTEL podrá convenir, con las Administraciones de Telecomunicaciones de otros países, la prestación y/o intercambio e servicios internacionales, previa aprobación del Ministerio del ramo y con sujeción a los acuerdos en la materia suscritos por el Estado boliviano.

Con igual objeto, y en la misma forma, podrá participar en sociedades o formalizar convenios de tráfico con las empresas privadas de telecomunicaciones internacionales.

**ARTICULO 27°.-**

La liquidación de la EMPRESA NACIONAL DE TELECOMUNICACIONES y la forma como se la ejecute, si llegara al caso, sólo será determinada mediante disposición expresa del Supremo Gobierno.

**CAPITULO IX**
**DE LAS DISPOSICIONES TRANSITORIAS**

**ARTICULO 28°.-**

Mientras se constituya el primer Directorio de la ENTEL, la Comisión creada por el Decreto Supremo N° 06928 de 14 de octubre de 1964, con la inclusión de un segundo representante del Ministerio de Obras Públicas y Comunicaciones, otro del Ministerio de Trabajo y Seguridad Social y otro de la Contraloría General de la República, actuará en calidad de COMISIÓN ORGANIZADORA, con personería suficiente y con sujeción al mandato que sigue:

a) Designar, de entre sus miembros natos y asesores, a un vicepresidente Ejecutivo y a un Secretario General;

b) Recibir, en el plazo de treinta días, a partir de la fecha de notificación escrita, las solicitudes preliminares de integración de las Empresas Telefónicas;

c) Disponer que, en el plazo de los noventa días siguientes, se practique la avaluación, mediante un procedimiento uniforme, del Activo y Pasivo de las Empresas Telefónicas que se integren a la ENTEL, a fin de establecer el valor real de su capital y sus acciones. Simultáneamente, valorizar el aporte en instalaciones, equipos, bienes muebles, inmuebles y otros de los Servicios fiscales y Telégrafos y Radiocomunicaciones;

d) Recibir, dentro de los quince días subsiguientes, la notificación de conformidad o disconformidad de las Empresas con la evaluación practicada, resultado que determinará las bases de constitución de la ENTEL;

e) Redactar y someter, en el término de ciento cincuenta días, a la consideración y aprobación del Poder Ejecutivo, mediante el Ministerio de Obras Públicas y Comunicaciones, el Estatuto Orgánico que regirá la vida y el desenvolvimiento de la ENTEL;

f) Proponer el procedimiento de integración gradual del personal que formará parte de la ENTEL. Asimismo, estudiar y resolver, con espíritu de equidad y criterio justo, los aspectos sociales emergentes de este Decreto Ley;

g) Iniciar el desarrollo sistemático de los servicios que le son encomendados, utilizando en la primera fase, las instalaciones y equipos electrónicos existentes, que hubieran sido adquiridos o transferidos a este fin;

h) Considerar y encauzar la solución de todos aquellos problemas imprevistos o de carácter especial, que pudieran derivar de la aplicación de estas disposiciones.

### ARTICULO 29°.-

Cumplido el mandato que se le encarga, y una vez llenadas las formalidades pertinentes, la COMISIÓN ORGANIZADORA solicitará a la Presidencia de la República, a los Ministerios respectivos y a los Accionistas del Sector Privado, la designación del Presidente y los miembros del Primer Directorio de la ENTEL.

### ARTICULO 30°.-

Para el debido cumplimiento de la misión que se le encomienda, la COMISIÓN ORGANIZADORA recibirá la asistencia económica, administrativa y técnica del Ministerio de Obras Públicas y Comunicaciones, y de las Empresas de Teléfonos que se integren a la ENTEL, considerando como aporte de capital la suma de los gastos a efectuarse.

La COMISIÓN queda facultada para realizar las inversiones y gastos necesarios al cumplimiento de su mandato incluyendo la contratación de técnicos, expertos y peritos.

### ARTICULO 31°.-

Los funcionarios que representen a los Ministerios de Obras Públicas y Comunicaciones, de Economía Nacional, de Defensa Nacional, y Hacienda y Estadística, de Planificación y Coordinación, de Trabajo y Seguridad Social y de la Contraloría General de la República, así como los representantes de las Empresas de Teléfonos que concurran a formar parte de la COMISIÓN ORGANIZADORA, serán declarados "en comisión" por los respectivos mandantes, con el goce del cien por cien de sus sueldos y beneficios sociales, a fin de que puedan desempeñar a tiempo completo la importante función que se les asigna.

### ARTICULO 32°.-

La COMISION ORGANIZADORA de la Empresa Nacional de Telecomunicaciones (ENTEL), entrará en funciones tan pronto sea posesionada por el titular de Obras Públicas y Comunicaciones

Los señores Ministros de Estado en los Despachos de Obras Públicas y Comunicaciones, de Economía Nacional, de Defensa Nacional, de Hacienda y Estadística, de Planificación y Coordinación y de Trabajo y Seguridad Social, quedan encargados de la ejecución y cumplimiento del presente Decreto Ley.

Es dado en el Palacio de Gobierno de la ciudad de La Paz, a los veintidós días del mes de diciembre de mil novecientos sesenta y cinco años.

**EXHIBIT D**

**SUPREME DECREE 08527**
**OF OCTOBER 30, 1968**

## DETERMINING THAT THE EMPRESA NACIONAL DE TELECOMUNICACIONES "ENTEL S.A.M" SHALL INSTALL AND OPERATE ALL TELECOMMUNICATION SERVICES

**GENERAL RENE BARRIENTOS ORTUÑO**
**CONSTITUTIONAL PRESIDENT OF THE REPUBLIC**

**WHEREAS:**

The Supreme Government, as a consequence of the plan laid out due to the importance of telecommunication services in the economic and social development of the country, opted to create, via Supreme Decree No. 07441, the Empresa Nacional de Telecomunicaciones ENTEL S.A.M., reporting as the purpose of this company the rendering of all national and international Telecommunication Services, as well as the modernization and expansion thereof, bringing them up to date with technological and scientific advances.

Among the purposes indicated for ENTEL S.A.M., only those services subject to conventions and concessions were excepted, within the terms thereof and while they are justified, and those for the Defense and Security Services of the State.

It is necessary to point out the bases for the National Telecommunications policy so that all State organizations have the necessary orientation to be able to act in a coordinated manner conducive to the achievement of the development purposes.

The concessions for the installation and operation of the Telecommunication Services were granted by the State through different organizations, and it is necessary to specify an administrative route granting such power to one single entity.

It is incumbent upon the Ministry of Public Works, Communications and Transportation, as the specialized organization in the Executive Branch, to oversee, supervise, regulate and plan the Telecommunications for the country.

The Ministry of Public Works, Communications and Transportation, upon updating and supplementing the National Telecommunications Plan, must issue the standards to coordinate its implementation.

**IN THE COUNCIL OF MINISTERS,**

**DECREES:**

**ARTICLE 1.**

The Empresa Nacional de Telecomunicaciones ENTEL 9: A.M. will install and operate all National Telecommunication Services in accordance with its financial possibilities and modern technology; it may not grant concessions to other companies when ENTEL S.A.M. is in a position to meet the needs of the Services.

**ARTICLE 2.**

ENTEL S.A.M. will install and operate all international Telecommunication Services, respecting the current concessions which will not be extended, amended or renewed.

**ARTICLE 3.**

ENTEL S.A.M. will have to take charge of the exploitation of all Telecommunication Services that are currently operated by the General Administration of Telecommunications, for which purpose the Ministry of Public Works, Communications and Transportation will determine the schedule for transferring the same (by services, zones or populations) so that the normality of the Services is not affected.

**ARTICLE 4.**

ENTEL S.A.M. will have to integrate into its networks all Telecommunication Services currently operated by centralized or decentralized official organizations, with the exception of the State Defense and Security Services.

**ARTICLE 5.**

Centralized or decentralized organizations or entities in the public sector, as well as State or private Companies, whether domestic or foreign, will not include in the scheduling for their telegraph, telephone or radio telecommunication networks the installation of circuits for services that can be rendered by the ENTEL S.A.M. networks.

**ARTICLE 6.**

The representatives of official organizations in Entities related to Telecommunications will have to obtain from the Ministry of Public Works, Communications and Transportation the instructions necessary with regard to technical matters for the fulfillment of their functions and better coordination in the development of the National Telecommunications Plan; for this purpose, they will have to make their presentations to this Ministry at the time set by it.

**ARTICLE 7.**

The concessions, permits or licenses for the operation and exploitation of Telephone, Telegraph, Telex and other public or private Telecommunication services will be granted exclusively by the Ministry of Public Works, Communications and Transportation by means of Supreme Decrees, after a report from its technical organizations.

The Ministry of Public Works, Communications and Transportation will be in charge of causing compliance with this Supreme Decree.

Issued in the Presidential Palace on the 30th day of October, Nineteen Hundred Sixty-Eight.

Signed. General RENE BARRTENTOS ORTUÑO, Cap. David Fernández, Enrique Gallardo, Rolando Pardo Rojas, Gustavo Méndez Torrico, Edwin Tapia, Hugo Suárez Guzmán, Alberto Larrea Humérez, René Baldivieso, Jorge Rojas Tordio, Ignacio Paravicini, Dante Pavisich, Victor Hoz de Vila.

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate rendition into   English   of   Supreme Decree 08527   written in   Spanish   .

New York,  June 03, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 03, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

DECRETO SUPREMO 08527
DE 30 DE OCTUBRE DE 1968

DETERMINA QUE LA EMPRESA NACIONAL DE TELECOMUNICACIONES "ENTEL S.A.M." INSTALARA Y OPERARA
TODOS LOS SERVICIOS DE TELECOMUNICACIONES

GRAL. RENE BARRIENTOS ORTUÑO
PRESIDENTE CONSTITUCIONAL DE LE REPUBLICA

COMSIDERANDO:

Que el Supremo Gobierno, consecuente con el plan trazado debido a la importancia que entraña el servicio de telecomunicaciones para el desarrollo económico y social del país, optó por crear mediante Decreto Supremo Nº 07441, la Empresa Nacional de Telecomunicaciones ENTEL S.A.M., señalando como fines de dicha entidad, la prestación de todos los servicios de Telecomunicaciones nacionales é internacionales, así como su modernización y expansión situándolos al nivel de los avances técnicos y científicos.

Que entre los fines señalados a ENTEL S.A.M. se han exceptuado únicamente los servicios sujetos a convenios y concesiones, mientras éstos duren y se justifiquen, y de los servicios de Defensa y Seguridad del Estado.

Que es necesario señalar las bases de la política Nacional de Telecomunicaciones a fin de que todos los organismos estatales, dispongan de la orientación necesaria para poder actuar, en forma coordinada y conducentes a la consecución de los fines de desarrollo.

Que las concesiones para la instalación y operación de los Servicios de Telecomunicaciones, fueron otorgados por el Estado a través de diferentes organismos, siendo necesario precisar la vía administrativa encomendando a una sola la mencionada facultad.

Que corresponde al Ministerio de OO.PP., Comunicaciones y Transportes, como organismo especializado del Poder Ejecutivo, la tuición, supervisión, regulación, planificación de las Telecomunicaciones en el país.

Que el Ministerio de OO.PP. Comunicaciones y Transportes, al actualizar y completar el Plan Nacional de Telecomunicaciones debe dictar las normas para coordinar su ejecución

EN CONSEJO DE MINISTRO,

DECRETA:

**ARTICULO 1°.-**

La Empresa Nacional de Telecomunicaciones ENTEL 9: A.M. instalará y operará todos los servicios de Telecomunicaciones Nacionales, de acuerdo con sus posibilidades financieras y la técnica moderna, no debiendo otorgarse concesiones a otras empresas cuando ENTEL S.A.M., esté en condiciones de atender las necesidades de los Servicios.

**ARTICULO 2°.-**

ENTEL S.A.M., instalará y operará todos los servicios internacionales de Telecomunicaciones respetando las actuales concesiones, las cuales no serán ampliadas, modificadas ni renovadas.

**ARTICULO 3°.-**

ENTEL S.A.M., deberá hacerse cargo de la explotación de todos los Servicios de Telecomunicaciones que actualmente, opera la Dirección General de Telecomunicaciones, a cuyo fin el Ministerio de OO.PP. Comunicaciones y Transportes, determinará el calendario de transferencia (por servicios, zonas o poblaciones) en forma tal que no afecte la normalidad de los Servicios.

**ARTICULO 4°.-**

ENTEL S.A.M., deberá integrar en sus redes todos los Servicios de Telecomunicaciones que actualmente operan organismos oficiales centralizados o descentralizados a excepción de los Servicios de Defensa y Seguridad del Estado.

**ARTICULO 5°.-**

Los organismos o entidades del sector público centralizados o descentralizados, así como las Empresas Estatales o privadas, nacionales o extranjeras, no podrán incluir en la programación de sus redes de telecomunicaciones de telegrafía, telefonía o radio, la instalación de circuitos para servicios que pueden ser prestados por las redes de ENTEL S.A.M.

**ARTICULO 6°.-**

Los representantes de organismos oficiales en Entidades relacionadas con las Telecomunicaciones, deberán recabar del Ministerio de OO.PP. Comunicaciones y Transportes, las instrucciones necesarias en materia técnica para el desempeño de sus funciones y la mejor coordinación en el desarrollo del Plan Nacional de Telecomunicaciones; a cuyo fin deberán hacer su presentación, a dicho Ministerio, a tiempo de su nombramiento.

**ARTICULO 7°.-**

Las concesiones, permisos, o licencias para la operación y explotación de los Servicios de Telefonía, telegrafía Télex y demás servicios de Telecomunicaciones públicas o privadas, serán otorgados exclusivamente por el Ministerio de OO.PP., Comunicaciones y Transportes mediante Resolución Suprema, previo informe de sus organismos Técnicos.

El Ministro de Obras Públicas, Comunicaciones y Transportes queda encargado de dar cumplimento al presente Decreto Supremo.

Es dado en el Palacio de Gobierno a los 30 días del mes de octubre de mil novecientos sesenta y ocho años.

Fdo. Gral. RENE BARRTENTOS ORTUÑO, Cap. David Fernández, Enrique Gallardo, Rolando Pardo Rojas, Gustavo Méndez Torrico, Edwin Tapia, Hugo Suárez Guzmán Alberto Larrea Humérez, René Baldivieso, Jorge Rojas Tordio, Ignacio Paravicini, Dante Pavisich, Víctor Hoz de Vila.

**EXHIBIT E**

SUPREME DECREE No. 9250
OF JUNE 5, 1970
D.G.R. No. 317

GENERAL ALFREDO OVANDO CANDIA
PRESIDENT OF THE REPUBLIC

WHEREAS:

Via Decree Law No. 9095 of April 30, 1970, the General Act on the Bases of the Executive Branch was promulgated, which started the process of reformation of the National Public Administration;

This law creates the general normative framework for the organization and administration of the Executive Branch, it being necessary to approve special laws defining and standardizing the structure and function of institutional groups, sectors and systems into which the public sector has been classified;

In the interim, these special provisions have been studied and approved, and it is necessary to regulate the functioning of the various entities in the Public Administration, to avoid disturbances in the normal development of its particular activities and to maintain continuity in administrative management of the various levels of the organic structure.

IN THE COUNCIL OF MINISTERS,

DECREES:

Article One. - All organizations in the Executive Branch, both central and decentralized, as well as the mixed companies, will maintain their organization, financial system, powers, system of personnel administration, legal norms and social system, in all matters not contrary to the provisions contained in the Act on Bases and this Decree, until their respective Organic Laws have been approved. The social system in effect, contained in the General Labor Act and complementary provisions, is maintained without changes.

Article Two. - The Decentralized Public Institutions will be managed by a Director appointed by the respective Ministry. The Decentralized Public Companies will be managed by a General Manager appointed by the President of the Republic from the list of candidates proposed by the

Board of Directors of the Company, which will be presided over by the respective Minister. These functionaries will be the sole and maximum authorities in their entities and will be directly responsible to the organs that appointed them for the administrative and technical management.

Article Three. – In accordance with the Act on the Bases of Executive Power, the Board of Directors of the Public Companies performs normative functions, the definition of which corresponds to high business policy. The executive functions are performed by the General Manager in Public Companies and by the Director in Decentralized Public Institutions.

Article Four. – For purposes of application of this Supreme Decree, the following are considered Decentralized Public Institutions:

Naval Hydrology Service
Military Pensions Fund
National Institute of Statistics
Higher Institute of Public Administration
National Internal Revenue Service
National Customs Service
Autonomous Administration of Customs Warehouses
Agricultural and Livestock Customs of La Paz
Agricultural and Livestock Customs of Cochabamba
People's Savings and Credit Bank
Office of the Superintendent of Banks
National Sports Committee
Bolivian Olympics Committee
Corpaguas
National Housing Council (with the inclusion of the Mining and Oil Housing Committees)
Nation Social Security Fund
Oil Workers' Social Security Fund
Railroad and Related Social Security Fund
Public Teachers' Supplemental Social Security Fund
Drivers' Social Security Fund
Supplementary Communications Fund
National Charity and Health Lottery
National Academy of the Sciences
Banking Education Institute
Private Technical and Handwork Training Center
Superior Council on Technical Teaching
National Colonization Institute
Abapó – Izozog – Oquitas Project
National Council on Agrarian Reform
Bolivian Committee for the Promotion of Wool
National Community Development Service
National Roads Service

Airports and Auxiliary Air Navigation Services Administration
National Postal Service
Concofrut
CENECA
INPIBOL
National Wheat Institute
PARR
Bolivian Nuclear Energy Commission
Bolivian Handcrafts
CONOA
CONAR
CONAME
TNAI - IMBOLCA
Bolivian Geology Service
Metallurgic Mining Institute

Article Five. - For the same purposes, Public Companies are considered to be:

National Television Company
National Railway Company
National Telecommunications Company
Bolivian Public Oil Deposits
National Electricity Company
Bolivian Mining Corporation
National Foundry Company

Article Six. - For the same purposes, the following are considered Mixed Companies:

Transmaritima Boliviana
Lloyd Aéro Boliviano
National Phosphorus Factory

Article Seven. - The Mixed Public Companies and Decentralized Institutions that have financial obligations will adapt their Articles of Incorporation and operating standards in effect to the provisions of the Administration Reformation, following the appropriate procedures in each case.

Article Eight. - The Bolivian Development Corporation, as well as the Central, Mining and Agriculture Banks of Bolivia will temporarily maintain their current structure until the Bank Act is approved and the standards in this Supreme Decree will not apply to them.

The Ministers of State are in charge of the execution of and compliance with this Supreme Decree.

Issued in the Presidential Palace of the City of La Paz, on the fourth day of June, Nineteen Hundred Sixty.

(SIGNED). GENERAL ALFREDO OVANDO CANDIA, Juan Ayoroa Ayoora, David La Fuente Soto, Antonio Sánchez de Lozada, Mariano Baptista Gumucio, Oscar Bonifaz Gutiérrez, Edmundo Valencia Ibáñez, León Kolle Cueto, Samuel Gallardo Lozada, Rolando Aguilera Pareja, Roberto Capriles Gutiérrez, Javier Ossio Quezada, José Ortiz Mercado, Alberto Bailey Gutiérrez, a.i.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK    )
                            )     ss.:
COUNTY OF NEW YORK  )

## __CERTIFICATION__

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of   Supreme Decree No. 9250   written in   Spanish   .

New York,  June 05, 2008.

TransNet USA, Inc.

Kamran Bayegan, President

Sworn to and subscribed before me on
June 05, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

DECRETO SUPREMO N° 9250
DE 4 DE JUNIO DE 1970
D.G.R. N° 317

GRAL. ALFREDO OVANDO CANDIA
PRESIDENTE DE LA REPUBLICA

CONSIDERANDO:

Que, mediante Decreto Ley N° 9095 de 30 de abril de 1970, ha sido promulgada la Ley General de Bases del Poder Ejecutivo, mediante la cual se dio comienzo al proceso de Reforma de la Administración Pública Nacional;

Que, dicha Ley constituye el marco normativo general de la organización y administración del Poder Ejecutivo, siendo necesaria la aprobación de Leyes especiales que definan y normalicen la estructura y funcionamiento de los grupos institucionales, sectores y sistemas en que se ha clasificado el sector público;

Que, entretanto se estudien y aprueben dichas disposiciones especiales, es necesario regular el funcionamiento de las diferentes entidades de la Administración Pública, a fin de evitar perturbaciones al normal desarrollo de sus peculiares actividades y mantener la continuidad en la gestión administrativa en los diferentes niveles de la estructura orgánica.

EN CONSEJO DE MINISTROS,

DECRETA:

Artículo Primero.- Todos los organismos del Poder Ejecutivo, tanto centrales como descentralizados, así como las empresas mixtas, mantienen su organización, régimen financiero, facultades, sistema de administración de personal, normatividad jurídica y régimen social, en todo aquello que no contraríe a las disposiciones contenidas en la Ley de Bases y al presente Decreto, hasta que se aprueben sus respectivas Leyes Orgánicas. El régimen social vigente contenido en la Ley General del Trabajo y disposiciones complementarias, se mantienen sin modificaciones.

Artículo Segundo.- Las Instituciones Públicas Descentralizadas, serán dirigidas por un Director nombrado por el respectivo Ministro. Las Empresas Públicas Descentralizadas serán dirigidas por un Gerente General nombrado por el Presidente de la República, de la terna propuesta por el Directorio de la Empresa, el cual estará

presidido por el respectivo Ministro. Estos funcionarios constituirán las únicas y máximas autoridades de sus entidades y serán responsables directos de la gestión administrativa y técnica ante sus órganos nominadores.

Artículo Tercero.- De acuerdo a la Ley de Bases del Poder Ejecutivo, el Directorio de las Empresas Públicas cumple funciones normativas, correspondiéndole la definición de la alta política empresarial. Las funciones ejecutivas son desempeñadas por el Gerente General en las Empresas Públicas y en las Instituciones Públicas Descentralizadas, por el Director.

Artículo Cuarto.- Para los fines de aplicación del presente Decreto Supremo, se consideran Instituciones Públicas Descentralizadas, las siguientes:

Servicio de Hidrología Naval
Caja de Pensiones Militares
Instituto Nacional de Estadística
Instituto Superior de Administración Pública
Servicio Nacional de Renta Interna
Servicio Nacional de Aduanas
Administración Autónoma de Almacenes Aduaneros
Aduana Agropecuaria de La Paz
Aduana Agropecuaria de Cochabamba
Caja de Ahorro y Crédito Popular
Superintendencia de Bancos
Comité Nacional de Deportes
Comité Olímpico Boliviano
Corpaguas
Consejo Nacional de Vivienda (con inclusión de los Comités de Vivienda Minera y Petrolera)
Caja Nacional de Seguridad Social
Caja de Seguridad Social de Trabajadores Petroleros
Caja de Seguridad Social de Ferroviarios y Anexos
Caja Complementaria de Seguridad Social del Magisterio Fiscal
Caja de Seguro Social de Choferes
Caja Complementaria de Comunicaciones
Lotería Nacional de Beneficencia y Salubridad
Academia Nacional de Ciencias
Instituto de Educación Bancaria
Centro Privado de Formación Técnica y Artesanal
Consejo Superior de Enseñanza Técnica
Instituto Nacional de Colonización
Proyecto Abapó — Izozog — Oquitas
Consejo Nacional de Reforma Agraria
Comité Boliviano de Fomento Lanero
Servicio Nacional de Desarrollo de la Comunidad
Servicio Nacional de Caminos

Administración de Aeropuertos y Servicios Auxiliares para la Navegación Aérea.
Servicio Nacional de Correos
Concofrut
CENECA
INPIBOL
Instituto Nacional del Trigo
PARR
Comisión Boliviana de Energía Nuclear
Artesanías Bolivianas
CONOA
CONAR
CONAME
TNAI - IMBOLCA
Servicio Geológico de Bolivia
Instituto Minero Metalúrgico

Artículo Quinto.- Para los mismos fines, se consideran Empresas Públicas:

Empresa Nacional de Televisión
Empresa Nacional de Ferrocarriles
Empresa Nacional de Telecomunicaciones Yacimientos Petrolíferos Fiscales Bolivianos
Empresa Nacional de Electricidad
Corporación Minera de Bolivia
Empresa Nacional de Fundiciones

Artículo Sexto.- Para los mismos fines, se consideran Empresas Mixtas:

Transmarítima Boliviana
Lloyd Aéreo Boliviano
Fábrica Nacional de Fósforos.

Artículo Séptimo.- Las Empresas Públicas Mixtas e Instituciones Descentralizadas, que tienen obligaciones financieras, adecuarán sus Estatutos y Normas de funcionamiento vigentes a las disposiciones de la Reforma Administrativa, siguiendo los procedimientos correspondientes en cada caso.

Artículo Octavo.- La Corporación Boliviana de Fomento, así como los Bancos Central de Bolivia, Minero y Agrícola, mantienen provisionalmente su actual estructura hasta la aprobación de la Ley de Bancos y no se aplicarán para ellas las normas del presente Decreto Supremo.

Los señores Ministros de Estado, quedan encargados de la ejecución y cumplimiento del presente Decreto Supremo.

Es dado en el Palacio de Gobierno de la ciudad de La Paz, a los cuatro días del mes de junio de mil novecientos setenta años.

(FDO.) GRAL. ALFREDO OVANDO CANDIA, Juan Ayoroa Ayoora, David La Fuente Soto, Antonio Sánchez de Lozada, Mariano Baptista Gumucio, Oscar Bonifaz Gutiérrez, Edmundo Valencia Ibáñez, León Kolle Cueto, Samuel Gallardo Lozada, Rolando Aguilera Pareja, Roberto Capriles Gutiérrez, Javier Ossio Quezada, José Ortíz Mercado, Alberto Bailey Gutiérrez, a. i.

**EXHIBIT F**

DELIBERATELY OMITTED

**EXHIBIT G**

**SUPREME DECREE 24025**
**JUNE 7, 1995**

**TO AUTHORIZE THE FORMATION OF THE NATIONAL TELECOMMUNICATIONS ENTERPRISE, A COMPANY OF MIXED CAPITAL (ENTEL S.A.M.)**

**GONZALO SANCHEZ DE LOZADA**
**CONSTITUTIONAL PRESIDENT DE LA REPUBLICA**

**CONSIDERING:**

That Law 1544 of March 21, 1994 (Law of Capitalization) in its first article authorizes the Executive Power to establish new companies of mixed capital, with the assets and/or rights of public enterprises and the contributions of Bolivian workers of said enterprises, up the to amount of their social benefits.

That on March 27, 1995, the National Telecommunications Enterprise (ENTEL) had issued to its workers the proposal to form a company of mixed capital, by the agreement of ENTEL.

That the mentioned proposal consists of the subscription and payment of a share for each Worker who so wishes in order to form a company of mixed capital, with a contract option in favor of the same to purchase shares from the Public Sector of said company, at its book value, up to the limit established in the first article of the Law of Capitalization.

That said option must be exercised within the term established in the contract, once the proposed economic investors for the capitalization of ENTEL S.A.M. are known, to be selected by public international tender in conformity with the Law of Capitalization.

That on May 22, 1995, an agreement was signed to form the mixed capital company, between private interests, constituted by the workers of ENTEL and the public sector, constituted by ENTEL, its proposed act of constitution and statutes approved

That the second article of the Law of Capitalization authorizes and approves the agreements required for the conversion of public companies, including ENTEL, into companies of mixed capital, in accordance with the dispositions in force, which specify the book value of the patrimony of said enterprises as the contribution of the State.

That subsection 3) of article 428 of the Commercial Code establishes the authorization of the formation and approval of the constitutive documents by supreme decree .as a requisite for the constitution of companies of mixed capital.

**IN THE COUNCIL OF MINISTERS, DECREES:**

**ARTICLE FIRST.-**
The formation of the National Telecommunications Enterprise Mixed Capital Company (ENTEL S.A.M.) is authorized by conversion of the National Telecommunications Enterprise (ENTEL) and the shareholding participation of its workers, and its proposed contract of constitution with its 9 clauses and its statues with their titles and 96 articles are approved.

**ARTICLE SECOND.-**
The registration of its constitutive documents is to be done before a notary of public faith, as a personality of private law pursuant to article 425 of the Commercial Code.

**ARTICLE THIRD.-**
The legal personality of the National Telecommunications Enterprise Company of Mixed Capital (ENTEL S.A.M.) is recognized.

**ARTICLE FOURTH.-**
The contribution of the Public Sector provided by ENTEL, including its rights and privileges, by the book value of its patrimony which is 651,129,200 Bolivianos – (six hundred fifty one million,

one hundred twenty nine thousand two hundred bolivianos) equivalent to 99.976% (ninety nine point nine hundred seventy six per cent) of the social capital of ENTEL S.A.M., in accord with the opening balance that forms part of its articles of incorporation, is approved.

**ARTICLE FIFTH.-**
The transfer to gratuitous title of the shares of the property of ENTEL in the National Telecommunications Enterprise Company of Mixed Capital (ENTEL S.A.M.) in favor of the Ministry with Portfolio Responsible for Capitalization is to be carried out.

**ARTICLE SIXTH.-**
The transfer of the state shares issued by ENTEL, S.A.M., in favor of the workers of ENTER, at the book value up to the limit of their social benefits, pursuant to the option contracts subscribed, is authorized.

**ARTICLE SEVENTH.-**
Procced with the necessary acts for the Capitalization of the National Telecommunications Enterprise Company of Mixed Capital (ENTEL S.A.M.), pursuant to supreme decree 23985 and supreme resolution 215485 of March 30, 1995.

Sr. Minister in the Office without Portfolio Responsible for Capitalization is charged with the execution and fulfillment of the present supreme decree.

Issued in the Palace of the government of the city of La Paz, the 6th day of June, 1995.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK   )
                       )   ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into <u> English </u> of <u> Supreme Decree 24025 </u> written in <u> Spanish </u> .

New York,  June 06, 2008.

TransNet USA, Inc.

Kamran Bayegan, President

Sworn to and subscribed before me on
June 06, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**DECRETO SUPREMO 24025**
**DE 7 DE JUNIO DE 1995**

**AUTORIZASE LA FORMACION DE LA EMPRESA NACIONAL**
**DE TELECOMUNICACIONES SOCIEDAD DE ECONOMIA MIXTA (ENTEL S.A.M.)**

**GONZALO SANCHEZ DE LOZADA**
**PRESIDENTE CONSTITUCIONAL DE LA REPUBLICA**

**CONSIDERANDO:**

Que la ley 1544 de 21 de marzo de 1994 (Ley de Capitalización) en su artículo primero autoriza al Poder Ejecutivo la constitución de nuevas sociedades de economía mixta, con los activos y/o derechos de las empresas públicas y los aportes de los trabajadores bolivianos de dichas empresas, hasta en monto de sus beneficios sociales.

Que en fecha 27, de marzo de 1995 la Empresa Nacional de Telecomunicaciones (ENTEL) ha cursado a sus trabajadores la propuesta para la formación de una sociedad de economía mixta, por la convención de ENTEL.

Que la mencionada propuesta consiste en la suscripción y pago de una acción por cada trabajador que lo desee, para la formación de la sociedad de economía mixta, con un contrato de opción, en favor del mismo, para comprar acciones del Sector Público de dicha sociedad, a su valor en libros, hasta el limite establecido en el artículo primero de la Ley de Capitalización.

Que dicha opción deberá ser ejercida dentro del plazo establecido en el contrato, una vez conocidas las propuestas económicas de los socios inversionistas para la capitalización de ENTEL S.A.M., a ser seleccionados mediante licitación pública internacional, de conformidad a la Ley de Capitalización.

Que en fecha 22 de mayo de 1995, se ha suscrito el convenio de formación de la sociedad de economía mixta, entre el interés privado, constituido por los trabajadores de ENTEL y el sector público, constituido por ENTEL, aprobado los proyectos de escritura de constitución y estatutos.

Que el artículo segundo de la Ley de Capitalización autoriza y aprueba los acuerdos requeridos para la conversión en sociedades de economía mixta, de acuerdo a disposiciones en vigencia, de las empresas públicas, incluyendo a ENTEL, que especifiquen como aporte del Estado el valor en libros del patrimonio de dichas empresas.

Que el inciso 3) artículo 428 del Código de Comercio establece como requisito para la constitución de las sociedades de economía mixta la autorización de la formación y aprobación de los documentos constitutivos mediante decreto supremo.
**EN CONSEJO DE MINISTROS, DECRETA:**

**ARTICULO PRIMERO.-**
Autorizase la formación de la Empresa nacional de Telecomunicaciones Sociedad de Economía Mixta (ENTEL S.A.M.), por conversión de la Empresa Nacional de Telecomunicaciones (ENTEL) y la participación accionaria de sus trabajadores y apruébase su proyecto de contrato de constitución en sus cláusulas su proyecto de contrato de constitución en sus 9 cláusulas y estatutos en sus títulos y 95 artículos.

**ARTICULO SEGUNDO.-**
Dispónese la protocolización de sus documentos constitutivos ante notaria de fe pública, como persona de derecho privado, de conformidad al artículo 425 del Código de Comercio.

**ARTICULO TERCERO.-**
Reconócese la personalidad jurídica de la Empresa Nacional de Telecomunicaciones Sociedad de Economía Mixta (ENTEL S.A.M.).

**ARTICULO CUARTA.-**
Apruébase el aporte del Sector Público constituido por ENTEL, incluyendo sus derechos y privilegios, por el valor en libros del patrimonio que asciende a Bs. 651.129.200.- (seiscientos cincuenta y un millones ciento veintinueve mil doscientos 00/100 bolivianos), equivalente al 99.976% (noventa y nueve coma novecientos setenta y seis por ciento) del capital social de ENTEL S.A.M., de acuerdo al balance de apertura que forma parte de su escritura constitutiva.

