Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
   KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone:  (212) 254-1111
Facsimile:   (212) 674-4614

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP
180 Montgomery Street, # 2200
San Francisco, California 94104
Telephone:  (415) 514-0200
Facsimile:   (415) 544-0201

*Attorneys for Empresa Nacional de Telecomunicaciones Entel S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

E.T.I. EURO TELECOM
INTERNATIONAL, N.V.,

    Plaintiff,

    v.

REPUBLIC OF BOLIVIA, and
EMPRESA NACIONAL DE
TELECOMUNICACIONES ENTEL, S.A.,

    Defendants.

Case No. 08-cv-4247 (LTS)

---

**NOTICE OF FILING CORRECTED SECOND SALINAS DECLARATION**

**PLEASE TAKE NOTICE** that defendant Empresa Nacional de Telecomunicaciones Entel S.A. ("ENTEL"), by and through its undersigned counsel, herewith files a corrected Second Declaration of Alejandro Salinas Vilela in support of ENTEL's opposition to motion to confirm *ex parte* order of prejudgment attachment.

As explained by the declarant, there was a typographical error in paragraph 20 in the Declaration that is corrected by this submission.

Dated: June 16, 2008

Of Counsel:
Jules Lobel

Adam Belsky
GROSS BELSKY ALONSO LLP

Respectfully submitted,

Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
 KRINSKY & LIEBERMAN, P.C.

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP

*Attorneys for Empresa Nacional de Telecomunicaciones Entel S.A.*

Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
   KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone: (212) 254-1111
Facsimile: (212) 674-4614

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP
180 Montgomery Street, # 2200
San Francisco, California 94104
Telephone: (415) 514-0200
Facsimile: (415) 544-0201

*Attorneys for Empresa Nacional de Telecomunicaciones Entel S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF BOLIVIA, and EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A., <br><br> Defendants. | Case No. 08-cv-4247 (LTS) |

---

**SECOND DECLARATION (CORRECTED) OF ALEJANDRO SALINAS VILELA IN SUPPORT OF DEFENDANT EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A.'S OPPOSITION TO MOTION TO CONFIRM *EX PARTE* ORDER OF PREJUDGMENT ATTACHMENT**

Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
 KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone: (212) 254-1111
Facsimile: (212) 674-4614

Attorneys for Empresa Nacional de
Telecomunicaciones Entel, S.A.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF BOLIVIA, and EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A., <br><br> Defendants. | Case No. 08-cv-4247 (LTS) |

## DECLARATION OF DR. ALEJANDRO SALINAS VILELA

I, DR. ALEJANDRO SALINAS VILELA, declare under penalty of perjury of the laws of the United States of America that the following is true and correct:

1. I am the Manager of the Legal Department at the Empresa Nacional de Telecomunicaciones, S.A. ("ENTEL"), and have held this position since May 13, 2008. I am a lawyer and a member of the National Bar Association of Bolivia and of the Bar of La Paz. I am a Professor of Regulatory and Hydrocarbon Law at the Bolivian Catholic

University School of Law in La Paz, Bolivia. I received my law degree in 1998 from the Bolivian Catholic University School of Law. I received a degree entitled Specialization in Administrative Law (which is equivalent to a master's degree) from Simon Bolivar University in La Paz, Bolivia in 1999. I received a M.A. in International Business Law from University of Francisco de Vittoria in Madrid, Spain, in 2002. I received a Postgraduate Degree in Law in public services from Castilla La Mancha University in Toledo, Spain in 2004. I submit this declaration in support of the opposition to the Motion to Confirm Order of Attachment filed by E.T.I. Euro Telecom International N.V. ("ETI").

2. ENTEL provides essential public services to the people of Bolivia. ENTEL's services were described in Administrative Resolution No. 2008/1056 of the Superintendent of Telecommunications of May 1, 2008, as follows: "[ENTEL has] concession contracts . . . for the provision of Local Services (including circuit leases, rural services and satellite services) of Public Telephones, Movil Services, Personal communications, Long Distance Communications and Data Transmission within the whole territory of Bolivia; [and] ENTEL S.A. [is] the dominant operator in the following services: National and International Long Distance Communications, Public Phones, Data Transmission, Premises and Circuit Rental (in some areas); all of which are therefore considered to be non-competitive; . . . [and ENTEL] is at present the main entity in charge of carrying most of the National and International Long Distance calls of the telecommunications market operators, as well as of other telecommunications services." ENTEL provides telecommunications services to private and public corporations, including private Bolivian corporations and private individuals, as well as to the Republic. A copy of this Administrative Resolution is attached to the Declaration of Javier Castro as Exhibit C.

