Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **E.T.I. EURO TELECOM INTERNATIONAL N.V.,**<br><br>Plaintiff,<br><br>-against-<br><br>**REPUBLIC OF BOLIVIA** and **EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL S.A.,**<br><br>Defendants. | 08 CV 4247 (LTS)<br><br>**DECLARATION**<br>**OF RAMIRO GUEVARA** |

**RAMIRO GUEVARA** declares the following to be true:

    1.    I am a member of the bar of La Paz in the Republic of Bolivia and a founding partner of Guevara & Gutierrez S.C., a law firm with offices in La Paz and Santa Cruz, and one of the largest firms in Bolivia. A copy of my curriculum vitae is attached hereto as Exhibit A. I make this declaration in support of the motion of plaintiff E.T.I. Euro Telecom International N.V. ("ETI") to confirm an order attaching certain funds of Empresa Nacional de Telecomunicaciones Entel S.A. ("Entel").

    2.    I have reviewed the declaration of Dr. Javier Castro executed on June 6, 2008, filed in opposition to the pending motion (the "Castro Declaration"). As set forth below, the Castro Declaration is materially inaccurate on the points of Bolivian law that it discusses.

A.   **ETI's Shares In Entel Have Not Been Transferred To The Republic Of Bolivia In Accordance With Bolivian Law**

      3.   Paragraph 3 of the Castro Declaration states as follows:

> "as of May 1, 2008, the Republic of Bolivia was the owner of 12,484,544 shares in ENTEL which is 97.4671% of all of the shares issued by the company."

That is simply not the case.

      4.   Entel is a corporation (referred to in Spanish as a "Sociedad Anónima") regulated by the Bolivian Code of Commerce.  The equity participation of its shareholders is represented by shares.  As evidenced by Exhibit E to the Castro Declaration, Entel's shares are "nominative shares."

      5.   The following provisions of the Bolivian Commercial Code are relevant here:

      A.   Article 251 provides that: "the company considers as the owner of the nominative shares, the person appearing as such in the share certificate and in the share registry";

      B.   Article 254 of the Bolivian Commercial Code provides that: "the transfer of nominative shares is perfected by the endorsement and is effective vis a vis the company and third parties as of <u>its</u> registration in the share registry" (emphasis added); and

      C.   Article 516 of the Bolivian Commercial Code provides that in the case of "nominative titles," such as ETI's shares of Entel's stock (the "ETI Shares"): "The only person who can be recognized as their legitimate holder, is the one appearing as such in the title itself and in the relevant registry."

Copies of Articles 251, 254 and 516 of the Bolivian Commercial Code are attached as Exhibits B, C, and D, respectively.

2

6.     Applying these provisions of the Bolivian Commercial Code, in order for the Republic of Bolivia to be the holder of ETI's Shares, the Republic of Bolivia must be able to produce two documents: i) Certificate No. 0000001, issued on April 9, 1996 and representing ETI's Shares, duly endorsed by ETI in favor of the Republic of Bolivia; and ii) the relevant page of the Share Registry Book in which said endorsement was registered.

7.     In that regard, Article 254 of the Bolivian Commercial Code requires that the endorsement – and not a Supreme Decree – be registered in the relevant registry. Therefore, a valid endorsement must exist if it is to be registered, and the only valid registration is the registration of a preexistent endorsement.

8.     Because no endorsement exists, the Republic of Bolivia has failed to produce a valid registration of said endorsement. In that regard, the Republic of Bolivia and Dr. Castro have produced a page of the Share Registry Ledger of ENTEL (Exhibit E of the Castro Declaration) in which Dr. Castro assisted in registering a purported transfer of ETI's Shares in favor of the Ministry of Public Works, Services and Housing.

9.     Exhibit E to the Castro Declaration establishes that no endorsement has taken place. In the "Observations" contained in the document, somebody has included the following wording (according to the translation provided by Dr. Castro): "since the title owner of the shares did not present Share Certificate No. 0000001, the registry of the transfer will be carried out in accordance with the letter reference No. MOPSV-DESP 1066/2008 of May 2, 2008 and Supreme Decree 29544 of May 1, 2008."

10.     What the registry evidences is that the purported transfer was made by means of a letter and a Supreme Decree and not – as required by Bolivian Law – by means of an endorsement. Therefore, none of the requirements set forth in Articles 251, 254 and 516 have been met.

11.    I further note that the English translation provided by Dr. Castro does not reflect the Spanish original. In the Spanish version, there is no mention of the Title Owner. The correct translation should have been: "Since the Share Certificate No. 0000001 was not presented . . ." and not "Since the Title Owner of the shares did not present Share Certificate No. 0000001 . . ." as it was wrongly set out in Exhibit E.

12.    The fifth column of Exhibit E to the Castro Declaration serves to register the Date of Transfer of Shares. Strikingly, the registration states that on the day zero of the fifth month of 2008, the transfer of the shares took place. That statement is meaningless, and confirms that the entry is invalid.

13.    Paragraphs 5 and 6 of the Castro Declaration state that: "ETI had held 50% of the shares of ENTEL, and pursuant to Supreme Decree 29544 [of May 1, 2008] these shares were transferred to the Republic of the Bolivia," and, "[t]hus, as of May 1, 2008, the Republic of Bolivia was the owner of the shares totaling 97.4671% of ENTEL." (Castro Declaration ¶¶ 5-6). That statement is likewise erroneous, because, as set forth above, ETI's Shares have not been transferred pursuant to the provisions of the Bolivian Commercial Code.

**B.    Supreme Decree 29544, By Its Own Terms,
Did Not Transfer The ETI Shares**

14.    Supreme Decree 29544 did not transfer ETI's Shares in favor of the Republic of Bolivia. Supreme Decree 29544 was part of the expropriation of ETI's Shares,

but it did not effect any transfer. Rather it states that ETI's Shares "shall be transferred to the Bolivian State."[1]  (Emphasis added).

       15.    In both Spanish and English, "ETI's Shares shall be transferred to the Bolivian State" means that some further action needs to be taken in the future to transfer said shares. This language plainly does not mean that the Republic of Bolivia has already received a transfer of ETI's Shares from their legal owner.

       16.    In paragraph 8 of his Declaration, Dr. Castro mentions that a letter was delivered to ENTEL by the Ministry of Public Works, Services and Housing concerning the transfer of the ETI Shares. That letter, a copy of which is attached as Exhibit D to his declaration, makes it clear that, under Supreme Decree 29544, ETI's Shares will be transferred to the Bolivian State. This again confirms that the transfer has not yet happened.

