Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

E.T.I. EURO TELECOM INTERNATIONAL N.V.,

Plaintiff,

-against-

REPUBLIC OF BOLIVIA and
EMPRESA NACIONAL DE
TELECOMUNICACIONES ENTEL S.A.,

Defendants.

08 CV 4247 (LTS)

DECLARATION
OF CÉSAR CÁRDENAS

----

CÉSAR CÁRDENAS, declares the following to be true:

1. I am a professional auditor in La Paz in the Republic of Bolivia. A copy of my curriculum vitae is attached hereto as Exhibit A. I make this declaration in support of the motion of plaintiff E.T.I. Euro Telecom International N.V. ("ETI") to confirm an order attaching certain funds of Empresa Nacional de Telecomunicaciones Entel S.A. ("ENTEL").

2. I have reviewed the Third Declaration of Lorena Molina executed on June 1, 2008, filed in opposition to the pending motion (the "Third Molina Declaration"). As set forth below, the Third Molina Declaration is materially inaccurate in several respects.

3. Financial Statements corresponding to Bolivian Companies must be prepared following Accounting Principles Commonly Accepted in Bolivia, as issued by the

Technical Committee for Audit and Accounting (the "Bolivian Accounting Principles"). The Bolivian Accounting Principles are, in turn, based on International Accounting Principles.

4. According to article 169 of the Bolivian Commercial Code, attached hereto as Exhibit B, Bolivian corporations ("Sociedades Anónimas") must create a reserve of not less than 5% of the effective and liquid profits generated in the relevant fiscal year; until a legal reserve of 50% of the paid-in capital of the company has been accumulated.

5. The Legal Reserve is set once the profits are determined in the Financial Statements, as approved by the corresponding shareholders' assembly. It is important to understand that that the Legal Reserve is <u>an accounting reserve</u>. Accordingly, as long as this reserve appears in the Financial Statements of the company, it is not required to be maintained in cash.

6. According to Ms. Molina, "Bolivian companies are required to maintain a legal reserve of 5% of each year's net revenues." (Third Molina Declaration ¶ 6). This is not correct. According to article 169 of the Bolivian Commercial Code, corporations must create a reserve allocated for that purpose of not less than 5% of the effective and liquid <u>profits</u> (not net revenues) generated in the relevant fiscal year, and only until an amount equal to 50% of the paid in capital of the company is allocated in said reserve.

7. Ms. Molina goes on to state, "[i]f ENTEL does not have use of the funds that have been attached in the New York and London proceedings, ENTEL does not have sufficient liquid assets to satisfy the legal reserve requirement." (<u>Id.</u>). This implies that the attached funds should be considered ENTEL's "Legal Reserve." This statement is neither supported by Bolivian Commercial Law, nor by Bolivian Accounting Principles. Rather, as noted above, the reserve is simply an <u>accounting device</u>.

8. Contrary to Ms. Molina's suggestion, there is neither a legal nor an accounting regulation that supports ENTEL's position. On the contrary, the Legal

2

Reserve can, and often does, consist of general assets, including physical assets, and therefore it is not correct to argue that a particular cash account constitutes the Legal Reserve of the company. Indeed, I note that elsewhere in Bolivia's papers, the claim is made that the attached funds, if released, would be used to purchase new equipment, in direct contradiction to Ms. Molina's suggestion that they must be maintained in cash.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2008

_____
César Cárdenas

Case 1:08-cv-04247-LTS    Document 44    Filed 06/23/2008    Page 4 of 9

Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Abogados del Demandante

COURT DEL DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUD DE NUEVA YORK

---

**E.T.I. EURO TELECOM INTERNATIONAL N.V.,**

        Demandante,

        -contra-

**REPUBLIC OF BOLIVIA y EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL S.A.,**

        Demandados.