**ARTICULO QUINTO.-**
Dispónese la transferencia a título gratuito, de las acciones de propiedad de ENTEL en la Empresa nacional de Telecomunicaciones Sociedad de Economía Mixta (ENTEL S.A.M.), a favor del Ministerio sin Cartera Responsable de Capitalización.

**ARTICULO SEXTO.-**
Autorizase la transferencia de las acciones estatales emitidas por ENTEL, S.A.M., a favor de los trabajadores de ENTEL, al valor en libros, hasta el límite de sus beneficios sociales, de acuerdo a los contratos de opción suscritos.

**ARTICULO SEPTIMO.-**
Procédase con los actos necesarios para la Capitalización de la Empresa Nacional de telecomunicaciones Sociedad de Economía Mixta (ENTEL S.A.M.), de conformidad con el decreto supremo 23985 y resolución suprema 215485, de 30 de marzo de 1995.

El señor Ministro en el despacho sin Cartera Responsable de capitalización queda encargado de la ejecución y cumplimiento del presente decreto supremo.

Es dado en el Palacio de gobierno de la ciudad de La Paz, a los siete días del mes de junio de mil novecientos noventa y cinco años.

**EXHIBIT H**

# LAW NO. 1544

## LAW DATED MARCH 21 1994

### GONZALO SANCHEZ DE LOZADA

### CONSTITUTIONAL PRESIDENT OF THE REPUBLIC

### CAPITALIZATION LAW.

Whereas, the Honorable National Congress has approved the following Law:

THE HONORABLE NATIONAL CONGRESS,

DECREES,

## CHAPTER I

## FORMATION OF MIXED-ECONOMY COMPANIES

ARTICLE 1.- The Executive Branch is hereby authorized to contribute assets and/or rights of public companies, to be integrated as paid capital in the formation of new mixed-economy companies.

A proposal shall be made to the workers of each public company to subscribe to stock for the formation of the respective mixed-economy company, up to the amount of their benefits.

ARTICLE 2.- The agreements required for the conversion into mixed-economy companies are hereby authorized and approved, pursuant to current provisions, for Yacimiento Petrolíferos Fiscales Bolivianos (YPFB), Empresa Nacional de Electricidad (ENDE), Empresa Nacional de Telecomunicaciones (ENTEL), Empresa Nacional de Ferrocarriles (ENFE), and Empresa Metalurgica Vinto, specifying as the State's contribution the book value of the assets of these companies.

The mixed-economy companies referred to in this article shall establish their domicile in the Republic of Bolivia.

## CHAPTER II

## CAPITALIZATION

ARTICLE 3.- The Executive Branch shall, by means of a supreme decree, provide for the capitalization of each of the mixed-economy companies formed pursuant to the provisions of this Law, or of those existing mixed-economy companies.

ARTICLE 4.- The capitalization of mixed-economy companies shall be carried out by increasing its capital through new contributions from private investors, national and/or foreign. Representative stock of these new contributions may not in any case exceed the total stock issued by the mixed-economy companies subject to the capitalization.

All stock to be issued by the mixed-economy companies subject to the capitalization shall be common stock.

National and/or foreign private investors referred to in this article shall be selected, and the amount of their contributions determined, by international public bid.

Investors and/or managers of the capitalized companies under the provisions of this Law shall sign a management contract with the respective mixed-economy company, specifying that they may not directly or indirectly acquire stock in these companies from third parties in excess of fifty-percent of the total stock during the period the aforementioned management contract is in force.

ARTICLE 5.- In order to optimize the capitalization process, the liabilities of the mixed-economy companies subject to this process may be transferred, in whole or in part, through a Supreme Decree, to the General Treasury of the Nation at the time of their capitalization. The service of these debts shall be recorded in the respective budgetary Law.

ARTICLE 6.- The Executive Branch is hereby authorized to transfer, at no charge, for the benefit of Bolivian citizens residing in the country who are of legal age as of December 31, 1995, stock owned by the State in mixed-economy companies that have been capitalized in accordance with the provisions of article four of this Law.

This stock transfer is exempt from any tax payments.

ARTICLE 7.- The Executive Branch shall provide, by supreme decree, adequate, transparent and appropriate mechanisms for the Bolivian citizens mentioned in the above article to benefit from the transfer of the aforementioned stock to pension funds individually capitalized to be created in accordance with the Law. The Executive Branch may provide through supreme decree that the aforementioned stock be placed in a trust fund until the companies in charge of the administration of the individually capitalized pension funds commence their operations.

The companies initially managing the individually capitalized pension funds covered by this article shall be selected by means of an international public bid.

The management companies of the Pension Funds shall be monitored by an entity to be created by Law.

## CHAPTER III
## DISQUALIFICATION

ARTICLE 8.- The President of the Republic, the Vice President of the Republic, the Senators, the Congressmen, the Ministers of State, the Ministers of the Supreme Court of Justice, the Attorney General of the Republic, the General Comptroller of the Republic, the National Secretaries, the Bank Superintendent, the Undersecretaries, as well as the Presidents, Vice Presidents and other members of the Boards of Directors of public companies or mixed-economy companies capitalized under the provisions of this Law, and their blood relatives, either direct or collateral and/or related up to and including the second degree, are barred from participating as investors in the capitalization of the companies covered by this Law, both directly or indirectly through companies where the disqualified person has decision-making power. This disqualification shall extend for up to four years after terminating the corresponding public function.

The violation of the provisions of this article shall entail annulment of the stock owned by the violator and the return of its value to the company assets.

ARTICLE 9.- None of the individuals mentioned in the above article may perform functions of Management, Administration, Consulting or Advising in the Corporations that have been capitalized pursuant to the provisions of this Law, for up to four years after the date of termination of their public function.

## CHAPTER IV

## FINAL PROVISIONS

ARTICLE 10.- The public services of communication, electric energy, hydrocarbons and transportation are within the national jurisdiction and they shall be governed by specific Sector Laws.

The public services mentioned in the above paragraph are excluded from the scope of Articles 9 paragraph 4), 72nd and 73rd of the Organic Law of Municipalities dated January 10, 1985, and shall be governed by an entity whose creation, functions and attributions shall be set forth by Law.

The provision of these public services in municipal jurisdictions shall be adapted and coordinated with the rules of urban development issued by the respective municipal governments.

ARTICLE 11.- The natural hydrocarbon resources are subject to the provisions of Article 139 of the Political Constitution of the State, as they are of direct dominion of the State and they are inalienable and imprescriptible.

ARTICLE 12.- Law No. 1150 of March 6, 1985, published in the Official Gazette of Bolivia No. 1646-47 dated May 21, 1990 is hereby revoked, as well as all other provisions contrary to this Law.

To be submitted to the Executive Branch for constitutional purposes.

Given in the Meeting Room of the Honorable National Congress, on the twenty-first day of the month of March of the year nineteen hundred ninety-four.

Signed H. JUAN CARLOS DURAN SAUCEDO, President of the Honorable National Senate.- GUILLERMO BEDREGAL GUTIERREZ, President of the Honorable Congress.- Walter Zuleta Roncal, Secretary Senator.- Guido R. Capra Jemio, Secretary Senator.- Eudoro Galindo Anze, Secretary Representative.- Raul Tovar Pierola, Secretary Representative.

Therefore, I hereby promulgate it to be held and obeyed as a Law of the Republic.

Government Palace of the city of La Paz, on the twenty-first day of the month of March of the year nineteen hundred ninety-four.

GONZALO SANCHEZ DE LOZADA, Constitutional President of the Republic.- Dr. Carlos Sanchez Berzain, Minister of the Presidency of the Republic.- Eng. Fernando Illanes de la Riva, Minister of Finance and Economic Development.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language** *Works*

STATE OF NEW YORK      )
                       )      ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of a "**Law No. 1544**" completed on 6/5/2008, originally written in Spanish.

Gina St. Laurent
Director of Legal Translation Division
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 5th day of June 2008

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

**LEY N° 1544**

**LEY DE 21 DE MARZO DE 1994**

**GONZALO SANCHEZ DE LOZADA**

**PRESIDENTE CONSTITUCIONAL DE LA REPUBLICA**

**LEY DE CAPITALIZACION.**

Por cuanto, el Honorable Congreso Nacional, ha sancionado la siguiente Ley:

EL HONORABLE CONGRESO NACIONAL,

DECRETA:

CAPITULO I.

DE LA CONSTITUCION DE SOCIEDADES DE ECONOMIA MIXTA

ARTICULO 1.- Autorízase al Poder Ejecutivo a aportar los activos y/o derechos de las empresas públicas, para la integración del capital pagado en la constitución de nuevas sociedades de economía mixta.

A los trabajadores de cada una de estas empresas públicas, se les propondrá suscribir acciones para la constitución de la respectiva sociedad de economía mixta, hasta el monto de sus beneficios sociales.

ARTICULO 2.- Autorízanse y apruébanse los acuerdos requeridos para la conversión en sociedades de economía mixta , de acuerdo a disposiciones en vigencia, de Yacimientos Petrolíferos Fiscales Bolivianos (YPFB), Empresa Nacional de Electricidad (ENDE), Empresa Nacional de Telecomunicaciones (ENTEL), Empresa Nacional de Ferrocarriles (ENFE) y Empresa Metalúrgica Vinto, que especifiquen como aportes del Estado el valor en libros de patrimonio de dichas empresas.

Las sociedades de economía mixta a que se refiere este artículo constituirán domicilio en la República de Bolivia.

CAPITULO II

DE LA CAPITALIZACION

ARTICULO 3.- El Poder Ejecutivo dispondrá, mediante decreto supremo, la capitalización de cada una de las sociedades de economía mixta constituidas según lo prescrito por la presente Ley, o de aquellas sociedades de economía mixta ya existentes.

ARTICULO 4.- La capitalización de las sociedades de economía mixta se realizará por el incremento de su capital, mediante nuevos aportes provenientes de inversionistas privados, nacionales y/o extranjeros. Las acciones representativas de estos nuevos aportes, en ningún caso, podrán exceder del total de las acciones emitidas por las sociedades de economía mixta objeto de la capitalización.

Todas las acciones a ser emitidas por las sociedades de economía mixta objeto de la capitalización serán ordinarias.

Los inversionistas privados, nacionales y/o extranjeros a que se refiere este artículo, serán seleccionados y los montos de sus aportes determinados a través de licitación pública internacional.

Los inversionistas y/o los administradores de las empresas capitalizadas bajo las disposiciones de la presente Ley, suscribirán un contrato de administración con la sociedad de economía mixta respectiva, en el que se especificará que éstos no podrán, directa o indirectamente, adquirir de terceros, acciones de esas sociedades que superen el cincuenta por ciento del total de las acciones, mientras dicho contrato de administración se encuentre vigente.

ARTICULO 5.- Con la finalidad de optimizar el proceso de capitalización, los pasivos de las sociedades de economía mixta sujetas a dicho proceso, podrán ser transferidos, total o parcialmente, mediante Decreto Supremo, al Tesoro General de la Nación a tiempo de producirse la capitalización de las mismas. El servicio de estas deudas será consignado en la respectiva Ley de presupuesto.

ARTICULO 6.- Autorizase al Poder Ejecutivo a transferir a título gratuito, en beneficio de los ciudadanos bolivianos residentes en el país y que al 31 de diciembre de 1995 hubiesen alcanzado la mayoría, las acciones de propiedad del Estado en las sociedades de economía mixta que hubiesen sido capitalizadas del modo establecido en el artículo cuarto de esta Ley.

Esta transferencia de acciones queda exenta del pago de todo impuesto.

ARTICULO 7.- El Poder Ejecutivo dispondrá, mediante decreto supremo, mecanismos idóneos, transparentes y apropiados, para que los ciudadanos bolivianos mencionados en el artículo anterior se beneficien con la transferencia de dichas acciones a fondos de pensiones de capitalización individual a crearse de acuerdo a ley. El Poder Ejecutivo podrá disponer, mediante decreto supremo, que dichas acciones sean constituidas en fideicomiso, hasta que las sociedades encargadas de la administración de los fondos de pensiones de capitalización individual inicien su funcionamiento.

Las empresas que inicialmente administren los fondos de pensiones de capitalización individual a que se refiere este artículo, serán seleccionadas mediante licitación pública internacional.

Las empresas administradoras de Fondos de Pensiones, serán fiscalizadas por un organismo a ser creado por Ley.

CAPITULO III

DE LAS INHABILITACIONES

ARTICULO 8.- El Presidente de la República, el Vicepresidente de la República, los Senadores, los Diputados, los Ministros de Estado, los Ministros de la Corte Suprema de Justicia, el Fiscal General de la República, el Contralor General de la República, los Secretarios Nacionales, el Superintendente de Bancos, los Subsecretarios, así como los Presidentes, Vicepresidentes y otros miembros de los Directorios de las empresas públicas o sociedades de economía mixta capitalizadas bajo las disposiciones de la presente Ley y sus parientes consanguíneos, en línea directa o colateral y/o afines hasta el segundo grado inclusive, quedan inhabilitados de participar como inversionistas, en la capitalización de las empresas materia de la presente Ley, sea directa o indirectamente a través de sociedades en las que el inhabilitado tenga poder decisorio. Esta inhabilitación se extenderá por cuatro años desde el cese de la función pública correspondiente.

La contravención a lo dispuesto en este artículo, importará la anulación de las acciones de propiedad del infractor, revirtiéndose su valor al patrimonio de la empresa.

ARTICULO 9.- Ninguna de las personas mencionadas en el artículo precedente, podrán desempeñar funciones de Dirección, Administración, Consultoría o Asesoría, en las Sociedades Anónimas que hubiesen sido Capitalizadas según lo establecido por la presente Ley, hasta cuatro años computables desde la fecha de cese en su función pública.

CAPITULO IV

DISPOSICIONES FINALES

ARTICULO 10.- Los servicios públicos de comunicaciones, energía eléctrica, hidrocarburos y transporte, corresponden a la jurisdicción nacional y serán normados por Leyes sectoriales específicas.

Los servicios públicos mencionados en el párrafo anterior quedan excluidos del alcance de los artículos 9º, numeral 4) 72º y 73º de la Ley Orgánica de Municipalidades de 10 de enero de 1985 y serán regulados por un ente cuya creación, funciones y atribuciones se establecerán por Ley.

La prestación de estos servicios públicos en jurisdicciones municipales, serán compatibilizadas y coordinadas con las normas de desarrollo urbano emitidas por los gobiernos municipales respectivos.

ARTICULO UNDECIMO.- Los recursos naturales hidrocarburíferos quedan sujetos a lo dispuesto por el artículo 139º de la Constitución Política del Estado, toda vez que los mismos constituyen dominio directo del Estado y son inalienables e imprescriptibles.

ARTICULO 12.- Queda abrogada la Ley Nº 1150 de 6 de marzo de 1985 publicada en la Gaceta Oficial de Bolivia Nº 1646-47 en fecha 21 de mayo de 1990, y todas las demás disposiciones contrarias a la presente Ley.

Pase al Poder Ejecutivo para fines constitucionales.

Es dada en la Sala de Sesiones del Honorable Congreso Nacional, a los veintiún del mes de marzo de mil novecientos noventa y cuatro años.

Fdo. H. JUAN CARLOS DURAN SAUCEDO, Presidente del H. Senado Nacional.- H. GUILLERMO BEDREGAL GUTIERREZ, Presidente de la H. Cámara de Diputados.- H. Walter Zuleta Roncal, Senador Secretario.- H. Guido R, Capra Jemio, Senador Secretario.- H. Eudoro Galindo Anze, Diputado Secretario.- H. Raúl Tovar Piérola, Diputado Secretario.

Por tanto, la promulgo para que se tenga y cumpla como Ley de la República.

Palacio de Gobierno de la ciudad de La Paz, a los veintiún días del mes de marzo de mil novecientos noventa y cuatro años.

GONZALO SANCHEZ DE LOZADA, Presidente Constitucional de la República.- Dr. Carlos Sánchez Berzaín, Ministro de la Presidencia de la República.- Ing. Fernando Illanes de la Riva, Ministro de Hacienda y Desarrollo Económico.

**EXHIBIT I**

Ministry of Economic Development
Office of the National Secretary of Industry and Commerce
**General Administration of the Commercial
Registry and Stock Companies**

ADMINISTRATIVE RESOLUTION No.: 02-05424/95

La Paz, July 18, 1995

WHEREAS:

The request for registration with the Administration of the Commercial Registry and Stock Companies presented by:

EMPRESA NACIONAL DE TELECOMUNICACIONES SOCIEDAD DE ECONOMIA MIXTA "ENTEL S.A.M."

By memorial dated July 11, 1995, it requested registration with this Administration of the Copy of Public Document No. 554/95 of the Charter and Articles of Partnership, recorded before the Notary KATHERINE RAMIREZ DE LOAYZA.

After reviewing these instruments, they fall within the framework of the provisions of Article 219 et seq. of the Commercial Code; the Provisional Board of Directors is composed as follows:

|  |  |
|---|---|
| CHAIRPERSON: | GERMAN ESTEBAN MEDRANO KREIDLER |
| VICE CHAIRPERSON: | WALTER COSTAS BADANI |
| SECRETARY: | JUAN CARLOS HANDAL RIVERO |

The technical report establishes that the authorized capital is Bs. 1,302,577,400,000.00 (00/100 Bolivianos), the capital subscribed for is Bs. 651,288,700.00 (00/100 Bolivianos), and the paid-in capital is Bs. 651,288,700.00 (00/100 Bolivianos), divided into 13,025,774 shares with a par value of Bs. 100.00 each.

The purpose of the company is:

- COMMUNICATIONS
- GENERAL SERVICES

The legal organization is: SOCIEDAD DE ECONOMIA MIXTA [Mixed Private and State Company]

NOW, THEREFORE:
The Director General of the Commercial Registry and Stock Companies, by virtue of the jurisdiction and competences establishes in Art. 444 of the Commercial Code and Arts. 6, 51, and 75 of [illegible],

RESOLVES:

FIRST. – To declare admissible the request from the company EMPRESA NACIONAL DE TELECOMUNICACIONES SOCIEDAD DE ECONOMIA MIXTA "ENTEL S.A.M."
In merit whereof its company charter and Articles of Incorporation that consist of VIII Titles and 95 Articles are approved.

Ministry of Economic Development
Office of the National Secretary of Industry and Commerce
## General Administration of the Commercial
## Registry and Stock Companies

SECOND. – Let GERMAN ESTEBAN MEDRANO be recognized as its legal representative, and let the legal domicile of the company be considered indicated as in the City of LA PAZ.

THIRD. – Let the registration of the company, the issuance of the corresponding Registration and the recording of the copy/ies of the public document(s) No(s). 554/95, recorded before Notary KATHERINE RAMIREZ DE LOAYZA be authorized, in conformity with Articles 28, 29, 31, and 126 of the Commercial Code.

Let it be recorded, reported and archived.
AVV/SVB

[seal]                              [signature]
Office of the National              *Dr. Angelina Vucsanovich Luz Vargas*
Secretary for Industry              DIRECTOR GENERAL OF THE COMMERCIAL
and Commerce                        REGISTRY AND STOCK COMPANIES
General Administration of
the Commercial Registry and
Stock Companies
La Paz, Bolivia

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                            )   ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  <u>English</u>  of   <u>Administrative Resolution No. 02-05424/95 and Registration of Enrolment</u>  written in  <u>Spanish</u>  .

New York, June 03, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 03, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009



Ministerio de Desarrollo Económico
Secretaría Nacional de Industria y Comercio

# Dirección General del Registro de Comercio y Sociedades por Acciones

RESOLUCION ADMINISTRATIVA Nº: 02-05424/95

La Paz, 18 de Julio de 1995

VISTOS Y CONSIDERANDO:

La solicitud de inscripción a la Dirección de Registro de Comercio y sociedades por Acciones presentada por la firma:

EMPRESA NACIONAL DE TELECOMUNICACIONES SOCIEDAD DE ECONOMIA MIXTA "ENTEL S.A.M."

Que mediante memorial de fecha 11 de Julio de 1995, solicita la inscripción en esta Dirección del Testimonio de escritura pública No. 554/95 de Constitución y etatutos, protocolizado por ante Notario KATHERINE RAMIREZ DE LOAYZA.

Que revisados dichos instrumentos, estos se encuentran dentro del marco de lo establecido por el Articulo 219 y siguientes del Código de Comercio, habiéndose constituido el Directorio Provisional de la siguiente forma:

PRESIDENTE : GERMAN ESTEBAN MEDRANO KREIDLER
VICE PRESIDENTE : WALTER COSTAS BADANI
SECRETARIO : JUAN CARLOS HANDAL RIVERO

Que por el informe técnico se establece que el capital autorizado es de Bs 1.302.577.400.000.- (00/100 Bolivianos.) el capital suscrito de Bs 651.288.700.- (00/100 BOLIVIANOS) y el capital pagado de Bs 651.288.700.- (00/100 BOLIVIANOS) dividido en 13.025.774 acciones con un valor nominal de Bs 100.00.- cada una.

Que la sociedad tiene por objeto:

- COMUNICACIONES
- SERVICIOS GENERALES

Con organización juridica: SOCIEDAD DE ECONOMIA MIXTA

POR TANTO:
El Director General del Registro de Comercio y Sociedades por Acción en virtud de la jurisdicción y competencia establecidos en el art. 4442 del Código de Comercio y Art. 69, 519, 759 del [...]

RESUELVE:

PRIMERO.- Declarar procedente la solicitud de la firma EMPRESA NACIONAL DE TELECOMUNICACIONES SOCIEDAD DE ECONOMIA MIXTA "ENTEL S.A.M." en cuyo mérito se aprueba su constitución social y los estatutos que



Ministerio de Desarrollo Económico
Secretaría Nacional de Industria y Comercio

# Dirección General del Registro de Comercio y
# Sociedades por Acciones

constan de VIII Títulos y 95 Artículos.

SEGUNDO.- Reconócese como representente legal a GERMAN ESTEBAN MEDRANO teniendo por señalado el domicilio legal de la sociedad en la ciudad de LA PAZ.

TERCERO.- Autorizase la inscripción de la firma, la extensión de la Matrícula correspondiente y el registro de(los) testimonio(s) de la(s) escritura(s) pública(s) No 554/95 protocolizado(s) por ante Notario(s) KATHERINE RAMIREZ DE LOAYZA de conformidad al Artículo 28, 29, 31, 126 del Código de Comercio.

Registrese, comuníquese y archívese.
AVV/SVB

Dra. Angélica Vásquezchich de Vargas
DIRECTORA GENERAL DEL REGISTRO DE
COMERCIO Y SOCIEDADES POR ACCIONES

**EXHIBIT J**

Ministry of Economic Development
Office of the National Secretary of Industry and Commerce

## General Administration of the Commercial
###    Registry and Stock Companies

                    ADMINISTRATIVE RESOLUTION No.: 02-06838/96

La Paz, January 16, 1996

WHEREAS:

The request for registration with the Administration of the Commercial
Registry and Stock Companies presented by:

            EMPRESA NACIONAL DE TELECOMUNICACIONES, S.A. ENTEL S.A.

By memorial dated December 20, 19985, it requested registration with this
Administration of the Copy of Public Document No. 505/95 - 33/96 of the
Charter and Articles of Incorporation, recorded before the Notary LUZ
VILLARPANDO DE UGRINOVIC.

After reviewing these instruments, they fall within the framework of the
provisions of Article 219 et seq. of the Commercial Code; the Provisional
Board of Directors is composed as follows:

            CHAIRPERSON:          Mr. GIOVANNI RUGGERI
      VICE CHAIRPERSON:           Mr. PIERO BERGAMINI
            SECRETARY:            Mr. RENATO DE RIMINI

The technical report establishes that the authorized capital is Bs.
2,561,797,600.00.0 (TWO THOUSAND FIVE HUNDRED SIXTY-ONE MILLION SEVEN HUNDRED
NINETY-SEVEN THOUSAND SIX HUNDRED 00/1000 BOLIVIANOS), the capital subscribed
for is Bs. 1,280,898,800.00 (ONE THOUSAND TWO HUNDRED EIGHT MILLION EIGHT
HUNDRED NINETY-EIGHT THOUSAND EIGHT HUNDRED 00/100 BOLIVIANOS), and the paid-
in capital is Bs. 1,280,898,800.00 (ONE THOUSAND TWO HUNDRED EIGHT MILLION
EIGHT HUNDRED NINETY-EIGHT THOUSAND EIGHT HUNDRED 00/100 BOLIVIANOS), divided
into 25,617,976 shares with a par value of Bs. 100.00 each.

The purpose of the company is:
      -     COMMUNICATIONS
      -     GENERAL SERVICES

The legal organization is: SOCIEDAD ANONIMA [≈ corporation]

NOW, THEREFORE:
The Director General of the Commercial Registry and Stock Companies, by
virtue of the jurisdiction and competences establishes in Art. 444 of the
Commercial Code and Arts. 6, 51, and 75 of Decree Law 16833,

RESOLVES:

FIRST. - To declare admissible the request from the company
            EMPRESA NACIONAL DE TELECOMUNICACIONES, S.A. ENTEL S.A.
In merit whereof its company charter and Articles of Incorporation that
consist of VIII Titles and 89 Articles is approved.

Ministry of Economic Development
Office of the National Secretary of Industry and Commerce

## General Administration of the Commercial
### Registry and Stock Companies


SECOND. – Let GIOVANNI RUGGERI be recognized as its legal representative, and let the legal domicile of the company be considered indicated as in the City of LA PAZ.

THIRD. – Let the registration of the company, the issuance of the corresponding Registration and the recording of the copy/ies of the public document(s) No(s). 505/95 – 33/, recorded before Notary LUZ VILLARPANDO DE UGRINOVIC be authorized, in conformity with Articles 28, 29, 31, and 126 of the Commercial Code.


Let it be recorded, reported and archived.
AVV/MVR
[seal]                          [signature]
Office of the National          Dr. ANGELINA VUCSANOVICH LUZ VARGAS
Secretary for Industry          DIRECTOR GENERAL OF THE COMMERCIAL
and Commerce                    REGISTRY AND STOCK COMPANIES
General Administration of
the Commercial Registry and
Stock Companies
La Paz, Bolivia

Ministry of Economic Development
Office of the National Secretary of Industry and Commerce
## General Administration of the Commercial
## Registry and Stock Companies

REGISTRATION OF ENROLMENT

The Administration of the Commercial Registry and Stock Companies, in exercise of the powers conferred on it by the Commercial Code and Decree Law 16833 of July 19, 1979,

GRANTS:

Registration No. 07-037406-01, approved by Administrative Resolution No. 02-06838/96 of 1/16/1996, to the company:

EMPRESA NACIONAL DE TELECOMUNICACIONES, S.A. ENTEL S.A.

Dedicated to the activities of:

- COMMUNICATIONS
- GENERAL SERVICES

Legal Domicile:            AV. MARISCAL SANTA CRUZ # 0
District:                  LA PAZ
Legal Organization         SOCIEDAD ANONIMA [≈ corporation]
Authorized Capital BS:     2,561,797,600.00.0 (TWO THOUSAND FIVE HUNDRED SIXTY-ONE MILLION SEVEN HUNDRED NINETY-SEVEN THOUSAND SIX HUNDRED 00/1000 BOLIVIANOS
Subscribed Capital, Bs.:   1,280,898,800.00 (ONE THOUSAND TWO HUNDRED EIGHT MILLION EIGHT HUNDRED NINETY-EIGHT THOUSAND EIGHT HUNDRED 00/100 BOLIVIANOS
Capital Paid in, Bs:       1,280,898,800.00 (ONE THOUSAND TWO HUNDRED EIGHT MILLION EIGHT HUNDRED NINETY-EIGHT THOUSAND EIGHT HUNDRED 00/100 BOLIVIANOS
As shown on the Management Balance Sheet of NOVEMBER 27, 1995
Single Taxpayers Registry No.:   78719
Date of Formation:         NOVEMBER 27, 1995
Copy No.:                   505/95 - 33/96
Notary:                     LUZ VILLARPANDO DE UGRINOVIC

Having complied with the requirements of the Law, the above-cited company can conduct its activities in its sector.

[seal]                       La Paz, JANUARY 16, 19988
Office of the National       [signature]
Secretary for Industry       [illegible stamp]
and Commerce
General Administration of
the Commercial Registry and
Stock Companies
La Paz, Bolivia

NOTE: Any erasures, blots or overwriting automatically invalidates the legal value of this Registration of Enrolment.

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate rendition into  English  of   Administrative Resolution No. 02-06838/96   written

in   Spanish   .

New York, June 02, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 02, 2008.

_____
SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009



Ministerio de Desarrollo Económico
Secretaría Nacional de Industria y Comercio

# Dirección General del Registro de Comercio y Sociedades por Acciones

RESOLUCION ADMINISTRATIVA Nº: 02-06838/96

La Paz, 16 de Enero de 1996

VISTOS Y CONSIDERANDO:

La solicitud de inscripción a la Dirección de Registro de Comercio y sociedades por Acciones presentada por la firma:

EMPRESA NACIONAL DE TELECOMUNICACIONES S.A.    ENTEL S.A.

Que mediante memorial de fecha 20 de Diciembre de 1995, solicita la inscripción en esta Dirección del Testimonio de escritura pública No.505/95 - 33/96 de Constitución y estatutos, protocolizado por ante Notario LUZ VILLARPANDO DE UGRINOVIC.

Que revisados dichos instrumentos, estos se encuentran dentro del marco de lo establecido por el Artículo 219 y siguientes del Código de Comercio, habiéndose constituído el Directorio Provisional de la siguiente forma:

```
               PRESIDENTE : SR. GIOVANNI RUGGERI
          VICE PRESIDENTE : SR. PIERO BERGAMINI
               SECRETARIO : SR. RENATO DE RIMINI
```

Que por el informe técnico se establece que el capital autorizado es de Bs 2,561,797,600.00.- (DOS MIL QUINIENTOS SESENTA Y UN MILLONES SETECIENTOS NOVENTA Y SIETE MIL SEISCIENTOS 00/100 BOLIVIANOS,) el capital suscrito de Bs 1,280,898,800.00 (UN MIL DOSCIENTOS OCHENTA MILLONES OCHOCIENTOS NOVENTA Y OCHO MIL OCHOCIENTOS 00/100 BOLIVIANOS) y el capital pagado de Bs 1,280,898,800.00 (UN MIL DOSCIENTOS OCHENTA MILLONES OCHOCIENTOS NOVENTA Y OCHO MIL OCHOCIENTOS 00/100 BOLIVIANOS) dividido en 25,617,976 acciones con un valor nominal de Bs 100.00.- cada una.

Que la sociedad tiene por objeto:
- COMUNICACIONES
- SERVICIOS GENERALES

Con organización jurídica: SOCIEDAD ANONIMA

POR TANTO:
El Director General del Registro de Comercio y Sociedades por Acciones en virtud de la jurisdicción y competencia establecidas en el Art. 444º del Código de Comercio y Art. 6º, 51º, 75º del D.L. 16833.

RESUELVE:

PRIMERO.- Declarar procedente la solicitud de la firma
         EMPRESA NACIONAL DE TELECOMUNICACIONES S.A.    ENTEL S.A.
en cuyo mérito se aprueba su constitución social y los estatutos que

# Dirección General del Registro de Comercio y Sociedades por Acciones

constan de VIII Títulos y 89 Artículos.

SEGUNDO.- Reconócese como representente legal a GIOVANNI RUGGERI teniendo por señalado el domicilio legal de la sociedad en la ciudad de LA PAZ.

TERCERO.- Autorizase la inscripción de la firma, la extensión de la Matrícula correspondiente y el registro de(los) testimonio(s) de la(s) escritura(s) pública(s) No 505/95 - 33/ protocolizado(s) por ante Notario(s) LUZ VILLARPANDO DE UGRINOVIC de conformidad al Artículo 28, 29, 31, 126 del Código de Comercio.

Regístrese, comuníquese y archívese.
AVV/MVR

DRA. ANGELICA VUCSANOVICH DE VARGAS
DIRECTORA GENERAL DEL REGISTRO DE
COMERCIO Y SOCIEDADES POR ACCIONES

 Ministerio de Desarrollo Económico
Secretaría Nacional de Industria y Comercio

# Dirección General del Registro de Comercio y Sociedades por Acciones

MATRICULA DE INSCRIPCION

La Dirección de Registro de Comercio y Sociedades por Acciones en uso de las atribuciones que le confiere el Código de Comercio y el Decreto Ley 16833 del 19 de Julio de 1979.

OTORGA :

La matrícula Nº 07-037408-01 aprobada mediante Resolución Administrativa Nº 02-06838/96 de fecha 16-01-1996 a la firma:

EMPRESA NACIONAL DE TELECOMUNICACIONES S.A.  ENTEL S.A.

dedicada a la(s) actividad(es):

- COMUNICACIONES
- SERVICIOS GENERALES

Domicilio legal     : AV.MARISCAL SANTA CRUZ # 0
Distrito            : LA PAZ
Organización jurídica : SOCIEDAD ANONIMA
Capital autorizado Bs : 2,561,797,600.00 (DOS MIL QUINIENTOS SESENTA Y UN MILLONES SETECIENTOS NOVENTA Y SIETE MIL SEISCIENTOS 00/100 BOLIVIANOS)
Capital Suscrito    Bs : 1,280,898,800.00 (UN MIL DOSCIENTOS OCHENTA MILLONES OCHOCIENTOS NOVENTA Y OCHO MIL OCHOCIENTOS 00/100 BOLIVIANOS)
Capital Pagado      Bs : 1,280,898,800.00 (UN MIL DOSCIENTOS OCHENTA MILLONES OCHOCIENTOS NOVENTA Y OCHO MIL OCHOCIENTOS 00/100 BOLIVIANOS)
Según consta en el Balance de Gestión de fecha 27 DE NOVIEMBRE DE 1995
Número de R.U.C.    : 78719
Fecha de Constitución : 27 DE NOVIEMBRE DE 1995
Testimonio Nº       : 505/95 - 33/96
Notario             : LUZ VILLARPANDO DE UGRINOVIC

Habiendo cumplido los requisitos exigidos por Ley, la empresa citada puede ejercer actividades en su sector.