3. ENTEL, as a corporation constituted under the laws of the Republic of Bolivia, has a separate juridical personality under Bolivian law. According to Bolivian

law, ENTEL is not responsible for the debts or obligations of its shareholders, including without limitation the Republic of Bolivia. Likewise, ENTEL is not responsible for the debts or obligations of any third parties. ENTEL's assets and liabilities are its own and are not the assets and liabilities of its shareholders. Likewise, ENTEL's assets and liabilities are not the assets or liabilities of any third parties, including the Republic of Bolivia.

4. The Bolivian Commercial Code was adopted in Decree Law 14379, and these provisions have been in existence since February 25, 1977. Article 133 of the Commercial Code states that "commercial companies have will acquire legal personhood . . . as soon as they are registered in the Commercial Registry, with no need for any other requirement." True and correct copies of Article 133 of the Commercial Code, and other relevant provisions cited in this declaration, are attached hereto as Exhibit A.

5. Article 54 of the Civil Code of Bolivia states that "legal persons have legal capacity." Article 42 defines legal persons, stating that "The following are legal persons: . . . (3) civil and mercantile companies." True and correct copies of Articles 52 and 54 of the Civil Code are attached hereto as Exhibit B.

6. ENTEL (Empresa Nacional de Telecomunicaciones) was created through Decree Law 7441 of December 22, 1965, for the stated reasons: "It is absolutely necessary to adopt a defined, substantial policy with regard to the exploitation, functioning, and expansion of the Telecommunications Services in Bolivia, so that they may contribute effectively, positively and constantly to the economic and social development of the Nation [as] the actual structure and work procedures that are still employed in the national Telecommunications services, already made obsolete by advances in technology, have ceased to be adequate and sufficient to meet the ever greater demands of public and private activity" and that "it is essential to implement the agreements reached with regard to the improvement and expansion of the physical and/or electronic circuits with the neighboring countries, within the scope of the planned

3

Interamerican Telecommunications Network (RIT)." ENTEL was created as "a mixed economy company . . . based on the principle of combining public and private interests [and] the financial participation of both." A true and correct copy of Decree Law 7441 is attached hereto as Exhibit C.

7. By Supreme Decree 08527 of October 30, 1968, the Bolivian Government determined that ENTEL would have exclusive telecommunication concessions, and that "ENTEL will install and operate all international telecommunications services respecting the actual concessions," and that "ENTEL must be in charge of exploiting all telecommunication services, to which end the Ministry of Public Works, Communications and Transportation will determine the schedule for transferring [these services to ENTEL." A true and correct copy of Supreme Decree 08527 is attached hereto as Exhibit D.

8. In June 1970, Supreme Decree 09250 converted ENTEL to an entirely state-owned enterprise. A true and correct copy of Supreme Decree 09250 is attached hereto as Exhibit E.

9. On June 7, 1995, Supreme Decree 24025 of June 7, 1995, issued in accordance with Law 1544 of March 21, 1994 (Law of Capitalization), transformed ENTEL into a mixed economy society (an "SAM"). This was registered in the General Commerce and Share Based Companies Registry Office on July 18, 1995 under Administrative Resolution No. 02-05424/95. True and correct copies of Supreme Decree 24025, relevant sections of Law 1544, and Administrative Resolution No. 02-05424/95 are attached hereto as Exhibits G, H and I.

10. On November 27, 1995, ENTEL's Extraordinary Shareholders meeting approved the transformation of ENTEL from a mixed economic society (SAM) to a PLC (a Sociedad Anonima, or "SA"). ENTEL S.A. was registered in the General Commerce and Share Based Companies Registry Office on January 16, 1996, under Administrative Resolution No. 02-06838/96, and a Certification of Registration was issued on January

16, 1996. True and correct copies of Administrative Resolution No. 02-06838/96 and the Certificate of Registration of January 16, 1996 are attached hereto together as Exhibit J.