## C.    The Expropriation Was Carried Out In A Manner Contrary To The Bolivian Constitution

       17.    The Republic of Bolivia has not only failed to follow the Bolivian Commercial Code, but it has also failed to comply with its own Constitution.

       18.    Under the Bolivian Constitution, the Republic of Bolivia has the right to expropriate property provided certain conditions are met and certain rules are followed.

       19.    Article 22 of the Bolivian Constitution states: "Private property is guaranteed, provided the use thereof is not damaging for the collective interest. Expropriation can be imposed due to public interest or when the property does not comply with a social function, determined by a law and after just indemnification." (Emphasis added).  A copy of Article 22 of the Bolivian Constitution is attached as Exhibit E.

---

[1] Article 2 of Supreme Decree 29544 states: "(Nationalization). The totality of the stock package held by ETI Eurotelecom International NV in ENTEL S.A. is nationalized. Stock held by this capitalizing company shall be transferred to the Bolivian State, [and placed] under the temporary ownership of the Ministry of Public Works, Services and Housing until the legal transformation of ENTEL S.A. into ENTEL SAM is completed. By virtue of this measure, every ENTEL S.A. subsidiary in Bolivia and abroad shall also be nationalized proportionally."

20.    In accordance with the Bolivian Constitution, Article 108 of the Bolivian Civil Code also states: "(EXPROPRIATION) 1. Expropriation can only take place if a just and previous indemnification has been paid . . . ." (Emphasis added). A copy of Article 108 of the Bolivian Civil Code is attached as Exhibit F.

21.    Article 228 of the Bolivian Constitution states: "The Political Constitution of the State is the supreme law of the national legal system. The courts, judges and authorities must apply it with preference to the laws and them [the laws] with preference to any other resolution." Therefore, Article 22 of the Constitution must be obeyed with preference to any other resolution (including any resolution contained in a Supreme Decree) and Article 108 of the Bolivian Civil Code must be followed with preference to any resolution contained in a Supreme Decree. A copy of Article 228 of the Bolivian Constitution is attached as Exhibit G.

22.    The Bolivian Constitutional Tribunal, the Court of last resort on Bolivian constitutional questions, has repeatedly and uniformly concluded and ruled that expropriating is one of the faculties of the Bolivian Government, but that for the Government to be considered the new owner of the assets being expropriated (and therefore for it to exercise ownership rights over said assets) the price must have been paid, in advance, to the party whose property is being expropriated.[2]

23.    For example, Constitutional Ruling (Sentencia Constitucional) No. 1671/2003 – R issued by the Bolivian Constitutional Tribunal on November 21, 2003 states:

> "III.1 Before analyzing the problem posted by the appellant, it must be pointed out that the expropriation is an institute of procedure of public law by means of which the State - based on public and usefulness needs, or when the property does not comply with a social purpose – coactively takes the legal ownership of an asset from a private party, thereby obligating the private party to transfer ownership over the asset from the private dominion

---

[2] See Constitutional Rulings Nos. 07-2002, 1671/2003 – R and 0101-2004.

to the public dominion, after a special procedure has been complied with and payment of an indemnification has been made.

Accordingly, it is possible to infer that, although it is true, that under the new understanding of the fundamental rights, the Constituent has determined a limitation to the right to the private property by means of expropriation, it is not less true that in order to apply said limitation, [the Constitution] has set forth some guarantees in favor of the holder of the right being limited, said guarantees can be summarized as follows: a) expropriation can only proceed provided a solemn declaration of the public need and usefulness is made and the same is determined by an authority with jurisdiction, b) the procedure shall follow previously existing legal provisions; and c) the assignment of the property rights, as well as the public occupation of the expropriated asset, will only materialize after payment of a just indemnification has been made." (Emphasis added).

A copy of this Constitutional Ruling is attached as Exhibit H.

24.    Article 3 of Supreme Decree 29544 (which has been presented by Dr. Castro as Exhibit B to his Declaration) confirms that no payment has been made to ETI. It says that the Bolivian State shall pay (again using the future tense) ETI the value of the nationalized stock and that for that purpose, a valuation shall be carried out within a term of not more than 60 days. However, under Bolivian Constitutional expropriation rules, the State is not the owner of the asset being expropriated until it pays just compensation for it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2008

Ramiro Guevara

# EXHIBIT A

# Resume
# RAMIRO GUEVARA

## LICENCE TO PRACTICE LAW

- Bolivian Bar Association

## MEMBERSHIPS

- Country representative of the International Bar Association in Bolivia
- Country Chair of the New State Bar Association
- Member of the American Bar Association
- Arbitrator of the Mediation and Arbitration Center of the Bolivian National Chamber of Commerce
-

## LANGUAGES

Spanish, English, French: Write, read and talk
Italian, Portuguese: comprehension and reading

## FORMAL STUDIES

POSTGRADUATE STUDIES

| | |
|---|---|
| 1989 | International Development Law Institute<br>Rome - Italy<br>Diploma on Investment Treaties, Investment Contracts and Joint Ventures Seminar. |
| 1981-1983 | Université des Sciènces Sociales<br>Toulouse - Francia<br>Specialized Studies in Business Administration: Certificat d'Aptitude a l'Administration des Entreprises - MBA |
| | Institut d'Etudes Internationales et de Development<br>Toulouse - Francia<br>"Certificate of Participation in International Commerce courses ". |

DEGREE

| | |
|---|---|
| 1985 | Universidad Mayor de San Andrés<br>La Paz - Bolivia<br>Lawyer (Degree in Ciencias Jurídicas) |
| 1971-1973 | St. John's University<br>New York - USA.<br>Undergraduate studies |

Calle 15 Torre Ketal – Piso 4 Of. 2 - Calacoto • La Paz, Bolivia • teléfono 591 2 2770808 • fax: 591 2 2796462
rguevara@gg-lex.com• www.gg-lex.com

1

**WORK EXPERIENCE**

| | |
|---|---|
| 1989 to date | Law Firm:<br>GUEVARA & GUTIÉRREZ S.C. SERVICIOS LEGALES<br>Founding Partner<br>La Paz, Bolivia<br>Specializing in:<br>Banking Law, Joint Ventures, Project Finance, Mergers and Acquisitions (M&A), Arbitration, Administrative, Petroleum (Oil and Gas), Electricity, Water, Mining, Civil Law, and General Commercial Law |

Law Firm
Mostajo, Gutiérrez & Palza, López Del Solar,
Lawyer
La Paz, Bolivia

BUREAU JURIDIQUE MAITRE SEGOND
In charge of legal matters pending in U.S.A
Toulouse, Francia

BENTATA, HOET & ASOCIADOS
In charge of the SIEX Department
Caracas, Venezuela

**BOARD OF DIRECTORS:**

| | |
|---|---|
| 1989 - 1991 | Yacimientos Petrolíferos Fiscales Bolivianos |
| 1989 - 1991 | Central Bank of Bolivia |
| 1996 – 1997 | Nacional Financiera de Valores |
| 1994 – 1996 | National Securities and Exchange Commission |

**MINISTRY OF FOREIGN AFFAIRS AND CULTURE**

- Officer in charge: Republic of Uruguay, Federal Republic of Brazil, Western Europe;

- Second Secretary, Bolivian Embassy, Israel.