08 CV 4247 (LTS)

<u>**DECLARACION
DE CÉSAR CÁRDENAS**</u>

---

**CÉSAR CÁRDENAS**, declara que lo siguiente es verdad:

1.     Soy un auditor profesional en La Paz, en la República de Bolivia. Una copia de mi <u>curriculum vitae</u> se adjunta a la presente como Anexo A. Hago esta declaración en apoyo a la moción del demandante E.T.I. Euro Telecom International N.V. ("ETI") para confirmar la retención de fondos de la Empresa Nacional de Telecomunicaciones Entel S.A. ("ENTEL").

2.     He revisado la Tercera Declaración de Lorena Molina firmada el primero de junio de 2008, y presentada en oposición a la moción pendiente (la "Tercera Declaración de Molina"). Como se establece abajo, la Tercera Declaración de Molina es sustancialmente incorrecta en varios aspectos.

3.    Los Estados Financieros de las sociedades Bolivianas deben ser preparados siguiendo Principios de Contabilidad Generalmente Aceptados En Bolivia que son emitidos por el Comité Técnico de Auditoría y Contabilidad ( los "Principios Contables Bolvianos"). Los Principios Contables Bolivianos a su turno se basan en los Principios Internacionales de Contabilidad.

4.    De acuerdo con lo establecido en el artículo 169 del Código de Comercio de Bolivia, que adjuntamos como Anexo B a la presente, las sociedades anónimas Bolivianas ("Sociedades Anónimas") deben crear una reserva compuesta por no menos del 5% de las utilidades efectivas y líquidas generadas en un período fiscal determinado hasta que un monto igual al 50% del capital pagado de la sociedad se haya acumulado como reserva legal.

5.    La Reserva Legal se instaura una vez que las utilidades han sido determinadas por los Estados Financieros aprobados por la correspondiente junta de accionistas. Es importante entender que la Reserva Legal es una <u>reserva contable</u>. Por tanto, mientras dicha reserva aparezca en los Estados Financieros de la empresa, no se requiere que la misma sea mantenida en efectivo.

6.    De acuerdo con la señora Molina, "las empresas bolivianas tienen la obligación de mantener una reserva legal de 5% de los ingresos netos anuales" (Tercera Declaración de Molina ¶ 6). Esto no es correcto. De acuerdo con el artículo 169 del Código de Comercio de Bolivia, las sociedades anónimas deben crear una crear una reserve para dicho propósito de no menos del 5% anual de las <u>utilidades</u> efectivas y líquidas (no de los ingresos netos) generadas en el período fiscal correspondiente, y solamente hasta que un monto igual al 50% del capital pagado de la sociedad sea acumulado en dicha reserve.

7.    La señora Molina continúa diciendo, "si ENTEL no tiene acceso al uso de los fondos ue fueron congelados en Nueva York y Londres, entonces ENTEL no tiene la

2

suficiente liquidez para satisfacer la reserve legal requerida" (Id.). Esto implica que los fondos retenidos deberían ser considerados como la Reserva Legal de ENTEL. Esta afirmación no es apoyada por el Código de Comercio de Bolivia ni por los Principios Contables Bolivianos. En cambio, como hemos anotado arriba, la reserve es simplemente un mecanismo contable.

8. Contrariamente a lo que la señora Molina sugiere, no existe una norma legal ni contable que apoye la posición de ENTEL. Por el contrario, la Reserva Legal puede, y frecuentemente los hace, consistir en activos, incluyendo activos físicos, y por tanto no es correcto decir que una particular cuenta de efectivo constituye la Reserva Legal de la compañía. Anoto que en alguna ota parte de los papeles Bolivianos, se reclama que si los fondos retenidos son liberados, éstos serán usados para comprar nuevo equipo, en franca contradicción con la sugerencia de la señora Molina en sentido que éstos deben ser mantenidos en efectivo.

Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo que antecede es verdadero y correcto.

Firmado el 23 de junio de 2008

_____
César Cárdenas

3

## DECLARATION OF ACCURACY

I, Margaret Seleme, hereby declare as follows:

I am fluent in Spanish and English and the following is, to the best of my knowledge and belief, a true and accurate translation from Spanish to English of the declaration of César Cárdenas.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on June 23, 2008.