La Paz, 16 de ENERO de 1996

AVV/MVB

NOTA. Cualquier raspadura, borrón o sobreescrito invalida automáticamente el valor legal de la presente Matrícula de inscripción.

**EXHIBIT K**

REPUBLIC OF BOLIVIA



No. 4175439

JUDICIAL BRANCH OF THE NATION

JUDICIARY COUNCIL

CERTIFICATION BY NOTARY PUBLIC

*Chamber Resolution No. 106 / 03-04*

Value: Bs 5.00

Series G-PJ-CN-2007

Certified Copy No. _____

Judicial District of LA PAZ – BOLIVIA

FIRST CLASS Notary Public No 069 CARLOS HUANCA AYAVIRI

LEGALIZED COPY OF PARTS OF THE NOTARIZED DOCUMENT NO. 131/2005, CORRESPONDING TO THE BY-LAWS OF THE CORPORATION KNOWN AS EMPRESA NACIONAL DE TELECOMUNICACIONES S.A. (ENTEL S.A.), ISSUED BY JUDICIAL ORDER AND AT THE REQUEST OF THE INTERESTED PARTY. ------

Place and Date: LA PAZ, MARCH 12, 2008

(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class No. 69, Carlos Huanca Ayaviri, 29052006
La Paz, Bolivia

Calle Colon, Edif. Colon No. 330, 1st Piso, Of. 106 – Tel/Fax 2205366-2118262 (illegible)

JUDICIAL BRANCH OF BOLIVIA

CERTIFICATION BY NOTARY PUBLIC

SERIES: I-PJ-FN-2007

CHAMBER RESOLUTION N° 106 /03-04

VALUE Bs. 2.00

N° 0166765

1

RESPONDS"

(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class No. 69, Carlos Huanca Ayaviri, 2905200
La Paz, Bolivia

LEGALIZED COPY OF PERTINENT PARTS OF PUBLIC DOCUMENT NO. 131/2005 CORRESPONDING TO THE BY-LAWS OF THE CORPORATION KNOWN AS EMPRESA NACIONAL S.A. (ENTEL S.A.), ISSUED BY JUDICIAL ORDER AND AT THE REQUEST OF THE INTERESTED PARTY. -------------------------------------------

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

**BY-LAWS OF EMPRESA NACIONAL DE TELECOMUNICACIONES S.A. (ENTEL S.A.)**

**T I T L E  I** ------------------------------------------------------------------------------------

**ORGANIZATION, NAME, DOMICILE AND DURATION.** ---------------------------------

**ARTICLE 1. ORGANIZATION AND NAME.** The shareholders appearing as signors of the Articles of Incorporation and those who hereafter bind themselves to same constitute a corporation under the name of EMPRESA NACIONAL DE TELECOMUNICACIONES SOCIEDAD ANONIMA, to be known as ENTEL S.A. ---------------------------------------------

**ARTICLE 2. DOMICILE.** The legal address of the corporation is established in the City of La Paz, Republic of Bolivia, with the right to establish branches, agencies and offices in any other part of the Republic and outside of same. -------------------------------------------------

**ARTICLE 3. PURPOSE.** The principal purpose of the corporation is to operate and use all kinds of telecommunications networks and to provide all kinds of telephony, telegraph, telex, fax, and other telecommunications services, both on its own, for others and/or in association with third parties. The corporation can, in carrying out its corporate purpose, dedicate itself to the design, installation, conservation, renovation, improvement, purchase, sale, interconnection, management, administration and any other activity not included in the above list, with regard to all kinds of lines, satellites, wireless receivers and transmitters, equipment, technical telecommunications infrastructure systems and the sale of their auxiliary or complementary services related to telecommunications, as well as to edit, print, distribute and sell telephone directories. Furthermore, the corporation can, in carrying out its corporate purpose,

2

perform data processing work and research for itself or for third parties; and develop, promote and apply all kinds of principles, components, equipment and systems used either directly or indirectly for telecommunications, as well as comply with and execute any act or management tied to or directly or indirectly related to said activities.

**ARTICLE 4. DURATION.** The corporation shall remain in effect for ninety nine years, with the first date the date of registry in the General Registry of Businesses and Share Corporations. The life of the corporation can be extended by resolution of an Extraordinary General Meeting of Shareholders. ------------------------------ ---------------------------------------

**T I T L E  II** ------------------------ **CAPITAL AND SHARES** ---------------------------------

**ARTICLE 5: AUTHORIZED CAPITAL AND REGISTERED VALUE OF THE SHARES.** Authorized capital of the corporation is Two Billion Five Hundred Sixty One Million Seven Hundred Ninety Seven Thousand Six Hundred 00/100 Bolivians (Bs. 2,561,797,600.00). As capital contributions are received, registered shares with a registered value of One Hundred Bolivians 00/100 (Bs. 100.00) each shall be issued for same. ---------

**ARTICLE 6. INCREASE OR REDUCTION IN AUTHORIZED CAPITAL:** Authorized capital can be increased or decreased in accordance with the operations of the Corporation, by resolution of an Extraordinary General Meeting of Shareholders called especially for said purpose. All shares issued to that time must be fully subscribed in order to resolve on an increase. ------------------------------------------------------------ ------------------------

**ARTICLE 7. CAPITAL INCREASES.** Any increase in corporate capital, up to the amount of capital authorized, shall be approved by a resolution of the Extraordinary General Meeting of Shareholders called for said purpose. ----------------------------------------

**ARTICLE 8: CAPITAL REDUCTION.** Reductions in corporate capital can be: -----------

   1.  Voluntary; -------------------------------------------------------------------------------

   2.  Due to losses; and -----------------------------------------------------------------------

   3.  Obligatory. --------------------------------------------------------------------------

Voluntary reductions shall be by resolution of the Extraordinary General Meeting of Shareholders with the authorization of the General Registry of Businesses and Share Corporations. ---------------------------------------- ---------------------------------------------------

Reductions due to losses shall have the same requirements as above, and shall be in the amount of the losses

JUDICIAL BRANCH OF BOLIVIA          **CERTIFICATION BY NOTARY PUBLIC**

**SERIES: I-PJ-FN-2007**

CHAMBER RESOLUTION Nº 106 /03-04
VALUE Bs. 2.00
(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class Nº 69, Carlos Huanca Ayaviri, 2905200
La Paz Bolivia
3

suffered, provided these do not come to an amount equal to fifty per cent of corporate capital. -------------------
-------------------------------------------------------------------------------------

Obligatory reductions in capital shall occur when losses surpass fifty per cent of capital plus free reserves,
complying with the requirements established in Article 354 of the Commercial Code. ----------------------------
-----------------------------------------------------------

**ARTICLE 9. SHARE CLASSES:** Corporate shares can be ordinary or preferred. Preferred shares establish
rights of preference for their holders. ----------------------------------

**ARTICLE 10. SHARE CERTIFICATES:** Shares shall be represented by certificates which are
consecutively numbered and contain the following information: --------------------

1.  Name of shareholder; ----------------------------------------------------------------
2.  Business name, address, date and place of incorporation and duration of the corporation; --------------
    ------------------------------------------------------------------------
3.  Registration number with the General Registry of Businesses and Share Corporations. ------------------
    ----------------------------------------------------------------
4.  Amount of authorized capital and corporate capital. --------------------------------------
5.  Registered value of each share; -------------------------------------------------------
6.  Number of shares represented; -------------------------------------------------------
7.  Class of the share, ordinary or preferred; ----------------------------------------------
8.  Place and date of issue of the certificate; ---------------------------------------------
9.  Consecutive certificate umber; -----------------------------------------------------
10. Signatures of the President, Secretary of the Board and the Receiver.

**ARTICLE 11. ISSUANCE OF SHARE CERTIFICATES:** Permanent certificates or documents
representing the shares cannot be issued if the value represented by them has not been fully paid in. Until the
parties subscribing the shares have paid the full amount for same, they shall be granted a provisional share
certificate which shall necessarily be nominative and contain the same details as the permanent share
certificates. ------------------

**ARTICLE 12. AGREEMENT TO MAKE PLEDGED CONTRIBUTIONS.** Share subscribers shall pay in
the contributions they have pledged within the periods agreed in the subscription contracts and subject to the
penalties agreed on in case of default. ---------------

**ARTICLE 13. INDIVISIBLE SHARES.** Shares are indivisible. If one share belongs to various individuals
in common, then it shall be represented by one

4

of said individuals; however all owners shall be jointly and severally responsible to the corporation for all obligations inherent to their condition as shareholder. ----------------------

**ARTICLE 14. SHARE RECORD BOOK.** The Corporation shall keep a Share Record Book. The Secretary of the Board of Directors shall be responsible for said book, and the book shall be kept with the same requirements as accounting books and records. It shall further be available for viewing by the shareholders, and shall contain: ------------------------

1. Name, nationality and address of the shareholder. ------------------------------------------
2. Number, series and other description of the shares. ----------------------------------
3. Name of the subscriber and status of payment for the shares. ---------------------------
4. List of transfers, indicating dates and names of the acquiring parties. ------------------
5. Encumbrances placed on the shares. ---------------------------------------------------------
6. Conversion and swap of certificates, with the data corresponding to the new shares.
7. Any other information deriving form the legal situation of the shares and possible modifications. ----- ------------------------------------------------------------------------------

Entries made in said Book shall be signed by the Secretary of the Board.

**ARTICLE 15. DUPLICATE CERTIFICATES.** In the event of the loss or destruction of share certificates, the corporation shall issue the respective duplicates upon compliance of the formalities described in the Commercial Code and noting said circumstance in the Share Record Book. Share certificates shall be replaced at the cost of the interested party. --

**ARTICLE 16. RIGHT TO PREFERENCE (FIRST REFUSAL) FOR NEW ISSUES.** Whenever the meeting resolves to issue new shares and bonds convertible into shares, the corporation shall offer same by publication on three consecutive days in a press organization with national circulation. Current shareholders shall have the right of preference to subscribe said shares in proportion to the number of shares held by them, within the period established for said purpose and which shall not be less than thirty days with the first day the last publication date. ------------------------------------------------------------

**ARTICLE 17: SHAREHOLDERS' RIGHTS:** Shares of the same class shall have the same rights and obligations. Each ordinary share grants its owner with the right to one vote in the General Meetings and includes equal

JUDICIAL BRANCH OF BOLIVIA          **CERTIFICATION BY NOTARY PUBLIC**

**SERIES: I-PJ-FN-2007**

CHAMBER RESOLUTION N° 106 /03-04
VALUE Bs. 2.00
(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class N° 69, Carlos Huanca Ayaviri, 2905200
La Paz Bolivia

5

rights to receive dividends and the aliquot part of capital in case of liquidation. Preferred shares shall grant the rights provided in these by-laws as well as those established by the Extraordinary Meeting of Shareholders authorizing their issuance. -----------------------------

**ARTICLE 18: PREFERRED SHARES.** The Corporation is authorized to issue preferred shares by resolution of the Extraordinary General Meeting of Shareholders, which shall also establish the special or additional rights and benefits in their favor. Preferred shares shall have the right to vote in extraordinary meetings but not in ordinary meetings, unless when the dividend corresponding to them has not been paid for over three continuous or discontinuous management periods. In this case the preferred shares shall acquire the same right as ordinary shares until the amount owed has been paid. In no case shall annual dividends exceed fifteen per cent (15%) of the registered value; and in no case shall the total of preferred shares issued by the Corporation exceed fifty per cent (50%) of subscribed capital. -------------------------------------------------------- -----------------------------

**ARTICLE 19. BINDING NATURE OF CORPORATE RULES.** Ownership of one or more shares implies the holder's acceptance of the articles of incorporation, the by-laws, later modifications legally made and submission to the resolutions of the General Meetings of the Board and of the Shareholders, except for the right to challenge any resolutions which are contrary to law or to the by-laws. ------------------------------------- --------------------

**ARTICLE 20. SHAREHOLDERS' LIABILITY.** Shareholders are responsible only up to the registered value of their shares. The individual property of any shareholder is different and separate from corporate patrimony. -------------------------------------------------------------

**ARTICLE 21. THIRD PARTY RIGHTS AND THE SHAREHOLDER.** Creditors of a shareholder shall have no right to intervene in the administration or management of the corporation, or to have an effect on the property of the corporation. -----------------------------

**ARTICLE 22. SALE OR TRANSFER OF SHARES.** Shares of the corporation can be sold or transferred by endorsing the share certificate and recording same in the Share Registry Book. -------------------------------- ----------------------------------------------------------

**T I T L E  III ------------------ BONDS OR DEBENTURES ------------------------------------**

**ARTICLE 23. POWER TO ISSUE.** The corporation has the power to issue bonds or debentures, by express resolution of the Extraordinary General Meeting of

6

Shareholders and with the authorization of the General Registry of Commerce and Share Corporations. -------- ------------------------------------------------------------------------------------

**ARTICLE 24. ISSUANCE CONDITIONS:** The Meeting of Shareholders authorizing the issuance of the binding securities shall determine the amount, period, interest, warranties and other conditions of the issue, as well as their recovery, amortization and/or conversion.

**ARTICLE 25. PLACEMENT OF BINDING SECURITIES.** Bonds or debentures issued by the Corporation shall be placed through an authorized agent of the stock exchange, with the corresponding conditions to be agreed with them. -------------------------------------------

**T I T L E IV ----- REGARDING GOVERNMENT OF THE CORPORATION --------**

**ARTICLE 26. GOVERNING BODY.** The corporation shall be governed by a General Meeting of Shareholders and a Board of Directors, whose powers, attributes and obligations shall be established by law, the by-laws and the corresponding resolutions.

**C H A P T E R I ---------- GENERAL MEETING OF SHAREHOLDERS -------------**

**ARTICLE 27. JURISDICTION OF THE MEETING.** The General Meeting of Shareholders is the final authority of the Corporation, with the broadest powers to resolve on any matters submitted to it. ---------------- -----------------------------------------------------------

**ARTICLE 28. KINDS OF MEETINGS.** General Meetings of Shareholders shall be ordinary or extraordinary. --------------------------------------------------------------------------------

**ARTICLE 29. NOTICE.** General Meetings of Shareholders shall be called by the Board of Directors, either on its own initiative or at the written and justified request of shareholders representing at least twenty per cent of paid in capital. Meetings can also be called by the Board of Directors at the request of the corporate oversight body, or directly by same, upon the failure of the Board of Directors to call said meeting when requested. ----

Notice shall be given by three discontinuous publications in a newspaper with national circulation, stating the nature of the Meeting, the place, date and time of the meeting, the agenda and the requirements to be met by the shareholders to be able to attend. In no event shall the first publication of the notice be made more than thirty days before the date set for the meeting. The last publication shall be at least five days prior to the date set

[illegible]

**CERTIFICATION BY NOTARY PUBLIC**

**SERIES: I-PJ-FN-2007**

CHAMBER RESOLUTION N° 106 /03-04
VALUE Bs. 2.00
(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class N° 69, Carlos Huanca Ayaviri, 2905200
La Paz Bolivia

7

for the meeting. --------------------------------------------------------------------------------

On a second call the notice shall be published in the press only twice, with the last publication three days prior to the date set for the meeting. Shareholders who are residents of other countries shall be notified by letter, telex or fax sent to their address registered in the Share Registry Book. -----------------------------------------------
--------------------------------

**ARTICLE 30. MEETINGS NOT REQUIRING NOTICE.** Without prejudice to the stipulations contained in the above articles, Meetings of Shareholders, either ordinary or extraordinary, shall be considered legally called to order with no need for notice, if all the shares issued are present or represented. In this case resolutions shall be adopted by the agreement of at least two thirds of the shares issued with a right to vote. ---
-------------------

**ARTICLE 31. PLACE OF THE MEETING:** General Meetings of Shareholders shall take place in the corporate domicile. ------------------------------------------------------------------

**ARTICLE 32: REQUIREMENTS TO ATTEND MEETINGS:** The right to attend the Meetings of Shareholders is established by verifying that the shareholders are registered in the Share Registry Book. -------
------------------------------------------------------------------------

**ARTICLE 33. REPRESENTATION OF SHARES.** In the case of legal entities, any of the individuals with legal power to do so shall represent the owner. Shareholders who for any reason cannot attend a meeting personally can delegate another shareholder or a third party who is not part of the corporation, as their representative. In the first case, a letter power of attorney, a cablegram, a telex or a fax addressed, as applicable, to the officer authorized to act as President or Secretary of the Board shall be sufficient to demonstrate the representative's mandate; the second case shall require a notarized power of attorney. --

**ARTICLE 34. RIGHT TO REVIEW.** From the day following the date of publication of the first notice and until the day preceding verification of the Meeting, shareholders who have accredited their quality as such or their legal representatives, as the case may be, shall have the right to review all historical documents relating to the matters included in the Agenda for the Meeting. --------------------------------------------------------------
--------------

**ARTICLE 35. SUSPENSION OF REGISTRY OF TRANSFERS.** The registry of share transfers is hereby suspended from the date of the last publication of the notice until the day following the date of the meeting, during which time the Registry Share Book shall remain closed. ---------------------------------------------------------
-----------------------------------------

8

**ARTICLE 36. RIGHT TO VOTE.** Each ordinary share grants its holder the right to one vote in the General Meetings of Shareholders. Preferred shares shall have the right to vote only in the cases expressly stated in the Law and in these by-laws. ------------------------------

**ARTICLE 37. BINDING NATURE OF RESOLUTIONS.** Resolutions adopted by the General Meeting are binding on the shareholders present, absent and disagreeing, except for the right to challenge same and to separate in cases of transformation or merger of the Corporation, all in accordance with related provisions of the Commercial Code. --------------

**ARTICLE 38: RIGHT TO SEPARATE.** Shareholders declaring in the minutes their disagreement with resolutions legally adopted during an Extraordinary General Meeting regarding the transformation or merger of the Corporation, or those who did not appear at same, can exercise their right to separate from the corporation. They shall state their intention in writing, addressed to the President of the Board, within the period of maximum fifteen days following the day on which verification of the Meeting takes place. The Corporation shall, with all the formalities specified and within the period marked in Article 16 of these By-laws, offer said shares or purchase by the other shareholders, at the book value corresponding to the last management period prior to the meeting; and if the shareholders do not exercise their right to preference then the shares shall be offered for sale to the public for the period of another thirty days. If the shares are not purchased within the periods stated, then the Corporation shall proceed to conduct a capital reduction in the corresponding proportion. ------------------------------------------------------------------------------

**ARTICLE 39. PRESIDENT OF THE MEETINGS:** General Meetings shall be presided over by the President of the Board of Directors or in his absence or if he cannot act, by the Vice president of the Board. In the absence of the latter officer, then any other Director designated can preside over the meeting. In the event that all of the directors are either absent or unable to preside over the meeting, then the Meeting shall designate a shareholder to preside over the meeting. The Secretary of the Board shall act as Secretary of the meeting, and in his absence the Meeting shall appoint his replacement. -----------------------

**ARTICLE 40. MINUTES.** Deliberations and resolutions of the General Meetings of Shareholders shall be consigned in the Minutes, signed by the President, Secretary and by two representatives of the shareholders appointed by the same Meeting, and

[illegible]                              **CERTIFICATION BY NOTARY PUBLIC**

**SERIES: I-PJ-FN-2007**

CHAMBER RESOLUTION N° 106 /03-04
VALUE Bs. 2.00
(Signature, illegible, cancelled by wet stamp)
Notary Public
1st Class N° 69, Carlos Huanca Ayaviri, 2905200
La Paz Bolivia

9

kept in a Corporate Minute Book. ----------------------------------------------------------------

Minutes of Extraordinary Meetings of Shareholders shall be recorded with the General Registry of Commerce and Share Corporations. ----------------------------------------------------

**ARTICLE 41. ORDINARY GENERAL MEETING.** The Ordinary General Meeting shall meet at least once per year, to deliberate and resolve on the following matters. ---------

1.   Annual report of the Board of Directors. ------------------------------------------------------

2.   General Balance and Profit and Loss Statement. --------------------------------------------

3.   Report of Receivers. -------------------------------------------------------------------------

4.   Handling of operating results. --------------------------------------------------------------

5.   Appointment of Directors, Receivers and External Auditors. ---------------------------

6.   Fix the remuneration and benefits for Directors and Receives. ------------------------

7.   Responsibilities of the Directors and Receivers, if any; and ----------------------------

8.   Resolve on any other matter which is not reserved to the Extraordinary General Meeting of Shareholders or to the Board of Directors. -----------------------------------

In the cases of points 1, 2, 3, 4, 5 and 6 (when applicable), the Meeting shall necessarily be called within the three months following the close of the fiscal year. In any event, a Meeting can be called at any time by any of the bodies referred to in Article 29 of these By-laws. --------------------------------------------------------------

---------------------------------------

**ARTICLE 42. QUORUM AND MAJORITY FOR RESOLUTIONS.** All General Meetings of Shareholders shall be legally constituted with the presence of at least half plus one of the subscribed shares of the corporation. If a quorum is not present at the date and time stated, then a second call will be made in accordance with the requirements established in Article 29 of these By-laws and the Meeting shall be validly called to order with any number of shares present or represented. Resolutions shall be adopted by a positive vote of at least half plus one of the shares present either personally and/or through a representative, with no restriction on expression. Votes that are blank or that are corrupted in any way shall not be valid for the final tally. -----------------------------------------------------

**ARTICLE 43. EXTRAORDINARY GENERAL MEETING.** The shareholders shall meet in an Extraordinary General Meeting whenever considered necessary and to resolve on the following matters which are in their exclusive jurisdiction: ------------------------------

1.   Modify the By-laws; ---------------------------------------------------------------------------

2.  Early dissolution or extension of the life of the corporation; ----------------------------

3.  Increase or decrease in authorized capital and corporate capital; ----------------------

4.  Change the purpose of the corporation; -------------------------------------------------

5.  Issue of new shares; -------------------------------------------------------------------

6.  Issue of bonds; ------------------------------------------------------------------------

7.  Transformation of the Corporation; -----------------------------------------------------

8.  Merger with other corporation(s); ------------------------------------------------------

9.  Appointment, removal and remuneration of liquidators; and ----------------------------

10. Listing the shares of the Corporation on stock exchanges and authorization for public share offering. -----------------------------------------------------------------------

**ARTICLE 44. QUORUM AND MAJORITY FOR RESOLUTIONS.** All Extraordinary General Meetings of Shareholders shall be legally constituted with the presence of at least two thirds of the subscribed shares of the corporation. In accordance with Article 29 of these By-Laws, a quorum on a second or later call shall be considered to exist with the presence of at least one third of the subscribed shares with the right to vote. In any case, resolutions shall be adopted by a positive vote of at least one third of the shares present either personally and/or through a representative whose expression is not restricted. Votes that are blank or that are corrupted in any way shall not be counted in the final tally but shall be counted for determining whether a quorum has been reached. -------------------------

**C H A P T E R III** -------------------- **BOARD OF DIRECTORS** ----------------------------

**ARTICLE 45. COMPOSITION, FORM OF ELECTION.** The Corporation shall be governed, with the broadest powers, by a Board of Directors comprised of seven (7) members, who shall be elected by the Ordinary General Meeting of Shareholders. The same Meeting shall also appoint a substitute director for each of the directors; and said substitute director shall take the place of the director in his absence or if he is not able to act. Substitute directors cannot exercise the positions referred to in Article 47. ---------------------

In accordance with Article 316 of the Commercial Code, the Board of Directors shall be comprised of Directors and their substitutes for the majority, and by directors and their substitutes representing the minority, if and when the minority shareholders represented by the minority directors represent at least twenty per cent of corporate capital with the right to vote in the Meeting. Otherwise all directors and their substitutes shall be elected by the absolute majority

[illegible]

### CERTIFICATION BY NOTARY PUBLIC

**SERIES: I-PJ-FN-2007**

CHAMBER RESOLUTION Nº 106 /03-04
VALUE Bs. 2.00
(Signature, illegible, cancelled by wet stamp)
[illegible]

11

of the shareholders present either personally or through representative in the Meeting and with a right to vote. All shareholders present either personally or through representation with rights to vote can agree on the unanimous election of the board. ---------------------------

For purposes of the foregoing, each vote to elect directors shall be open, public and identifying the shareholders, so that majority and minority shareholders can be determine based on complete lists of candidates proposed by the shareholders. If after the first vote the shareholders listed as a minority do not reach at least the twenty per cent required, then all directors on the majority list shall be elected. ---------------- ----------------------------------------

The minority identified by at least twenty per cent shall meet in a special meeting during the same act, in order to elect the two directors corresponding to them or to ratify the election of the two candidates with the most votes included in their list. This election or ratification shall be by simple majority vote of the minority shareholders present or their representatives in the special meeting. In the event that there is more than one majority representing at least twenty per cent (20%) of the shares, then the one obtaining the largest number of votes in the special meeting shall appoint the minority directors. ------------------

**ARTICLE 46. OFFICERS.** In the first meeting after each General Meeting of Shareholders which appoints directors, the directors shall choose a President and a Vice president from among themselves, and the directors shall also appoint a Secretary who need not be a director. ------------------------------------------------------- --------------------------------------

**ARTICLE 47. PRESIDENT.** The President of the Board of Directors is the legal representative of the corporation, without prejudice to the delegation of powers provided in Article 62 of these By-laws. The President shall preside over the meetings of the Board and the Meetings of Shareholders of the Corporation. The President can be appointed by the Board, as the principal executive officer of the corporation, with the title "Executive President". ----------------------------------------------------------------------------

**ARTICLE 48. VICE PRESIDENT.** The Vice President of the Board of Directors shall substitute the President in his functions whenever he is absent, unable to act, or upon his death. --------------------------------- ----------------------------------------------------------------------

**ARTICLE 49. SECRETARY.** The Secretary shall be responsible for drafting the minutes of all meetings of the Meetings of Shareholders and the Board of Directors, and shall keep the Share Registry Book. The Secretary shall handle the correspondence

12

regarding all matters entrusted to him, issue certificates and keep the records of the corporation, exercising all the powers and obligations provided in these by-laws. ------------

**ARTICLE 50. ELIGIBILITY REQUIREMENTS AND PROHIBITIONS.** Directors of the corporation are not required to be shareholders of the corporation. Functions of the directors are essentially personal and cannot be exercised by delegation. -----------------------

**ARTICLE 51. DURATION OF OFFICE.** The members of the Board of Directors shall remain in office for two years, and can be re-elected indefinitely. However, their mandate shall be considered to be tacitly extended until their substitutes can take possession of their positions. ------------------------------------------------- ----------------------------------------------

**ARTICLE 52. TERMINATION OF MANDATE.** Directors can be removed from their positions at any time by decision of their electors. Directors shall also cease their functions by resignation, when facing a legal or permanent physical impediment and when they take up activities that clash or compete with the corporate purpose without proper authorization from the same Meeting that appointed them. A new director shall be consequently appointed to take possession of the position. ----------------------------------------------------

**ARTICLE 53. REMUNERATION AND BOND.** The Ordinary General Meeting of Shareholders shall resolve on the amount of per diems payable to the directors. To take his position, each director shall provide a bond payable to the corporation, in the form and the amounts resolved by the Ordinary Meeting of Shareholders. -------------------------------------

**ARTICLE 54. LIABILITY.** The directors shall be jointly responsible without restriction to the corporation, the shareholders and to third parties, for the following: --------------------

1.    Ill performance of their functions, as provided in Article 164 of the Commercial Code. ---------------- --------------------------------------------------------------------

2.    Failure to comply or violation of laws, by-laws, regulations or resolutions of the Meetings. ------------ --------------------------------------------------------------------

3.    Damages caused by malfeasance, fraud, serious fault or abuse of their powers. ------

4.    Any distribution of profits in violation of Article 168 of the Commercial Code. -----

Any proceeding filed by the corporation against the directors shall be with the prior approval of the Ordinary Meeting of Shareholders, which shall appoint the party or parties responsible for carrying out said proceeding. ----------------------------------------------------------

*[Stamp: first stamp illegible.*
*Stamp: 1st Class. No. 69. Dr. Carlos Huanca Ayaviri. 29052006 Public Notary's Office, La Paz, Bolivia.*
*Illegible signature][1]*

13

The action for liability does not extend to dissenting directors who have recorded their dissent in the Minutes.

The liability of the directors to the company is extinguished by approval of their management, abandonment or agreement resolved on by the General Meeting of Shareholders.

**ARTICLE 55: MEETINGS.** The Board of Directors will meet as many times as required in the company's interests but at least once every three months, by written notice of its Chairman or of two of its members. However, the Board of Directors will validly meet at any time, without the need for a notice, if all the members thereof are present.

**ARTICLE 56: QUORUM, RESOLUTIONS AND RIGHTS OF THE DIRECTORS.** Without prejudice to the provisions of Article 57, the company's Board of Directors will validly meet and make decisions if at least four of its members are present and pass a favorable vote. Each director has the right to one vote.

**ARTICLE 57: RESOLUTIONS THAT REQUIRE A SPECIAL MAJORITY.** The following resolutions of the Board of Directors must be passed by a special majority, consisting of the favorable vote of at least five directors, which must necessarily include the favorable vote of at least one director appointed by the minority shareholders:

1.      Transfer or encumbrance of movable or immovable property of the company that has a market value in excess of five per cent (5%) of the fixed assets of the company in a single transaction or ten per cent (10%) for aggregated transactions in a single financial period.

2.      Agreement for any kind of transaction with the same natural or legal person, the amount of which, alone or jointly in a single financial period, exceeds twenty per cent (20%) of the gross revenue of the company, adjusted according to inflation, obtained in the preceding financial period or thirty (30) million dollars of the United States of America, whichever is less.

3.      The granting of guarantees in favor of shareholders or third persons, whether individually or collectively, apart from guarantees in favor of subsidiaries in which the company owns the majority of the company capital.

4.      Entry into contracts or the undertaking of any transaction with the following persons, when the amount    in    a    single    transaction    exceeds    five    per    cent    (5%)    of    the    gross

---

[1] Translator's Note: the illegible stamp and the Notary's stamp appear on some but not all of the pages of this document

14

revenue of the company (adjusted according to inflation) obtained in the preceding financial period or overall in a single financial period ten per cent (10%) of the gross revenue of the company (adjusted according to inflation) obtained in the preceding financial period:

a) Shareholders holding three per cent (3%) or more of the company capital or the filials or subsidiaries thereof.

b) The Directors, whether principal or deputy Directors, of the company or of companies in which it has a holding, whether directly or indirectly.

For the purposes of this letter, filial or subsidiary will mean a person who, whether directly or indirectly through one or more intermediaries, controls, is controlled by or is under the common control of these shareholders.

5.  The contracting of loans in local or foreign currency, in the Republic of Bolivia or abroad, for a sum that exceeds ten per cent (10%) of the net worth of the company.

6.  The appointment of external auditors for their consideration and approval by the Ordinary Meeting of Shareholders and for fixing of their remuneration.

7.  A recommendation to the Extraordinary Meeting of Shareholders to submit an application for liquidation or for the commencement of preventive liquidation proceedings.

8.  The abandonment of legal or arbitration proceedings in which the company acts as claimant or settlement or compromise in these proceedings, when the sum involved exceeds the equivalent of one per cent (1%) of the net worth of the company.

9.  The execution of any act or contract by the company that exceeds the equivalent of twenty five per cent (25%) of the net worth of the company.

10. The amendment, assignment (or) determination of contracts of concession or licenses granted by the Telecommunications Inspectorate for the provision of services relating to the object of the company.

11. The acquisition of or share in the capital of other companies and also association by any other method with persons, whether individually or collectively, for the joint development of projects or business, apart from the constitution of subsidiaries by requirement of a legal rule or competent authority.

15

12.    The granting of powers, mandates or powers of representation of any kind.

**ARTICLE 58: MINUTES.** The deliberations and resolutions of the Board of Directors will be recorded in Minutes transcribed in a special book and will be validated by the signatures of the Chairman, Secretary and all the Directors present, including those who have expressed their dissent concerning any of the matters discussed.

**ARTICLE 59: POWERS AND RESPONSIBILITIES OF THE BOARD OF DIRECTORS.**    The Board of Directors is given the widest powers and has all the authorities and powers necessary to manage the company's activities, without any reservation or limitation other than those expressly established in legal provisions or that, according to these Articles of Association or the law, are in the exclusive competence of the General Meeting of Shareholders. Without limitation to the above, the following are powers and responsibilities of the Board of Directors.

1.    To represent the company legally, whether judicially or extrajudicially, through its Chairman and other attorneys, without any limitation.

2.    To direct and administer, with full powers, the business and activities of the company, with the widest powers to execute all acts, contracts and transactions aimed at achieving the company object.

3.    To carry out judicial and extrajudicial acts, with the power to bring proceedings, continue the proceedings before any kind of authority, with sufficient legal standing and without any limitation to abandon, allow abandonments, settle, submit issues to arbitration, make use of all the ordinary and extraordinary remedies allowed by laws at all the levels and instances thereof and, for all cases where the laws require special powers, the powers granted to them by this Article will be sufficient and the express lack of powers will not imply any limitation to their wide administrative power.

4.    To buy, sell, exchange, hire, lease, give and assign; create, accept and transfer pledges, mortgages and any in rem right of guarantee; to import; to authorize new transactions; to sign any kind of contract.

5.    To take precautionary measures in respect of, care for and protect the property, rights and interest of the company.