11.     As noted in Paragraph 4, Article 133 of the Commercial Code states that "commercial companies have will acquire legal personhood . . . as soon as they are registered in the Commercial Registry, with no need for any other requirement." Since ENTEL is a Sociedad Anonima, and has been registered on the Registry maintained by the General Commerce and Share Based Companies Registry Office of the Republic of Bolivia, pursuant to Article 133 of the Commercial Code, ENTEL has a separate juridical personality. *See* Article 133 (Exhibit A).

12.     Under Bolivian law, sociedades anonimas (an "SA"), as well as sociedades anonimas mixtas (an "SAM"), are not responsible for the debts of their shareholders, nor are their shareholders responsible for the debts of such companies. Article 217 of the Commercial Code, concerning SAs, states that "the liability of the partners is limited to the amount of stock for which they subscribed." *See* Exhibit A for a copy of Article 217. Dr. Carlos Morales Guillen, a well known and respected Bolivian jurist and the author of a commentary on the Bolivian Commercial Code, in his analysis of Commercial Code Article 217, states that a corporation is a "legal entity that conducts business with the assets contributed by its shareholders and distributes any accrued profits, and whose essential characteristic lies in the limited liability of all the shareholders, none of which are personally liable for the company's debts." Morales Guillen, *Codigo de Comercio, Concordado y Anotado*, Art. 217, p. 278-79 (2d ed. 1999), quoting Vivante, an Italian jurist.

13.     These principles apply when the Republic is a shareholder of the company, as with SAMs, which are defined in Article 424 of the Commercial Code as: "The companies formed between the State, prefectures, municipalities, corporations, public companies or other entities dependent on the State, and private capital, are mixed-economy companies for the operation of companies that are in the collective interest, or

persons carrying out activities [concerning telecommunications] originating or ending within the national territory . . . are subject to the provisions [of this law]." Thus, ENTEL, which is operated as a distinct telecommunications enterprise, is subject to general supervision by the Superintendent of Telecommunications in the same manner as any other telecommunications company. A true and correct copy of relevant provisions of Law 1632 are attached hereto as Exhibit L.

20. The Republic of Bolivia does not control the day-to-day operations of ENTEL. (I am submitting this corrected declaration, because my prior signed declaration contained a typographical error that I did not notice at the time, and the word "not" was inadvertently omitted from the prior sentence.)

21. ENTEL is responsible for its own financing and maintains its own operating facilities.

22. ENTEL hires its own employees, just like any other company, and is not instructed by the Republic as to who to hire.

23. 2.5329% of ENTEL's shares are held by private individuals, who are not associated with the Republic. These minority shareholders participate in ENTEL's shareholders meetings, and this participation is reflected in the minutes of ENTEL's shareholder meetings.

24. On April 23, 2007, the President of Bolivia issued Supreme Decree 29101. Pursuant to this Supreme Decree, the Republic of Bolivia became the owner of all shares that previously had been held by the pension fund managers AFP Futuro de Bolivia S.A. and BBVA Prevision AFP S.A. Each of these two funds had held 3,037,729 shares of Entel, for a total of 6,075,458 shares of ENTEL. These shares are 47.4671% of all the shares issued by the company. Pursuant to this Supreme Decree, Article 1, "The object of this Supreme Decree is to transfer to the Bolivian State" the shares previously held by these pension funds. According to Article 2.II of the Supreme Decree, the prior owners of the shares were instructed "to change the ownership of the shares . . . to the 'Ministry

of Public Works, Services and Housing for the Bolivian State.'" President Morales stated in this Supreme Decree that the reason for his action was "that the object of the use of natural and human resources shall be national independence and the development of the country, in order to safeguard State security and seek the welfare of the Bolivian people" and to undo the "systematic dismantling of strategic State-owned companies which led to their being transferred into private hands through the anti-national process of privatization and capitalization." A copy of Supreme Decree 29101 is attached to the Declaration of Javier Castro as Exhibit A.