**ORGANIZED WORKSHOPS:**

- Investment Bonds, Foreign Debt Exchange, Investment Methods Using Investment Bonds, International Arbitration, Financial NGO's Law for Non-Lawyers, Professor at Post Graduate Course on International Commercial Law, "Universidad Católica Boliviana".
- Hydrocarbons law and legal security in Bolivia.
- International arbitration and financial law.

Calle 15 Torre Ketal – Piso 4 Of. 2 - Calacoto • La Paz, Bolivia • teléfono 591 2 2770808 • fax: 591 2 2796462<br>rguevara@gglex.com• www.gglex.com

2

### OTHER COURSES

INSTITUTO PARA EL DESARROLLO DE EMPRESARIOS Y ADMINISTRADORES (IDEA)
- Banking Law Course
- Labor Legislation Course
- Capital Markets and Stock Exchange Course
- Course on Warrants


### DRAFTING COMMISSIONS

Member Drafting Commissions of the following Bolivian Laws:

- Central Bank Law;
- Conciliation and Arbitration Law;
- Law for the Promotion of Exports;
- Securities Law;
- Pension Funds Law;
- Hydrocarbons Law
- Currently involved in the drafting of the new securities law, leasing law and trust law.


### AREAS OF PRACTICE:

Banking Law, Joint Ventures, Project Finance, Mergers and Acquisitions (M&A), Arbitration, Administrative, Hydrocarbons (Oil and Gas), Electricity, Water, Mining, Civil Law and General Commercial Law

Calle 15 Torre Ketal - Piso 4 Of. 2 - Calacoto • La Paz, Bolivia • teléfono: 591 2 2770808 • fax: 591 2 2796462
gguevara@gg-lex.com • www.gg-lex.com

3

# EXHIBIT B

ntenido de los títulos o certifica-
os representativos de las accio-
ionales se desprenderán de cua-
drán los mismos detalles, que

a, en caso de ser nominativo;

icilio de la sociedad, fecha y lu-
i y duración;

m en el Registro de Comercio;

ial y del autorizado;

la acción, serie a la que corres-
o preferida, número total de ac-
ide la serie y derechos que co-

que representa el título;

emisión y número correlativo;

visionales, la anotación de los
, y

no menos dos directores o ad-
lico.

ponsabilidad por la emisión de
iantes de los títulos o certifica-
onsables solidarios por la omi-
o por la infracción de disposi-
además del pago de daños y

30 —

ARTICULO 249.— (Cupones adheridos) Los títulos de las acciones pueden llevar cupones adheridos, destinados al cobro de dividendos, pudiendo ser aquellos al portador aun cuando las acciones sean nominativas.

ARTICULO 250º— (Libro de registro de acciones) Las sociedades anónimas llevarán un registro de acciones con las formalidades de los libros de contabilidad, de libre consulta para los accionistas, que contendrá:

1) Nombre, nacionalidad y domicilio del accionista;

2) Número, series, clase y demás particularidades de las acciones;

3) Nombre del suscriptor y estado del pago de las acciones;

4) Si son al portador, los números y si son nominativas, el detalle de las transmisiones con indicación de las fechas y nombre de los adquirentes;

5) Gravámenes que se hubieran constituido sobre las acciones;

6) Conversión de los títulos con los datos que correspondan a los nuevos, y

7) Cualquier otra mención que derive de la situación jurídica de las acciones y de sus eventuales modificaciones.

ARTICULO 251º— (Inscripción de acciones) La sociedad considera como dueño de las acciones nominativas a quien aparezca inscrito como tal en el título y en el registro de las acciones. La negativa injustificada para inscribir a un accionista en el registro, obliga a la sociedad y a sus directo-

— 91 —

res o administradores a responder solidariamente por los da-
ños y perjuicios ocasionados.

ARTICULO 252º.— (Cesión de acciones) El cedente que
no haya completado el pago de las acciones responde soli-
dariamente por los pagos a cargo de los cesionarios suce-
sivos. El cedente que efectúa algún pago es copropietario de
las acciones en proporción a los pagos realizados.

ARTICULO 253º.—. (Transmisión de acciones) Será li-
bre la transmisión de acciones; empero, la escritura social
puede imponer condiciones a la transmisión de acciones no-
minativas que, en ningún caso, signifiquen una limitación, de-
biendo dichas condiciones constar en el Título.

ARTICULO 254º.— (Acciones al portador o nominativas)
La transmisión de acciones al portador se perfecciona por
simple tradición.

La transmisión de acciones nominativas se perfeccio-
na mediante endoso y producirá efectos ante la sociedad y
terceros, a partir de su inscripción en el registro de acciones.

ARTICULO 255º.— (Derecho preferente) Los accionistas
tienen derecho preferente para suscribir nuevas acciones en
proporción al número que posean.

La sociedad hará el ofrecimiento mediante avisos en
un órgano de prensa de circulación nacional por tres días
consecutivos. Los accionistas pueden ejercer su derecho pre-
ferente dentro del plazo de treinta días, computados desde
la fecha de la última publicación, si los estatutos no prevén
un plazo mayor.

ARTICULO 256º.— (Nuevas emisiones) Sólo hay lu-
gar a la emisión de nuevas acciones cuando las precedentes
han sido totalmente suscritas.

ARTICULO 257º.— (Prohibición de
acciones) Las sociedades anónimas no
propias acciones, salvo por adjudicaci
de créditos a la sociedad.

Estas acciones serán vendidas en
ta días a partir de su fecha de adjudic
posible, se procederá a reducir el capit
acciones sin valor. Mientras pertenezca
podrán ser representadas en las juntas

ARTICULO 258º.— (Otras prohibi
concepto, las sociedades anónimas efect
ticipos o negociaciones con la garantía
ciones.

ARTICULO 259º.— (Responsabilid
administradores son, personal y solidari
de los daños y perjuicios que causen a
ceros por infracción de los dos artículos

ARTICULO 260º.— (Normas aplica
a las acciones las normas sobre títulos-va
en cuanto sean compatibles con el pres

SECCION  IV

CLASES DE ACCION

ARTICULO 261º.— (Clases de ac
pueden ser ordinarias o preferidas.