_____

Margaret Seleme

# EXHIBIT A

# RESUME



**Name of Individual:** César Luis Cárdenas Prieto

**Date of Birth:** August 26 1962

**Nationality:** Bolivian

**Bachelor Studies:**

- College of San Antonio de Padua

Lic. Cesar L. Cárdenas Prieto

**PUBLIC ACCOUNTANT**

REG. CAUB. N° 5845 CAULP N° 2559

**Graduate Studies:**

- Masters in the Sciences of Economics and Finance, Professional Accountant

**Professional Associations to which I belong:**

- None

**Qualifications:**

- Ten (10) years experience in external auditing

    - Auditing
    - Consulting
    - Accounting

**Prior Work Experience:**

| | | |
|---|---|---|
| • General Accountant | C.I.M.A. | 1988-1993 |
| • Sales Administrator | S.A.C.I. | 1991-1993 |
| • Head of IT | S.A.C.I. | 1990 |
| • Internal Auditor | S.A.C.I. | 1988-1989 |

**Education:**

- Masters in the Sciences of Economics and Finance, Professional Accountant

**Work Experience:**

| | | |
|---|---|---|
| Internal Auditor | S.A.C.I. | 1988-1989 |
| Head of IT | S.A.C.I. | 1990 |
| Sales Administrator | S.A.C.I. | 1991-1993 |

1

| | | |
|---|---|---|
| General Accountant | C.I.M.A. | 1988-1993 |
| Auditor Junior I | KPMG Peat Marwick S.R.L. | 1994 |
| Auditor Junior IV | KPMG Peat Marwick S.R.L. | 1995 |
| Auditor Semi Senior I | KPMG Peat Marwick S.R.L. | 1996 |
| Auditor Semi Senior II | KPMG Peat Marwick S.R.L. | 1997 |
| Auditor Semi Senior III | KPMG Peat Marwick S.R.L. | 1998 |
| Auditor Semi Senior IV | KPMG Peat Marwick S.R.L. | 1998 |
| Auditor Senior | KPMG Peat Marwick S.R.L. | 1999 |
| Auditor Supervisor | Ruizmier | 2000-2003 |
| Head of Internal Auditing | Guevara & Gutiérrez S.C. | 2003-Current |

Since 1997-2003, I have performed work in the department of external auditing, with different clients in KPMG en Bolivia, in the following sectors:

- Projects with outside financing such as, USAID and others
- Commercial
- Services
- Finance
- Mining and Petroleum
- Government
- Foundations

**References:**

- Lic. Víctor Peláez M.

**Languages:**

- Spanish native language: excellent (conversation, reading, and writing)

**Date:** 06/19/2008

2

# EXHIBIT B

**ARTICLE 169. Legal reserve.** Corporations and limited liability partnerships must set up a reserve of at least five percent of the actual and liquid profits obtained, up to half the capital paid in, unless otherwise required by special laws.

In the event the legal reserve is diminished for any reason, it must be restored with any profits obtained before said profits are distributed.

A company, regardless of type, may also agree the setup of special reserves, which shall be reasonable and subject to prudent administration. Their percentage, limit and destination shall be agreed by the partners or the shareholders' meeting.

**ARTICLE 170. Failure to set up the legal reserve.** The directors, administrators and members of the audit committee are jointly and severally liable for failure to comply with the provision in the first paragraph of Article 169 above, and in any event, they are bound to deliver to the company an amount equivalent to the reserve that should have been set up, and are entitled to claim restitution from the partners or shareholders for the amount unduly distributed.

**ARTICLE 171. Losses from previous fiscal years.** No profits may be distributed as long as there are losses carried forward from previous fiscal years that have not been covered.

When the directors, administrators and members of the audit committee receive compensation based on a profit-sharing scheme, the shareholders' meeting or the competent corporate body may instruct payment of the relevant percentage, even if losses from previous fiscal years that have not been covered exist.