6.    To invest funds and, for this purpose, to acquire, sell and transfer all kinds of deeds representing securities, whether national or foreign; to buy and sell shares or holdings in other companies, on the sole condition that any investment to be made

16

incorporates the limitation of liability of the shareholder sup to the amount of their contributions.

7.  To appoint the executive personnel, attorneys, representatives and administrators, fixing in each case their powers, remuneration and obligations and giving them authority and powers for the proper performance of their functions.

8.  To manage, obtain and grant loans and financing, whether from banking or financial institutions or any natural or legal, national, foreign or international persons, with subjection to the respective regulations and granting or requiring personal or real guarantees or pledge or mortgage guarantees; to carry out any kind of banking transaction, such as issuing, endorsing, renewing, collecting on, protesting and depositing checks; to issue, accept, renew, endorse, guarantee, protest and collect on bills of exchange, promissory notes and other commercial documents; to apply for and obtain proofs, vouchers, current account credits, insurance policies, negotiating, executing and signing the respective instruments.

9.  To acquire movable and immovable property, to enter into contracts for services, works, consignment, supplies, transport, insurance and business management.

10. To form and administer companies on it sown account and on account of third parties and to have holdings in companies that are already constituted.

11. To grant general and special powers to natural or legal persons, delegating their powers in part.

12. To give notice of Ordinary and Extraordinary General Meetings of Shareholders.

13. To approve the regulations of the company and to propose changes to the Memorandum of Association and the Articles of Association.

14. To appoint the persons authorize to use the company signature in representation of the company, granting the necessary powers to them.

15. To establish or remove operations, agencies, branches and offices, within or outside the country.

16. To appoint its Chairman, Vice-Chairman and Secretary.

17. To supervise the administrative, technical, financial and employment movement in the charge of the executive bodies.

17

18.    To grant awards and extraordinary payments according to the results of the management or performance of the company's operations.

19.    To prepare and submit for the Meeting of Shareholders' consideration the annual report for each management, the general balance sheet, financial statements and all the information relating to the performance of the company's operations and arranging publication thereof within the ninety days after they have been considered by the Ordinary General Meeting of Shareholders.

20.    To propose to the Meeting of Shareholders the creation of ordinary or extraordinary reserves, distribution of profits or reinvestment thereof, whether in whole or in part.

21.    To comply with and ensure compliance with all legal and regulatory provisions and provisions of the Articles of Association that govern the performance thereof and to comply with and execute the resolutions of the General Meetings of Shareholders.

22.    To keep a special book with the Minutes of their deliberations and resolutions and a book corresponding to the Meeting of Shareholders.

23.    To create an executive committee and/or other committees that it considers appropriate for the best possible management of the company's line of business, fixing the powers and methods of operation thereof in each case.

24.    To approve the remuneration of the external auditors.

25.    All other powers and responsibilities that, without having been expressly determined in the above subsections, which are not restrictive, are given to them impliedly so that they may perform the functions entrusted to them.

**ARTICLE 60: DELEGATION OF POWERS.** The Directors may delegate, to one or more of their members, managers, administrators, attorneys or third parties, in whole or in part, the powers granted to them by the Articles of Association, apart from those which, by their nature, provision of law or Articles of Association, are exclusive to their function.

**ARTICLE 61: PROHIBITIONS.** The directors are prohibited from committing the company signature in transactions outside the [particular line of business of the company, with responsibility for damages, unless there is express resolution to the contrary resolved by the General Meeting of Shareholders.

**ARTICLE 62: REPRESENTATION.** Unless there is express resolution to the contrary, public and private contracts, powers and instruments in general that are executed by the Board

18

of Directors will require the signature of the Chairman and of the Secretary in order to be valid.

**CHAPTER III          EXECUTIVE BODIES**

**ARTICLE 63: FUNCTIONS.** The executive functions and management of the business of the company object will be the responsibility of the Chairman of the Board of Directors, if appointed by the Executive Chairman, of tone or more managers, administrators or attorneys, as determined by the Board of Directors, by express resolution which fixes the respective powers, authorizations, obligations and remuneration and the relevant powers must be granted to them, where appropriate, in accordance with the provisions of Article 61 of these Articles of Association.

**TITLE V          INSPECTION OF THE COMPANY**

**ARTICLE 64: POSITION OF THE SHAREHOLDERS' REPRESENTATIVE:** The company will have two principal shareholders' representatives and an equal number of deputies, as decided by the Ordinary Meeting of Shareholders. Minority shareholders who, overall, represent at least twenty per cent of the company capital with the right to vote, have the right to appoint a shareholders' representative for the minority. For the above purposes, any vote for the election of shareholders' representatives will be undertaken openly, publicly and with identification of the shareholders, so that the majority shareholders and minority shareholders may be determined, on the basis of the candidates proposed by the shareholders. If the first vote is taken and the candidate of the minority shareholders does not have at least the required twenty per cent, the candidates proposed by the majority will be elected.

The minority identified by at least twenty per cent will meet at a special meeting in the same act, in order to elect the shareholders' representative that corresponds thereto to ratify as elected the candidate with the most votes who appears on their list. The election or ratification will take place by a simple majority of votes of the minority shareholders who are present or represented at the special meeting. If there is more than one minority that represents at least twenty per cent (20%) of the shares, the one that obtains the greatest number of votes at the special meeting will appoint the shareholders' representative.

**ARTICLE 65: INSPECTION COMMITTEE.** All the shareholders' representatives will act as an associated body under the name of "Inspection Committee", which must meet at least once every three months, when called by any of its members and it must draw up Minutes of its meetings and this will be done by one of its members chosen for the purpose. These Minutes must be signed by all the shareholders' representatives. The dissenting shareholders' representative may individually exercise the duties and powers that correspond to his position,

19

Without prejudice to the work of the Inspection Committee, the shareholders' representatives will perform their duty independently and without preference.

**ARTICLE 66: REQUIREMENTS OF ELIGIBILITY AND LIMITATIONS.** It is not necessary to be a shareholder in order to be a shareholders' representative in the company. No director or manager of the company or the spouses or relations thereof up to the fourth degree of consanguinity and the second degree of affinity according to civil calculation may perform the functions of the shareholders' representative. There is also incompatibility between the functions of the shareholders' representatives and the performance of any permanent paid position in the company.

**ARTICLE 67: DURATION AND TERMINATION OF THE MANDATE.** The shareholders' representatives will remain in their positions for the period of two years and may be re-elected indefinitely.

Shareholders' representatives may be removed from their functions at any time by decision of the Ordinary General Meeting of Shareholders.

**ARTICLE 68: REMUNERATION AND GUARANTEE.** The shareholders' representatives will receive the remuneration and provision (of[2]) the guarantee resolved by the Ordinary General Meeting of Shareholders.

**ARTICLE 69: FUNCTIONS.** The shareholders' representatives will perform the functions of permanent inspection in accordance with the provisions of the Commercial Code.

**ARTICLE 70: SUPERVISION AND CALLS TO MEETINGS.** The shareholders' representatives will confirm performance of all the requirements that the law and Articles of Association indicate for notice of Meetings and recording of resolutions. In the absence of the Board of Directors and when it[3] considers it necessary, it[4] may call Ordinary and Extraordinary General Meetings of Shareholders and will of necessity agree to[5] the dissolution and liquidation of the company.

**ARTICLE 71: LIABILITIES.** The shareholders' representatives are, without limitation and jointly and severally liable for failure to comply with the obligations stated by the law and the Articles of Association. They are also jointly and severally liable with the directors for the acts or omissions thereof, even where there is no harm caused.

**TITLE VI      BALANCE SHEETS: RESERVE FUNDS AND DIVIDENDS**

**ARTICLE 72: GENERAL BALANCE SHEET.** At the end of each financial management period, the financial statements for all the company's operations will be prepared, including

20

---

[2] Translator's Note: error here in source text. *Prestación la fianza* – literally, *provision the guarantee* – either: *will provide the guarantee* or *provision of the guarantee*

[3] Translator's Note: *they*?

[4] Translator's Note: *they*?

[5] Translator's Note: *concurrir – agree to* or *attend/participate in*

the general balance sheet and the profit and loss account and these documents will be submitted by the executive bodies of the company to the Board of Directors before they are verified by the Ordinary General Meeting of Shareholders. The Board of Directors will submit the documents referred to above to the consideration of the Meeting, together with the Annual Report for the corresponding management period.

**ARTICLE 73: CERTIFICATION OF THE BALANCE SHEET AND EXTERNAL AUDIT.** The general balance sheet for the company's operations that is submitted to the General Meeting of Shareholders, as established in the preceding paragraph, must be certified by a registered firm of external auditors, which is appointed by the Ordinary General; Meeting at the proposal of the Board of Directors.

**ARTICLE 74: RESERVE FUNDS.** A minimum of five per cent of the actual, net profits for each management period will compulsorily be allocated to create a legal reserve fund up to coverage of fifty per cent of the paid capital. The Ordinary General Meeting of Shareholders may order the creation of their reserves, whether ordinary or extraordinary.

**ARTICLE 75: DIVIDENDS.** It is a power exclusive to the Ordinary General Meeting of Shareholders to determine the allocation of the company profits.

When the Meeting decides on the distribution of dividends, this will take place in proportion to the paid amount of the shares.

**TITLE VII        DISSOLUTION, LIQUIDATION AND PARTICIPATION**

**ARTICLE 76: DISSOLUTION.** The dissolution of the company will be resolved upon at an Extraordinary General Meeting of Shareholders, expressly called for the purpose, for the following reasons:

1.      Resolution of the shareholders passed at an Extraordinary General Meeting.

2.      Expiry of the term of the company, unless there is an extension.

3.      Insuperable impossibility of performing the company object.

4.      Loss of capital, in accordance with the provisions of Article 351 of the Commercial Code, except for repayment or increase.

5.      Declaration of liquidation, except for entry into preventive agreement.

6.      Merger, resolved upon by an Extraordinary General Meeting of Shareholders.

7.      Reduction of the shareholders to less than three, unless new shareholders join within a period of three months.

**ARTICLE 77: LIQUIDATION COMMITTEE.** Where a resolution has been passed for dissolution of the company, a Liquidation Committee will be appointed, entrusted with concluding all the outstanding operations and business of the company.

**ARTICLE 78: LEGAL REPRESENTATIVE.** The Liquidation Committee will have legal representation of the company, without any limitation, in all acts, transactions and contracts that it catties out with a view to performing its task.

**ARTICLE 79: COMPOSITION.** The appointment of the Liquidation Committee is governed by the provisions of these Articles of Association, applicable to the appointment of the directors of the company.

Persons who have previously performed management or administration functions in the company and also shareholders or third parties outside the company may be appointed as members of the Liquidation Committee and the resolution must be registered with the Directorate General of the Commerce and Share Companies Registry.

**ARTICLE 80: FUNCTIONS.** The Liquidation Committee will have wide powers to conclude all transactions within the company's line of business and to realize the company's property in the way that it considers most appropriate and advantageous. It will have the same powers and authorities as the Board of Directors, the members of which will cease their functions when the Liquidation Committee assumes them.

**ARTICLE 81: RESOLUTIONS OF THE LIQUIDATION COMMITTEE.** The resolutions of the Liquidation Committee will be passed by an absolute majority of votes. The transactions and contracts that require a special majority when the Board of Directors votes, that must be carried out as part of the liquidation process, will also require a special majority when the Liquidation Committee votes.

**ARTICLE 82: LIQUIDATION ACCOUNTS.** The Liquidation Committee will keep a complete inventory and will draw up a liquidation balance sheet within thirty days after taking on the position. However, this period may be extended up to one hundred and twenty days by resolution of the Extraordinary General Meeting of Shareholders. The Liquidation Committee will give an account to the shareholders of the liquidation process, by means of reports that it will make available to the Extraordinary General Meeting, according to the periods established by this Meeting but at least every three months.

**ARTICLE 83 LIMITATIONS AND RESPONSIBILITIES.** The members of the Liquidation Committee are categorically prohibited from carrying out new transactions or

22

transactions not connected to the liquidation and are liable to the company and to third parties for damages and losses that they may cause to the property and interests which they are commissioned to handle and manage.

**ARTICLE 84: DURATION OF THE MANDATE.** The functions of the Liquidation Committee will last for the time required to conclude the liquidation operations. Its members will cease in their mandate for the following reasons:

1.      The liquidation has concluded;

2.      Resignation; and

3.      Removal from their functions at any time by decision of their principals.

**ARTICLE 85: FINAL REPORT AND ASSET DISTRIBUTION PLAN.** To the extent that company property is realized, the Liquidation Committee will pay the company's liabilities. Once the whole of the liabilities is covered or to the extent that the realized property covers them. The Liquidation Committee will submit its report, the balance sheet and the asset distribution plan to the Extraordinary General Meeting of Shareholders, determining the amount of the liquid assets, if any, and proposing the method of distribution of the net assets. The report will also be signed by the shareholders' representatives and the meeting may approve or reject the accounts of the liquidation. Distribution of the liquid assets will be made proportionally to the number of shares that each shareholder owns. Distribution will proceed upon approval of the distribution plan by the Extraordinary Meeting of Shareholders. All the final documents prepared by the Liquidation Committee will be registered with the Directorate General of the Commerce and Share Companies Registry.

**ARTICLE 86: EXTINGUISHMENT OF LEGAL PERSONALITY.** The liquidators will handle the cancellation of the company with the Directorate General of the Commerce and Share Companies Registry, as soon as the liquidation ends and the legal personality of the company will be extinguished as from that time.

**TITLE VIII                              GENERAL PROVISIONS**

**ARTICLE 87: ARBITRATION.** Apart from matters relating to liquidation of the company, change of the company object, exclusion and retirement[6] of shareholders and the legal situation of the company, all disagreements or conflicts that arise between the company and the shareholders concerning the interpretation or application of the stipulations as to company control, the Articles of Association and also legally introduced subsequent amendments or

---

[6] Translator's Note: *retiro – retirement/withdrawal*

23

the resolutions of the General Meetings of Shareholders, will be resolved by arbitration in accordance with the provisions of the Commercial Code. The arbitrators will act as friendly mediators and must make their pronouncements in accordance with equity. The parties may agree arbitration proceedings other than those envisaged in this Article, to the extent recognized by law.

The arbitration award that is pronounced in a single phase cannot be appealed and will be final and the parties expressly renounce legal channels except for the enforcement of the arbitration award. The usual expenses of the arbitration, of both parties, will be paid by the party against whom the award is made.

**ARTICLE 88: SUBMISSION TO SPECIAL LEGISLATION.** All matters not provided for in these Articles of Association will be governed by the provisions of the Commercial Code and other relevant rules.

**APPLICATION AND COURT ORDER.** It has two court stamps, cancelled, attached here. **THE CIVIL INVESTIGATING JUDGE. BY TURN. APPLIES FOR COURT ORDER. FURTHER ADDITIONAL PETITIONS.** The content thereof. **JAVIER MARTIN CASTRO ZACONETA**, with I.C. No. 3472054 L.P., of full age and legally competent, resident of this city. Attorney of the Empresa Nacional de Telecomunicaciones "ENTEL S.A.", according to Special and Sufficient Power No. 501/2006 dated 16 October 2006, which I attach to this document of request. I appear before your Honor on behalf of the company which I represent and, with all due respect, I state and request as follows:

**COURT ORDER.** Your Honor, under Art. 7, subsec. H) of the Political Constitution of the State, I respectfully ask Your Honor to make an ORDER requiring Notary Publics' Office No. 069, in the charge of Dr. Carlos Huanca Ayaviri, keeper of the files of the former Public Notary, Mrs. Luz Villarpando de Ugrinovic, to issue me with ten copies of the Articles of Association of Empresa Nacional de Telecomunicaciones Sociedad Anónima ("Entel S.A."), which form an integral part of Public Deed No. 131/2005 of 21 September 2005 and, for this purpose, I declare my compliance with the legal guarantees.

**FIRST ADDITIONAL PETITION.** I prove a legal interest, by reason of the fact that the company which I represent needs to have this internal legal instrument for the performance of its functions and also in order to carry out administrative procedures and other activities

24

inherent to the company's line of business.

**SECOND ADDITIONAL PETITION**. In order to prove my legal interest, I attach Public Deed No. 131/2005 of 21/09/05 in original copies and Evidence of Power 501/2006, which proves my power of representation.

**THIRD ADDITIONAL PETITION**. I state my domicile in the Clerk's Office of your Court. According to the legal formalities. Justice. La Paz, January 2008. Signature and stamp: Emeterio Alí Apaza. LAWYER. M.C.A. 006266. NIT: 2568387017. Signed: JAVIER MARTIN CASTRO ZACONETA. I.C. 3472054 LP.

**FOLLOWING CHARGE**[7]: 1st CIVIL INVESTIGATING JUDGE'S COURT. Received on the date twenty sixth January of the year 2008. ten o'clock. Received by: Signed – illegible.

**RELEVANT DECREE**: La Paz, 26 March 2008. Before Public Notary's Office No. 069, in the charge of Dr. Carlos Huanca Ayaviri, present keeper of the files of the former Public Notary, Mrs. Luz Villarpando de Ugrinovic, there shall be issued ten copies of the Articles of Association of ENTEL S.A., Public Deed No. 131/2005 dated 21 September 2005, according to the usual formalities. To Additional Petitions 1 and 2. To be accepted as attached. To the Additional Petition. Accepted as stated. Signature and stamp. Mrs. Consuelo Cuellar Müller. 1st CIVIL INVESTIGATING JUDGE. La Paz, Bolivia. Before me: Signature and Stamp: Mrs. Yola Mery Lima Villa. CLERK-LAWYER. 1st Civil Investigating Judge's Court. LA PAZ, BOLIVIA.

**ACCORDANCE:** This Legalized Copy accords with the original Articles of Association that are inserted in Public Deed No. 131/2005, which I refer to, if necessary and it is issued at the request of the interested party and by court order transcribed above and after comparison and correction, faithfully and legally, so that it is of value and bears witness, I certify, stamp and sign it in the city of La Paz, on the twelfth day of the month of March of the year two thousand and eight. I bear witness thereto.

*[Stamp: 1st Class. No. 69. Dr. Carlos Huanca Ayaviri. 29052006 Public Notary's Office, La Paz, Bolivia. Illegible signature]*

*[Stamp: Dr. Carlos Huanca Ayaviri. Lawyer 29052006. Public Notary of 1st Class No. 069. La Paz, Bolivia. Illegible signature]*

---

[7] Translator's Note: *cargo que le sigue* – this literally jeans *position that follows him*

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of   Chamber Resolution No. 106 / 03-04   written in Spanish  .

New York, June 05, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 05, 2008.

_____
SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

# REPUBLICA DE BOLIVIA



Nº 4175439

## PODER JUDICIAL DE LA NACION
### CONSEJO DE LA JUDICATURA

# CARATULA NOTARIAL

*Resolución Camaral Nº 106 / 03-04*

VALOR **Bs 5.-**

Serie  G - PJ - CN - 2007

TESTIMONIO Nº _____

DISTRITO JUDICIAL DE LA PAZ - BOLIVIA _____

NOTARIA DE PRIMERA CLASE  Nº 069  NOTARIO CARLOS HUANCA AYAVIRI

TESTIMONIO DE  COPIA LEGALIZADA DE PARTES PERTINENTES DE LA ESCRITURA PUBLICA No. 131/2005, CORRESPONDIENTE A LOS ESTATUTOS DE LA SOCIEDAD ANÓNIMA EMPRESA NACIONAL DE TELECOMUNICACIONES S.A. (ENTEL S.A.), QUE SE EXPIDE POR ORDEN JUDICIAL Y A PETICION DE LA PARTE INTERESADA. ----------

LUGAR Y FECHA  LA PAZ, 12 DE MARZO DE 2008

Calle Colon, Edif. Colon No.330, 1er. Piso Of. 106 - Telf./Fax 2205366-2118262 C.P.2723/465

Serie I-PJ-FN-2007

RESOLUCIÓN CAMARAL N° 106/03-04

VALOR Bs. 2.-

PODER JUDICIAL
DE BOLIVIA

1

"CORRESPONDE"

COPIA LEGALIZADA DE PARTES PERTINENTES DE LA ESCRITURA PUBLICA No. 131/2005,
CORRESPONDIENTE A LOS ESTATUTOS DE LA SOCIEDAD ANÓNIMA EMPRESA NACIONAL
DE TELECOMUNICACIONES S.A. (ENTEL S.A.), QUE SE EXPIDE POR ORDEN JUDICIAL Y A
PETICION DE LA PARTE INTERESADA.------------------------------------------------------------
*************************************************************************************

ESTATUTO DE LA EMPRESA NACIONAL DE TELECOMUNICACIONES S.A. (ENTEL S.A.)
TITULO I-------------------------------------------------------------- ...... . ------------
ORGANIZACIÓN , DENOMINACIÓN, DOMICILIO Y DURACIÓN ---------------------------
ARTICULO 1: ORGANIZACIÓN  Y DENOMINACIÓN.- Entre los accionistas que figuran
como otorgantes del Contrato Constitutivo, y los que en lo sucesivo se adhieran al
mismo, se constituye una Sociedad anónima bajo la denominación de  EMPRESA
NACIONAL DE TELECOMUNICACIONES SOCIEDAD ANÓNIMA, cuya sigla será "ENTEL
S.A."----------------------------------------------------------------------------------------

ARTICULO 2: DOMICILIO.- El domicilio legal de la Sociedad queda establecido en la
ciudad de La Paz, República de Bolivia, pudiendo constituir sucursales, agencias y
oficinas en cualquier otro lugar de la República y fuera de ella. ------------------------

ARTICULO 3: OBJETO.- La Sociedad tendrá por objeto principal el realizar por cuenta
propia, ajena y/o asociada con terceros, la explotación y operación de toda clase
de redes de telecomunicaciones y la prestación de toda clase de servicios de
telefonía, telegrafía, télex, facsímil y demás servicios de telecomunicaciones.  En
desarrollo de dicho objeto, la sociedad podrá dedicarse al diseño, instalación,
conservación, refacción, mejora, adquisición, enajenación, interconexión, gestión,
administración, y cualquier otra actividad no incluida en la numeración precedente,
respecto de toda clase de líneas, satélites, recibidores y transmisores inalámbricos,
equipos, sistemas de infraestructura técnica de telecomunicaciones y la
comercialización de sus servicios auxiliares o complementarios relacionados con
telecomunicaciones, así como la edición, impresión, distribución y comercialización
de directorios telefónicos.  Asimismo, el desarrollo de su objeto la Sociedad podrá

realizar para sí o para terceros, trabajos de procesamiento de datos e investigación, desarrollo, promoción y aplicación de toda clase de principios, componentes, equipos y sistemas utilizados directa o indirectamente para las telecomunicaciones, así como el cumplimiento y ejecución de cualquier acto o gestión vinculado o relacionado directa o indirectamente a dichas actividades.------------------

ARTICULO 4: DURACION.- La sociedad tendrá una duración de noventa y nueve años, computable desde la fecha de la inscripción en la Dirección General del Registro de Comercio y Sociedades. El plazo de duración de la Sociedad podrá se prorrogado, por resolución de una Junta General Extraordinaria de Accionistas. --------------

TITULO II ------------------------- CAPITAL Y ACCIONES -----------------------------

ARTICULO 5: CAPITAL AUTORIZADO Y VALOR NOMINAL DE LAS ACCIONES.- El capital autorizado de la Sociedad es de Bolivianos Dos mil quinientos sesenta y un millones setecientos noventa y siete mil seiscientos 00/100 (Bs. 2.561.797.600,00). Conforme se realicen los aportes de capital, se emitirán acciones necesariamente nominativas, con un valor nominal de Cien Bolivianos 00/100 (Bs. 100,00) cada una. ------ --------

ARTICULO 6: AUMENTO O REDUCCION DEL CAPITAL AUTORIZADO.- El capital autorizado podrá ser aumentado o reducido de acuerdo al desarrollo de las actividades de la Sociedad, mediante resolución de una Junta General Extraordinaria de Accionistas convocada especialmente a tal objeto. Para resolver su aumento, las acciones emitidas hasta el monto del capital autorizado existente, deberán estar íntegramente suscritas. ------------------------------

ARTICULO 7: AUMENTO DEL CAPITAL SOCIAL.- Todo aumento del capital social, hasta el monto del capital autorizado, requerirá la aprobación de una Junta General Extraordinaria convocada al efecto. --------------------------

ARTICULO 8: REDUCCION DEL CAPITAL SOCIAL.- La reducción del capital social podrá ser: --------------------------

1. Voluntaria; --------------------------

2. Por Pérdidas; y ------------------------

3. Obligatoria. ---------------------------

En el primer caso se realizará por decisión de una Junta General Extraordinaria y con la autorización de la Dirección General del Registro de Comercio y Sociedades por Acciones. --------------------------

En el segundo caso, con iguales requisitos, se realizará en el monto de las pérdidas

FORMULARIO NOTARIAL

(Serie I-PJ-FN-2007)

RESOLUCION CAMARAL N° 106/03-04

VALOR BS 2

3

sufridas siempre que ellos no alcance el cincuenta por ciento del capital social.--------

En el tercer caso, cuando las pérdidas superen el cincuenta por ciento del capital social más las reservas libres, cumpliendo las formalidades establecida por el artículo 354 del Código de Comercio. ------

**ARTICULO 9: CLASES DE ACCIONES.-** Las acciones de la Sociedad pueden ser ordinarias o preferidas. Las acciones preferidas son las que establecen beneficios preferenciales para sus titulares. ------

**ARTICULO 10: TITULOS.-** Las acciones estarán representadas por títulos correlativamente numerados, que necesariamente consignarán lo siguiente:------

1. Nombre del accionista; ------

2. Denominación, domicilio, fecha y lugar de constitución y duración de la Sociedad.------

3. Matricula de inscripción en la Dirección General del Registro de Comercio y Sociedades por Acciones.------

4. Monto del capital autorizado y del capital social. ------

5. Valor nominal de cada acción; ------

6. Número de acciones que representa; ------

7. Su condición de acción ordinaria o preferida; ------

8. Lugar y fecha de emisión del título; ------

9. Número correlativo del título; ------

10. Firmas del Presidente, del Secretario del Directorio y del Síndico. ------

**ARTICULO 11: EMISION DE TITULOS.-** Los títulos definitivos o certificados representativos de las acciones no podrán ser emitidos si el valor que representan no ha sido pagado en su integridad. En tanto los suscriptores no completen el pago de las acciones, se les otorgará certificado provisionales de suscripción, los mismos que serán necesariamente nominativos y que contendrán iguales detalles de los títulos definitivos. ------

**ARTICULO 12: PAGO DE APORTES COMPROMETIDOS.-** Los suscriptores de acciones deberán pagar los aportes a que se hubiesen obligado, dentro de los plazos convenidos en los contratos de suscripción y sujetándose a las penalidades pactadas en caso de incumplimiento. ------

**ARTICULO 13: INDIVISIBILIDAD DE LAS ACCIONES.-** Las acciones son indivisibles. Si una acción pertenece en común a varias personas, deberá ser representada por una

4

sola de ellas, pero la totalidad de los propietarios serán responsables en forma solidaria e indivisible ante la Sociedad, con referencia a todas las obligaciones inherentes a su calidad de accionista.------------------------------------------------

**ARTICULO 14: LIBRO DE REGISTRO DE ACCIONES.-** La Sociedad llevará un Libro de Registro de Acciones que estará a cargo del Secretario del directorio, con las formalidades de los libros de contabilidad, de libre consulta para los accionistas, el cual contendrá:----------------------------------------------------------------------------

1. Nombre, nacionalidad y domicilio del accionista.------------------------------------

2. Número, serie y demás particularidades de las acciones. -----------------------------

3. Nombre del suscriptor y estado del pago de las acciones. ---------------------------

4. Detalle de las transmisiones, con indicación de fechas y nombres de los adquirientes. -----------------------------------------------------------------------

5. Gravámenes que se hubieran constituido sobre las acciones. -------------------------

6. Conversión y canje de los títulos, con los datos que correspondan a los nuevos. ------

7. Cualquier otra mención que derive de la situación jurídica de las acciones y de sus eventuales modificaciones. ----------------------------------------------------------

Las partidas que se asienten en dicho Libro deberán llevar la firma del Secretario de Directorio. ---------------------------------------------------------------------------------

**ARTICULO 15: TITULOS DUPLICADOS.-** En caso de pérdida o destrucción de títulos o certificados, la sociedad expedirá los duplicados respectivos, previo cumplimiento de las formalidades previstas en el Código de Comercio, debiendo anotarse esta circunstancia en el Libro de Registro de Acciones. La reposición de títulos de las acciones se efectuará a costa del interesado. ----------------------------------------------

**ARTICULO 16: DERECHO DE PREFERENCIA EN NUEVAS EMISIONES.-** En toda oportunidad en que se acuerde la emisión de nuevas acciones, y de bonos convertibles en acciones, la Sociedad deberá ofrecerlas mediante publicación en un órgano de prensa de circulación nacional, por tres días consecutivos. Los actuales accionistas tendrán derecho preferente para suscribirlas en proporción al número de acciones que posean, dentro del plazo que al efecto e establezca, el mismo que no podrá ser menor a treinta días, computables desde la fecha de la última publicación. --- -------

**ARTICULO 17: DERECHOS DE LOS ACCIONISTAS.-** Las acciones de una misma clase serán iguales y otorgan iguales derechos y obligaciones. Cada acción ordinaria otorga a su propietario derecho a un voto en las Juntas generales e incorpora iguales

FORMULARIO NOTARIAL

[Serie 1-H-FH-2007]

derechos a la percepción de dividendos y a la alícuota parte del capital en caso de liquidación. Las acciones preferidas otorgarán los derechos previstos en estos estatutos y los señalados por la Junta Extraordinaria de Accionistas que autorice su emisión.------------------------------------------------------------------------------------------

**ARTICULO 18: ACCIONES PREFERIDAS.-** La sociedad queda autorizada a emitir acciones preferidas por resolución de una Junta General Extraordinaria de Accionistas, la misma que establecerá los derechos y beneficios especiales o adicionales que corresponda en su favor. Las acciones preferidas tendrán derecho a voto en las juntas extraordinarias, pero no en las ordinarias, salvo cuando el dividendo que les corresponda no hubiera sido pagado por más de tres gestiones continuas o discontinuas, caso en el cual adquirirán los mismos derechos de las acciones ordinarias hasta que el adeudo haya sido satisfecho. En ningún caso se les podrá asignar un dividendo anual superior al quince por ciento (15%) de su valor nominal. Asimismo, en ningún caso la suma de las acciones preferidas emitidas por la Sociedad excederá del cincuenta por ciento (50%) del capital suscrito. --------

**ARTICULO 19: SUJECION A LAS NORMAS SOCIALES.-** La propiedad de una o más acciones importa la aceptación de la escritura social, de los estatutos, de las posteriores modificaciones legalmente introducidas y el sometimiento a las resoluciones de las Juntas Generales de Accionistas y del Directorio, quedando a salvo el derecho de impugnación contra resoluciones contrarias a la ley o a los estatutos.------------------------------------------------------------------------------------------

**ARTICULO 20: RESPONSABILIDAD DE LOS ACCIONISTAS.-** Los accionistas son responsables solamente hasta el monto del valor nominal de sus acciones. El patrimonio individual del accionista es diferente e independiente del patrimonio social.---- --------

**ARTICULO 21: DERECHOS DE TERCEROS FRENTE AL ACCIONISTA.-** Los acreedores de un accionista no tendrán derecho a intervenir en la administración en el manejo de la Sociedad, ni de afectar los bienes de ésta. --------------------------------------------------

**ARTICULO 22: TRANSFERENCIA DE ACCIONES.-** La transferencia de acciones de la Sociedad se efectuará mediante endoso del título e inscripción en el libro de Registro de Acciones.---------------------------------------------------------------------------------------

T I T U L O  III ----------------------- BONOS O DEBENTURES -----------------------

**ARTICULO 23: FACULTAD DE EMISION.-** La Sociedad queda facultada a emitir bonos o debentures por resolución expresa de una Junta General Extraordinaria de

Accionistas y con autorización de la Dirección General del Registro de Comercio y Sociedades por Acciones.------------------------------------------------------------------------

**ARTICULO 24: CONDICIONES DE EMISION.-** La propia Junta de Accionistas que autorice la emisión de los títulos obligacionales determinará el monto, plazo, interés, garantías y demás condiciones de la emisión, así como las del rescate, amortización y/o conversión de los títulos. ----------------------------------------------------------------

**ARTICULO 25: COLOCACION DE TITULOS OBLIGACIONALES.-** Los bonos o debentures que emita la Sociedad, serán colocados por intermedio de un agente de bolsa autorizado, con quién se acordarán las condiciones correspondientes. -----------------------

**T I T U L O  IV** ----------------- **DEL REGIMEN DE LA SOCIEDAD** -----------------------------

**ARTICULO 26: ORGANISMO DE LA SOCIEDAD.-** El Gobierno de la Sociedad correspon de a la Junta General de Accionistas y al Directorio, cuyas atribuciones, facultades y obligaciones se establecen en la Ley, los estatutos y en las resoluciones correspondientes. --------------------------------------------------------------------------------

**C A P I T U L O  I** --------------------- **JUNTA GENERAL DE ACCIONISTAS** ----------------

**ARTICULO 27: COMPETENCIA DE LA JUNTA.-** La Junta General de Accionistas es el organismo máximo de decisión de la Sociedad, con las más amplias facultades de resolución de los asuntos sometidos a su conocimiento.------------------------------------------

**ARTICULO 28: CLASE DE JUNTAS.-** Las Juntas Generales de Accionistas serán ordinarias y extraordinarias. ------------------------------------------------------------------------------------