25. On April 24, 2007, in the Letter Ref. No. EDV-GV No. 0926/07, the Bolivian Stock Registry certified that the pension funds' former shares were registered in the name of the Ministry of Public Works, Services and Housing. In advance of the shareholders meeting of ENTEL held on February 26, 2008, the Bolivian Stock Registry issued Certificate of Accreditation of Ownership No. 00912, stating that the Ministry of Public Works, Services and Housing was the owner of these 6,080,050 shares of ENTEL. The Minister of Public Works, in the Letter Ref. No. MOPSV-DESP-0345/2008 sent to the President of ENTEL, notified ENTEL of the change of the name of the registered shareholder to the Ministry of Public Works, Services and Housing. True and correct copies of these three documents are attached hereto as Exhibit M.

26. ENTEL is managed by a board of directors who are appointed by ENTEL's shareholders for a two year term. Bylaws, Articles 51 (Ex. K).

27. All members of ENTEL's board of directors are private individuals, and none are government employees or ministers. Article 310 of the Commercial Code prohibits government officials, with jurisdiction over the area of a company, from serving as a director of any such company for two years after they leave public service: "IMPEDIMENTS AND PROHIBITIONS FOR BEING DIRECTORS. The following cannot be directors: . . . (5) Public officials with competence and jurisdiction in relation to the object of the company, for two years after cessation of his functions." *See* Exhibit

A for a copy of Article 310 of the Commercial Code.

28.     On May 1, 2008, the Superintendent of Telecommunications appointed Joel Flores as the Interventor with responsibility to manage the affairs of ENTEL for a period of 90 days. The process of intervention is well established in Bolivian law.

29.     In Bolivia, pursuant to Law 1600 of the Sectorial Regulation System ("SIRESE"), all the companies that provide services to the public in general are supervised and controlled by the Sectorial Regulation System, composed of Superintendents for five sectors of public services. These sectors are telecommunications, hydrocarbons, transport, water and electricity. Law 1600, Article 1. Article 10(f) of Law 1600 states: "The general duties of the Sectorial Superintendents include, besides the specific duties established in the sectorial legal standards . . . (f) to intervene in the companies and entities under their regulatory jurisdiction and to appoint the state interventors in accordance with the sectorial legal standards." Law 1600, Article 10(f). A true and correct copy of Articles 1 and 10(f) of Law 1600 is attached hereto as Exhibit N.

30.     In 1994, President Gonzalo Sanchez de Lozada commenced the privatization of Empresa Nacional de las Telecomunicaciones, through Law No. 1544, the Capitalization Act, of March 21, 1994. In June 1995, Empresa Nacional de las Telecomunicaciones became partially State-owned company, and later a wholly private company. Thus, it was only as of June 1995 that there was any private ownership of telecommunications services in Bolivia, any need for a Superintendent of Telecommunications, or any need for the Superintendent to have the power of intervention in telecommunication companies. Therefore, President Gonzalo Sanchez de Lozada created a Superintendent of Telecommunications with the power of intervention in 1995.

31.     Law 1632 of Telecommunications of July 5, 1995 was enacted to establish the Superintendent of Telecommunications. This Law also provides for intervention by

9

the Superintendent of Telecommunications. Article 17 provides that: "PREVENTIVE INTERVENTION. When the continuity of the provision of Telecommunication Services is at risk, and within the limits of his authority he [the Superintendent of Telecommunications] will appoint an interventor for a period of 90 days, according to the procedure determined in the regulations." *See* Exhibit L for a true and correct copy of Article 17 of Law 1632.

32. Supreme Decree 24132 of September 27, 1995, established Regulations for the Law of Telecommunications. Articles 104-111 provide procedures for intervention in telecommunication companies. Articles 104 and 106 of these Regulations were modified by Supreme Decree 29543 of May 1, 2008. Article 104 of the Regulations states that: "If the Office of the Superintendent of Telecommunications believes that a holder of a license for a Noncompetitive Service in telecommunications has placed the continuity of service at risk, either due to serious irregularities in operations or due to a situation of illiquidity involving a high probability of suspension of payments or other action that might cause a state of bankruptcy for the company or an interruption in the provision of the services, it will, via a duly justified Administrative Resolution appoint a technically qualified Interventor who will supervise, administer or operate the licensee company, as necessary, for the period established in the Law of Telecommunications." A true and correct copy of Articles 105-111 of Supreme Decree 24132 and Article 104 and 106 of Supreme Decree 29543 is attached hereto together as Exhibit O.