La escritura social establecerá la
ciones que cada clase de acciones atri
con arreglo a las disposiciones de este

Si no se establecen clases de ac
social, se entiende que todas son ordir

# EXHIBIT C

res o administradores a responder solidariamente por los da-
ños y perjuicios ocasionados.

ARTICULO 252º— (Cesión de acciones) El cedente que
no haya completado el pago de las acciones responde soli-
dariamente por los pagos a cargo de los cesionarios suce-
sivos. El cedente que efectúa algún pago es copropietario de
las acciones en proporción a los pagos realizados.

ARTICULO 253º— (Transmisión de acciones) Será li-
bre la transmisión de acciones; empero, la escritura social
puede imponer condiciones a la transmisión de acciones no-
minativas que, en ningún caso, signifiquen una limitación, de-
biendo dichas condiciones constar en el Título.

ARTICULO 254º— (Acciones al portador o nominativas)
La transmisión de acciones al portador se perfecciona por
simple tradición.

La transmisión de acciones nominativas se perfeccio-
na mediante endoso y producirá efectos ante la sociedad y
terceros, a partir de su inscripción en el registro de acciones.

ARTICULO 255º— (Derecho preferente) Los accionistas
tienen derecho preferente para suscribir nuevas acciones en
proporción al número que posean.

La sociedad hará el ofrecimiento mediante avisos en
un órgano de prensa de circulación nacional por tres días
consecutivos. Los accionistas pueden ejercer su derecho pre-
ferente dentro del plazo de treinta días, computados desde
la fecha de la última publicación, si los estatutos no prevén
un plazo mayor.

ARTICULO 256º— (Nuevas emisiones) Sólo hay lu-
gar a la emisión de nuevas acciones cuando las precedentes
han sido totalmente suscritas.

— 92 —

ARTICULO 257º— (Prohibición de
acciones) Las sociedades anónimas no
propias acciones, salvo por adjudicació
de créditos a la sociedad.

Estas acciones serán vendidas en
ta días a partir de su fecha de adjudic
posible, se procederá a reducir el capit
acciones sin valor. Mientras pertenezca
podrán ser representadas en las juntas

ARTICULO 258º— (Otras prohibi
concepto, las sociedades anónimas efect
ticipos o negociaciones con la garantí
ciones.

ARTICULO 259º— (Responsabilid
administradores son, personal y solidari
de los daños y perjuicios que causen a
ceros por infracción de los dos artículos

ARTICULO 260º— (Normas aplica
a las acciones las normas sobre títulos-va
en cuanto sean compatibles con el pres

SECCION IV

CLASES DE ACCION

ARTICULO 261º— (Clases de ac
pueden ser ordinarias o preferidas.

La escritura social establecerá lo
ciones que cada clase de acciones atri
con arreglo a las disposiciones de este

Si no se establecen clases de ac
social, se entiende que todas son ordir

— 93 —

# EXHIBIT D

— (Suscripción por administradores o
:adores o gerentes de sociedades, por
1ombramiento, se reputan autorizados
alores a nombre de las entidades que
s de esta autorización serán señalados
deres respectivos, debidamente regis-


— (Suscripción de títulos sin poder)
ciendo de facultades para hacerlo, fir-
de otros, responden como si hubieran
pio. La misma disposición se aplica
te hubiera excedido sus poderes. En
adquiere los mismos derechos que
esentado apartente.


xpresa o tácita de la suscripción trans-
as obligaciones del suscriptor, a partir
ión.


cación que resulte de actos que, nece-
la aceptación del acto mismo o de sus
icación expresa puede hacerse en el
mento aparte.


— (Excepción por falta de representa-
lugar con hechos positivos o con omi-
e considere, conforme a los usos del
o está autorizado para suscribir títulos
oponer la excepción de falta de repre-


(Títulos dados en pago) Los títulos-
se presumen recibidos bajo la condi-
'', cualquiera sea el motivo de la en-

— 170 —

ARTICULO 511º— (Títulos representativos de merca-
derías) El tenedor legítimo de títulos representativos de mer-
caderías tiene el derecho exclusivo de disponer de ellas.

También le dará derecho, en caso de rechazo del títu-
lo por el principal obligado, a ejercer la acción de restitución
del valor fijado en el título para las mercaderías.

ARTICULO 512º-- (Documentos no equiparables a tí-
tulos-valores) Las disposiciones de este Título no se apli-
can a los boletos, fichas contraseñas u otros documentos no
destinados a circular y que sirvan exclusivamente para iden-
tificar a quien tiene derecho para exigir la prestación co-
rrespondiente.

ARTICULO 513º— (Títulos crados en el extranjero) Los
títulos-valores creados en el extranjero son considerados co-
mo tales si llenan los requisitos mínimos establecidos en su
Ley de origen y cuando además se cumplan las formalida-
des legales que se exijan al efecto dentro del territorio na-
cional.

ARTICULO 514º— (Tenedor legítimo) Se considera te-
nedor legítimo del título a quien lo posea conforme a la nor-
ma de su circulación.

ARTICULO 515º— (Plazos de gracia) En los títulos-
valores no se admiten plazos de gracia, legales ni judiciales.

CAPITULO   II

TITULOS NOMINATIVOS

ARTICULO 516º— (Títulos nominativos) El título-valor
será nominativo, cuando en él o en la norma que rige su
creación, se exija la inscripción del tenedor en el registro que

— 171 —

llevará el creador del título. Sólo será reconocido como tenedor legítimo quien figure, a la vez, en el documento y en el registro correspondiente.

ARTICULO 517º— (Anotación del título) El creador del título no puede negar la anotación en su registro de la transmisión del título, salvo justa causa u orden judicial en contrario.

ARTICULO 518º— (Transmisión de un título) La transmisión de un título nominativo por endoso dará derecho al endosatario para obtener la inscripción mencionada en el artículo anterior. El creador del título puede exigir que la firma del endosante sea autenticada por cualquier medio legal.

ARTICULO 519º— (Aplicación de otras reglas) Serán aplicables a los títulos nominativos, en lo conducente, las disposiciones relativas a los títulos a la orden.

CAPITULO III

TITULO A LA ORDEN

SECCION I

TITULOS A LA ORDEN

ARTICULO 520º— (Título a la orden) Los títulos-valores expedidos a favor de determinada persona, en los cuales se exprese "a la orden" o que "son negociables", serán a la orden y se transmitirán por endoso y entrega del título, sin necesidad de registro por parte del creador.