**ARTICLE 172. Compensation to Directors, Administrators and Members of the Audit Committee.** Partners or shareholders who exercise functions of directors, administrators and members of the audit committee of the company may, unless otherwise agreed, be compensated with a fixed sum or a percentage of the profits for the year, assigned in the memorandum of association or the articles of incorporation or by resolution of the shareholders' meeting or the competent corporate body, but not by themselves.

**CHAPTER II**

**GENERAL PARTNERSHIP**

**ARTICLE 173. Characteristics.** In a general partnership, all the partners have unlimited, joint and several liability for the obligations of the company.

An agreement to the contrary is inopposable to third parties.

**ARTICLE 174. Company name.** The company name should include the term "*sociedad colectiva*" (general partnership) or its abbreviation.

When the general partnership operates under a business name, the business name shall be made up by the last name of one or more partners, and when not all of the partners'

names are used, the words "*y companía*" (and company) or an abbreviation shall be added.

das, o exigir su reembolso a los administradores que lo hubieran autorizado, siendo unos y otros solidariamente responsables de dicha distribución.

ARTICULOS 169º.— (Reserva legal) En las sociedades anónimas y de responsabilidad limitada se debe constituir una reserva del cinco por ciento como mínimo, de las utilidades efectivas y líquidas obtenidas, hasta alcanzar la mitad del capital pagado, salvo la señalada por las leyes especiales.

La reserva deberá reconstituirse con las utilidades obtenidas antes de su distribución, cuando por cualquier motivo hubiera disminuido.

Las sociedades, cualquiera sea su tipo, pueden acordar también la formación de reservas especiales que sean razonables y respondan a una prudente administración. Su porcentaje, límite y destino serán acordados por los socios o por las juntas de accionistas.

ARTICULO 170º.— (Incumplimiento en la constitución de reservas) Los directores, administradores y síndicos son solidariamente responsables por el incumplimiento de lo dispuesto en la primera parte del artículo anterior y, en su caso, quedan obligados a entregar a la sociedad una cantidad igual a la reserva que se dejó de constituir, pudiendo éstos repetir contra los socios por el importe indebidamente distribuido.

ARTICULO 171º.— (Pérdidas anteriores) No pueden distribuirse utilidades mientras existan pérdidas no cubiertas de ejercicios anteriores.

Cuando los directores, administradores y síndicos sean remunerados con un porcentaje de utilidades, la junta de ac-

cionistas o el órgano social competente, pueden disponer su pago en cada caso, aun cuando por ello no se cubran pérdidas anteriores.

ARTICULO 172º.— (Remuneración a directores, administradores y síndicos) Los socios o accionistas que a la vez ejerzan funciones de directores, administradores y síndicos de la sociedad, pueden, salvo pacto en contrario, ser remunerados con una suma fija o un porcentaje de las utilidades del ejercicio, asignados en el contrato social o los estatutos o por resolución en junta de accionistas u órgano social competente, pero no por sí mismos.

No pueden tener remuneración los socios que, por el tipo de sociedad, asuman esas funciones como una obligación en la que su labor integra el aporte social.

## CAPITULO II

## SOCIEDAD COLECTIVA

ARTICULO 173º.— (Características) En la sociedad colectiva todos los socios responden de las obligaciones sociales en forma subsidiaria, solidaria e ilimitada.

El pacto en contrario es inoponible a terceros.

ARTICULO 174º.— (Denominación) La denominación debe contener las palabras "sociedad colectiva" o su abreviatura.

Cuando actúe bajo una razón social, ésta se formará con el nombre patronímico de alguno o algunos socios, y cuando no figuren los de todos, se le añadirá las palabras "y compañía" a su abreviatura.

## DECLARATION OF ACCURACY

I, Silvia Gil De Cwilich, hereby declare as follows:

I am fluent in Spanish and English and the following is, to the best of my knowledge and belief, a true and accurate translation from Spanish to English of excerpts of the Bolivian Commercial Code, including Article 169.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on June 20, 2008.

Silvia Gil De Cwilich