**ARTICULO 29: CONVOCATORIA.-** Las Juntas Generales de Accionistas serán convocadas por el Directorio, sea por propia iniciativa o solicitud escrita y motivada de accionistas que representen por lo menos el veinte por ciento del capital pagado. Las Juntas también podrán ser convocadas por el Directorio, a solicitud del organismo de fiscalización de la Sociedad, o directamente por el mismo, cuando el Directorio, requerido al efecto, no hubiera efectuado la convocatoria.----------------- ----

Las convocatorias serán efectuadas mediante tres publicaciones discontinuas de prensa en un diario de circulación nacional, consignando el carácter de la Junta, el lugar, día y hora de celebración, el orden del día y los requisitos y cumplirse por los accionistas para tomar su concurrencia. En ningún caso la primera publicación de la convocatoria podrá efectuar con una anticipación mayor a treinta días de la fecha señalada para la celebración de la Junta. La última publicación se hará cuando menos cinco días antes de la fecha fijada

para la reunión. --------------------------------------------------------------------------------

En segunda convocatoria solo se publicarán dos avisos de prensa, el último con tres días de anticipación. Los accionistas residentes en el extranjero serán citados por carta, telex o telefax enviado a su dirección registrada en el Libro de Registro de Acciones. --------------------------------------------------------------------------------

**ARTICULO 30: JUNTAS SIN NECESIDAD DE CONVOCATORIA.-** Sin perjuicio de lo estipulado en los artículos anteriores, las Juntas de Accionistas, sean ordinarias o extraordinarias, se considerarán legalmente instaladas, sin necesidad de convocatoria, en caso de que la totalidad de las acciones emitidas se hallen presentes o representadas. En este caso, las resoluciones serán adoptadas por el acuerdo de al menos dos tercios de las acciones emitidas con derecho a voto. --------------------

**ARTICULO 31: LUGAR DE REALIZACION.-** Las Juntas Generales de Accionistas tendrán lugar en el domicilio de la Sociedad. --------------------------------------------------------

**ARTICULO 32: REQUISITOS PARA CONCURRIR A LAS JUNTAS.-** El Derecho de concurrencia a las Juntas de Accionistas se establece mediante la verificación de la inscripción del accionista en el Libro de Registro de Acciones. -------------------------------

**ARTICULO 33: REPRESENTACION DE LAS ACCIONES.-** En el caso de personas jurídicas, representará al propietario cualquiera de las personas naturales que tenga facultades legales para ello. Los accionistas que por cualquier razón se hallen impedidos de concurrir personalmente a una Junta, podrán delegar representación a otro accionista o a terceras personas ajenas a la sociedad. En el primer caso será suficiente para acreditar el mandato una carta poder, aviso cablegráfico, telex o telefax dirigido, en su caso, por funcionario autorizado al Presidente o Secretario del Directorio, en tanto que en el segundo se requerirá poder notariado. --------------------

**ARTICULO 34: DERECHO DE REVISION.-** Desde el día siguiente al de la publicación de la primera convocatoria hasta el día previo al del verificativo de la Junta, los accionistas que hubieran acreditado su calidad de tales, o sus representantes legales en su caso, tendrán derecho a revisar en el domicilio de la Sociedad todos los antecedentes relativos a las materias consignadas en el orden del día de la Junta.-----

**ARTICULO 35: SUSPENSION DEL REGISTRO DE TRANSFERENCIAS.-** Se establece la suspensión del registro de transferencias de acciones, desde el día de la última publicación de la convocatoria, hasta el posterior al de la realización de la Junta, durante el cual tiempo quedará cerrado el Libro de Registro de Acciones. ------------

**ARTICULO 36: DERECHO DE VOTO.-** En las Juntas Generales de Accionistas cada acción ordinaria otorga a su titular derecho a un voto. Las acciones preferidas solo tendrán derecho a voto en los casos expresamente previstos en la Ley y en estos estatutos. ------------------------------------------------------------------------------------------------

**ARTICULO 37: OBLIGATORIEDAD DE LAS RESOLUCIONES.-** Las resoluciones de las Juntas Generales obligan a los accionistas presentes, ausentes y disidentes, salvándose el derecho de impugnación y el de separación en los casos de transformación o de fusión de la Sociedad, conforme a las disposiciones relativas del Código de Comercio. --------------------------------------------------------------------------------------------------

**ARTICULO 38: DERECHO DE SEPARACION.-** Los accionistas que hicieran constar en acta su desacuerdo con las resoluciones adoptadas legalmente en una Junta General Extraordinaria que resuelva la transformación o la fusión de la Sociedad, o aquellos que no hubieran concurrido a la misma, podrán acogerse al derecho de separación de la Sociedad, a cuyo efecto deberán manifestar tal intención por escrito, dirigiéndose al Presidente del Directorio, dentro del plazo máximo de quince días posteriores al del verificativo de la Junta. Con las formalidades y dentro del plazo que señala el artículo 16 de estos estatutos, la Sociedad ofrecerá dichas acciones para que sean adquiridas por los demás accionistas, al valor en libros correspondiente a la última gestión previa a la Junta y si estos no hicieran uso de su derecho preferente en el lapso que se tiene en dicho artículo 16, las acciones serán ofrecidas al público por el término de otros treinta días. Si las acciones no fueran adquiridas en los plazos expresados, la Sociedad procederá a la reducción de su capital en la proporción correspondiente. --------------------------------------------------------

**ARTICULO 39: PRESIDENCIA DE LAS JUNTAS.-** Las Juntas Generales serán presididas por el Presidente del Directorio y en ausencia o impedimento de éste, por el Vicepresidente del Directorio. A falta de este funcionario, presidirá la Junta cualquier otro director que ella determine. En ausencia o impedimento de la totalidad de los directores, la Junta designará un accionista para que presida la misma. Actuará como Secretario de las Juntas el que lo fuere del Directorio y, en su ausencia, la propia Junta designará al reemplazante. ---------------------------------------------------------

**ARTICULO 40: ACTAS.** Las deliberaciones y resoluciones de las Juntas Generales de Accionistas se consignarán en un "Libro de Actas", debiendo las actas correspondientes ser suscritas por el Presidente, por el Secretario y por dos representantes de los

FORMULARIO NOTARIAL

accionistas designados por la misma Junta. ————————————————————

Las actas de las Juntas Extraordinarias deberán inscribirse en la Dirección General del Registro de Comercio y Sociedades por Acciones.————————————————

**ARTICULO 41: JUNTA GENERAL ORDINARIA.-** La Junta General Ordinaria se reunirá con carácter obligatorio, por lo menos una vez al año, para considerar y resolver los siguientes asuntos.————————————————————————————

1. Memoria anual del Directorio; ———————————————————————

2. Balance General y Estado de Resultados; ————————————————

3. Informe de los síndicos; —————————————————————————

4. Tratamiento de los resultados de la gestión; ———————————————

5. Nombramiento de los Directores, Síndicos y Auditores Externos.———————

6. Fijar la remuneración y fianzas de los Directores y los Síndicos ——————

7. Responsabilidades de los Directores y los Síndicos, si las hubiese, y —————

8. Resolver cualquier otra materia cuyo conocimiento no esté reservado a la Junta General Extraordinaria de Accionistas o al Directorio.———————————————

En los casos de los puntos 1, 2, 3, 4, 5, y 6 (cuando corresponda), la Junta será convocada necesariamente dentro de los tres meses siguientes al cierre del ejercicio. De todas formas, la Junta podrá ser convocada en cualquier momento por cualesquiera de los organismos a que se refiere el artículo 29 de estos estatutos.———

**ARTICULO 42: QUORUM DE ASISTENCIA Y MAYORIA PARA RESOLUCIONES.-** Toda Junta General Ordinaria se considerará legalmente constituida con la representación de por lo menos la mitad más una de las acciones suscritas de la sociedad. En caso de no reunirse el quórum en el día y hora señalados, se procederá a una segunda convocatoria, con las formalidades establecidas por el artículo 29 de estos estatutos y la Junta quedará válidamente constituida con cualquier número de acciones presentes o representadas. Las resoluciones serán adoptadas por el voto afirmativo de, por lo menos, la mitad más una de las acciones presentes y/o representadas sin impedimento de expresión. Los votos viciados o en blanco no serán válidos para el cómputo. ————————————————————————————————

**ARTICULO 43: JUNTA GENERAL EXTRAORDINARIA.-** Los accionistas se reunirán en Junta General Extraordinaria en toda oportunidad que sea necesario considerar y resolver las siguientes materias que son de su exclusiva competencia:————————————

1. Modificación de estatutos; ———————————————————————

10

2. Disolución anticipada o prórroga de duración de la Sociedad; ------------------

3. Aumento o disminución del capital autorizado y del capital social. ------------------

4. Cambio del objeto social: ------------------------------------------------------

5. Emisión de nuevas acciones: -----------------------------------------------------

6. Emisión de títulos obligacionales; -----------------------------------------------

7. Transformación de la Sociedad. -------------------------------------------------

8. Fusión con otra u otras sociedades; ----------------------------------------------

9. Nombramiento, remoción y remuneración de los liquidadores; y --------------------

10. Cotización de las acciones de la Sociedad en bolsas de valores y autorización de ofertas públicas de acciones. ------------------------------------------------------

ARTICULO 44. QUORUM DE ASISTENCIA Y MAYORIA PARA RESOLUCIONES.- Toda Junta General Extraordinaria se considerará válidamente constituida con la representación de por lo menos dos tercios de las acciones suscritas de la Sociedad. En segunda y posteriores convocatorias, que se efectuarán con los requisitos que dice el artículo 29 de estos estatutos, la Junta General Extraordinaria funcionará válidamente con la representación de por lo menos un tercio de las acciones suscritas con derecho a voto. En cualquiera de los casos las resoluciones serán adoptadas por el voto afirmativo de, por lo menos, dos tercios de las acciones presentes y/o representadas que no tengan impedimento de expresión. Los votos viciados o en blanco no serán válidos para el cómputo de la votación pero sí para la determinación del quórum. —

C A P I T U L O  II ------------------------- DIRECTORIO --------------------------------

ARTICULO 45: COMPOSICION, FORMA DE ELECCION.- La Sociedad será administrada, con las más amplias facultades, por un Directorio compuesto por siete (7) miembros titulares, que serán elegidos por la Junta General Ordinaria de Accionistas, la que en el mismo acto designará un director suplente para cada uno de los directores titulares, que sustituirá al director titular en caso de ausencia o impedimento. Los directores suplentes no podrán ejercer los cargos a que se refiere el artículo 47. --------- Conforme al artículo 316 del Código de Comercio, el Directorio estará compuesto por directores titulares y sus suplentes por la mayoría y por directores titulares y sus suplentes por la minoría, siempre y cuando tratándose de los directores por la minoría, los accionistas minoritarios que los elijan representen, por lo menos, el veinte por ciento del capital social con derecho a voto en la Junta. En caso contrario, todos los directores y sus suplentes serán elegidos por el voto de la mayoría absoluta

FORMULARIO NOTARIAL

11

de los accionistas presentes o representantes en la Junta con derecho a voto. La totalidad de los accionistas presentes o representados con derecho a voto, podrán convenir en la elección unánime del directorio. ------------

A los fines anteriores, toda votación para la elección de directores se hará de manera abierta, pública y con identificación de los accionistas, de tal modo que pueda determinarse a los accionistas mayoritarios y a los accionistas minoritarios, en base a listas completas de candidatos que propongan los accionistas. Si efectuada la primera votación la lista de accionistas minoritarios no llega a tener, por lo menos, el veinte por ciento requerido, todos los directores de la lista por mayoría quedarán elegidos. ------------

La minoría identificada de por lo menos el veinte por ciento, se reunirá en asamblea especial en el acto mismo, a fin de elegir a los dos directores que le correspondan o ratificar como elegidos a los dos candidatos con más votos que figuren en su lista. La elección o ratificación se hará por simple mayoría de votos de los accionistas minoritarios presente o representados en la asamblea especial. Si hubiera más de una minoría que representa por lo menos el veinte por ciento (20%) de las acciones, la que obtenga el mayor número de votos en la asamblea especial nombrará a los directores por minoría. ------------

**ARTICULO 46: PERSONEROS.-** En la primera sesión posterior a cada Junta General de Accionistas en que se hubiera designado directores, éstos elegirán entre sus miembros un Presidente y un Vicepresidente. Asimismo, los directores designarán un Secretario que no necesita ser director. ------------

**ARTICULO 47: PRESIDENTE.-** El Presidente del Directorio tiene la representación legal de la Sociedad, sin perjuicio de la delegación de facultades prevista en el artículo 62 de estos estatutos. El Presidente presidirá las sesiones del Directorio y las Juntas de Accionistas de la Sociedad. El Presidente podrá ser designado por el Directorio, como el principal funcionario ejecutivo de la Sociedad, con el título de "Presidente Ejecutivo". ------------

**ARTICULO 48: VICEPRESIDENTE.-** El Vicepresidente del Directorio sustituirá al Presidente en sus funciones en todo caso de ausencia, impedimento o muerte del titular. ------------

**ARTICULO 49: SECRETARIO.-** El Secretario tendrá a su cargo la elaboración de las actas de todas las reuniones de las Juntas de Accionistas y del Directorio, y llevará el Libro de Registro de Acciones. El Secretario deberá manejar la correspondencia con

12

relación a todos los asuntos encargados a él, emitir certificaciones y mantener los registros de la Sociedad ejerciendo todos aquellos otros poderes y obligaciones que prevén estos estatutos. ------------

**ARTICULO 50: REQUISITOS DE ELEGIBILIDAD E INDELEGABILIDAD DE FUNCIONES.-** No es preciso ser accionista para integrar el Directorio de la sociedad. Las funciones de los directores son esencialmente personales y no podrán ejercerse por delegación.------

**ARTICULO 51: DURACION DEL MANDATO.-** Los miembros del Directorio durarán en sus funciones por el lapso de dos años, pudiendo ser reelegidos indefinidamente. Sin embargo, su mandato se entenderá tácitamente prorrogado, hasta que sus sustitutos tomen posesión del cargo.------------

**ARTICULO 52: TERMINACION DEL MANDATO.-** Los directores pueden ser removidos de sus funciones en cualquier momento por decisión de sus mandantes. Asimismo, los directores cesan en sus funciones por renuncia al cargo y consiguiente designación y posesión de un nuevo titular, por impedimento legal o físico permanente y por dedicarse a actividades competitivas con las del objeto social, sin autorización de la propia Junta de la que emana su designación. ------------

**ARTICULO 53: REMUNERACION Y FIANZA.-** La Junta General Ordinaria de Accionistas resolverá sobre el monto de las dietas de los directores. Cada director, para asumir su cargo, deberá prestar fianza en favor de la Sociedad, en la forma y por los montos que la correspondiente Junta Ordinaria de Accionistas resuelva. ------------

**ARTICULO 54: RESPONSABILIDAD.-** Los directores son responsables solidaria o ilimitada-mente, frente a la sociedad, los accionistas y terceros, en los siguientes casos: ----------

1. Por mal desempeño de sus funciones, conforme a lo dispuesto en el artículo 164 del Código de Comercio.- ------------

2. Por incumplimiento o violación de leyes, estatutos, reglamentos o resoluciones de las Juntas. ------------

3. Por daños que fueran consecuencia de dolo, fraude, culpa grave o abuso de facultades. ------------

4. Por toda distribución de utilidades en violación del artículo 168 del Código de Comercio. ------------

La acción de responsabilidad de la Sociedad contra los directores será incoada con la aprobación previa de la Junta Ordinaria de Accionistas, la cual nombrará al o los encargados de llevarla adelante. ------------

FORMULARIO NOTARIAL

13

La acción de responsabilidad no alcanza a los directores disidentes que hubieran hecho constar su disidencia en acta. --------------------------------------------------------

La responsabilidad de los directores frente a la sociedad, se extingue por la aprobación de su gestión, desistimiento o transacción acordada por Junta General de Accionistas.-----------------------------------------------------------------------------------

**ARTICULO 55:  REUNIONES.-** El Directorio sesionará cuantas veces lo requiera el interés de la Sociedad, pero por lo menos una vez cada tres meses, a convocatoria escrita de su Presidente o de dos de sus miembros.  Sin embargo, el Directorio se reunirá válidamente en cualquier momento, sin necesidad de convocatoria, si todos sus miembros se encuentran presentes. ------------------------------------------------------

**ARTICULO 56: QUORUM, RESOLUCIONES Y DERECHOS DE LOS DIRECTORES.-** Sin perjuicio de lo previsto en el artículo 57, el Directorio de la sociedad sesionará y decidirá válidamente con la presencia y voto favorable de por lo menos cuatro de sus miembros.  Cada Director tiene derecho a un voto. --------------------------------------

**ARTICULO 57: RESOLUCIONES QUE REQUIEREN MAYORIA ESPECIAL.-** Las siguientes resoluciones del directorio, deberán acordarse por una mayoría especial, consistente en el voto favorable de por lo menos cinco directores, que deberá incluir necesaria-mente el voto favorable de por lo menos un director nominado por los accionistas minoritarios: --------------------------------------------------------------------------------------

1. La enajenación o gravamen de bienes muebles o inmuebles de la Sociedad que tengan un valor de mercado superior al cinco por ciento (5%) del activo fijo de la Sociedad en una sola operación o al diez por ciento (10%) en operaciones agregadas en un mismo ejercicio. --------------------------------------------------------

2. La concertación de cualquier tipo de operación con una misma persona natural o jurídica cuyo monto, aisladamente o en conjunto en un solo ejercicio, supere el veinte por ciento (20%) de los ingresos brutos de la Sociedad, ajustados por la inflación, obtenidos en el ejercicio anterior, o treinta (30) millones de dólares de los Estados Unidos de América, el que fuera menor. --------------------------------------

3. El otorgamiento de garantías en favor de accionistas o de terceras personas, individuales o colectivas, salvo garantías en favor de subsidiarias en las que la Sociedad sea propietaria de la mayoría del capital social. ------------------------------

4. La celebración de contratos o la realización de cualquier tipo de operación con las siguientes personas cuando el monto en una sola operación supere el cinco

14

por ciento (5) de los ingresos brutos de la Sociedad (ajustados por la inflación) obtenidos en el ejercicio anterior, o conjuntamente en un solo ejercicio el diez por ciento (10%) de los ingresos brutos de la Sociedad (Ajustados por la inflación) obtenidos en el ejercicio anterior: ------------------------------------------------

a) Los accionistas titulares del tres por ciento (3%) o más del capital social, o sus filiales o subsidiarias. ------------------------------------------------

b) Los Directores, titulares o suplentes, de la sociedad, o de las empresas en las cuales tenga, directa o indirectamente, una participación. --------------------
Para efectos de este literal, se entenderá como filial o subsidiaria a la persona que, directa o indirectamente a través de uno o más intermediarios, controla, es controlada por, o está bajo control común de dichos accionistas. ------------------

5.  La contratación de empréstitos en moneda local o extranjera, en la República de Bolivia o en el exterior, por una suma superior al diez por ciento (10%) de patrimonio neto de la Sociedad. ------------------------------------------------

6.  La designación de auditores externos para su consideración y aprobación por la Junta Ordinaria de Accionistas y la fijación de su remuneración.----------------

7.  La recomendación a la Junta Extraordinaria de Accionistas de presentar solicitud de quiebra o de apertura del procedimiento de concurso preventivo. -----------

8.  El desistimiento de procesos judiciales o arbitrales en los que la Sociedad actúe como demandada, y la transacción o conciliación en dichos procesos, cuando la suma involucrada exceda el equivalente al uno por ciento (1%) del patrimonio neto de la Sociedad.--------------------------------------------

9.  La celebración de todo otro acto o contrato por parte de la sociedad que exceda en cuantía el equivalente al veinticinco por ciento (25%) del patrimonio neto de la Sociedad. ------------------------------------------------

10. La modificación, cesión determinación de contratos de concesión o licencias otorgados por la Superintendencia de Telecomunicaciones para la prestación de servicios relacionados con el objeto social de la Sociedad. --------------------

11. La adquisición o participación en el capital de otras sociedades, así como la asociación bajo cualquier modalidad, con personas individuales o colectivas, para el desarrollo conjunto de proyectos o negocios, salvo la constitución de subsidiarias por exigencia de normativa o autoridad competente. -----------------



15

12. El otorgamiento de poderes, mandatos o representaciones de cualquier especie, para realizar cualesquiera de los actos mencionados en los incisos anteriores. ------

**ARTICULO 58: ACTAS.-** Las deliberaciones y resoluciones del Directorio constarán en actas transcritas en un libro especial y serán válidas con las firmas del Presidente, del Secretario y de todos los Directores asistentes, incluyendo aquellos que hayan expresado su disidencia sobre alguno de los temas tratados. ------

**ARTICULO 59: ATRIBUCIONES Y RESPONSABILIDADES DEL DIRECTORIO.-** El Directorio está investido de los más amplios poderes y tiene todas las facultades y atribuciones necesarias para la conducción de las actividades de la sociedad, sin otra reserva o limitación que aquellas establecidas expresamente en las disposiciones legales o que conforme a estos estatutos o a la ley, sean de competencia exclusiva de la Junta General de Accionistas. Sin limitación de lo anterior, son atribuciones y responsabilidades del Directorio. ------

1. Representar legalmente a la sociedad, judicial o extrajudicialmente, por intermedio de su Presidente y otros apoderados, sin limitación alguna.------

2. Dirigir y administrar, con plenos poderes, los negocios y actividades de la Sociedad, con las más amplias facultades para ejecutar todos los actos, contratos y operaciones conducentes al logro del objeto social. ------

3. Realizar actos judiciales y extrajudiciales, con facultad de enjuiciar, seguir lo enjuiciado ante cualquier clase de autoridades, con personería jurídica suficiente y sin limitación alguna para desistir, admitir desistimientos, transigir, someter cuestiones a arbitraje, hacer uso de todos los recursos ordinarios y extraordinarios que acuerden las leyes en todos sus grados e instancias y para todos los casos en que las leyes requieren poderes especiales serán bastantes las facultades que le confiere el presente artículo, sin que la falta expresa de atribuciones signifique limitación a su amplio poder administrativo.------

4. Comprar, vender, permutar, alquilar, arrendar, donar y ceder; constituir, aceptar y transferir prendas, hipotecas y todo derecho real de garantía; importar; autorizar nuevas operaciones; suscribir todo género de contratos.------

5. Precautelar, cuidar y resguardar los bienes, derechos e intereses de la Sociedad. -

6. Invertir fondos y, para este efecto, adquirir, vender y transferir toda clase de títulos representativos de valores, sean nacionales o extranjeros; comprar y vender acciones o participaciones en otras Sociedades, con la única condición de que

16

cualquier inversión a realizarse incorpore la limitación de la responsabilidad de los socios al monto de sus aportes. ------------------

7. Designar al personal ejecutivo, apoderados, representantes y administradores, fijando en cada caso sus facultades, remuneraciones y obligaciones, otorgándoles la autorización y poderes para el debido cumplimiento de sus funciones. ------------------

8. Gestionar, obtener y otorgar préstamos y financiamientos, ya sea de instituciones bancarias, financieras o cualesquiera personas naturales o jurídicas, nacionales, extranjeras o internacionales, sujetándose a los respectivos reglamentos y otorgando o requiriendo garantías personales o reales, prendarias o hipotecarias; realizar toda género de operaciones bancarias como girar, endosar, renovar, cobrar, protestar y depositar cheques; girar, aceptar, renovar, endosar, avalar, protestar y cobrar letras de cambio, vales, pagarés y demás documentos mercantiles; solicitar y obtener acreditivos, boletas de garantías, créditos en cuenta corriente, pólizas de seguros, negociando, otorgando y suscribiendo los instrumentos respectivos. ------------------

9. Adquirir muebles e inmuebles, celebrar contratos de servicios, de obra, de consignación, de suministros, de transporte, de seguro y de gestión de negocios. ---

10. Formar y administrar sociedades por cuenta propia y de terceros y tener participaciones en sociedades ya constituidas. ------------------

11. Otorgar poderes generales y especiales a personas naturales o jurídicas, delegando en parte sus atribuciones. ------------------

12. Convocar a Juntas Generales Ordinarias y Extraordinarias de Accionistas. ------------------

13. Aprobar los reglamentos de la Sociedad y proponer reformas a la escritura social y estatutos. ------------------

14. Designar a las personas autorizadas a utilizar la firma social en representación de la sociedad, otorgándoles los poderes necesarios. ------------------

15. Establecer o suprimir operaciones, agencias, sucursales y oficinas, en el interior o exterior del país. ------------------

16. Designar a su Presidente, Vicepresidente y Secretario. ------------------

17. Supervisar el movimiento administrativo, técnico, financiero y laboral a cargo de los organismos ejecutivos. ------------------



17

18. Otorgar premios y retribuciones extraordinarias de acuerdo a los resultados de gestión o desenvolvimiento de las operaciones sociales. ---------------

19. Elaborar y presentar a consideración de la Junta de Accionistas la memoria anual de cada gestión, balance general, estados financieros y todas las informaciones relativas al desenvolvimiento de las operaciones sociales, disponiendo su publicación dentro de los noventa días de conocidos por la Junta General Ordinaria de Accionistas. -------------

20. Proponer a la Junta de Accionistas la creación de reservas ordinarias o extraordinarias, distribución de utilidades o reinversión de las mismas, total o parcialmente. ------------

21. Cumplir y hacer cumplir todas las disposiciones legales, estatutarias y reglamentarias que normen su desenvolvimiento y dar cumplimiento y ejecutar las resoluciones de las Juntas Generales de Accionistas. ----------

22. Llevar un libro especial con las actas de sus deliberaciones y resoluciones y el correspondiente a la Junta de Accionistas. --------------

23. Constituir un comité ejecutivo y/u otros que considere conveniente para el mejor manejo del giro social, fijando sus atribuciones y modalidades de funcionamiento en cada caso.---------

24. Aprobar las remuneraciones de los auditores externos. ------------

25. Todas las demás que sin estar expresamente determinadas en los anteriores incisos, que no tienen carácter limitativo, le están atribuidas implícitamente para poder cumplir con las funciones que le están encomendadas. ------------

**ARTICULO 60: DELEGACION DE FACULTADES.-** El Directorio podrá delegar, en uno o más de sus miembros, gerentes, administradores, apoderados o terceras personas, en todo o en parte, las facultades que le otorgan los estatutos, con excepción de aquéllas que por su naturaleza, disposición de la ley o de los estatutos, son privativas de su función. ----------

**ARTICULO 61: PROHIBICIONES.-** Los directores quedan prohibidos de comprometer la firma social en operaciones ajenas al giro propio de la Sociedad, bajo responsabilidad de daños y perjuicios, salvo resolución expresa en contrario acordada por la Junta General de Accionistas. --------------

**ARTICULO 62: REPRESENTACION.-** Salvo que existiere resolución expresa en contrario, los contratos públicos y privados, poderes e instrumentos en general que otorgue el

18

Directorio, requerirán para su validez de la firma del Presidente y del Secretario. --------

C A P I T U L O III --------------- ORGANISMOS EJECUTIVOS -----------------------------

ARTICULO 63:  FUNCIONES.- Las funciones ejecutivas y la dirección de los negocios del objeto social estarán a cargo del Presidente del Directorio, en caso de ser designado como Presidente Ejecutivo, de uno o más gerentes, administradores o apoderados, según lo determine el Directorio, mediante resolución expresa en la que se fijen las respectivas atribuciones, facultades, obligaciones y remuneraciones, debiendo en su caso, otorgárseles los poderes correspondientes, de acuerdo con lo dispuesto en el artículo 61 de estos estatutos. -------------------------------------------------------------

T I T U L O  V ------------------- FISCALIZACION DE LA SOCIEDAD ------------------------

ARTICULO 64: SINDICATURA.-  La Sociedad tendrá dos síndicos titulares e igual número de suplentes, según lo decida la Junta Ordinaria de Accionistas.  Los accionistas minoritarios que, en conjunto, representen por lo menos el veinte por ciento del capital social con derecho a voto, tiene derecho a designar un síndico por minoría. --
A los fines anteriores, toda votación para la elección de síndicos se hará de manera abierta, pública y con identificación de los accionistas, de tal modo que pueda determinarse a los accionistas mayoritarios y a los accionistas minoritarios, en base a los candidatos que propongan los accionistas.  Si efectuada la primera votación el candidato de accionistas minoritarios no llega a tener, por lo menos, el veinte por ciento requerido, los candidatos propuestos por mayoría quedarán elegidos. ----------
La minoría identificada de por lo menos el veinte por ciento, se reunirá en asamblea especial en el acto mismo, a fin de elegir al síndico que le corresponda o ratificar como elegido al candidato con más votos que figure en su lista.  La elección o ratificación se hará por simple mayoría de votos de los accionistas minoritarios presentes o representados en la asamblea especial.  Si hubiera más de una minoría que represente por lo menos el veinte por ciento (20%) de las acciones, la que obtenga el mayor número de votos en la asamblea especial nombrará al síndico.--- -

ARTICULO 65:  COMISION FISCALIZADORA.- Todos los síndicos actuarán como cuerpo colegiado bajo la denominación de "Comisión Fiscalizadora", la cual debe reunirse al menos una vez cada tres meses, a citación de cualquiera de sus miembros, debiendo elaborar actas de sus reuniones, por uno de sus miembros elegido al efecto; dichas actas serán firmadas por todos los síndicos.  El síndico disidente podrá ejercitar individualmente los deberes y atribuciones que corresponden a su cargo.

19

Sin perjuicio de las labores de la Comisión Fiscalizadora, los síndicos ejercerán su función en forma independiente y sin prelación. ------

**ARTICULO 66: REQUISITOS DE ELEGIBILIDAD Y LIMITACIONES.-** No se requiere ser accionista para ser síndico de la sociedad. Ningún director o gerente de la Sociedad, ni los cónyuges o parientes de éstos hasta el cuarto grado de consanguinidad y segundo de afinidad según el cómputo civil, podrá desempeñar las funciones de síndico. También existe incompatibilidad entre las funciones de síndico y el desempeño de cualquier cargo rentado en forma permanente en la Sociedad. ------

**ARTICULO 67: DURACION Y TERMINACION DEL MANDATO.-** Los síndicos durarán en sus funciones por el lapso de dos años, pudiendo ser reelegidos indefinidamente. ------
Los síndicos podrán ser removidos de sus funciones en cualquier momento por decisión de la Junta General Ordinaria de Accionistas. ------

**ARTICULO 68: REMUNERACION Y FIANZA.-** Los síndicos percibirán la remuneración y prestación la fianza que resuelva la Junta General Ordinaria de Accionistas. ------

**ARTICULO 69: FUNCIONES.-** Los síndicos ejercerán las funciones de fiscalización permanente de acuerdo con las disposiciones del Código de Comercio. ------

**ARTICULO 70: SUPERVISION Y CONVOCATORIAS A JUNTAS.-** Los síndicos verificarán el cumplimiento de todos los requisitos que la ley y los estatutos señalan para la convocatoria a Juntas y registro de acuerdos. En defecto del Directorio y cuando lo juzgue necesario, podrá convocar a Juntas Generales de Accionistas, Ordinarias y Extraordinarias, y concurrirán necesariamente a la disolución y liquidación de la Sociedad. ------

**ARTICULO 71: RESPONSABILIDADES.-** Los síndicos son, ilimitada y solidariamente, responsables por el incumplimiento de las obligaciones señaladas por la ley y los estatutos. Son también solidariamente responsables con los directores por los actos u omisiones de éstos, aunque no se produzca daño. ------

**TITULO VI ----------- BALANCES: FONDOS DE RESERVA Y DIVIDENDOS -------------**

**ARTICULO 72: BALANCE GENERAL.-** A la finalización de cada gestión económica se elaborarán los estados financieros de todas las operaciones sociales, incluyendo el balance general y estados de resultados, documentos que serán sometidos por los organismos ejecutivos de la Sociedad al Directorio antes del verificativo de la Junta General Ordinaria de Accionistas. El Directorio presentará a consideración de la Junta los documentos referidos junto con su Memoria Anual por la gestión

20

correspondiente. ------------

**ARTICULO 73: CERTIFICACION DEL BALANCE Y AUDITORIA EXTERNA.-** El balance general de las operaciones sociales que se presente a la Junta General de Accionistas. Conforme se establece en el artículo anterior, deberá estar certificado por una firma registrada de auditores externos, que sea designada por la Junta General Ordinaria a propuesta del Directorio. ------------

**ARTICULO 74: FONDOS DE RESERVA.-** De las utilidades efectivas y líquidas de cada gestión, se destinará obligatoriamente un cinco por ciento como mínimo, para constituir un fondo de reserva legal hasta cubrir el cincuenta por ciento del capital pagado. La Junta General Ordinaria de Accionistas podrá disponer la constitución de otras reservas, ordinarias o extraordinarias. ------------

**ARTICULO 75: DIVIDENDOS.-** Es atribución privativa de la Junta General Ordinaria de Accionistas determinar el destino de las utilidades sociales.------------
Cuando la Junta resuelva la distribución de dividendos, ésta se efectuará en proporción al importe pagado de las acciones. ------------

**T I T U L O   VII** ------------ DISOLUCION, LIQUIDACION Y PARTICIPACIÓN ------------

**ARTICULO 76: DISOLUCION.-** La disolución de la Sociedad se resolverá en Junta General Extraordinaria de Accionistas, expresamente convocada al efecto, por las siguientes causales: ------------

1. Acuerdo de los accionistas adoptado en una Junta General Extraordinaria. ------------
2. Vencimiento del plazo de duración de la Sociedad, salvo prórroga. ------------
3. Imposibilidad sobreviniente de cumplir con el objeto social. ------------
4. Pérdida del capital, de conformidad con lo previsto en el artículo 351del Código de Comercio, salvo reintegro o aumento. ------------
5. Declaratoria de quiebra, salvo la celebración de convenio preventivo. ------------
6. Fusión, acordada por una Junta General Extraordinaria de Accionistas. ------------
7. Reducción de los accionistas a menos de tres, salvo que se incorporen nuevos accionistas en el término de tres meses. ------------

**ARTICULO 77: COMISION LIQUIDADORA.-** Acordada la disolución de la Sociedad, se designará una Comisión Liquidadora, encargada de ejecutar la conclusión de todas las operaciones y negocios pertinentes de la Sociedad. ------------

**ARTICULO 78: REPRESENTACION LEGAL.-** La Comisión Liquidadora tendrá la representación legal de la Sociedad, sin limitación alguna, en todos los actos.