33. Each of the other regulated sectors has similar provisions for intervention, that have been in place for many years. The procedures for intervention for the Office of the Superintendent for Transportation for national aeronautical services and concessionary airport services are stated in Articles 24-25 of Supreme Decree 24718 of July 22, 1997, modified by Supreme Decree 28619 of February 9, 2006. The procedures for intervention for the Office of the Superintendent for Transportation concerning railroads are stated in Articles 52-56 of Supreme Decree 24179 of December 8, 1995.

Administrative Resolution No. 2008/1056 of May 1, 2008 provides that Sr. Flores is appointed as Interventor for a period of 90 days. (*See* Exhibit C to Declaration of Javier Castro for a copy of this Administrative Resolution.) Article 109 of Supreme Decree 24132 provides that this period can be renewed for a similar time by the General Superintendent of the Sectorial Regulation System (SIRESE), only if the Telecommunications Superintendent recommends to the General Superintendent for a continuation of the intervention for another 90 day period if he finds that the interventor has not yet accomplished the objection of the intervention. *See* Exhibit O for a true and correct copy of Supreme Decree 24132.

37. Interventors are not regular government employees. They have no entitlement to benefits provided to government employees. ENTEL is paying the salary of the Interventor, and not the government. The Republic has not provided any appropriations to ENTEL to pay for the Interventor.

38. Interventors are not authorized to sell assets of the company. Article 106 of the Regulations for the Law of Telecommunications, as modified by Supreme Decree 29543, provides: "The designated Interventor will have the power to take the actions necessary to ensure the continuity of service without interruption and will be responsible for his decisions and actions. He will take over the legal personality and the legal representation of the company subject to intervention. . . . He may also perform all actions necessary to safeguard the assets of the company, including its value, but may not dispose thereof." *See* Exhibit O for a copy of Supreme Decree 29543.

39. Interventors report to the Superintendent that has appointed them. Interventors do not report to any government ministry. Article 107 of Supreme Decree 24132. Thus, the Interventor at ENTEL, Sr. Joel Flores, reports only to the Superintendent of Telecommunications, and not to the Ministry of Public Works, Services and Housing. The Superintendent of Telecommunications is not a part of the Ministry of Public Works, Services and Housing. Rather, the Superintendent of

Telecommunications, as with all the Superintendents, report to the General Superintendent, and all are part of the Sectorial Regulation System (SIRESE). Article 2 of Law 1600 provides that "The Sectorial Regulation System (SIRESE) . . . is under the tuition of the Ministry of Finance and Economic Development." *See* Exhibit N for a true and correct copy of Article 2 of Law 1600.

40. An interventor's report is not due until "fifteen (15) days before the end of the term of intervention." Article 107 of Supreme Decree 24132 (Exhibit O). Thus, an interventor is not required to make reports even to the Superintendent during the term of his appointment, other than this report near the end of the intervention.

41. Neither the Republic nor the Ministry give orders to the Interventor. The Interventor does not need ministerial approval to take actions. In fact, an Interventor is to act independently and does not need the prior approval of the appointing Superintendent in order to take actions. The Interventor makes a report to the Superintendent fifteen days prior to the expiration of the intervention. Article 107 of Supreme Decree 24132 (Exhibit O).

42. Since the beginning of the intervention, the Republic has not attempted to direct the Interventor in his actions, nor has the Republic attempted to have ENTEL pay for any of the Republic's expenses or otherwise divert ENTEL's assets to the Republic.

43. Since May 1, 2008, when the intervention began, nothing has changed concerning ENTEL as a result of the nationalization of the shares of ETI, except that there is a different shareholder for the 50% formerly held by ETI. The Bylaws of ENTEL are the same and remain in effect. All the other limitations and regulations on ENTEL imposed by Bolivian law on ENTEL, which are the same as those imposed on all Bolivian companies, remain in effect.

Executed on June 13, 2008, in La Paz, Bolivia.

_____
ALEJANDRO SALINAS VILELA