ARTICULO 521º— (Transmisión por medio distinto del endoso) La transmisión de un título a la orden por medio

— 172 —

distinto al endoso, subroga al adquirente [en los dere]chos que el título confiera, pero lo sujeta [a todas las ex]ciones personales que el obligado habría [podido oponer al] autor de la transmisión antes de ésta. E[l adquirente tiene] derecho a exigir la entrega del título.

El adquirente que justifique que se le [ha transmitido un] título a la orden por medio distinto del en[doso, puede solici]tar del juez, en la vía voluntaria, que haga [constar la trans]misión en el título o en hoja adherida a él. [La firma que] ponga el juez se tendrá como endoso.

SECCION II

ENDOSOS

ARTICULO 522º— (Requisitos form[ales del endoso) El endoso debe constar en el título o en [hoja adherida al] mismo, en caso de no ser posible hacerlo [en el título,] y deberá llenar los siguientes requisitos:

1) Nombre del endosatario;

2) Clase de endoso;

3) Lugar y fecha del endoso, y

4) Firma del endosante.

ARTICULO 523º— (Efectos de la omi[sión]) La omisión de los requisitos indicados en e[l artículo anterior] produce los siguientes efectos:

1) Si se omite el nombre del endosat[ario, se tendrá] como endoso en blanco;

— 173 —

# EXHIBIT E

## GACETA OFICIAL DE BOLIVIA

otro medio o recurso legal para la protección inmediata de los derechos y garantías restringidos, suprimidos o amenazados, elevando de oficio su resolución ante el Tribunal Constitucional para su revisión, en el plazo de veinticuatro horas.

V.  Las determinaciones previas de la autoridad judicial y la decisión final que conceda el amparo serán ejecutadas inmediatamente y sin observación, aplicándose, en caso de resistencia, lo dispuesto en el Artículo anterior.

### ARTICULO 20°.

I.  Son inviolables la correspondencia y los papeles privados, los cuales no podrán ser incautados sino en los casos determinados por las leyes y en virtud de orden escrita y motivada de autoridad competente. No producen efecto legal los documentos privados que fueren violados o substraídos.

II.  Ni la autoridad pública, ni persona u organismo alguno podrán interceptar conversaciones y comunicaciones privadas mediante instalación que las controle o centralice.

### ARTICULO 21°.

Toda casa es un asilo inviolable; de noche no se podrá entrar en ella sin consentimiento del que la habita y de día sólo se franqueará la entrada a requisición escrita y motivada de autoridad competente, salvo el caso de delito "in fraganti".

### ARTICULO 22°.

I.  Se garantiza la propiedad privada siempre que el uso que se haga de ella no sea perjudicial al interés colectivo.

II.  La expropiación se impone por causa de utilidad pública o cuando la propiedad no cumple una función social, calificada conforme a Ley y previa indemnización justa.

### ARTICULO 23°.

I.  Toda persona que creyere estar indebida o ilegalmente impedida de conocer, objetar u obtener la eliminación o rectificación de los datos registrados por cualquier medio físico, electrónico, magnético, informático en archivos o bancos, de datos públicos o privados que afecten su derecho fundamental a la intimidad y privacidad personal y familiar, a su imagen, honra y reputación reconocidos en esta Constitución, podrá interponer el recurso de "Habeas Data" ante la Corte Superior del Distrito o ante cualquier Juez de Partido a elección suya.

II.  Si el Tribunal o Juez competente declara procedente el recurso, ordenará la revelación, eliminación o rectificación de los datos personales cuyo registro fue impugnado.

8

# EXHIBIT  F

o de ocasionar molestias a otros, y, en general, no le está permitido ejercer su derecho en forma contraria al fin económico o social en vista al cual se le ha conferido el derecho.

ARTICULO 108.— (Expropiación) I. La expropiación sólo procede, con pago de una justa y previa indemnización, en los casos siguientes:

1) Por causa de utilidad pública.

2) Cuando la propiedad no cumple una función social.

II. La utilidad pública y el incumplimiento de una función social se califican con arreglo a leyes especiales, las mismas que regulan las condiciones y el procedimiento para la expropiación.

III. Si el bien expropiado por causa de utilidad pública no se destina al objeto que motivó la expropiación, el propietario o sus causahabientes pueden retraerlo devolviendo la indemnización recibida. Los detrimentos se compensarán previa evaluación pericial.

ARTICULO 109.— (Prohibiciones de enajenar) Las prohibiciones legales de enajenar se rigen por las leyes que las establecen. Las prohibiciones voluntarias sólo se admiten cuando son temporales y están justificadas por un interés legítimo y serio.

ARTICULO 110.— (Modos de adquirir la propiedad) La propiedad se adquiere por ocupación, por accesión, por usucapión, por efecto de los contratos, por sucesión mortis causa, por la posesión de buena fe y por los otros modos establecidos por la ley.

— 38 —

# EXHIBIT  G

G A C E T A   O F I C I A L   D E   B O L I V I A

### ARTICULO 223º.

I. Los partidos políticos, las agrupaciones ciudadanas y los pueblos indígenas que concurran a la formación de la voluntad popular son personas jurídicas de Derecho Público.

II. Su programa, organización y funcionamiento deberán ser democráticos y ajustarse a los principios, derechos y garantías reconocidos por esta Constitución.

III. Se registrarán y harán reconocer su personería ante la Corte Nacional Electoral.

IV. Rendirán cuenta pública de los recursos financieros que reciban del Estado y estarán sujetos al control fiscal.

ARTICULO 224º. Los partidos políticos y/o las agrupaciones ciudadanas y/o pueblos indígenas, podrán postular directamente candidatos a Presidente, Vicepresidente, Senadores y Diputados, Constituyentes, Concejales, Alcaldes y Agentes Municipales, en igualdad de condiciones ante la Ley, cumpliendo los requisitos establecidos por ella.

### CAPITULO III
### LOS ORGANOS ELECTORALES

ARTICULO 225º. Los órganos electorales son:

1º. La Corte Nacional Electoral;
2º. Las Cortes Departamentales;
3º. Los Juzgados Electorales;
4º. Los Jurados de las Mesas de Sufragios;
5º. Los Notarios Electorales y otros funcionarios que la Ley respectiva instituya.

ARTICULO 226º. Se establece y garantiza la autonomía, independencia e imparcialidad de los órganos electorales.

ARTICULO 227º. La composición así como la jurisdicción y competencia de los órganos electorales será establecidas por Ley.