21

gestiones y contratos que realice con objeto de cumplir su cometido.    Dos accionistas serán designados especialmente por la Junta General Extraordinaria de Accionistas, para otorgar en nombre de la Sociedad los poderes necesarios a los miembros de la Comisión Liquidadora. -------------------------------------------------

ARTICULO 79: COMPOSICION.- La designación de la Comisión Liquidadora se rige por las disposiciones de estos estatutos, aplicables a la designación de los directores de la Sociedad. --------------------------------------------

Podrán ser designados miembros de la Comisión Liquidadora las personas que hayan desempeñado previamente funciones de dirección o administración en la Sociedad, así como accionistas o terceros extraños a la Sociedad, debiendo inscribirse el acuerdo en la Dirección General del Registro de Comercio y Sociedades por Acciones. --------------------------------------------

ARTICULO 80: FUNCIONES.- La Comisión Liquidadora tendrá amplias facultades para concluir con todas las operaciones del giro social y la realización de los bienes de la Sociedad del modo que estime más conveniente y ventajoso.    Tendrá las mismas facultades y atribuciones del Directorio, cuyos miembros cesarán en sus funciones al asumirlas la Comisión Liquidadora. --------------------------------------------

ARTICULO 81: RESOLUCIONES DE LA COMISION LIQUIDADORA.- Las resoluciones de la Comisión Liquidadora se adoptarán por mayoría absoluta de votos.  Las operaciones y contratos que requieran mayoría especial en las votaciones del Directorio, que deben realizarse como parte del proceso de liquidación, también requerirán de mayoría especial en las votaciones de la Comisión Liquidadora. --------------------

La mayoría especial en las votaciones de la Comisión se regula por las disposiciones de estos estatutos aplicables al Directorio. --------------------------

ARTICULO 82: CUENTAS DE LA LIQUIDACION.- La Comisión Liquidadora levantará un inventario completo y elaborará un balance de liquidación dentro de los treinta días de asumido el cargo.  Sin embargo, este plazo podrá extenderse hasta ciento veinte días por acuerdo de la Junta General Extraordinaria de Accionistas.  La Comisión Liquidadora dará cuenta a los accionistas del proceso de la liquidación, mediante informes que pondrá a disposición de la Junta General Extraordinaria, con la periodicidad que ésta disponga, pero por lo menos cada tres meses. --------------------

ARTICULO 83: LIMITACIONES Y RESPONSABILIDADES.- Los miembros de la Comisión Liquidadora quedan terminantemente prohibidos de ejecutar operaciones nuevas o

22



ajenas a la liquidación, y son responsables frente a la Sociedad y a terceros por los daños, perjuicios y pérdidas que eventualmente pudieran causar a los bienes e intereses cuyo manejo y gestión se les encomiende. ------------------------------------

ARTICULO 84:  DURACION DEL MANDATO.- Las funciones de la comisión Liquidadora durarán el tiempo que se requiera para concluir con las operaciones de liquidación. Sus miembros cesarán en su mandato por: -----------------------------------------------

1. Haber concluido la liquidación; ----------------------------------------------------------

2. Renuncia; y --------------------------------------------------------------------------------

3. Remoción de sus funciones en cualquier momento por decisión de sus mandantes.

ARTICULO 85: INFORME FINAL Y PROYECTO DE DISTRIBUCION DEL PATRIMONIO.-  A medida que se realicen los bienes sociales, la Comisión Liquidadora procederá a pagar el pasivo de la Sociedad.  Una vez que la integridad del mismo esté cubierto o hasta donde alcance el monto de los bienes realizados, la Comisión Liquidadora, presentará su informe, el balance y el proyecto de distribución del patrimonio, a la Junta General Extraordinaria de Accionistas, determinando el monto del activo líquido si lo hubiera y proponiendo la forma de distribución del patrimonio.  El informe será suscrito también por los síndicos y la Junta podrá aprobar o rechazar las cuentas de la liquidación. La distribución del activo líquido se efectuará en forma proporcional al número de acciones que cada accionista posea.  La distribución procederá previa aprobación del proyecto de distribución por parte de la Junta General Extraordinaria de Accionistas.  Todos los documentos finales elaborados por la Comisión Liquidadora se inscribirán en la Dirección General del Registro de Comercio y Sociedades por Acciones. -----------------------------------------------------

ARTICULO 86: EXTINCION DE LA PERSONALIDAD JURIDICA.- Los liquidadores tramitarán la cancelación de la inscripción de la sociedad en la Dirección General del Registro de Comercio y Sociedades por Acciones, tan pronto termine la liquidación, extinguiéndose, desde ese momento, la personalidad jurídica de la Sociedad. ----------

TITULO VIII ---------------------- DISPOSICIONES GENERALES -----------------------------

ARTICULO 87:  ARBITRAJE.- Exceptuando los asuntos relativos a la liquidación de la Sociedad, modificación del contrato social, exclusión y retiro de socios, y situación legal de la sociedad, todas las divergencias o conflictos que se susciten entre la Sociedad y los accionistas sobre la interpretación o aplicación de las estipulaciones del contrato social, de sus estatutos, así como de las modificaciones posteriores

legalmente introducidas, o de las resoluciones de las Juntas Generales de Accionistas, serán resueltas en arbitraje de conformidad a lo dispuesto por el Código de Comercio. Los árbitros actuarán como amigables componedores, debiendo pronunciarse según la equidad. Las partes podrán acordar un procedimiento arbitral distinto al previsto en este Artículo, en la medida reconocida por ley. --------------

El laudo arbitral que se pronunciará en única instancia, será inapelable y definitivo, renunciando las partes expresamente a la vía judicial excepto para la ejecución del laudo arbitral. Los gastos habituales del arbitraje, de ambas partes, serán pagados por la parte que reciba el laudo adversamente. ------------------------------

**ARTICULO 88: SOMETIMIENTO A LA LEGISLACION ESPECIAL.-** Todo aquello que no se encuentre previsto en los presentes estatutos, se regirá por las disposiciones de Código de Comercio y demás normas relativas. -----------------------------

SOLICITUD Y ORDEN JUDICIAL.----- Aquí lleva adherido dos timbres judiciales cancelados.----- SEÑOR JUEZ DE INSTRUCCIÓN EN LO CIVIL – TURNO.---- SOLICITA ORDEN JUDICIAL.------ OTROSIES.- Su contenido.---- JAVIER MARTIN CASTRO ZACONETA, con C.I. Nº 3472054 L.P., mayor de edad y hábil por derecho, vecino de esta ciudad, Apoderado de la Empresa Nacional de Telecomunicaciones "ENTEL S.A." según Poder Especial y bastante No. 501/2006 de fecha 16 de octubre de 2006, misma que adjunto al presente memorial; tengo a bien apersonarme ante su Autoridad a nombre de la Compañía a la que represento y con el debido respeto expongo y pido: ---------------

ORDEN JUDICIAL. Señor Juez, al amparo de lo dispuesto por el Art. 7, Inc. h) de la Constitución Política del Estado, respetuosamente solicito a su autoridad que mediante ORDEN JUDICIAL disponga que la Notaría de Fe Pública Nro. 069, a cargo del Dr. Carlos Huanca Ayaviri, tenedor de los archivos de la Ex Notaría de Fe Pública, Dra. Luz Villarpando de Ugrinovic, me extienda diez ejemplares del Estatuto de la Empresa Nacional de Telecomunicaciones Sociedad Anónima "Entel S.A." que forma parte integrante de la Escritura Pública Nº 131/2005 de 21 de septiembre de 2005, a cuyo efecto por mi parte protesto cumplir con los recaudos de ley. --------------

OTROSI PRIMERO. Acredito interés legal, en razón a que la Compañía que represento necesita contar con este instrumento legal interno para el desarrollo de sus funciones, así mismo para trámites administrativos y otras actividades propias dentro del

24

giro de la Empresa. ------------------------------------------------------------------

**OTROSI SEGUNDO.-** A los fines de justificar mi interés legal, acompaño Escritura Pública

Nro. 131/2005 de 21/09/05 en originales y el Testimonio de Pode 501/2006 que

acredita mi representación. ----------------------------------------------------------

**OTROSI TERCERO.-** Señalo domicilio en la Secretaría de su digno despacho. Sea con

las formalidades de ley .---- Justicia.--- La Paz, enero de 2008.--- Firma y Sello: Emeterio

Alí Apaza.- ABOGADO.- M.C.A. 006266 – NIT: 2568387017.-------Firmado: JAVIER MARTIN

CASTRO ZACONETA.- C.I. 3472054 LP.------------------------------------------------

**CARGO QUE LE SIGUE:** JUZGADO 1ro. DE INSTRUCCIÓN EN LO CIVIL.--- Recibido en

Fecha Veintiséis de Enero del año 2008.- Horas Diez.--- Receptor: Fdo.- Ilegible.------------

**DECRETO QUE LE CORRESPONDE:** La Paz, 26 de Marzo de 2008.--- Por ante la Notaría de

Fe Pública N° 069 a cargo del Dr. Carlos Huanca Ayaviri, actual tenedor de los archivos

de la ex Notario Dra. Luz Villarpando de Ugrinovic, franquéese diez ejemplares del

Estatuto de ENTEL S.A., Escritura Pública N° 131/2005 de fecha 21 de Septiembre de

2005, sea con las formalidades de rigor.------ A los Otrosíes 1° y 2°.- Téngase por

adjuntado.------ Al Otrosí.- Por señalado.--- Firma y Sello. Dra. Consuelo Cuellar Müller.-

JUEZ 1ro. DE INSTRUCCIÓN EN LO CIVIL.- La Paz-Bolivia.--- Ante mí: Firma y Sello: Dra. Yola

Mery Lima Villa.- ACTUARIA-ABOGADA.- Juzgado 1ro. de Instrucción Civil.- LA PAZ-

BOLIVIA.--------------------------------------------------------------------------------

**C O N C U E R D A:** La presente Copia Legalizada es conforme con el Estatuto original

que se encuentra inserto en la Escritura Pública No. 131/2005, a la que en caso

necesario me remito, se franquea el mismo a solicitud de parte interesada y por orden

judicial antes transcrita y luego de confrontado y corregido, fiel y legalmente, para que

tenga valor y haga fe, lo autorizo, signo y firmo en la ciudad de La Paz, a los doce días

del mes de marzo del año dos mil ocho. Doy Fe.-----------------------------------------



**EXHIBIT L**

# LAW 1632

## "TELECOMMUNICATIONS LAW"

LAW N° 1632, DATED 5 JULY 1995

GONZALO SÁNCHEZ DE LOZADA
CONSTITUTIONAL PRESIDENT OF THE REPUBLIC
Whereas the Honorable National Congress has endorsed the following Law:
THE HONORABLE NATIONAL CONGRESS HEREBY,
D E C R E E S:

## TELECOMMUNICATIONS LAW

### TITLE I. GENERAL PROVISIONS

**ARTICLE 1. OBJECTIVE.** The Telecommunications Law sets forth the regulations governing telecommunications public utilities and activities, including the transmission, emission and reception, whether by means of a Public or Private Network, of signals, symbols, texts, fixed and moving images, voice, sounds, data or information of whatever nature, or applications that facilitate the same, by cable or physical line, radioelectricity, hertzian waves, optical means or other electromagnetic systems of whatever nature or kind. All national and foreign individuals and legal persons carrying out activities, originating or ending within the national territory, such as those already mentioned, are subject to the provisions set forth herein.

**ARTICLE 2. DEFINITIONS.** The following definitions will be used to interpret the Law:

**Operator.** Is the public or private individual or legal person, who manages, controls and maintains his own Telecommunications Network.

**Service Provider.** Is the individual or legal person who provides Telecommunications Services to the Public.

**Network.** Are the installations that altogether interconnect two or more points, through channels or circuits, to transmit symbols, signals, texts, images, voice, sounds, data, information of whatever nature or any other type of electronic signals, by means of physical lines, electromagnetic waves, optical means, electromagnetic systems or any other kind of connection. The equipment and the programs developed for the operation thereof are part of the Network.

**Private Network.** Is a network operated and used exclusively by an individual or legal person for the purpose of connecting several installations owned or controlled by said individual or legal person. This type of network is not interconnected to a Public Network that is commutated within or outside the country.

**Public Network.** Is the network used to provide Public Telecommunications Services and to which user terminals are connected by means of fixed terminal points.

**Cellular Service.** Is the service provided by radioelectric means, through the bands specifically designated for this purpose, using mobile or fixed terminal equipment, within the cell-shaped service area of the operator.

**Personal Communication Service.** Is a digital Basic Mobile Telecommunications Service provided through micro cells in the 1,8 to 2,1 GHz frequency band.

**Public Telecommunications Service.** Is a commutated, dedicated, diffusion or distribution Telecommunications Service, provided to an individual(s) or legal person(s) other than the Service Provider. This also includes resale services and the services provided by a legal person to its partners, associates or members, when the corporate purpose of said legal person is the provision of telecommunications services. This Service does not include Value Added Services.

**Local Telecommunications Service.** Is the service rendered between subscribers who are connected to the Public Network by means of fixed terminal equipment and who are located within a certain geographic area, defined as such by the

**ARTICLE 11. CHARGES FOR THE USE OF FREQUENCIES.** The licensees will be subject to the payment of charges for the assignment and use of the electromagnetic frequency range, irrespective of the fees established in Article 22 herein. The amount perceived will be deposited in an account belonging to the National Regional Development Fund, for the purposes set forth in Article 28 herein. The terms and conditions of payment regarding the aforementioned charges will be determined in the regulations.

**ARTICLE 12. REGISTRATION.** The operation or use of any Private Network that extends beyond the limits of the owner's premises, as well as the provision of Value Added Services, require appropriate registration. The registration procedure to be followed will be determined in the regulations.

**ARTICLE 13. TERMS.** Concessions will be granted for a maximum term of forty (40) years, as provided for in Article 34 of the Political Constitution of the State. Licenses will be granted for a term no longer than twenty (20) years and registrations will be updated every five (5) years.

The term for each of the services will be determined in the regulations, prior to the public bid called to grant the corresponding concessions and licenses.

## CHAPTER III.  EXPIRY, REVOCATION AND CANCELLATION

**ARTICLE 14. CAUSES.** The following are considered as grounds for declaring concessions expired or for revoking licenses:

a) When the holder transfers, assigns, leases or performs any act to dispose of a concession or license, without prior authorization of the Telecommunications Superintendency;

b) When the holder of the concession or license is declared bankrupt;

c) When the holder fails to initiate, perform or conclude the works or installations, or fails to make the investments required or fails to fulfill the expansion objectives, within the terms established, in a percentage, which according to the concession contract, is considered as grounds to declare expiry;

d) When the holder provides a different service or modifies the object for which the concession or license was granted, without prior authorization of the Telecommunications Superintendency;

e) When the holder, after having been notified by the Telecommunications Superintendency of his reiterated non-compliance with contract or legal obligations, fails to correct or rectify the error within the terms indicated in the contract; and,

f) Any other cause indicated in the corresponding concession contracts and the administrative resolutions through which licenses are granted.

**ARTICLE 15. DECLARATION.** The Telecommunications Superintendency will declare the concession expired and/or revoke the license by means of a duly justified administrative resolution, in the event of the occurrence of the causes indicated in the preceding article.

Said resolution will not come into effect while there are administrative appeals for annulment pending a decision from the Telecommunications Superintendent or pending hierarchical appeals before the General Superintendent of the Sectoral Regulation System (SIRESE) and before the Supreme Court of Justice, in keeping with Articles 22 and 23 of Law Nº 1600 of 28 October 1994.

In order to ensure service continuity, the Telecommunications Superintendency will order intervention for the duration of the bidding and award process and the transfer of the concession or license to the new holder, in accordance with the procedure determined in the regulations.

The licenses directly related to concessions that have already expired will be automatically reverted.

## CHAPTER IV. PREVENTIVE INTERVENTION

**ARTICLE 17. PREVENTIVE INTERVENTION.** When the continuity of the provision of Telecommunication Services is at risk and within the limits of his authority, he will appoint interventors for a period of 90 days, according to the procedure determined in the regulations and the respective concession contracts, by means of duly justified administrative resolution and after having notified the concession holder. The term of appointment may be extended for a similar period of time, prior to approval by the General Superintendent.

Before the aforementioned term has elapsed, the Telecommunications Superintendency, based on the report presented by the auditor appointed for this purpose, will determine the expiry date to the causes indicated under Article 14 herein or, when applicable, the measures to be adopted by the concession holder to prevent said expiry to be declared.

**ARTICLE 16. CANCELLATION.** Registrations will be cancelled when it is confirmed that the holders thereof do not comply with the requirements indicated herein and in the regulations or when the service is no longer in use.

## CHAPTER IV.  PREVENTIVE INTERVENTION

**ARTICLE 17. PREVENTIVE INTERVENTION.** When the continuity of the provision of Telecommunication Services is at risk and  within the limits of his authority, he will appoint an auditor for a period of 90 days, according to the procedure determined in the regulations and the respective concession contracts, by means of a duly justified administrative resolution and after having notified the concession holder. The term of appointment may be extended for a similar period of time, prior approval by the General Superintendent.

Before the aforementioned term has elapsed, the Telecommunications Superintendency, based on the report presented by the auditor appointed for this purpose, will determine the expiry due to the causes indicated under Article 14 herein or, when applicable, the measures to be adopted by the concession holder to prevent  said expiry to be declared.

## TITLE IV.  INTERCONNECTION, TARIFFS AND FEES

## CHAPTER I.  INTERCONNECTION

**ARTICLE 18. COMPELLABILITY.** The public networks that are functionally compatible are compelled to interconnect, following the principles indicated hereinbelow:

   a)  Prompt response to all interconnection requests;
   b)  Provision of interconnection of the same type, quality and efficiency to all operators who request it, in line with the technical requirements established in the regulations; and,
   c)  Timely supply of information on technical plans that modify the Network and could thus affect the future of the interconnections.

Interconnection may not be interrupted without the authorization of the Telecommunications Superintendency.

**ARTICLE 19.  INTERCONNECTION FEES.** The interconnection fees will be based on the costs of providing efficient interconnection and will be determined according to the regulations. If said fees were to include an additional amount to be paid in favor of one of the Networks, this additional amount can only be authorized by the Telecommunications Superintendency, following the rules determined for this purpose in the regulations. The additional amount will be applied to all similar interconnections within the same service area.

**ARTICLE 20.  INTERCONNECTION AGREEMENTS.** All interconnection agreements must be negotiated and drawn up between the parties, in keeping with the provisions herein and the regulations. The document resulting from the negotiations must be approved by the Telecommunications Superintendency, as stated in the regulations.

In the event that the interested parties are unable to reach an agreement, either of them may request the Telecommunications Superintendency to determine the terms and conditions of the interconnection agreement and said agreement will be binding upon the parties.

**TITLE V**
**PREVENTIVE INTERVENTION**

**ARTICLE 105.-** The Interventor will be professional, knowledgeable in the sector, and may or may not be an official of the Office of the Superintendent of Telecommunications. The remuneration of the Interventor will be established by the Superintendent of Telecommunications based on the scale of the Superintendent of Telecommunications.

**ARTICLE 107.** – Within fifteen (15) days before the end of the term of intervention, the Interventor must present a report detailing the situation of the company subject to inspection in which he will detail the observations or irregularities that led to a plan to regularize the situation of the company subject to inspection or the declaration of its expiration.

**ARTICLE 108.-** The resumption of operations will be authorized by the Superintendent of Telecommunications by Administrative Resolution, provided that the Interventor's report established that the licensee subject to inspection is in condition to comply with the measures established by the Superintendent of Telecommunications; otherwise, the license will be determined to have expired in accord with the provisions of the Law of Telecommunications.

**ARTICLE 46. VALIDITY.** The effective date of the law herein will be determined by the General Superintendent of the Sectoral Regulation System and the Telecommunications Superintendent. The provisions of Supreme Decree N° 09740 dated 2 June 1971 and other relevant regulations will continue in force until such date.

The provisions set forth under Title V of Law N° 1600 of 28 October 1994, with the exceptions established by law, will enter into force for the telecommunications sector, together with the law herein.

## TITLE XI. TRANSITORY PROVISIONS

**ARTICLE I. REORDERING OF FREQUENCIES.** The Executive Power will reorder the electromagnetic spectrum with regard to frequency range distribution and assignment, taking into account the recommendations made by the Radio Communications Sector of the International Telecommunications Union (ITU), (formerly the International Radio Advisory Committee) and forbidding the assignment of channels adjacent to the VHF and UHF bands of the Broadcasting Services.

**ARTICLE II. MERGERS, ACQUISITIONS AND TRANSFERS.** During the six-year period established under Article 32 herein, the operators of Basic Telecommunication Services may merge with one another and acquire or transfer stock from or to other existing similar operators, prior authorization of the Telecommunications Superintendency.

**ARTICLE III. CHARGES FOR ASSIGNMENT AND USE OF FREQUENCY FOR BROADCASTING OR SIGNAL DIFFUSION.** The current holders of licenses for Broadcasting or Signal Diffusion Services are exempt from charges for the use of frequency ranges.

**ARTICLE IV. INITIAL INTERCONNECTION AGREEMENTS.** The initial interconnection agreements to be made between telecommunications operators will be governed by the terms, conditions and general charges determined by the Telecommunications Superintendency.

**ARTICLE V. INITIAL PRICE CEILINGS.** The initial Price Ceilings for all the baskets of Non Competitive Services will be determined by the Telecommunications Superintendency.

**ARTICLE VI. TRANSFER TO THE NEW HOLDER DUE TO DECLARATION OF EXPIRY DURING THE EXCLUSIVITY PERIOD.** For the purposes of Article 8 herein, in the case of declaration of expiry of the concession held by one of the telephone cooperatives that has adapted to the law herein and while the exclusivity period established in Article 8 herein continues to be in force, the amount to be received by the assignor for the property related to the concession will be equal to the value obtained in the bid after deduction of all liabilities, expenses incurred in the bidding process and ten per cent (10%) of the bid.

The aforementioned amount will be deposited in an account belonging to the National Regional Development Fund, for the purposes set forth in Article 28 herein.

To be referred to the Executive Power for constitutional purposes.

Assembly Hall of the Honorable National Congress.

La Paz, 5 July 1995

Signed: Juan Carlos Durán Saucedo, Javier Campero Paz, Walter Zuleta Roncal, Freddy Tejerina Ribera, Yerko Kukoc del Carpio, Carlos Suárez Mendoza.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into __English__ of __Law 1632, Chapter IV__ written in __Spanish__ .

New York, June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK        )
                         )        ss.:
COUNTY OF NEW YORK       )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate rendition into __English__ of __Supreme Decree Law 1632, Chapter V__ written in

__Spanish__ .

New York,  June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK   )
                             )    ss.:

COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of  Law No. 1632  written in  Spanish  .

New York, June 05, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 05, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

---

## LEY DE TELECOMUNICACIONES

---

# Ley 1632

(Incluye las modificaciones establecidas por Ley 2328 de fecha 30 de enero de 2002 y Ley 2342 de fecha 25 de abril de 2002)

APROBADA EL 5 DE JULIO DE 1995

**LEY No. 1632**
**LEY DEL 5 DE JULIO DE 1995**

GONZALO SANCHEZ DE LOZADA
PRESIDENTE CONSTITUCIONAL DE LA REPUBLICA

Por cuanto, el Honorable Congreso Nacional, ha sancionado la siguiente Ley:
EL HONORABLE CONGRESO NACIONAL,
D E C R E T A:

**TITULO I. DISPOSICIONES GENERALES**

**ARTÍCULO 14º. Causales.** Constituyen causales de declaratoria de caducidad de concesiones o revocatoria de licencias, las siguientes:

a) Cuando el titular transfiera, ceda, arriende o realice cualquier acto de disponer de una concesión o licencia, sin autorización previa de la Superintendencia de Telecomunicaciones;

b) Cuando se dicte auto declarativo de quiebra contra el titular de la concesión o licencia y el mismo quede ejecutoriado conforme a ley;

c) Cuando el titular no inicie, realice o concluya las obras o instalaciones, ni efectúe las inversiones requeridas o incumpla las metas de expansión fijadas, en los plazos establecidos en un porcentaje que, de acuerdo con el contrato de concesión, sea considerado como causal de declaratoria de caducidad;

d) Cuando el titular, preste un servicio distinto o modifique el objeto para el cual fue otorgada la concesión o licencia, sin aprobación previa de la Superintendencia de Telecomunicaciones;

e) Cuando el titular luego de haber recibido una notificación de la Superintendencia de Telecomunicaciones sobre el reiterado incumplimiento de las disposiciones contractuales o legales, no las corrija o subsane en los plazos que señale el contrato; y,

f) Cualquier otra causal establecida en los respectivos contratos de concesión y en los actos administrativos de otorgación de licencias.

**ARTÍCULO 15º. Declaratoria.** Por las causales señaladas en el artículo precedente, la Superintendencia de Telecomunicaciones declarará la caducidad de la concesión y/o la revocatoria de la licencia, mediante resolución administrativa debidamente fundamentada.

Esta resolución no será efectiva en tanto estén pendientes recursos administrativos de revocatoria ante el Superintendente de Telecomunicaciones, recursos jerárquicos ante el Superintendente General del Sistema de Regulación Sectorial (SIRESE) y la vía jurisdiccional contencioso administrativa ante la Corte Suprema de Justicia, conforme a lo establecido por los artículos 22º y 23º de la Ley No. 1600 de 28 de octubre de 1994.

A fin de garantizar la continuidad del servicio, la Superintendencia de Telecomunicaciones dispondrá la intervención mientras se proceda a la licitación, adjudicación y posesión de un nuevo titular de la concesión o licencia, de acuerdo a procedimiento establecido en reglamento.

Las licencias directamente relacionadas a concesiones caducas serán automáticamente revertidas.

**ARTÍCULO 16º. Cancelación.** Los Registros serán cancelados cuando se establezca que sus titulares no cumplen con los requisitos de la presente ley y su reglamento o el servicio haya entrado en desuso.

## CAPÍTULO IV. INTERVENCION PREVENTIVA

**ARTÍCULO 17º. Intervención preventiva.** En caso de ponerse en riesgo la continuidad en la provisión de Servicios de Telecomunicaciones al Público, la Superintendencia de Telecomunicaciones, en el marco de su competencia, designará un interventor por el plazo de 90 días, de acuerdo al procedimiento establecido en reglamento y los respectivos contratos de concesión, mediante Resolución Administrativa debidamente fundamentada y previa notificación al concesionario. El plazo podrá ser renovado por un período similar, previa aprobación del Superintendente General.

Antes de la conclusión de este plazo, la Superintendencia de Telecomunicaciones, basada en el informe presentado por el interventor designado para tal efecto, determinará la declaratoria de caducidad por las causales establecidas en el Art. 14º de la presente ley o, en su caso, las medidas que el concesionario deberá adoptar para evitar dicha declaratoria.

## TITULO IV. INTERCONEXIÓN, TARIFAS Y TASAS
## CAPÍTULO I. INTERCONEXIÓN

**ARTÍCULO 18º. Obligatoriedad.** Las Redes Públicas que sean funcionalmente compatibles deben estar obligatoriamente interconectadas, respetando los siguientes principios:

**ARTÍCULO VI. Transferencia a nuevo titular por declaratoria de caducidad durante el periodo de exclusividad.** Para los fines establecidos en el Art. 8° de la presente ley, cuando se tratare de una declaratoria de caducidad de la concesión de una cooperativa de teléfonos, que se haya adecuado a la presente ley y sus reglamentos, y mientras esté en vigencia el período de exclusividad establecido en el Art. 34° de esta ley, el monto que recibirá el titular cesante por los bienes afectados a la concesión será el valor obtenido de la licitación, deduciendo todos los pasivos, los gastos incurridos en el proceso de licitación y el diez (10%) por ciento del monto de la licitación.

Este monto será depositado en una cuenta del Fondo Nacional de Desarrollo Regional para los efectos establecidos en el Art. 28° de la presente ley.

Remítase al Pode Ejecutivo para fines constitucionales
Sala de Sesiones del H. Congreso Nacional.
La Paz, 5 de julio de 1995.

Fdo. Juan Carlos Durán Saucedo, Javier Campero Paz, Walter Zuleta Roncal, Freddy Tejerían Ribera, Yerko Kukoc del Carpio, Carlos Suárez Mendoza.

Por tanto, la promulgo para que se tenga y cumpla como Ley de la República.

Palacio de Gobierno de la ciudad de La Paz, a los cinco días del mes de julio de mil novecientos noventa y cinco años.

FDO. GONZALO SÁNCHEZ DE LOZADA. José G. Justiniano Sandoval, Alfonso Revollo Thenier, Jaime Villalobos Sanjinez.

### _ADENDA AL ARTÍCULO 43°. RANGO DE LEY._ Se eleva a rango de ley los artículos .........

_Art. 60°.- La radiodifusión que comprende la transmisión de sonido, video y otros tipos, es un servicio de interés público que tiende a elevar el nivel cultural y exaltar los valores nacionales para conservar la tradición. Propende a fortalecer los principios de la moral, la dignidad de la persona humana y la familia, así como de la amistad y cooperación internacionales._

_Art. 61°.- Las transmisiones se efectuarán en idioma castellano y lenguas nativas del país, como también en idiomas extranjeros de acuerdo con las normas previstas por la Reglamentación._

_Art. 62°.- La radiodifusión informa y expresa sus ideas sin censura previa, salvo las limitaciones establecidas por las Leyes de la República._
_Se propalarán informaciones veraces, objetivas e imparciales, procedentes de fuentes autorizadas que deberán citarse al transmitirlas._
_Los responsables de las emisoras controlarán los programas para evitar que aún las informaciones auténticas puedan dañar o alarmar a la población por la forma u oportunidad de su difusión._

_Art. 63°.- Entre 07:00 y 21:00 horas las transmisiones deben ser aptas para menores, sin contenido alguno que pueda perturbar el desarrollo normal y armónico de la niñez y la juventud._

_Art. 64°.- El programa de las emisoras comerciales se compondrá diariamente con un porcentaje de producción nacional y la participación de artistas bolivianos. La Reglamentación fijará las normas._

_Art. 65°.- La publicidad, en su clase, forma y cantidad, no deberá afectar la calidad y jerarquía de los programas. No está permitido el procedimiento de percepción subliminal._

_Art. 66°.- Las emisoras estarán en cadena para la transmisión de programas oficiales sólo cuando lo disponga el Ministerio de Información._

**EXHIBIT M**

La Paz, April 24, 2007                        EDV
EDV'GV No. 0926-07                            Entity of Stock Deposit
                                              of Bolivia

Mr.
Jerjes Mecado Suarez
MINISTER                      [signature]
MINISTRY OF PUBLIC WORKS,     *Jerges Mercado Suarez*
SERVICES AND HOUSING          MINISTER
Present                       Min. Public Works, Services and Housing

                 Ref: Change of Title of Stocks Noted on Account

Dear Sir:

In response to your note MOPSV-DESP 546/2007 of April 24, 2007, we confirm that
today we have carried out the following Changes of Title from the Master Accounts of
the Administrators of Pension Funds "BBVA Prevision AFP S.A." and "AFP Futuro de
Bolivia S.A." of the property of the Collective Capitalization Fund (FCC) to CUI No.
1458 in the name of the Ministry of Public Works, Services and Housing, in the Master
Account of the Agency of the Stock Market Union S.A.:

| Cta. Master Origin | Series of Shares | No. of Shares | CUI Destination |
|---|---|---|---|
| AFP FUTURO | ENT1U | 3,040.025 | 1458 |
| AFP PREVISION | ENT1U | 3,040.025 | 1458 |

For this reason we request that you coordinate with the Agency of the Stock Market
Union S.A. in order to carry out the necessary verifications in the system of the EDV in
order to confirm the holdings affected by said transfer.

Thanking you in advance for your attention, without any other matter, we remain

Sincerely yours.


Hector Cevallos P.                    Luis Fernando Lima M.
MANAGER OF LIQUIDATIONS               MANAGER OF STOCKS

         *The information contained in this document is CONFIDENTIAL.