### PARTE CUARTA
### PRIMACIA Y REFORMA DE LA CONSTITUCION

### TITULO PRIMERO
### PRIMACIA DE LA CONSTITUCION

ARTICULO 228º. La Constitución Política del Estado es la Ley Suprema del ordenamiento jurídico nacional. Los tribunales, jueces y autoridades la aplicarán con preferencia a las leyes, y éstas con preferencia a cualesquiera otras resoluciones.

49

# EXHIBIT H

**CONSTITUTIONAL RULING1671/2003 - R**
Sucre, November 21st, 2003

Court File: 2003-07260-14-RAC
District: Cochabamba
Narrator Judge: Dr. José Antonio Rivera Santivañez

In review, the Resolution dated August 18th, 2003, from pg 72 to 73 pronounced by the First Civil Courtroom of the Superior Court of the Judicial District of Cochabamba, within the constitutional recourse filed by Mario Peñalosa Zapata and Marina Landaeta de Peñaloza against José Edgar Montaño Rivera, Municipal Mayor of Cochabamba; alleging the violation of their rights to juridical security and private property, stated in the regulations in arts. 7.a), i) and 22 of the Political Constitution of the State (PCE) .

## I. ANTECEDENTS WITH JURIDICAL RELEVANCE

I.1. Contents of the Recourse

By means of legal brief filed on July 23rd, 2003, amended by legal brief filed on July 28th, from pgs. 34 to 37 and 43, the appellant parties, state the following:

I.1.1. Facts that motivate the recourse

Whereas the Municipality of Cochabamba, by means of Municipal Ordinance No. 1703/95 dated November 24th, in order to conform a green area called "Ulises Hermosa Park", provided for the expropriation of real property owned by them, that was duly registered in the Real Estate Office, formed by two adjacent lots marked with numbers 24 and 27, located in the area of Condebamba, block No. 133, district 22, where one part was not compensable by the security strip of the torrent of the ravine of Tirani. At first, a compensable surface of 1330 mts. 2 was established, and then by means of Municipal Ordinance No. 1888/96 dated November 29th, it was modified to 1460 mts.2 due to the change in the transversal profile of the aforementioned torrent. This expropriation had been subject to a procedure set forth by Regulation Decree dated April 4th, 1879 converted into Law on December 30th, 1884 and appraisals had been carried out by the interested parties, which when found to be discordant, The Municipality had requested to the Civil Judge on duty an expert appraiser. Architect Henry Beckrich Asbún had been designated, who, under oath, had presented the expert's report, where he determined an appraisal of Bs. 349 232.- which was approved by means of Technical Administrative Resolution1852/97 dated October 2nd, by the Mayor in office at the time, who determined the payment of the indemnification and the signing of the documents of transfer of property.

Unfortunately, up to now, the Mayor has failed to comply with this payment, even though he had accepted a five quota instalment plan at first, and later, the appellant parties proposed to him a compensation with two lots in the southern area of the city, which he did not accept since it infringed upon regulation of art. 123.II of the Law of Municipalities (LM), (which prohibits compensation with other real estate of municipal property ), so on February 4th of this year, they filed a **demand for payment  (requerimiento en mora)**as set forth in art. 340 of the Civil Code (CC) before the Ninth Civil Judge of the Capital summoning Mayor Lic. Marithza del Castillo Antezana and the president of the Municipal Board, Edgar Montaño Rivera, to pay their debt within a term of thirty days after receiving notice thereof, which the Municipality failed to comply with, thus breaching the appellant parties' fundamental right to private property and to receive payment of a just and prior indemnification as set forth for expropriations, thus incurring in improper and illegal acts and omissions with great damage against them, reason why they file a **constitutional recourse (amparo constitucional).**

I.1.2. Supposedly Violated Rights and Guarantees

Rights to the juridical security and to the private property, as set forth in the regulations of arts. 7.a), i) y 22 of the PCS.

I.1.3. Appelle Party Authority and Claim

In view of the aforementioned antecedents, they filed a constitutional recourse against J. Edgar Montaño Rivera, Mayor of Cochabamba, requesting the recourse to be declared admissible, providing for : a) payment of the requested indemnity of Bs 349.232.- within the day  and b) payment of damages caused.

I.2. Hearing and Resolution of the Constitutional Recourse Court.

Once the Public hearing had been installed, on August 18th 2003, attended by the parties but with the absence of the representative of the Public Ministry, as set forth in the court record on pg 71 and vta. the following occurred:

1.2.1. Ratification and extension of the Recourse.

The lawyer of the appellant parties ratified their claim, extending it in the sense that since the indemnification payment due to the expropriation carried out did not take place,  there has also been an attempt against the fundamental right to their juridical security.

I.2.2. Report of the appelle party

The appelle party, by means of his proxy J. Edwar Montaño Sánchez, filed a written report from pgs. 69 to 70 vta., which was read during the hearing, where he stated : a) whereas no violation whatsoever of their fundamental rights had occurred, in the

proceeding of expropriation which had taken place in accordance with the effective procedure; b) whereas, the Municipality had made different proposals to the appellant parties to pay them in instalments and then offered compensation with two lots; c) whereas, when the aforementioned proposals had not been accepted, the appellant parties, voluntarily, went to the ordinary justice, before the Ninth Civil Court Judge, where they requested demand for payment (requerimiento en mora). Said judicial instance, which could not be substituted by a constitutional recourse, had not been exhausted; e) whereas said recourse must be declared inadmissible, because it cannot determine nor give declaratory decisions and f) whereas, the immediacy requirement has not been fulfilled due to the fact that a long time had passed by before they filed the complaint they now demand.

I.2.3. Resolution

Once the hearing had concluded, the First Civil Court of the Superior Court of the Judicial District of Cochabamba, in absence of the representation of the Public Ministry, declared the recourse inadmissible based upon the following: a) that the appellant parties, voluntarily had gone before the jurisdictional authority invoking the norm of art. 340 of the Civil Code (CC), requesting demand for payment of the municipal authorities to compensate for the expropriated property, said request implies a preparatory measure of demand, which should have been concluded according to the established proceeding; b) that the expropriation is a bilateral proceeding where there are reciprocal obligations, and it has been proven that the appellant parties did not sign the transfer documents of their property in favor of the Municipality as established by the norms of arts. 568, 584 CC y 122 LM; c) that, the recourse of protection is only admissible in subsidiary form, when all other recourses have been exhausted; which in this case did not take place; and d) that in accordance with the data set forth in the court record, it was proven that the appellant parties abandoned the expropriation proceeding since January of 2002 to April 2003, - therefore the recourse is declared inadmissible due to the fact that the immediacy which characterizes this recourse is lost.