W. 16 de Julio No. 1642  First Floor. Tel: (591-2) 211-0690/214-5109/ 214-5110  Fax: (591-2) 211-0685  Box: 9560
info@advbolibia.com  www.edvbolivia.com  La Paz - Bolivia

EDV                                                        No 009212
                                                          Page  1

## CERTIFICATE OF ACCREDITATION OF TITLE (CAT)

The Entity of Deposit of Stocks of Bolivia, S.A., in use of the authority conferred by Law of the Stock
Market No. 1834 of March 31, 1998, Regulation of Stocks and Compensation and Liquidation of Stocks
approved by the Superintendant of Pensions, Stocks and Insurance by Administrative Resolution SPVS-IV-
No. 967-2002 of December 13, 2002 and pursuant to its own Internal Regulation authorized by the
Superintendant of Pensions, Stocks and Insurance by Administrative Resolution SPVS-IV-No. 604 of
October 21, 2004, at the express request of the title owner formulate by letter:

VUN/446/08*****        dated February 13, 2008

## CERTIFY:

That, the title holder MINISTRY OF PUBLIC WORKS SERVICES AND HOUSING NIT No 1002823025** with domicile
at AV MCAL STA CRUZ ED PALACIO DE COMUNICAC..........................., with Sole Code of identification
(CUI) Nro. 1458...... Master Account (VUN) VALORES UNION S.A............................................, has the
following Stocks of ENTEL S.A...........................................registered in the System of Registration of Annotation
on Account entrusted to the Entity of Stock Deposit of Bolivia, S.A., with the following specifications and characteristics:
**Stock Information:**
Series of Stock/Board Code: ACC ENT1U.........................Cod. Issue (CDPF) ****************
Type of Stock: SHARES ....................................................Currency: BOLIVIANOS
Nominal Value ***********100.00  Date of Issue: Jul 30, 2001  Term of Validity: **** days  Rate of Issue ***ann

[words in black/shaded squares are illegible]

| ACC ENT1U | 100.00 | 100.00 | NO |
|---|---|---|---|
| Quantity of Stock Certificates | 6,080,00 | | |
| Quantity of Stock Purchase [illegible] | 0 | | |
| Quantity of Stock encumbered by competent authority | 0 | | |
| Quantity of Stock encumbered by loan | 0 | | |
| Quantity of Stock available at date of issue | 6.080,00 | | |

The present Certificate is NON TRANSFERABLE and all acts of disposition or encumbrance on its shall be null and
void.  During the term of validity of the present Certificate there can be no expiration o until the same be restored to the
Entity of Stock Deposit of Bolivia S.A., this institution shall not carry out transfers, nor effect new inscriptions
respecting the certified Stocks.
The present Certificate is issued in fulfillment of the norms transcribed on the reverse side and has the purpose or
objective of carrying out: Political rights*******************and only accredits the matter that is the object of
certification for *30* calendar days, from the date of its issue, being the date of expiration March 14, 2008.

The validity of the present Certificate shall begin on the date of its issuance and conclude the date following the
expiration of the term designated, it will be subject to the fact that no judicial order exists that orders the preventive
annotation or judicial transfer of one or various of the stocks included in the present document.

Similarly, the present Certificate does not guaranty the corporate situation of the issuer of the stocks nor the corporate
modifications that may be produced during the validity of the present document.

The present Certificate does not substitute for the physical titles that may have been issued to represent the stocks that
are the object of certification. The stocks that are the matter of certification give the owner the rights specified in its
norm of creation and in the corresponding issuing documents, which must be consulted if necessary.

It is to be delivered to the interested party or its duly authorized legal representative.

[signature]                                              [signature]
Authorized signature                                     Authorized signature
Entity of Stock Deposit of Bolivia S.A.                  Entity of Stock Deposit of Bolivia S.A.

[SEAL}
REPUBLIC OF BOLIVIA
MINISTRY OF PUBLIC WORKS, SERVICES AND HOUSING

La Paz,  18 Feb. 2008

MOPSV-DESP- o345/2008                    [date stamp]

Mr.
Franco Bertone
President
ENTEL S.A.
Present

Re: <u>REQUEST FOR CHANGE OF NAME OF SHARES</u>

Dear Sir:

By the present letter, I request the change of name of the shares registered in
ENTEL S.A. in favor of the AFP's, the new owner being the Ministry of Public Works,
Services and Housing, with Sole Code of Identification (CUI) No. 1458 and Stock Code
ENT-1U, in the quantity of 6,080.050.00 (six million eight thousand fifty) shares in
accordance with the Certificate of Accreditation of Ownership No. 009212, issued by the
Entity of Stock Deposit of Bolivia S.A., which is attached hereto.

For this reason, I remain

Sincerely yours,


[signature]
Oscar Coca Antezana
MINISTER
Min. Public Works, Services and Housing


RMS/wfb/cmt
Enc. Certificate CAT No. 009212
cc.arch


Av. Mariscal Santa Cruz, Centro de Comunicaciones La Paz, th floor, tel: 211999 fax 2119957, La Paz
Bolivia

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into <u>English</u> of <u>EDV'GV No. 0926-07</u> written in <u>Spanish</u> .

New York, June 05, 2008.

TransNet USA, Inc.

Kamran Bayegan, President

Sworn to and subscribed before me on
June 05, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK     )
                      )    ss.:
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of   a Letter in re Change of Title of Stocks Noted on Account, a Certificate of Accreditation of Title, and a Request for Change of Name of Shares written in  Spanish  .

New York,  June 05, 2008.

TransNet USA, Inc.

_____
Kamran Dayegan, President

Sworn to and subscribed before me on
June 05, 2008.

_____
SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:



ENTIDAD DE DEPÓSITO
DE VALORES DE BOLIVIA S.A.

La Paz, 24 de abril de 2007
**EDV – GV No. 0926/07**

Señor
Jerjes Mercado Suaréz
**MINISTRO**
**MINISTERIO DE OBRAS PÚBLICAS,**
**SERVICIOS Y VIVIENDA**
Presente.-

*Jerjes Mercado Suárez*
MINISTRO
Min. Obras Públicas, Servicios y Vivienda

Ref.: Cambio de Titularidad de Valores Anotados en Cuenta.

De nuestra consideración:

En respuesta a su nota MOPSV-DESP 546/2007 de fecha 24 de abril de 2007, confirmamos a usted que el día de hoy, hemos realizado los siguientes Cambios de Titularidad desde las Cuentas Matrices de las Administradoras de Fondos de Pensiones "BBVA Previsión AFP S.A." y " AFP Futuro de Bolivia S.A." de propiedad del Fondo de Capitalización Colectiva (FCC) al CUI No.1458 a nombre del Ministerio de Obras Públicas, Servicios y Vivienda, dentro de la Cuenta Matriz de la Agencia de Bolsa Valores Unión S.A.:

| Cta. Matriz Origen | Serie de la Acción | No. de Acciones | CUI Destino |
|---|---|---|---|
| AFP FUTURO | ENT1U | 3.040.025 | 1458 |
| AFP PREVISIÓN | ENT1U | 3.040.025 | 1458 |

Por tal motivo, solicitamos a usted coordinar con la Agencia de Bolsa Valores Unión S.A para que realice las verificaciones que considere necesarias en el sistema de la EDV, a fin de confirmar sus tenencias afectadas por dicha transferencia.

Agradeciendo de antemano su atención, sin otro particular saludamos a usted atentamente.

Héctor Cevallos P.
**GERENTE DE LIQUIDACIONES**

Luis Fernando Lima M.
**GERENTE DE VALORES**

LFL
Adj: Lo citado
c.c. Archivo

**\* La información contenida en este documento es CONFIDENCIAL.**



**EDV**

Nº   **009212**

Página   1 / 1

## CERTIFICADO DE ACREDITACION DE TITULARIDAD (CAT)

La Entidad de Depósito de Valores de Bolivia S.A., en uso de las atribuciones que le confiere la Ley de Mercado de Valores Nº 1834 de 31 de marzo de 1998, el Reglamento de Entidades de Depósito de Valores y Compensación y Liquidación de Valores aprobado por la Superintendencia de Pensiones, Valores y Seguros mediante Resolución Administrativa SPVS-IV-No. 967-2002 de 13 de diciembre de 2002 y de acuerdo a su propio Reglamento interno autorizado por la Superintendencia de Pensiones, Valores y Seguros mediante Resolución Administrativa SPVS-IV-No. 604 del 21 de octubre de 2004, a solicitud expresa del titular formulada mediante carta:

VUN/446/08*********       de fecha  13 de Febrero de 2008

## C E R T I F I C A :

Que, el titular:  MINISTERIO DE OBRAS PUBLICAS SERVICIOS Y VIVIENDA "   NIT Nº 1002823025***      con domicilio en
AV MCAL STA CRUZ ED PALACIO DE COMUNICAC       , con Código Único de Identificación
(CUI) Nro. 1458    Cuenta Matriz  (VUN) VALORES UNIÓN S.A.        , tiene registrados
siguientes Valores de   ENTEL S.A.        en el Sistema de Registro de Anotacione
en Cuenta a cargo de la Entidad de Depósito de Valores de Bolivia S.A., con las siguientes especificaciones y características

## Datos del Valor:

Serie del Valor/Clave de Pizarra:  ACC ENT1U

Tipo de Valor: ACCIONES        Cod.Emisor(CDPF)  ******************

Valor Nominal: ***********100.00    Fecha Emisión:30JUL2001    Plazo de Vida: ****** días   Tasa de Emisión: **** anua

Moneda:BOLIVIANOS

| | | | | | CUPÓN | |
|---|---|---|---|---|---|---|
| ACC ENT1U | | | 100.00 | 100.00 | NO | |

Cantidad de Valores Certificados         6,080,050
Cantidad de Valores Comprados en Reporto        0
Cantidad de Valores gravados por autoridad competente     0
Cantidad de Valores gravados por prenda       0
Cantidad de Valores disponibles a la fecha de emisión     6,080,050

El presente Certificado es INTRANSFERIBLE y serán nulos los actos de su disposición o gravamen sobre el mismo.  Mientras el plazo de vigencia del presente Certificado no haya caducado o hasta que este sea restituido a la Entidad de Depósito de Valores de Bolivia S.A esta institución no dará curso a transferencias, ni efectuará nuevas inscripciones respecto de los Valores certificados.
El presente Certificado se emite en cumplimiento de las normas transcritas en el reverso y tiene la finalidad u objeto de realizar el ejercicio:   Derechos políticos**************       y solamente acredita la materia objeto de certificación por  *30* día(s) calendario, a partir de la fecha de su emisión, siendo su fecha de vencimiento el  14 de Marzo de 2008.

La vigencia del presente Certificado se iniciará en la fecha de su emisión y concluirá al día siguiente de expirado el plazo consignado, estará sujeta a que no exista ninguna orden judicial que instruya una anotación preventiva o la transferencia judicial de uno o varios valores comprendidos en el presente documento.
De igual manera el presente Certificado no avala la situación corporativa del emisor de los valores ni las modificaciones societarias que se produzcan durante la vigencia del presente documento.

El presente Certificado no sustituye a los títulos físicos que pudieran haber sido emitidos para representar los valores objeto de certificación.  Los valores materia de certificación derivan para el titular los derechos especificados en su norma de creación y en los documentos de emisión correspondientes, los cuales deberán ser consultados en caso necesario.

Entréguese al interesado o a su representante legal debidamente autorizado.

La Paz, 13 de Febrero de 2008, hrs. 15:17

Firma Autorizada
Entidad de Depósito de Valores de Bolivia S.A.

Héctor Cevallos Paz
GERENTE DE LIQUIDACIONES
ENTIDAD DE DEPÓSITO DE VALORES
DE BOLIVIA S.A.

Firma Autorizada
Entidad de Depósito de Valores de Bolivia S.A.

Lic. Luis Fernando Lima M.
GERENTE DE VALORES
ENTIDAD DE DEPÓSITO DE VALORES
DE BOLIVIA S.A.



**REPUBLICA DE BOLIVIA**
**MINISTERIO DE OBRAS PÚBLICAS, SERVICIOS Y VIVIENDA**

La Paz,   **18 FEB. 2008**

MOPSV – DESP – **0345**/2008



Señor
**Franco Bertone**
**Presidente**
**ENTEL S.A.**
Presente.-

REF.: <u>**SOLICITUD DE CAMBIO DE NOMBRE DE ACCIONES**</u>

De mi consideración:

     Mediante la presente, solicito se realice el cambio de nombre de las acciones registradas en ENTEL S.A. a favor de las AFP's, siendo el nuevo titular el Ministerio de Obras Públicas, Servicios y Vivienda, con Código Único de Identificación (CUI) Nº 1458 y código de valor ENT-1U, en una cantidad de 6.080.050.00 (seis millones ochenta mil cincuenta) acciones, de acuerdo al Certificado de Acreditación de Titularidad Nº 009212, emitido por la Entidad de Depósito de Valores de Bolivia S.A., el mismo que se adjunta a la presente.

     Con este motivo, saludo a usted atentamente.

_Oscar Coca Antezana_
M I N I S T R O
Min. Obras Públicas, Servicios y Vivienda

RMS/wfb/cmt
Adj. certificado CAT Nº 009212
cc.arch.

Av. Mariscal Santa Cruz, Centro de Comunicaciones La Paz, 5º piso, telf: 2119999 Fax 2119957, La Paz - Bolivia

**EXHIBIT N**

**Download ZIP**                    **Back**      **Green Book**      **Links**

## LAW FOR THE SECTORIAL REGULATION SYSTEM

## (SIRESE)

## LAW No. 1600

## LAW of October 28, 1994

## VICTOR HUGO CARDENAS CONDE

## INTERIM CONSTITUTIONAL PRESIDENT

Whereas the Honorable National Congress has sanctioned the following law:

## THE HONORABLE NATIONAL CONGRESS DECREES:

## TITLE I

## GENERAL DISPOSITIONS

**FIRST ARTICLE. (ESTABLISHMENT AND OBJECTIVE).** The Sectorial Regulation System (SIRESE) is established, and its main objective is to regulate, control and monitor the activities of the telecommunications, electricity, hydrocarbons, waters and other sectors, which are incorporated to the System by law, and are subject to regulation in adherence to the respective sectorial legal standards, ensuring that:

The activities under their jurisdiction operate efficiently, contribute to the development of the national economy and enable all the Republic's inhabitants to have access to services;

The interests of the users, companies and other entities subject to regulation, whatever their mode and place of organization or incorporation as well as those of the State, enjoy the protection stipulated by law in an effective manner; and

The authority to enforce state regulations is strictly exercised in adherence to the Law.

**SECOND ARTICLE. (ENTITIES, NATURE AND DOMICILE).** The Sectorial Regulation System (SIRESE), as part of the Executive Power, under the tuition of the Ministry of Finance and Economic Development, shall be governed by the General Superintendency and the Sectorial Superintendencies, in compliance with the stipulations of this Law and other sectorial standards, and their domicile shall

be in the city of La Paz.

The General Superintendency and the Sectorial Superintendencies, as autarchic entities, are public juridical persons, with national jurisdiction and technical, administrative and economic autonomy.

**THIRD ARTICLE. (FINANCIAL RESOURCES).** The activities of SIRESE's entities shall be financed through the collection of fees and other resources as established in the respective sectorial legal standards.

## TITLE II

### SIRESE'S GENERAL SUPERINTENDENCY

**FOURTH ARTICLE. (REPRESENTATION, APPOINTMENT AND STABILITY) SIRESE'S** General Superintendency shall be headed and represented by the General Superintendent, who will be appointed by the President of the Republic, from a list of three candidates proposed by two thirds of the votes cast by the members present at the Senate Session. The General Superintendent shall remain in office for a period of seven years, and may not be reelected until a term similar to his mandate, has elapsed.

The General Superintendent shall exercise his functions on a full time basis and with exclusive dedication, with the exception of teaching duties at the University level. He shall be suspended from his functions only in the cases specified in subparagraph b) of Article 6 of this Law, and shall be reinstated if he clears his responsibility. He may be dismissed only in the event a judgment is issued against him for violations during the exercise of his functions, and shall be entitled to a court case, in adherence to subparagraph f) of Article 118 of the State's Political Constitution, or in those cases foreseen in subparagraph d) of Article 6 of this Law, when duly proven.

**FIFTH ARTICLE. (REQUIREMENTS).** In order to became a General Superintendent it is necessary to be a Bolivian citizen, have a University Diploma and at least 10 years of professional experience.

**SIXTH ARTICLE. (PROHIBITIONS).** The following may not be appointed General Superintendent or exercise such functions:

> Any individual who has conflicts of interest, business relationships, direct or indirect participation in any of the companies subject to SIRESE's regulation.

> Any individual who has been issued a final judgment in any penal proceedings, or a resolution attributing him an administrative or civil liability, as provided by Law.

Any individual who has been awarded a jail term as a result of fraudulent acts, up to a period of five years after having served such jail term.

Any individual who has any direct or indirect blood kinship or affinity, up to the second degree, with the Republic's President or Vice President or any of the Sectorial Superintendents.

**SEVENTH ARTICLE. (FUNCTIONS).** SIRESE's General Superintendent shall carry out the following functions:

To take cognizance of and resolve, the hierarchic remedies filed against the resolutions of the Sectorial Superintendents in adherence to this Law, the sectorial legal standards and applicable procedural standards.

To oversee and issue opinions concerning the efficiency and effectiveness of the Sectorial Superintendent's functions, and the adequate control of the natural or juridical persons who perform activities subject to regulations in adherence to this Law and the sectorial legal standards.

To take cognizance of and resolve those matters brought to his knowledge by the Sectorial Superintendents, being unable to take cognizance of other matters, officially or upon the request of the interested party or when these are submitted directly.

To adopt administrative and disciplinary measures necessary for the Sectorial Superintendents to perform their functions in adherence to this Law, the sectorial legal standards and any applicable general legal dispositions, free of undue influences of any nature;

To consider and approve the draft internal standards for the General Superintendency and the Sectorial Superintendencies;

To consider and approve SIRESE's salary and human resources policies general administrative structure of each Sectorial Superintendency, based on their own proposals;

To consider and approve or modify the budgets elaborated by the Sectorial Superintendencies, for incorporation into SIRESE's budget;

To elaborate SIRESE's consolidated budget and submit it to the Executive Power, for consideration and incorporation to the Nation's General Draft Budget, which must be submitted to the Legislative Power for consideration;

To settle and resolve any competence conflicts that may arise among the Sectorial Superintendents;

## TITLE III

## SECTORIAL SUPERINTENDENCIES

**EIGHTH ARTICLE. (COMPOSITION, APPOINTMENT AND STABILITY).** Each Sectorial Superintendency shall be headed and represented by a Sectorial Superintendent, who shall be appointed by the President of the Republic from the lists of three candidates proposed by two-thirds of the votes cast by the members present at the Senate Session. The Sectorial Superintendent shall remain in office for a period of five years, and may not be reelected until a term similar to his mandate has elapsed.

The Sectorial Superintendents shall exercise their functions on a full time basis and with exclusive dedications, except for any teaching duties at the University level. All the stipulations concerning the suspension, reinstatement and dismissal of the General Superintendent contained in Article 4 of this Law shall also be applicable to the Sectorial Superintendent.

**NINTH ARTICLE. (REQUIREMENTS AND PROHIBITIONS).** In order to become a Sectorial Superintendent, it is necessary to be a Bolivian citizen, have a University Diploma and at least 10 years of professional experience. The prohibitions stipulated in Article 6 of this Law are also applicable to the Sectorial Superintendents.

**TENTH ARTICLE. (DUTIES).** The general duties of the Sectorial Superintendents include, besides the specific duties established in the sectorial legal standards, the following:

> To comply and ensure compliance with this Law, the sectorial legal standards and their regulations, ensuring the correct application of all the principles, policies and objectives;

> To foster, within the framework of the law, competition and efficiency in the performance of activities by the sectors subject to SIRESE's regulation, and to investigate possible monopoly oriented, anticompetitive and discriminating behavior within the companies and entities that operate in such sectors, when they deem that such behavior may be contrary to the public's interest, as stipulated in Title V of this Law;

> To grant, modify and renew concessions, licenses, authorizations and registries, and to determine their caducity or revocation in adherence to this Law and the corresponding sectorial legal standards and regulations;

Concerning those concessions, licenses, authorizations and registries which are related to two or more sectors regulated by sectorial legal standards, these shall be granted jointly by the corresponding Sectorial Superintendents;

To monitor the correct delivery of services by the companies and entities under their regulating jurisdiction and to ensure compliance with their contractual obligations, including the execution of the pledged investment plan and maintenance of their facilities;

To approve and publish prices and fees in adherence to the sectorial legal standards, ensuring their correct application, and making available all the supporting evidence to any interested persons;

To intervene in the companies and entities under their regulatory jurisdiction and to appoint the state interventors in accordance with the sectorial legal standards;

To apply sanctions in the cases foreseen in the sectorial legal standards and the concession and license agreements;

To take cognizance of and process all denounces and claims filed by the users, companies and entities subject to regulation, as well as the State's competent entities, in matters concerning their activities under SIRESE' jurisdiction;

To take cognizance of and resolve, in the first instance the revocation appeals filed in adherence to this Law, the sectorial legal standards and applicable procedural standards;

To propose technical standards to the Executive Power, and to issue judgment concerning the regulations pertinent to their sector, briefing the General Superintendent;

To perform all the acts necessary to ensure compliance with their responsibilities.

effect.

When any natural or juridical persons, or the State's competent entities reasonably show that their legitimate interests have been damaged by the granting of a concession or license, they may object such administrative resolution under the terms and conditions stipulated by this Law, other legal dispositions in effect and the applicable procedural standards.

The resolutions that grant concessions or licenses must be published and registered in a public registry, in adherence to the corresponding sectorial legal standards.

**TWELFTH ARTICLE. (PROHIBITIONS).** No concession or license shall be granted to individual or collective persons, whose partners, associates, shareholders, directors, controllers, legal representatives or attorneys-at-fact have a blood kinship or affinity, up to the second degree with SIRESE's General Superintendent and the respective Sectorial Superintendent.

**THIRTEENTH ARTICLE. (CADUCITY OR REVOCATION).** The concessions or licenses granted by the Sectorial Superintendencies may be declared annulled or revoked solely in the event of causes established in the sectorial legal standards, through an administrative resolution issued by the corresponding Sectorial Superintendency. This administrative resolution shall not be effective while the concession or license holder has not exhausted all the remedies foreseen by this Law subject to applicable procedural standards.

**FOURTEENTH ARTICLE. (AUTHORIZATIONS AND REGISTRY).** The authorizations and registries shall be processed, granted and revoked or cancelled in adherence to the stipulations of the sectorial legal standards.

## TITLE V

## ANTITRUST DISPOSITIONS AND DEFENSE OF COMPETITION

**FIFTEENTH ARTICLE. (SCOPE).** Except as provided by the respective sectorial legal standards, the companies and other entities that carry out activities within the telecommunications, electricity, hydrocarbons, transportation, waters and other sectors comprised within the scope of this Law, shall adapt their activities to the principles that ensure free competition, avoiding any acts that hinder, restrict or distort it.

**SIXTEENTH ARTICLE. (ANTICOMPETITIVE AGREEMENTS).** The companies and entities that carry out activities within the sectors regulated by this Law, are prohibited from undertaking agreements, covenants, decisions and concerted practices whose purpose or effect is to hinder, restrict or distort free competition through;

Joint price fixing, whether directly or indirectly;

The establishment of limitations, division or control of the production, markets, supply sources or investments; or

The development of other similar anti-competitive practices.

**SEVENTEENTH ARTICLE. (ABUSIVE PRACTICES).** It is prohibited for the companies or entities subject to regulation under this Law, to carry out abusive practices whose purpose or effect is to damage the competitors, customers and users, leafing to anti-competitive situations in one or more markets. Such abusive practices may consist of:

The direct or indirect imposition of purchase or sale prices or other non-equitable commercial conditions;

The limitation of production, supplies sources, markets or technical development, to the detriment of the consumers;

The application of unequal conditions for equivalent operations, placing the customers and users at a disadvantage;

To subordinate the subscription of agreements to the acceptance of additional obligations by the counterpart, which due to their nature or according to commercial practices are not inherent to the object of such agreements;

To demand that whoever requests the provision of a service subject to regulation, assumes the status of partner or shareholder.

EIGHTEENTH ARTICLE. (MERGER PROHIBITION FOR COMPETITORS). The mergers of competing companies and entities subject to regulation are prohibited under this Law, when as a result of such merger this leads to the establishment, fostering, and consolidation of a dominant position within a specific market.

For the purposes of this Law, it is understood that a company or entity enjoys a dominant position within the market, if as the offeror or requirer of a certain type of goods or services subject to regulation, it is the only one in the market or when it is not the only one, it is nor exposed to substantial competition within such market.

**NINETEENTH ARTICLE. (EXCLUSION).** Prior judgement issued by the Sectorial Superintendent, through the corresponding Supreme Resolution, the mergers that may be excluded from the prohibition established in Article 18 of this Law, are those that contribute to the improvement of the production or distribution of goods and services subject to regulation, or to the promotion of technical or economic progress, for the benefit of the consumers and users, and which do not entail the possibility of eliminating competition with respect to a substantial part of the affected production.

**TWENTIETH ARTICLE. (NULLITY OF PACTS)** The covenants, contracts and agreements entered contravening the dispositions of this Title shall be legally void and ineffective.

**TWENTY FIRST ARTICLE. (SANCTIONS).** Violations to the prohibitions established in this Title shall be sanctioned in adherence to the sectorial legal standards.

# TITLE VI

## REFUTATION AND REMEDIES

**TWENTY SECOND ARTICLE. (REVOCATION REMEDY).** The resolutions issued by the Sectorial Superintendents may be contested by any natural or juridical person, or by the State's competent entities, when they can reasonably show that their legitimate interest and rights have been damaged filing a revocation appeal to the Sectorial Superintendency, under the terms, conditions and requirements established by applicable procedural standards.

The remedies filed against resolutions that provide for any intervention shall be of a restorable nature.

**TWENTY THIRD ARTICLE. (HIERARCHIC REMEDY).** Subject to the terms, conditions and requirements established in the applicable procedural standards, the resolutions issued by the Sectorial Superintendents denying revocation appeals, may be contested through a hierarchic remedy filed to SIRESE's General Superintendency, which shall issue an administrative resolution, thus exhausting the administrative procedure, and giving way to the jurisdictional contentious procedure, in adherence to the law.

# TITLE VII

## FINAL AND TRANSITORY DISPOSITIONS

**TWENTY FOURTH ARTICLE. (APPLICATION OF TITLE V).** The dispositions contained in Title V of this Law shall become effective in the dates established by the respective sectorial legal standards.

**TWENTY FIFTH ARTICLE. (FUNDING OF SIRESE'S ACTIVITIES).** If necessary, during the first two years of SIRESE's activities, the Central Government shall include within its annual budget an item allocated to cover the establishment and operation expenses of the system created by this Law.

**TWENTY SIXTH ARTICLE. (TERM OF OFFICE OF THE FIRST SECTORIAL SUPERINTENDENTS).** The first Sectorial Superintendents shall be appointed for a period of ten (10) years. Nevertheless, each year, as of December 31 of the year 200, one of the Sectorial Superintendents shall be substituted based on a draw.

**TWENTY SEVENTH ARTICLE. (REGULATIONS).** The Executive Power shall regulate this Law.

**TWENTY EIGHT ARTICLE. (DEROGATIONS).** All the dispositions contrary to this Law are hereby derogated.

To be submitted to the Executive Power for all Constitutional purposes.

Meeting room of the Honorable National Congress.

La Paz, October 28, 1994.

Signed: H. Juan Carlos Durán Saucedo, H. Javier Campero Paz, H. Walter Zuleta Roncal, Freddy Tejerina Ribera, H. Yerko Kukoc del Carpio, Edith Gutierrez de Mantilla.

It is therefore promulgated to be enforced as a Law of the Republic.

Governmental Palace, city of La Paz, twenty eight days of the month of October, nineteen hundred and ninety four.

Signed: VICTOR HUGO CARDENAS CONDE, Carlos Sánchez Berzaín, Fernando Alvaro Cossío, Alfonso Revollo Thenier.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into   English   of   Law 1600, Title III   written in   Spanish   .

New York, June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )   ss.:
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English   of   Law 1600   written in   Spanish   .

New York,  June 05, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 05, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

LEY SIRESE

LEY No. 1600
LEY DE 28 DE OCTUBRE DE 1994

VICTOR HUGO CARDENAS CONDE
PRESIDENTE CONSTITUCIONAL INTERINO DE LA REPUBLICA

Por cuanto, el Honorable Congreso Nacional, ha sancionado la siguiente Ley:

EL HONORABLE CONGRESO NACIONAL

DECRETA:

TITULO I

DISPOSICIONES GENERALES

ARTICULO 1º. (CREACION Y OBJETIVO). Créase el Sistema de Regulación Sectorial (SIRESE), cuyo objetivo es regular, controlar y supervisar aquellas actividades de los sectores de telecomunicaciones, electricidad, hidrocarburos, transportes, aguas y las de otros sectores que mediante ley sean incorporados al Sistema y que se encuentren sometidas a regulación conforme a las respectivas normas legales sectoriales, asegurando que:

a)  Las actividades bajo su jurisdicción operen eficientemente, contribuyan al desarrollo de la economía nacional y tiendan a que todos los habitantes de la República puedan acceder a los servicios;

b)  Tanto los intereses de los usuarios, las empresas y demás entidades reguladas cualesquiera fuera su forma y lugar de organización o constitución, como los del Estado, gocen de la protección prevista por ley en forma efectiva; y

c)  La potestad de regulación estatal se ejerza estrictamente de acuerdo con la ley.

ARTICULO 2º. (ORGANOS, NATURALEZA Y DOMICILIO). El Sistema de Regulación Sectorial (SIRESE), como parte del Poder Ejecutivo, bajo tuición del Ministerio de Hacienda y Desarrollo Económico, estará regido por la Superintendencia General y las Superintendencias Sectoriales, de acuerdo a lo establecido en la presente ley y otras normas legales sectoriales y tendrán su domicilio principal en la ciudad de La Paz.

La Superintendencia General y las Superintendencias Sectoriales, como órganos autárquicos, son personas jurídicas de  derecho público, con jurisdicción nacional, autonomía de gestión técnica, administrativa y económica.

ARTICULO 3º. (RECURSOS FINANCIEROS). Las actividades de los órganos del SIRESE se financiarán mediante tasas y otros recursos que se establecerán en las normas legales sectoriales respectivas.

TITULO II

DE LA SUPERINTENDENCIA GENERAL DEL SIRESE

ARTICULO 4º. (REPRESENTACIÓN, NOMBRAMIENTO Y ESTABILIDAD). La Superintendencia General del SIRESE estará dirigida y representada por el Superintendente General, que será designado por el Presidente de la República, de terna propuesta por dos tercios de votos de los miembros presentes de la Cámara de Senadores. El Superintendente General tendrá un período de funciones de siete años, no pudiendo ser reelegido sino pasado un tiempo igual al que hubiese ejercido su mandato.

El Superintendente General ejercerá sus funciones a tiempo completo y dedicación exclusiva, con excepción del ejercicio de las funciones docentes universitarias. Será suspendido de sus funciones únicamente en los casos que determina el inciso b) del artículo 6º de la presente ley y se restituirá en sus funciones si descarga su responsabilidad. Podrá ser destituido únicamente en virtud de sentencia ejecutoriada por delitos cometidos en el ejercicio de sus funciones y gozará de caso de corte, de acuerdo al inciso f) del artículo 118º de la Constitución Política del Estado, o por los casos previstos en el inciso d) del artículo 6º de la presente ley, debidamente comprobados.

ARTICULO 5º. (REQUISITOS). Para ser Superintendente General se requiere tener la nacionalidad boliviana, poseer título universitario y tener por lo menos diez (10) años de experiencia profesional.

ARTICULO 6º. (PROHIBICIONES). No podrá ser nombrado, ni ejercer el cargo de Superintendente General:

a)    El que tuviese conflicto de interés, relación de negocios o participación directa o indirecta en cualesquiera de las empresas que realicen actividades sujetas a la regulación del SIRESE;

b)    El que tuviese auto final de instrucción que disponga procesamiento penal o resolución por la que se atribuya responsabilidad administrativa o civil conforme a la ley;

c)    El que hubiese sido condenado a penas privativas de libertad por la comisión de delitos dolosos hasta cinco años después de cumplida la condena impuesta;

d)    El que tuviese relación de parentesco de consanguinidad, en línea directa o colateral, o de afinidad, hasta el segundo grado inclusive, con el Presidente o el Vicepresidente de la República, o con los Superintendentes Sectoriales.

ARTICULO 7º. (FUNCIONES). La Superintendencia General del SIRESE tendrá las siguientes funciones:

a)    Conocer y resolver, de manera fundamentada, los recursos jerárquicos contra las resoluciones de los Superintendentes Sectoriales de acuerdo a la presente ley, las normas legales sectoriales y las normas procesales aplicables;

b)    Fiscalizar y emitir opinión sobre la eficiencia y eficacia de las gestión de los Superintendentes Sectoriales, y del adecuado control de las personas naturales o jurídicas que realicen actividades reguladas de acuerdo a la presente ley y las normas legales sectoriales;

c)    Conocer y resolver aquellos asuntos que sean puestos en su conocimientos por los Superintendentes Sectoriales, no pudiendo conocer otros asuntos, de oficio ni a solicitud de parte interesada presentada en forma directa;

d)    Adoptar las medidas administrativas y disciplinarias que sean necesarias para que los Superintendentes Sectoriales cumplan sus funciones de acuerdo con esta ley, las normas

legales sectoriales y la legislación general que les sean aplicables, libres de influencias indebidas, de cualquier origen;

e)    Considerar y aprobar los proyectos de normas internas de la Superintendencia General y de las Superintendencias Sectoriales;

f)    Considerar y aprobar las políticas salariales y de recursos humanos del SIRESE, así como la estructura general administrativa de cada Superintendencia Sectorial, en base a las propuestas elevadas por las mismas;

g)    Considerar y aprobar o modificar, de manera fundamentada, los presupuestos elaborados por las Superintendencias Sectoriales, para su incorporación al presupuesto del SIRESE;

h)    Elaborar el presupuesto consolidado del SIRESE y presentarlo al Poder Ejecutivo, para su consideración e incorporación al proyecto de Presupuesto General de la Nación, que deberá ser presentado a consideración del Poder Legislativo.

i)    Dirimir y resolver los conflictos de competencias que se susciten entre los Superintendentes Sectoriales;

j)    Realizar los actos que sean necesarios para el cumplimiento de sus responsabilidades.