1.3 Procedural Transaction in Court

Given that this recourse was drawn by lottery on September 8th , 2003, this Court extended the procedural term to resolve it, by means of Jurisdictional Agreement 130/2003 dated November 4th (fs 76), until December 2nd, 2003; therefore, this sentence is dictated within the term established by Law.

II. CONCLUSIONS

After analysis and careful examination and verification of the antecedents, the following conclusions are hereby set forth:

II.1 By Municipal Ordinance 1703/95 and 1888/96 dated November 24th and 29nth respectively, the Municipality of the city of  Cochabamba, determined the

expropriation of 1460 m2 of surface of two lots owned by the appellant parties, number 27 and 26, block 133, district 22 of the Condebamba area , with the reduction of a non-indemnifyable area due to the security strip of the Tirani ravine, for which, with the prior appraisal of an expert appraiser, the amount of Bs 349.232 had been established, amount which had to be indemnified to the owners. This amount had been approved by Technical Administrative Resolution 1852/97 dated October 2nd, issued by the Mayor of said city (fs 1 to 6).

II.2 The appellant parties, proved both, their right of ownership of the expropriated land as well as their right to receive just indemnification for the aforementioned expropriation (fs. 54 a 55 y 61). A payment of the indebted amount in instalments had been proposed to them (fs22) and then to receive two other lots as compensation also had been proposed to them (fs 53), They did not accept said proposals and filed a request of demand for payment on February 2nd, 2002 against the representatives of the Municipality now recurred, which proceeding was summoned on April 221st, 2003, by means of identification document of the Mayor and president of the Municipal Board at the time, issuing reports in said Municipality in respect to the existence of said process. (fs. 10 a 18, 29 a 30).

II.3 In the expropriated estate, the "Ulises Hermosa" park has now been physically consolidated and equipped in favor of the Municipality of Cochabamba, as set forth in the report of the Secretary of Urban Administration dated January 18th, 2002, and the photographs presented attached to the report (fs. 23 and 40 to 41), without the signing of the documents of transfer of property nor the payment of indemnification for the expropriation.

III. JURIDICAL FOUNDATIONS OF THE SENTENCE

The appellant parties request protection of their fundamental rights to private property, referring to a just indemnification for the expropriation and to the juridical security, as established in the norms set forth in arts. 7.i), 22 y 7.a) PCE, considering that despite the fact that the expropriation proceeding concluded many years ago, the Municipality of Cochabamba, did not pay them the indemnification provided for by law. As a consequence, by reviewing the resolution of the recourse Court, a decision has to be made if said extremes are indeed evident and if they are illegal and damaging acts against the fundamental rights of the appellant parties, with the purpose of admitting or rejecting the requested protection

III.1 Before analyzing the problem posted by the appelant, it must be pointed out that the expropriation is an institute of procedure of public law by means of which the State - based on public and usefulness needs, or when the property does not comply with a social purpose – coactively takes the legal ownership of an asset from a private party, thereby obligating the private party to transfer ownership over the asset from the private dominion to the public dominion, after a special procedure has been complied with and payment of an indemnification has been made.

Accordingly, it is possible to infer that, although it is true, that under the new understanding of the fundamental rights, the Constituent has determined a limitation to the right to the private property by means of expropriation, it is not less true that in order to apply said limitation, [the Constitution] has set forth some guarantees in favor of the holder of the right being limited, said guarantees can be summarized as follows: a) expropriation can only proceed provided a solemn declaration of the public need and usefulness is made and the same is determined by an authority with jurisdiction, b) the procedure shall follow previously existing legal provisions; and c) the assignment of the property rights, as well as the public occupation of the expropriated asset, will only materialize after payment of a just indemnification has been made.

III.2 In the case which motivated the present recourse, from the antecedents that are set forth in the court file, it can be established that the Municipality of the city of Cochabamba initiated and developed an administrative proceeding of expropriation of the real property owned by the appellant party, located in the area of Condebamba of the city of Cochabamba, for which purpose it dictated Municipal Ordinance 1703/95 dated November 24th, declaring it of public need and utilization, therefore, providing for the expropriation of the estate; the expropriatory proceeding was subject to the norms provided for in the expropriation Law (EL) dated December 30th, 1884, as well as on arts. 83 and 88 of the Organic Law of Municipalities (OLM) 696, dated January 10th, 1985. During the administrative proceeding of expropriation, the Municipality, by means of Technical Administrative Resolution 1852/97 dated October 2nd, approved the respective appraisal given by the expert appraiser, fixing the amount of Bs349.232,00-.

Within the framework of the constitutional guarantees provided for by the Constituent in art 22 of the Constitution, and referred to above, it is deemed that with the purpose of having the title holder grant the respective transfer deed, and being able to occupy the expropriated estate, the Municipality of the city of Cochabamba, should have made the indemnity payment in the amount determined by the expert appraiser; since it is so that is provided for in art. 22 EL, in the following terms: "In order to pay for properties that have been subject to expropriation, payment orders shall be issued which shall be delivered to the interested parties, without the right to proceed to the expropriation or occupation of the land before the payment set forth in the payment orders has been made". However, from the antecedents set forth in the proceedings, it is clear that they did not proceed according to the mandate of the legal norm referred to, when on the one hand, they did not pay the indemnity as determined by the expert appraiser and; on the other hand it occupied the facto the land object of the expropriation where it built the public park " Ulises Hermosa", a situation that is aggravated when, in spite of the lapse of time transpired, of almost five years from the date of approval of the appraisal amount, the corresponding payment has not yet been made.

As a consequence, the Municipality of the city of Cochabamba, although it is true that it has safeguarded the constitutional guarantees of the title holder of he

expropriated estate, by issuing the Municipal Ordinance which declares the public need and utilization and provides for the expropriation, and it has subjected the expropriation proceedings to an administrative proceeding, it is also not less true that said safeguard was only partial, when it fail to comply with the third condition provided for by the Constituent , which is to previously     pay     the fair indemnification, with which it has damaged the proprietary right to of the appellant parties as well as their constitutional guarantee to exercise their proprietary rights in administrative processes of expropriation, since, on the one hand, when it fail to comply with the payment for the indemnification prior to occupying the land, it has incurred in a serious omission and on the other hand, when it occupied the land and exercised dominion over it  before the payment of the indemnification was made as provided for in the constitutional regulations, even more so when it did not even have the transfer deed of dominion, it incurred in an illegal act which damages the fundamental rights of the appellant parties; since in fact, an illegal and arbitrary occupation of the property has occurred; however,  said acts and omissions are not imputable to the appelle party, who is the current holder of the office of Mayor at the Municipality of the city of Cochabamba, reason why he cannot be imputed with any responsibility whatsoever except for the reestablishment of the damaged right.