TITULO III

DE LAS SUPERINTENDENCIAS SECTORIALES

ARTICULO 8º. (COMPOSICION, NOMBRAMIENTO Y ESTABILIDAD). Cada Superintendencia Sectorial estará dirigida y representada por un Superintendente Sectorial, que será designado por el Presidente de la República, de las ternas propuestas por dos tercios de votos de los miembros presentes de la Cámara de Senadores. El Superintendente Sectorial tendrá un período de funciones de cinco años, no pudiendo ser reelegido sino pasado un tiempo igual al que hubiese ejercido su mandato.

Los Superintendentes Sectoriales ejercerán sus funciones a tiempo completo y dedicación exclusiva, con excepción de la función docente universitaria. Las normas relativas a la suspensión, restitución y destitución del Superintendente General establecidas en el artículo 4º de la presente ley son de aplicación a los Superintendentes Sectoriales.

ARTICULO 9º. (REQUISITOS Y PROHIBICIONES). Para ser Superintendente Sectorial se requiere tener la nacionalidad boliviana, poseer título universitario y tener experiencia profesional por lo menos de diez (10) años. Las prohibiciones y normas del artículo 6º de la presente ley son de aplicación a los Superintendentes Sectoriales.

ARTICULO 10º. (ATRIBUCIONES). Son atribuciones generales de los Superintendentes Sectoriales, además de las específicas establecidas en las normas legales sectoriales, las siguientes:

a)    Cumplir y hacer cumplir la presente ley, las normas legales sectoriales y sus reglamentos, asegurando la correcta aplicación de sus principios, políticas y objetivos;

b)    Promover, en el marco de la ley, la competencia y la eficiencia en las actividades de los sectores regulados por SIRESE a investigar posibles conductas monopólicas, anticompetitivas y discriminatorias en las empresas y entidades que operan en dichos sectores, cuando

considere que pueden ir en contra del interés público, de acuerdo con el Título V de la presente ley;

c)  Otorgar, modificar y renovar las concesiones, licencias, autorizaciones y registros, y disponer la caducidad o revocatoria de los mismos en aplicación de la presente ley, las normas legales sectoriales y reglamentos correspondientes;

En caso de concesiones, licencias, autorizaciones y registros relacionados a dos o más sectores regulados por las normas legales sectoriales, los mismos serán otorgados en forma conjunta por los Superintendentes Sectoriales que corresponda;

d)  Vigilar la correcta prestación de los servicios por parte de las empresas y entidades bajo su jurisdicción reguladora y el cumplimiento de sus obligaciones contractuales, incluyendo la ejecución del plan de inversiones comprometido y el mantenimiento de sus instalaciones;

e)  Aprobar y publicar precios y tarifas de acuerdo a las normas legales sectoriales, vigilando su correcta aplicación y asegurando que la información sustentatoria esté disponible para conocimiento de personas interesadas;

f)  Intervenir las empresas y entidades bajo su jurisdicción reguladora y designar a los interventores, según lo dispongan las normas legales sectoriales;

g)  Aplicar sanciones en los casos previstos por las normas legales sectoriales y por los contratos de concesión y licencia;

h)  Conocer y procesar, las denuncias y reclamos presentados por los usuarios, las empresas y entidades reguladas y los órganos competentes del Estado, en relación a las actividades bajo jurisdicción del SIRESE;

i)  Conocer y resolver, de manera fundamentada, en primera instancia los recursos de revocatoria que le sean presentado de acuerdo con la presente ley, las normas legales sectoriales y las normas procesales aplicables;

j)  Proponer al Poder Ejecutivo, normas de carácter técnico y dictaminar sobre los reglamentos relativos a su sector, informando al Superintendente General;

k)  Realizar los actos que sean necesarios para el cumplimiento de sus responsabilidades.

TITULO IV

CONCESIONES, LICENCIAS, AUTORIZACIONES Y REGISTROS

ARTICULO 11°. (CONCESIONES Y LICENCIAS). Las concesiones de servicios públicos y las licencias cuando corresponda, se otorgarán mediante resolución administrativa y a nombre del Estado, por el respectivo Superintendente Sectorial, de acuerdo a las normas legales sectoriales y demás disposiciones legales en vigencia.

Cuando las personas naturales o jurídicas, o los órganos competentes del Estado demuestren razonablemente que han sido perjudicados en sus intereses legítimos o en sus derechos, por la otorgación de una concesión o licencia, podrán impugnar la resolución administrativa correspondiente en los términos y bajo las condiciones señaladas por la presente ley, otras disposiciones legales vigentes y las normas procesales aplicables.

Las resoluciones que otorguen concesiones o licencias deberán ser publicadas e inscritas en un registro público, conforme a las normas legales sectoriales.

ARTICULO 12º. (PROHIBICIONES). Ninguna concesión ni licencia será otorgada a personas individuales o colectivas, cuyos socios, asociados, accionistas, directores, síndicos, representantes legales o apoderados tengan relación de parentesco de consanguinidad o de afinidad, hasta el segundo grado inclusive, con el Superintendente General del SIRESE y el respectivo Superintendente Sectorial

ARTICULO 13º. (DECLARATORIA DE CADUCIDAD O REVOCATORIA). Las concesiones y licencias otorgadas por las Superintendencias Sectoriales podrán ser declaradas caducadas o revocadas únicamente por las causales establecidas en las normas legales sectoriales, mediante resolución administrativa, emitida por la respectiva Superintendencia Sectorial. Esta resolución administrativa no será efectiva mientras el titular de la concesión o licencia no haya agotado los recursos previstos por la presente ley con sujeción a las normas procesales aplicables.

ARTICULO 14º. (AUTORIZACIONES Y REGISTROS). Las autorizaciones y registros serán tramitadas, otorgadas y revocadas o canceladas de acuerdo a lo establecido en las normas legales sectoriales.

TITULO V

DISPOSICIONES ANTIMONOPOLICAS Y DE
DEFENSA DE LA COMPETENCIA

ARTICULO 15º. (ALCANCES). Salvo por lo dispuesto por las normas legales sectoriales respectivas, las empresas y demás entidades que realicen actividades en los sectores de telecomunicaciones, electricidad, hidrocarburos, transportes y aguas y de otros sectores que fueran incorporados a los alcances de la presente ley, adecuarán sus actividades a principios que garanticen la libre competencia, evitando actos que la impidan, restrinjan o distorsionen.

ARTICULO 16º. (ACUERDOS ANTICOMPETITIVOS). Las empresas y entidades que realicen actividades en los sectores regulados por la presente ley, quedan prohibidas de participar en convenios, contratos, decisiones y prácticas concertadas, cuyo propósito o efecto fuere impedir, restringir o distorsionar la libre competencia por medio de:

a)   La fijación conjunta, directa o indirecta de precios;

b)   El establecimiento de limitaciones, repartición o el control de la producción, los mercados, fuentes de aprovisionamiento o las inversiones; o

c)   El desarrollo de otras prácticas anticompetitivas similares.

ARTICULO 17º. (PRACTICAS ABUSIVAS). Queda prohibido a las empresas o entidades sujetas a regulación bajo la presente ley, realizar prácticas abusivas que tuvieran el propósito o efecto de perjudicar a sus competidores, clientes y usuarios, conduciendo a situaciones anticompetitivas en la concurrencia a uno o más mercados. Dichas prácticas abusivas podrán consistir en:

a)  La imposición directa o indirecta de precios de compra o de venta y otras condiciones comerciales no equitativas;

b)  La limitación de la producción, de las fuentes de aprovisionamiento, de los mercados, o del desarrollo técnico, en perjuicio de los consumidores;

c)  La aplicación de condiciones desiguales para operaciones equivalentes, que signifiquen para los clientes y usarios una situación de desventaja;

d)  Subordinar la suscripción de contratos a la aceptación por la contraparte de obligaciones adicionales que, por su naturaleza, o según las prácticas comerciales, no sean inherentes al objeto de dichos contratos;

e)  Exigir que quien solicite la provisión de un servicio regulado, asuma la condición de socio o accionista.

ARTICULO 18º (PROHIBICIÓN DE FUSIONES ENTRE COMPETIDORES).- Quedan prohibidas las fusiones de empresas y entidades competidoras sujetas a regulación bajo la presente ley, cuando las fusiones tengan como efecto establecer, promover y consolidar una posición dominante en algún mercado específico.

A los efectos de esta ley, se entiende que una empresa o entidad tiene una posición dominante en el mercado, si como oferente o demandante de un determinado tipo de bienes o servicios regulados, es la única dentro del mercado o, cuando sin ser la única, no esté expuesta a una competencia sustancial en el mismo.

ARTICULO 19º (EXCUSION). Previo dictamen fundamentado del Superintendente Sectorial, mediante Resolución Suprema correspondiente, podrán quedar excluidas de la prohibición establecida en el artículo 18º de esta ley, las fusiones que contribuyan a la mejora de la producción o distribución de bienes y servicios regulados o a promover el progreso técnico o económico, en beneficio de los consumidores y usuarios y que no conlleven la posibilidad de eliminar la competencia respecto de una parte sustancial de la producción afectada.

ARTICULO 20º. (NULIDAD DE PACTOS). Los convenios, contratos y acuerdos adoptados en infracción de las disposiciones del presente Título serán nulos de pleno derecho y no causarán efecto legal alguno.

ARTICULO 21º. (SANCIONES). Las transgresiones a las prohibiciones establecidas en el presente Título serán sancionadas de acuerdo a las normas legales sectoriales.

## TITULO VI

## IMPUGNACIONES Y RECURSOS

ARTICULO 22º. (RECURSO DE REVOCATORIA). Las resoluciones pronunciadas por los Superintendentes Sectoriales podrán ser impugnadas, por cualquier persona natural o jurídica, o los órganos competentes del Estado, cuando demuestren razonablemente que han sido perjudicados en sus intereses legítimos o en sus derechos interponiendo recurso de revocatoria ante la misma Superintendencia Sectorial, en los términos y bajo las condiciones y requisitos señalados por las normas procesales aplicables.

Los recursos que se interpongan contra las resoluciones que dispongan cualquier intervención tendrán efecto devolutivo.

ARTICULO 23º. (RECURSO JERARQUICO). En los términos y bajo las condiciones y requisitos establecidos en las normas procesales aplicables, las resoluciones denegatorias a los recursos de revocatoria pronunciadas por los Superintendentes Sectoriales, podrán se impugnadas en recurso jerárquico ante la Superintendencia General del SIRESE, la cual se pronunciará mediante resolución administrativa, la misma que agotará el procedimiento administrativo, quedando expedita la vía jurisdiccional contenciosa conforme a ley.

TITULO VII

DISPOSICIONES FINALES Y TRANSITORIAS

ARTICULO 24º. (APLICACION DEL TITULO V). Las disposiciones contenidas en el Título V de la presente ley entrarán en vigencia en los plazos que establezcan las respectivas normas legales sectoriales.

FINANCIAMIENTO DE LAS ACTIVIDADES DEL SIRESE. De ser necesario, durante los dos primeros años de actividad del SIRESE, el Gobierno Central incluirá dentro de su presupuesto anual una apropiación destinada a solventar los gastos de establecimiento y operación del sistema creado por la presente ley.

ARTICULO 26º. (PERIODO DE FUNCIONES DE LOS PRIMEROS SUPERINTENDENTES SECTORIALES). Los primeros Superintendentes Sectoriales serán designados por un período de diez (10) años. Sin embargo, cada año, a partir del 31 de diciembre del 2000, uno de los Superintendentes Sectoriales originales será sustituidos mediante sorteo.

ARTICULO 27º. (REGLAMENTACION). El Poder Ejecutivo reglamentará la presente ley.

ARTICULO 28º. (DEROGACIONES). Quedan derogadas todas las disposiciones contrarias a la presente ley.

Remítase al Poder Ejecutivo para fines constitucionales.

Sala de sesiones del H. Congreso Nacional.

La Paz, 28 de octubre de 1994.

Fdo. H. Juan Carlos Durán Saucedo
PRESIDENTE
H. SENADO NACIONAL

Fdo. H. Javier Campero Paz
PRESIDENTE
H. CAMARA DE DIPUTADOS

Fdo. H. Walter Zuleta Roncal
Senador Secretario

Fdo. H. Freddy Tejerina Ribera
Senador Secretario

Fdo. H. Yerko Kukoc del Carpio
Diputado Secretario

Fdo. H. Edith Gutierrez de Mantilla
Diputada Secretaria

Por tanto, la promulgo para que se tenga y cumpla como ley de la República.

Palacio de Gobierno de la ciudad de La Paz, a los veintiocho días del mes de octubre de mil novecientos noventa y cuatro años.

Fdo. VICTOR HUGO CARDENAS CONDE
PRESIDENTE CONSTITUCIONAL INTERINO DE LA REPUBLICA

Fdo. Carlos Sánchez Berzaín
MINISTRO DE LA PRESIDENCIA DE LA REPUBLICA


Fdo. Fernando Alvaro Cossío
MINISTRO DE HACIENDA Y DESARROLLO ECONOMICO


Fdo. Alfonso Revollo Thenier
MINISTRO SIN CARTERA
RESPONSABLE DE CAPITALIZACION

d)

ARTICULO 11º. ()

**EXHIBIT O**

TELECOMMUNICATIONS ACT REGULATION

SUPREME DECREE No. 24132
SEPTEMBER 27, 1995

GONZALO SANCHEZ DE LOZADA
CONSTITUTIONAL PRESIDENT OF THE REPUBLIC

**WHEREAS**:

On July 5, 1995, Act No. 1632, the Telecommunications Act, was promulgated and published in the Official Gazette of Bolivia on July 6, 1995.

Article 45 of the cited law provides for its regulation by the Executive Branch.

**IN THE COUNCIL OF MINISTERS**

**DECREES:**

**ARTICLE 1**.- The regulation for Act 1632, the Telecommunications Act of July 5, 1995, is approved; its text forms an integral part of the present Supreme Decree as Exhibit "I".

b.- The present Supreme Decree will go into force and effect as of the date of the appointment of the Superintendent of Telecommunications.

The Ministers of State for the Treasury and Without Portfolio Responsible for Economic Development are entrusted with the execution and fulfillment of the present Supreme Decree.

Signed in the Presidential Palace in the City of La Paz, on September 27, 1995.

**SIGNED. GONZALO SANCHEZ DE LOZADA**, Eduardo Trigo O'Connor D'Arlach, DEPUTY MINISTER OF FOREIGN RELATIONS AND RELIGION, Carlos Sánchez Berzaín, Jorge Otasevic Toledo, José Guillermo Justianiano Sandoval, René Oswaldo Blattman Bauer, Fernando Candia Castillo, Freddy Teodovich Ortíz, Ramiro Ortega Landa, DEPUTY MINISTER OF SUSTAINABLE DEVELOPMENT AND THE ENVIRONMENT, Reynaldo Peters Arzabe, Irving Alcaráz del Castillo, Alfonxo Revollo Thenier, Jaime Villalobos Sanjinés.

# TELECOMMUNICATIONS REGULATION

## TITLE I
## REGULATORY AUTHORITY

### CHAPTER I
### SUPERINTENDENT OF TELECOMMUNICATIONS

**ARTICLE 1.** -The Office of the Superintendent of Telecommunications is an organ of the Sector Regulation System (SIRESE) and is the only entity with authority to regulate activities in the telecommunications sector throughout the entire national territory, and the functions and powers of which are established in Article 4 of Act No. 1632 of July 5, 1995 (Telecommunications Act). The Superintendent of Telecommunications will inform the general public in a timely way about Administrative Resolutions and any other important information through an informational bulletin to be published periodically at least every three months, available for the cost of its production.

### CHAPTER II
### GENERAL DIRECTION OF TELECOMMUNICATIONS

**ARTICLE 2.**- Via Act No. 1600 of October 28, 1994 (SIRESE Act), the Office of the Superintendent of Telecommunications is created as the only regulatory entity for telecommunications, leaving the regulatory powers of the General Direction of Telecommunications null and void.

**ARTICLE 3.**- All the equipment, real estate and assets belonging to the General Direction of Telecommunications used for the control of the electromagnetic spectrum are transferred to the Superintendent of Telecommunications without any charge whatsoever.

**ARTICLE 4.** – The Ministry in charge of the sector will take the necessary measures related to the extinction of the General Direction of Telecommunications as a regulatory entity.

**ARTICLE 5.** – The existing documentation in the General Direction of Telecommunications corresponding to the authorizations, permits, concessions and licenses for the installation, exploitation, use and modification of telecommunication services, and any other information necessary for the regulation of the sector will be transferred to the Superintendent of Telecommunications, duly inventoried.

**TITLE V**
**PREVENTIVE INTERVENTION**

**ARTICLE 104.** – If the Superintendent of Telecommunications verifies that the owner of a concession for a Non-Competitive Service has put the continuity of its provision at risk, either because of serious irregularities in operations or because of a situation of liquidity that involves a high level of probability of suspension of payments or other action that could cause the bankruptcy of the company, it will appoint, by a duly justified Administrative Resolution, an Interventor technically qualified to supervise, administer or operate the licensee company, as necessary, for a term established in the respective license agreement, which may not be greater than five (5) million Bolivianos (real value adjusted for inflation from the date the present Regulation goes into effect), for the purpose of guaranteeing the performance of the Interventor.

**ARTICLE 105.**- The Interventor will be professional, knowledgeable in the sector, and may or may not be an official of the Office of the Superintendent of Telecommunications. The remuneration of the Interventor will be established by the Superintendent of Telecommunications based on the scale of the Superintendent of Telecommunications.

**ARTICLE 106.** – The Interventor appointed will have the authority to take the necessary actions to ensure the continuity of uninterrupted services and will be responsible for his decisions and actions. He may not carry out acts of disposition of the property of the owner of the license, nor may he order the removal of the members of the Board of Directors, administrators, managers or other personnel of the company. However, he may momentarily suspend the functions of the above named persons upon prior approval of the Superintendent of Telecommunications.

**ARTICLE 107.** – Within fifteen (15) days before the end of the term of intervention, the Interventor must present a report detailing the situation of the company subject to inspection in which he will detail the observations or irregularities that led to a plan to regularize the situation of the company subject to inspection or the declaration of its expiration.

**ARTICLE 108.**- The resumption of operations will be authorized by the Superintendent of Telecommunications by Administrative Resolution, provided that the Interventor's report established that the licensee subject to inspection is in condition to comply with the measures established by the Superintendent of Telecommunications; otherwise, the license will be determined to have expired in accord with the provisions of the Telecommunications Act.

**ARTICLE 109.** – If the Interventor does not fulfill the objective within the time established for the inspection, he will request via a duly justified report an extension of

time in accord with the provisions of the Telecommunications Act. The Superintendent of Telecommunications will submit the Interventor's report for consideration by the General Superintendent of SIRESE and will suggest the prolongation of this measure, it being the superior authority that will make the decision.

**ARTICLE 110.** - At the end of his term, the Interventor will report to the Superintendent of Telecommunications in accord with the legal dispositions in force.

**ARTICLE 111.** – To fulfill its functions, the Office of the Superintendent of Telecommunications may request the assistance of the police.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK     )
                         )    ss.:
COUNTY OF NEW YORK )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into <u>English</u> of <u>Supreme Decree No. 24132</u> written in <u>Spanish</u> .

New York, June 06, 2008.

TransNet USA, Inc.

_Kamran Bayegan_

Kamran Bayegan, President

Sworn to and subscribed before me on June 06, 2008.

_Susan E. Geddes_

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

# REGLAMENTOS A LA LEY DE TELECOMUNICACIONES

## DECRETO SUPREMO N° 24132
## DE 27 DE SEPTIEMBRE DE 1995

### GONZALO SANCHEZ DE LOZADA
### PRESIDENTE CONSTITUCIONAL DE LA REPUBLICA

**CONSIDERANDO:**

Que en fecha 5 de julio de 1995 se promulgó la ley N° 1632, Ley de Telecomunicaciones, la misma que fue publicada en la Gaceta Oficial de Bolivia en fecha 6 de julio de 1995.

Que el artículo 45 de la citada ley dispone su reglamentación por el Poder Ejecutivo.

### EN CONSEJO DE MINISTROS

**DECRETA:**

**ARTICULO 1.-** Apruébase el reglamento a la ley No. 1632 Ley de Telecomunicaciones, de 5 de julio de 1995, cuyo texto forma parte del presente decreto supremo como Anexo "I".

**ARTICULO 2.-** El presente decreto supremo entrara en vigencia a partir de la fecha de designación del Superintendente de Telecomunicaciones.

Los señores Ministros de Estado en los despachos de Hacienda y sin Cartera Responsable de Desarrollo Económico quedan encargados de la ejecución y cumplimiento del presente decreto supremo.

Es dado en el Palacio de Gobierno de la ciudad de La Paz, a los veintisiete días del mes de septiembre de mil novecientos noventa y cinco años.

**FDO. GONZALO SANCHEZ DE LOZADA,** Eduardo Trigo O'Connor d'Arlach MINISTRO SUPLENTE DE RELACIONES EXTERIORES Y CULTO, Carlos Sánchez Berzáin, Jorge Otasevic Toledo, José Guillermo Justiniano Sandoval, René Oswaldo Blattman Bauer, Fernando Candia Castillo, Freddy Teodovich Ortíz, Ramiro Ortega Landa MINISTRO SUPLENTE DE DESARROLLO SOSTENIBLE Y MEDIO AMBIENTE, Reynaldo Peters Arzabe, Irving Alcaráz del Castillo, Alfonso Revollo Thenier, Jaime Villalobos Sanjinés.

22

**ARTICULO 109.-** El interventor, en caso de no cumplir con su objetivo en el plazo establecido para la intervención , podrá solicitar mediante informe debidamente fundamentado, la prórroga de acuerdo a lo establecido en la Ley de Telecomunicaciones. El Superintendente de Telecomunicaciones pondrá a consideración del Superintendente General del SIRESE el informe del interventor y sugerirá la prolongación de esta medida, siendo la autoridad superior la que tome la decisión.

**ARTICULO 110.-** Al término de su gestión, el interventor deberá rendir cuentas a la Superintendencia de Telecomunicaciones de acuerdo a las disposiciones legales vigentes.

**ARTICULO 111.-** La Superintendencia de Telecomunicaciones para el cumplimento de sus funciones podrá requerir el auxilio de la fuerza pública.

## TITULO VI
## DE LA INTERCONEXIÓN ENTRE REDES PUBLICAS

### CAPITULO I
### DISPOSICIONES GENERALES

**ARTICULO 112.-** Estas normas de interconexión constituyen las bases fundamentales para establecer los acuerdos entre dos o más concesionarios autorizados a operar Redes Públicas, pertinentes a los aspectos técnicos, económicos y legales de la interconexión entre sus redes, incluyendo:

a)    La unión física de dos o más Redes Públicas con el propósito de permitir que los usuarios de Servicios al Público prestados a través de cada una de estas Redes trasmitan en la Red o Redes interconectadas; o

b)    La unión física de una Red Pública operada por un concesionario y equipo terminal propiedad de, o controlado por, otro concesionario autorizado a proveer Servicio de Teléfonos Públicos.

Las reglas de interconexión no se aplicarán a la conexión de otros tipos de Redes o equipos terminales a una Red Pública.

**ARTICULO 113.-** Las normas de interconexión también se aplicarán a la unión física de dos o más Redes Públicas de un sólo concesionario, si así lo requiere la Superintendencia de Telecomunicaciones.

22

**ARTICULO 109.-** El interventor, en caso de no cumplir con su objetivo en el plazo establecido para la intervención , podrá solicitar mediante informe debidamente fundamentado, la prórroga de acuerdo a lo establecido en la Ley de Telecomunicaciones. El Superintendente de Telecomunicaciones pondrá a consideración del Superintendente General del SIRESE el informe del interventor y sugerirá la prolongación de esta medida, siendo la autoridad superior la que tome la decisión.

**ARTICULO 110.-** Al término de su gestión, el interventor deberá rendir cuentas a la Superintendencia de Telecomunicaciones de acuerdo a las disposiciones legales vigentes.

**ARTICULO 111.-** La Superintendencia de Telecomunicaciones para el cumplimento de sus funciones podrá requerir el auxilio de la fuerza pública.

## TITULO VI
## DE LA INTERCONEXIÓN ENTRE REDES PUBLICAS

### CAPITULO I
### DISPOSICIONES GENERALES

**ARTICULO 112.-** Estas normas de interconexión constituyen las bases fundamentales para establecer los acuerdos entre dos o más concesionarios autorizados a operar Redes Públicas, pertinentes a los aspectos técnicos, económicos y legales de la interconexión entre sus redes, incluyendo:

**a)**  La unión física de dos o más Redes Públicas con el propósito de permitir que los usuarios de Servicios al Público prestados a través de cada una de estas Redes trasmitan en la Red o Redes interconectadas; o

**b)**  La unión física de una Red Pública operada por un concesionario y equipo terminal propiedad de, o controlado por, otro concesionario autorizado a proveer Servicio de Teléfonos Públicos.

Las reglas de interconexión no se aplicarán a la conexión de otros tipos de Redes o equipos terminales a una Red Pública.

**ARTICULO 113.-** Las normas de interconexión también se aplicarán a la unión física de dos o más Redes Públicas de un sólo concesionario, si así lo requiere la Superintendencia de Telecomunicaciones.

Torrico Rojas, Graciela Toro Ibañez, Luis Alberto Arce Catacora, René Gonzalo Orellana Halkyer, Angel Javier Hurtado Mercado, Oscar Coca Antezana, Susana Rivero Guzmán, Carlos Villegas Quiroga, Luis Alberto Echazú Alvarado, Walter J. Delgadillo Terceros, María Magdalena Cajias de la Vega, Water Selum Rivero.

**SUPREME DECREE No. 29543**
**EVO MORALES AYMA**
**CONSTITUTIONAL PRESIDENT OF THE REPUBLIC**

**WHEREAS:**

Law No. 1632 of July 5, 1995, of Telecommunications, establishes the conditions and causes for intervention by the Office of the Superintendent of Telecommunications.

The Regulation on the Law of Telecommunications, approved by Supreme Decree No. 24132 of September 27, 1997, defines the conditions and areas of competence of the Interventor designated.

Nonetheless, the rules on intervention in the telecommunications sector are very broad, to the point that Supreme Decrees were issued specifying the scopes for concrete interventions.

Said Regulation must be amended to permit the interventions ordered by the Office of the Superintendent of Telecommunications to be more effective and not subject to any ambiguity and of general application.

**IN CONSULTATION WITH THE MINISTERS,**

**DECREES:**

**ARTICLE 1. – (OBJECTIVE).** This Supreme Decree is intended to amend Title V of the Regulation on the Law of Telecommunications approved by Supreme Decree No. 24132 of September 27, 1997.

**ARTICLE 2. – (AMENDMENTS).**
1.    Article 104 of the Regulation on the Law of Telecommunications approved by Supreme Decree No. 24132 of September 27, 1997, is amended with the following text:

"**ARTICLE 104.** – If the Office of the Superintendent of Telecommunications believes that a holder of a license for a Noncompetitive Service in telecommunications has placed the continuity of service at risk, either due to serious irregularities in operations or due to a situation of illiquidity involving a high probability of suspension of payments or other action that might cause a state of bankruptcy for the company or an interruption in the provision of the services, it will, via a duly justified Administrative Resolution, appointed a technically qualified Interventor who will supervise, administer or operate the licensee company, as necessary, for the period established in the Law of Telecommunications. The same rules will apply if the holder of a license provides both Noncompetitive and Competitive Services. The Office of the Superintendent of Telecommunications will deliver a deposit for an amount established in the respective license, which may not be more than five (5) million Bolivianos to guarantee the good work of the Interventor."

II.    Article 106 of the Regulation on the Law of Telecommunications, approved by Supreme Decree No. 24132 of September 27, 1997, is amended with the following text:

"**ARTICLE 106.** – The designated Interventor will have the power to take the actions necessary to ensure the continuity of service without interruption and will be responsible for his decisions and actions. He will take over the legal personality and the legal representation of the company subject to intervention. He may order the cessation of functions of the Members of the Board of Directors and the Comptrollers until they are designated by the corresponding authorities and may remove the directors and managers of the company. He may also perform all actions necessary to safeguard the assets of the company, including its value, but may not dispose thereof. To carry out his functions, he may request the assistance of the police force."

The Minister of State in the Office of Public Works, Services and Housing will be in charge of the execution of and compliance with this Supreme Decree.

**SIGNED: EVO MORALES. AYMA,** David Choquehuanca Céspedes, Juan Ramón Quintana Taborga, Alfredo Octavio Rada Vélez, Walker San Miguel Rodríguez, Celima Torrico Rojas, Graciela Toro Ibañez, Luis Alberto Arce Catacora, René Gonzalo Orellana Halkyer, Angel Javier Hurtado Mercado, Oscar Coca Antezana, Susana Rivero Guzmán, Carlos Villegas Quiroga, Luis Alberto Echazú Alvarado, Walter J. Delgadillo Terceros, María Magdalena Cajias de la Vega, Water Selum Rivero.

Torrico Rojas, Graciela Toro Ibañez, Luis Alberto Arce Catacora, René Gonzalo Orellana Halkyer, Angel Javier Hurtado Mercado, Oscar Coca Antezana, Susana Rivero Guzmán, Carlos Villegas Quiroga, Luis Alberto Echazú Alvarado, Walter J. Delgadillo Terceros, Maria Magdalena Cajías de la Vega, Walter Selum Rivero.

### DECRETO SUPREMO N° 29543
### EVO MORALES AYMA
### PRESIDENTE CONSTITUCIONAL DE LA REPÚBLICA

CONSIDERANDO:

Que la Ley N° 1632 de 5 de julio de 1995, de Telecomunicaciones, establece las condiciones y las causales de intervención por parte de la Superintendencia de Telecomunicaciones.

Que el Reglamento a la Ley de Telecomunicaciones, aprobado por Decreto Supremo N° 24132 de 27 de septiembre de 1997 define las condiciones y las competencias del interventor designado.

Que no obstante las reglas de intervención en el sector de telecomunicaciones son muy amplias al punto que se han dictado Decreto Supremos que precisan los alcances para intervenciones concretas.

Que es necesario modificar dicho Reglamento a fin de permitir que las intervenciones dispuestas por la Superintendencia de Telecomunicaciones sean más eficaces y no estén sujetas a ninguna ambigüedad, y que sean de aplicación general.

EN CONSEJO DE MINISTROS,

DECRETA:

**ARTÍCULO 1.- (OBJETO).** El presente Decreto Supremo tiene por objeto modificar el Título V del Reglamento a la Ley de Telecomunicaciones aprobado por Decreto Supremo N° 24132 de 27 de septiembre de 1997.

**ARTÍCULO 2.- (MODIFICACIONES).**

I. Se modifica el Artículo 104 del Reglamento a la Ley de Telecomunicaciones aprobado por Decreto Supremo N° 24132 de 27 de septiembre de 1997, con el siguiente texto:

"ARTÍCULO 104.- Si la Superintendencia de Telecomunicaciones considera que un titular de una concesión para un Servicio No Competitivo de telecomunicaciones ha puesto en riesgo la continuidad de su provisión, ya sea por graves irregularidades en las operaciones o por situación de iliquidez que conlleve alta probabilidad de suspensión de pagos u otra acción que pueda ocasionar el estado de quiebra de la empresa o la interrupción en la prestación de los servicios, designará mediante Resolución Administrativa debidamente fundamentada, un interventor técnicamente calificado que supervise, administre u opere la empresa concesionaria, según sea necesario, por el plazo establecido en la Ley de Telecomunicaciones. Se aplicarán las mismas reglas si el titular de una concesión presta a la vez Servicios No Competitivos y Competitivos. La Superintendencia de Telecomunicaciones entregará una fianza por un valor establecido en el contrato de concesión respectivo, no pudiendo ser el mismo superior a cinco (5) millones de bolivianos con el objeto de garantizar el desenvolvimiento del interventor".

II.    Se modifica el Artículo 106 del Reglamento a la Ley de Telecomunicaciones aprobado por Decreto Supremo N° 24132 de 27 de septiembre de 1997, con el siguiente texto:

"Artículo 106.- El interventor designado tendrá la potestad de tomar las acciones necesarias a fin de asegurar la continuidad del servicio en forma ininterrumpida, y será responsable de sus decisiones y acciones. Asumirá la personería jurídica y la representación legal de la empresa intervenida. Podrá disponer el cese de funciones de Directores y Síndicos hasta que sean designados por las instancias correspondientes, y remover a los administradores y gerentes de la empresa. Realizará también todos los actos necesarios para cuidar el patrimonio de la empresa, incluyendo su valuación, sin poder realizar actos de disposición. Para el cumplimiento de sus funciones podrá requerir el auxilio de la fuerza pública".

El Señor Ministro de Estado, en el Despacho de Obras Públicas, Servicios y Vivienda, queda encargado de la ejecución y cumplimiento del presente Decreto Supremo.

Es dado en el Palacio de Gobierno de la ciudad de La Paz, al primer día del mes de mayo del año dos mil ocho.

FDO. EVO MORALES AYMA, David Choquehuanca Céspedes, Juan Ramón Quintana Taborga, Alfredo Octavio Rada Vélez, Walker San Miguel Rodríguez, Celima Torrico Rojas, Graciela Toro Ibañez, Luis Alberto Arce Catacora, René Gonzalo Orellana Halkyer, Angel Javier Hurtado Mercado, Oscar Coca Antezana, Susana Rivero Guzmán, Carlos Villegas Quiroga, Luis Alberto Echazú Alvarado, Walter J. Delgadillo Terceros, Maria Magdalena Cajías de la Vega, Walter Selum Rivero.

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK )
                 ) ss.:
COUNTY OF NEW YORK )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate rendition into  English  of   Supreme Decree Law 29543   written in   Spanish   .

New York,  June 09, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
June 09, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009