The illegal and illicit acts and omissions in which the Municipality of the city of Cochabamba has incurred have no justification whatsoever, since, in accordance with the regulations provided for in art. 84 OLM, "The value of the expropriations provided for by the Municipal Board or Council, shall be included in the Budget for the next administration", which means that it should have taken the respective necessary budgetary previsions.

III.3 The grounds expressed by the recurred municipal authority and which the Recourse Court has wielded in order to declare the recourse inadmissible, are not worthy of consideration, in the sense that all the previous ordinary legal ways had not been exhausted due to the fact that the appellant parties had voluntarily sought the ordinary jurisdictional instance when seeking for a demand for payment, which was duly summoned to the appellee authority, which opened the executive process path.
In this respect, it should be noted that in accordance with the regulations provided for by the Expropriations Law of December 30th, 1884, in the administrative proceeding of expropriation there is no judicial means of executory proceedings for the collection of indemnification. In fact, in accordance with the regulation provided for in art. 38 and following arts. of the aforementioned Law, the judicial means can only be used if the determination to expropriate all or part of the property is being discussed or the amount to be indemnified, therefore, the judicial means cannot be used to request the expropriation payment;  the reason for this being that it corresponds to the public entity that carries out the expropriation to pay for the indemnification prior to effecting the transfer of the proprietary rights over the real estate asset to be expropriated, as well as the physical occupation of the land, therefore, it is not to the title holder of the expropriated asset  to whom the collection corresponds by judicial means, but to the entity that is carrying out the

expropriation, which should make the previous indemnification payment; therefore, it is not evident that the appellant parties have the judicial means expedite in order to make the collection of the indemnification, since, although they sought the demand for payment, it should be understood that they were being forced to keep claiming for payment permanently due to the omission of the Municipality of Cochabamba.

Definitively, the appellant parties did not have any other expedite and ideal legal means to achieve the immediate protection of their damaged fundamental right, since, although it is true that, in accordance with the regulations provided for in art. 87 OLM, based on its effectiveness, the expropriation was prepared, the appellant parties, could have resorted to the legal figure of the abandonment or caducity of the expropriation, requesting the expropriated property be reverted to them in order to dispose of the property, by reason of failure to comply with the indemnification payment within the term of two years, it is not less true that said act was materially impossible since the Municipality of the city of Cochabamba had physically occupied the property as well as had assumed acts of disposition of the property having built the "Ulises Hermosa" Park , so the appellant parties could not occupy again a public park; from that, it is implied that the appellant parties did not have any other legal means to seek the immediate protection of their damaged rights.

III.4 On the other hand it is also not worthy of consideration the argument presented by the appellee municipal authority in the sense that the recourse is not a substitute for judicial actions to collect money. In this respect it must be said that in granting the protection given by a constitutional recourse, the collection of money coming from a contractual obligation is not what is being guaranteed here, what is being guaranteed and protected is the right to the private property and to the constitutional guarantee provided for by the Constituent in favor of the owner of the expropriated property; since, as aforementioned, the expropriation of an asset is subject to the fulfillment of prior requisites and conditions, among which is the payment of the indemnification before the occupation; because an expropriation is a forced transfer, which supposedly generates reciprocal obligations to the parties, to the expropriating party the payment of a fair  price and to the expropriated party the delivery of the asset as well as the subscription of the public deed of transfer of dominion.  In the present case, the expropriating public entity has occupied de facto the real property object of the expropriation without having previously paid the indemnification, thus damaging the right to private property of the appellant parties, which is what is being protected by means of the recourse.

III.5  Having solved the problem, and since damage to the fundamental rights and constitutional guarantees of the appellant parties has been proven, this Court shall determine the conformity with the recourse and shall grant the requested protection; However, there is the need to fraction the extent of the resolution part of this Sentence, this within the framework of the foresight interpretation to which the constitutional jurisdiction is subject to.  In that regard, it must be said that in

granting the protection to reestablish the damaged right, such as is the private property, this Court shall have to provide for the immediate restitution of the property to the appellant parties, so that they may reassume dominion and develop juridical acts of disposition, this is not possible since in the property a public park has already been built. In view of this reality, the only alternative left to this Court is to provide for the Municipality of the city of Cochabamba to proceed to pay the indemnification in accordance with the appraisal made and approved. However, this court cannot provide for the payment to be immediate or within the term of a day since all public entities, among them, the Municipalities, are regulated by programs of their income and expenditures shown in their respective budgets, within the framework of the regulations set forth in arts. 147, 151 y 152, in accordance with art. 59.3ª of the Constitution, as well as with the regulations provided for in the respective Law of Municipalities and the Administration and Governmental Control Law (SAFCOL); so they could not make any expenditure, or as the case may be, payment whatsoever that is not budgeted; then it would not be correct to provide for the immediate payment of the indemnification, since with that we would be obligating the appellee municipal authority to use other funds thus incurring in malversation. Therefore, the respective fractioning (modulacion) of the resolutive part of this sentence is hereby made, in respect to the modality and the time in which the payment will be made.

Consequently, the Recourse Court, by denying the recourse, has not correctly applied the norm set forth in art. 19 PCE.

NOW, THEREFORE

The Constitutional Court, by virtue of the jurisprudence it exercises by mandate of arts. 19.IV, 120.7ª CPE, 7.8ªand 94 LTC in review:

1° REVOKES the Resolution dated August 8th, 2003, from pgs 72 to 73, pronounced by the First Civil Court of the Superior Court of the Judicial District of Cochabamba, declaring the recourse ADMISSIBLE

2°PROVIDES that the Municipality of the city of Cochabamba, proceeds with the payment of indemnification for the expropriation carried out , within a term not greater tan six months following its notification with this sentence.

3° Determines the existence of civil responsibility by the Municipality of Cochabamba, for which it shall pay damages which shall be determined by the Recourse Court .

Register, publish and file this resolution in the Constitutional Gazette.

IT CORRESPONDS TO A CONSTITUTIONAL SENTENCE 1671/2003 – R

Civil Court Judge Dr. Willman Ruperto Durán Ribera does not intervene since he is absent with license.


Sgnd. Dr. René Baldivieso Guzmán
PRESIDENT

Sgnd. Dr. Elizabeth Iñiguez de Salinas
DEAN IN EXERCISE

Sgnd. Dr. José Antonio Rivera Santivañez
CIVIL COURT JUDGE

Sgnd. Dr. Martha Rojas Álvarez
CIVIL COURT JUDGE

Sgnd. Dr. Rolando Roca Aguilera
CIVIL COURT JUDGE