Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
    KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone:  (212) 254-1111
Facsimile:  (212) 674-4614

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP
180 Montgomery Street, # 2200
San Francisco, California 94104
Telephone:  (415) 514-0200
Facsimile:  (415) 544-0201

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

E.T.I. EURO TELECOM                              :
INTERNATIONAL, N.V.,                             :
                                                 :
            Plaintiff,                           :
                                                 :
      v.                                         : Case No. 08-cv-4247 (LTS/FM)
                                                 :
REPUBLIC OF BOLIVIA, and                         :
EMPRESA NACIONAL DE                              :
TELECOMUNICACIONES ENTEL, S.A.,                  :
                                                 :
            Defendants.                          :
_____

**DECLARATION OF MARIA CECILIA ROCABADO IN SUPPORT
OF DEFENDANT EMPRESA NACIONAL de TELECOMUNICACIONES
ENTEL S.A.'s OPPOSITION TO MOTION TO CONFIRM
*EX PARTE* ORDER OF PREJUDGMENT ATTACHMENT**

Of Counsel:
Jules Lobel
3900 Forbes Avenue
Pittsburgh, PA  15260

Adam Belsky
Gross Belsky Alonso LLP

**DECLARATION OF MARIA CECILIA ROCABADO**

EXHIBIT A............................................................................................. Curriculum Vitae


EXHIBIT B.......................................................Provisions from the Commercial Code of Bolivia

Michael Krinsky (MK4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
    KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone:  (212) 254-1111
Facsimile:  (212) 674-4614

Attorneys for Empresa Nacional de
Telecomunicaciones Entel, S.A.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.T.I. EURO TELECOM<br>INTERNATIONAL, N.V.,<br><br>     Plaintiff,<br><br>   v.<br><br>REPUBLIC OF BOLIVIA, and<br>EMPRESA NACIONAL DE<br>TELECOMUNICACIONES ENTEL, S.A.,<br><br>     Defendants. | Case No. 08-cv-4247 (LTS) |


### DECLARATION OF MARIA CECILIA ROCABADO

   MARIA CECILIA ROCABADO declares the following to be true and correct

under penalty of perjury under the laws of the United States:

   1.   I am a Professor of Law at the Universidad Mayor de San Andres in La

Paz, Bolivia, and teach Telecommunications and Transportation Law.  I am a lawyer and

a member of the National Bar Association of Bolivia and of the Bar of La Paz. I received

my law degree in 1991 from the Universidad Mayor de San Andres in La Paz, Bolivia.  I

concluded my studies for a Masters degree in Security, Defense and Development from the Escuela de Altos Estudios Nacionales (Universidad Militar de las Fuerzas Armadas de la Nacion) in La Paz, Bolivia in 2004. I received a Masters degree in Criminal Sciences from the Universidad Mayor de San Andres, with the recognition of the University of La Havana, in 2007. My curriculum vitae is attached as Exhibit A.

2.    On May 1, 2008, Supreme Decree No. 29544 was issued, which expressly nationalized the stock held by E.T.I. in ENTEL, S.A. This Supreme Decree explicitly referred to "nationalization" many times: the first article establishes that the "purpose of this Supreme Decree [is] to *nationalize* the stock package held by ETI EUROTELECOM INTERNATIONAL NV in Empresa Nacional de Telecomunicaciones Sociedad Anónima"; the second article provides that "the totality of the stock package held by ETI EUROTELECOM INTERNATIONAL NV. is *nationalized*. Stock held by this capitalizing company must be transferred to the Bolivian State [and placed] under the temporary ownership of the Ministry of Public Works, Services and Housing until the legal transformation of ENTEL S.A. into ENTEL SAM is completed. In virtue of this measure, every ENTEL S.A subsidiary in Bolivia and abroad shall also be *nationalized* proportionally."

3.    Under Bolivian law and Bolivian law doctrine, the concept of "nationalization" is distinct and different than "expropriation." The concept of nationalization is grounded in the authority of the sovereign to assert sovereignty over property that is essential to the state or the public good or that involves essential national resources (including industrial properties or public services that depend on natural resources), and/or whose title is to be held by the State.

4.    Expropriation, on the other hand, does not always require that the property that is to be expropriated involve essential state or public services or natural resources, or that it be held by the State. While expropriation, as expressed in Article 22 paragraph II of the Bolivian State Political Constitution, can occur due to the public

interest or when property does not comply with a public function, there is no limitation that expropriation can only occur for natural resources or other property that is essential to state sovereignty, nor is there any requirement that the title to any expropriated property reside with the State.

5.      The construction that the Law of Expropriation does not apply to nationalization has been confirmed by the consistent practice of nationalization in Bolivia.

6.      For example, on December 21, 1936 the Bolivian State Oil Company ("YPFB") was created, and on March 13, 1937 all assets, stock and rights that belonged to the Standard Oil Company of Bolivia were assigned and transferred to the Bolivian State Oil Company (YPFB).  No compensation was paid to Standard Oil Company of Bolivia at the time of nationalization, though later the Republic agreed to and did pay an indemnification payment.  On October 17, 1969, President Alfredo Ovando Candia nationalized the assets of the Gulf Oil Company and transferred them to the State Oil Company, and the Minister of Mines and Oil announced that no indemnification payment would be made to Gulf Oil because gas and oil are resources of the Bolivian State, and later the Republic agreed to pay Gulf Oil the value of its fixed assets in Bolivia.  In 1956, President Victor Paz Estenssoro nationalized the tin mines that had belonged to the three major tin companies, Patiño, Hochschild and Aramayo, and no compensation was paid at the time of nationalization, though later a compensatory payment was made for the machinery of the companies.  On May 1, 2006, the Republic nationalized the hydrocarbon natural resources in Bolivia, through Supreme Decree No. 28701 issued by President Evo Morales, understood as the recovery of State ownership, direction and control over natural resources.  No compensation was paid at the time of the nationalization, but later audits were conducted that determined the appropriate amount of compensation to be paid.

7.      Thus, historically nationalization has occurred a number of times in

Bolivia, each time by Supreme Decrees issued by the President, and no compensation has been paid at the time of nationalization. These historical nationalizations demonstrate that under Bolivian constitutional principles and by the sovereign mandate of the Bolivian people, the President may exercise the sovereign authority to nationalize companies by Supreme Decree without payment of compensation at the time of nationalization, and to determine the amount of and make payment of compensation at a later time.

8.      That there is a difference between nationalization and expropriation is illustrated by Resolution No. 1803 of the United Nations General Assembly of December 14, 1962. This Resolution provides:

> The right of peoples and nations to permanent sovereignty over their natural wealth and resources must be exercised in the interest of their national development and of the well-being of the people of the State concerned.
> * * *
> Nationalization, expropriation or requisitioning shall be based on grounds or reasons of public utility, security or the national interest which are recognized as overriding purely individual or private interests, both domestic and foreign. In such cases the owner shall be paid appropriate compensation, in accordance with the rules in force in the State taking such measures in the exercise of its sovereignty and in accordance with international law. In any case where the question of compensation gives rise to a controversy, the national jurisdiction of the State taking such measures shall be exhausted.

9.      This is also illustrated by Resolution No. 3171 of the United Nations General Assembly of December 17, 1973, in which emphasis is given to the right of the States of the full exercise of the national sovereignty and to nationalize property in order to safeguard natural resources: "Reiterating that the inalienable right of each State to the full exercise of national sovereignty over its natural resources has been repeatedly recognized by the international community..." "Reiterating also that an intrinsic condition of the exercise of the sovereignty of every State is that it be exercised full and effectively over all the natural resources of the State....." "Reaffirming the inviolable principle that every country has the right to adopt the economic and social system it

deems most favorable to its development..." "Affirms that the application of the principle of nationalization carried out by States, as an expression of their sovereignty in order to safeguard their natural resources, implies that each State is entitled to determine the amount of possible compensation and the mode of payment, and that any disputes which might arise should be settled in accordance with the national legislation of each State carrying out such measures."

10. Similarly, in the United Nations Charter of Economic Rights and Duties of States of 1974, ratified by Law of the Republic of Bolivia, in Article 2(c), that there is a distinction between nationalization and expropriation is also made clear. The Charter states:

> To nationalize, expropriate or transfer ownership of foreign property, in which case appropriate compensation should be paid by the State adopting such measures, taking into account its relevant laws and regulations and all circumstances that the State considers pertinent. In any case where the question of compensation gives rise to a controversy, it shall be settled under the domestic law of the nationalizing State and by its tribunals, unless it is freely and mutually agreed by all States concerned that other peaceful means be sought on the basis of the sovereign equality of States and in accordance with the principle of free choice of means.

In both the United Nations Resolution and in the United Nations Charter of Economic Rights and Duties of States of 1974, both "nationalization" and "expropriation" are referred to, demonstrating that these are two different legal concepts and acts.

11. The Bolivian telecommunications service is a public service under Bolivian law that utilizes the natural resource electromagnetic spectrum. The Bolivian State Political Constitution, in Article 136, provides: "It belongs to the originating domain of the State, in addition to which law gives that stature, soil and subsoil with all its natural wealth, lakes, rivers and medicinal, including the elements and physical forces that can be used." Article 133 of the Constitution states: "The economic regime will encourage the strengthening of the national independence and the development of the country through the defense and use of natural and human resources to safeguard of the State security and in pursuit of the well being of the peoples." The "physical forces"

include the electromagnetic spectrum. Pursuant to these Constitutional provisions, the Bolivian telecommunication service administered by ENTEL is effective through the exploitation of the natural resource of the electromagnetic spectrum, which is part of the Bolivian space and sovereignty, and this resource is inalienable and exempt from prescription, and is subject to State control and administration; furthermore, the provision of basic telecommunications services involves fundamental human rights.

12.    Thus, under Bolivian law and practice, the Constitutional provision concerning "expropriation" does not apply to nationalizations done by Supreme Decree, and prior payment of compensation is not required for title in the nationalized properties to pass to the State. With nationalizations, compensation can be determined and paid at some time after the nationalization and transfer of title.

13.    I note that E.T.I. has claimed that the transfer of the shares in ENTEL formerly owned by E.T.I. to the Republic was not effective under Bolivian law, even though the Supreme Decree nationalized the shares and ordered their transfer; in compliance and pursuant to the same legal disposition, a ministerial directive was issued instructing the Secretary of ENTEL to record the transfer of the shares to the Ministry of Public Works, Services and Housing; and, in compliance with that directive, the shares were recorded in ENTEL's Share Registry as being owned by the Ministry as of May 2, 2008. E.T.I. argues that the Ministry is nonetheless not the owner of the shares under Bolivian law because the prior share certificate held by E.T.I. was not endorsed over to the Ministry. This is not an accurate statement of Bolivian law regarding nationalization.

14.    Clearly, when a nationalization occurs, as opposed to a purchase and sale, or even an expropriation, a voluntary act of the prior owner of the nominative share is not needed or contemplated, and, therefore, it is not and cannot be a legal requirement that the prior owner endorse and deliver the share certificate to the State. By the same token, the exercise of national sovereignty through nationalization is not and cannot be made dependent on the actions of private shareholders endorsing share certificates.

Nevertheless, because of the immediate legal effect of the Supreme Decree ordering the nationalization, the title to the nationalized property transfers immediately to the State. Even if the Commercial Code did not provide a specific provision for the transfer of shares without endorsement, the nature of nationalizations would create the need to interpret the Bolivian legal regulations in a manner that would carry out the State's sovereign power to nationalize property.

15.    Moreover, the Commercial Code, in this type of situation, does permit the transfer of the shares even without the return of the prior share certificate endorsed to the State by the prior owner.

16.    Article 250 of the Commercial Code determines that the corporations must have a share registry ledger, and Article 251 establishes the inscription of the shareholder in the share registry.

17.    Article 519 provides:  "(APPLICATION OF OTHER RULES). The pertinent dispositions related to certificates to the order of are applicable to nominative certificates."  Thus, the provisions of Chapter III of the Commercial Code (relating to Certificates to the Order Of), including Article 521, apply to nominative bonds.

18.    Article 521 provides:  "(TRANSFER BY MEANS OTHER THAN ENDORSEMENT). The transfer of certificates to the order of by means other than by endorsement subrogates the acquirer to all the rights that the certificate confers, but subjects him to all the personal exceptions that the debtor could have made to the author of the transfer before it.  The acquirer has the right to demand the delivery of the certificate. The acquirer that justifies that a certificate to the order of has been transferred by a means other than by endorsement, can voluntarily ask a judge to attest to the transfer on the certificate or on a page attached to it. The attestation of the judge shall have the effect of endorsement."

19.    The first part of Article 521 says that the transfer may take place by means other than endorsement, that this transfer by other means gives the acquirer all the rights

conferred by the certificate (even though the acquirer does not have an endorsed certificate), and that "the acquirer has the right to demand delivery of the certificate." Thus, the Commercial Code recognizes that in some circumstances an endorsement is not necessary to transfer title to nominative shares, and that if a person acquires nominative shares through other means that person not only has all rights as a shareholder but may demand of the company to deliver a new certificate to him.

20.    That is exactly what happened with Supreme Decree No. 29544.  Pursuant to that Supreme Decree, the transfer of the shares formerly held by E.T.I. were nationalized and then transferred to the Ministry by virtue of the authority of the Supreme Decree – this is a transfer by means other than endorsement.  Pursuant to Article 521, the Republic had the right to demand the transfer on the company's Share Registry, which it did through the letter from the Minister of Public Works, Services and Housing, and pursuant to the direction in this ministerial letter, ENTEL entered the transfer on ENTEL's Share Registry book and issued a new folio that named the Ministry the temporary owner of those shares.

21.    I note that the last sentences of Article 521 provides: "The acquirer that justifies that a certificate to the order of has been transferred by a means other than by endorsement, can voluntarily ask a judge to attest to the transfer on the certificate or on a page attached to it. The attestation of the judge shall have the effect of endorsement." This provision to voluntarily request an attestation by a judge is only a formality, and is not a requirement for the transfer to occur.  A new owner of shares might request the attestation by a judge if the new owner wants to have definitive proof that there has been a transfer of shares by means other than an endorsement.  But such attestation is not required for such transfer to have occurred.

22.    Thus, Supreme Decree No. 29544 and the transfer recorded on ENTEL's Share Registry on May 2, 2008, in compliance with Supreme Decree No. 29544 and the ministerial directive are not only effective to transfer title to the State under Bolivian law

8

by virtue of this being an act of nationalization but are consistent with the Commercial Code if it were applicable.

23.    I also note that E.T.I. has claimed that pursuant to Article 254 of the Commercial Code, prohibits the transfer of shares without an endorsement.  Even aside from my discussion above about "transfers by means other than endorsement," this is an incorrect reading of Article 254.  Article 254 states that "the transfer of nominative shares is *perfected* by the endorsement and is effective vis a vis the company and third parties as of registration in the share registry."  "Perfection" is a different concept than "transfer."  Thus, Article 254 states that *perfection* occurs with endorsement, but that *transfer* of shares is "effective . . . as of registration in the share registry."

24.    I note that Article 516 that states that:  "Only the one who appears in both the document [the share certificate] and the corresponding registry shall be recognized as the legitimate holder."  As I have shown above, Article 516 is not always applicable, as the Commercial Code expressly recognizes the possibility of transferring ownership of shares without endorsement of the certificate.

25.    The formalities established in the Commercial Code cannot be, and are not, attributable and relevant for a nationalization, for a nationalization involves the sovereign exercise and right over natural resources and strategic public services of a State, which are granted to the State by the Bolivian Constitution, and by the Resolutions of the United Nations General Assembly.


Executed on July 1, 2008, in La Paz, Bolivia.



———————————————————————
DRA. MARIA CECILIA ROCABADO

Michael Krinsky (MK 4503)
Eric M Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Teléfono: (212) 254-1111
Facsímile: (212) 674-4614

Abogados de Empresa Nacional de
Telecomunicaciones Entel, S.A.

CORTE DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUR DE LA CIUDAD DE NUEVA YORK

| | | |
|---|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., | : | |
| Demandante, | : | |
| v. | : | Caso No. 08-cv-4247 (LTS) |
| REPÚBLICA DE BOLIVIA, y EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A., | : | |
| Acusados. | : | |

## DECLARACIÓN DE MARIA CECILIA ROCABADO

MARÍA CECILIA ROCABADO declaro lo siguiente como verdadero y correcto, bajo pena de perjurio de acuerdo con las leyes de los Estados Unidos de Norte América:

1.    Soy Catedrática de la Carrera de Derecho en la Universidad Mayor Andrés de la ciudad de La Paz, Bolivia y enseño Derecho de Telecomunicaciones y Transporte. Soy abogada y miembro del Ilustre Colegio de Abogados de Bolivia y del Ilustre Colegio de Abogados de La Paz. Recibí mi título de Licenciada en Derecho en el año



1991 de la Facultad de Derecho de la Universidad Mayor de San Andrés en La Paz, Bolivia. Concluí mis estudios de Maestría en Seguridad, Defensa y Desarrollo, de la Escuela de Altos Estudios Nacionales (Universidad Militar de las Fuerzas Armadas de la Nación) en la cuidad de La Paz, en el año 2004. Obtuve el grado de Maestría en Ciencias Penales de la Universidad Mayor de San Andrés con reconocimiento de la Universidad de La Habana-Cuba en el año 2007. Adjunto mi hoja de vida al presente como Prueba A.

2.    En fecha 01 de mayo de 2008 se promulga el Decreto Supremo No. 29544, el cual expresamente nacionaliza el paquete accionario de E.T.I. en ENTEL S.A. Este Decreto Supremo se refiere varias veces de manera expresa a la "nacionalización": el artículo primero establece que "el propósito de este Decreto Supremo [es] el de *nacionalizar* el paquete accionario de E.T.I EUROTELECOM INTERNATIONAL NV en la Empresa Nacional de Telecomunicaciones Sociedad Anónima"; el artículo segundo estipula que "Se *nacionaliza* la totalidad del paquete accionario de la capitalizadora ETI EUROTELECOM INTERNATIONAL NV. en ENTEL S.A., debiendo las acciones de esta empresa capitalizadora ser transferidas al Estado Boliviano bajo la titularidad transitoria del Ministerio de Obras Públicas, Servicios y Vivienda mientras se realice la transformación de la naturaleza jurídica de ENTEL S.A. a ENTEL SAM. En virtud de esta medida todas las empresas subsidiarias de ENTEL S.A., en Bolivia o en el extranjero, quedan también *nacionalizadas* en la cuota parte respectiva."

3.    Bajo la legislación y doctrina del derecho boliviano, se distingue y diferencia el concepto de "nacionalización" al de "expropiación". El concepto de nacionalización se basa en la autoridad del soberano a imponer la soberanía sobre la propiedad que es esencial al Estado o al bien público, o que involucra recursos naturales esenciales (incluyendo propiedades industriales o servicios públicos de aprovechamiento de recursos naturales), y/o cuyo dominio originario es del Estado.



2

4.    Por otra parte, la expropiación no siempre requiere que el bien que sea susceptible de ser expropiado involucre servicios estatales o recursos naturales esenciales, o que sean de titularidad del Estado. La expropiación, como expresa el Articulo 22 parágrafo II de la Constitución Política del Estado de Bolivia, puede ocurrir por causa de interés publico o cuando esté bien no cumple con una función social, no hay limitante alguna que diga que la expropiación puede ocurrir solamente para recursos naturales u otro bien que es esencial para la soberanía del Estado, o requisito alguno que exprese que la titularidad del bien expropiado tenga que recaer solamente en el Estado.

5.    El planteamiento que la Ley de Expropiaciones no se aplica a la nacionalización se confirma por medio de las prácticas constantes de nacionalización en Bolivia.

6.    Por ejemplo, en fecha 21 de diciembre de 1936 se crea la empresa estatal petrolera ("YPFB") y, en 13 de marzo de 1937 todos los bienes, acciones y derechos que pertenecieran a la empresa Standard Oil Company of Bolivia se le asignan y transfieren a la empresa estatal petrolera (YPFB.). No se pagó ninguna compensación a la Standard Oil Company of Bolivia al momento de la nacionalización, aunque posteriormente, el Estado acordó y pagó un monto indemnizatorio. En fecha 17 de octubre de 1969, el Presidente Alfredo Ovando Candia nacionalizó los bienes de la Gulf Oil Co. y los transfirió a la empresa estatal petrolera, y el Ministro de Minas y Petróleo de entonces anunció que no se procedería a pagar ninguna indemnización, porque el gas y el petróleo son riquezas del Estado Boliviano, y, posteriormente el Estado acordó pagar a la Gulf Oil el valor de sus activos fijos en Bolivia. En el año 1956, el Presidente Víctor Paz Estenssoro nacionalizó las minas de estaño que pertenecían a las tres empresas principales de estaño, Patiño, Hochschild y Aramayo, y no se pagó compensación alguna al momento de la nacionalización, aunque posteriormente se procedió a un pago compensatorio por las maquinarias de las empresas. En fecha 1 de mayo de 2006, el Estado nacionalizó  los recursos naturales hidrocarburíferos en



3

Bolivia, a través del Decreto Supremo No. 28701, promulgado por el Presidente Evo Morales, entendido como la recuperación de la propiedad, dirección y control del Estado sobre los recursos naturales. No se realizó ningún pago compensatorio al momento de la nacionalización, pero, se efectuaron posteriores auditorias que determinaron el monto apropiado para el pago compensatorio.

7.    Por tanto, históricamente, la nacionalización ocurrió varias veces en Bolivia, y, cada vez mediante Decreto Supremo promulgado por el Presidente, y no se pagó compensación alguna al momento de efectuarse la nacionalización. Estas nacionalizaciones históricas, demuestran que bajo los principios constitucionales y por mandato soberano del pueblo, el Presidente puede ejercer la autoridad soberana para nacionalizar compañías mediante Decreto Supremo sin el pago compensatorio al momento de efectuar la nacionalización y, determinando el monto y la realización del pago de la compensación posteriormente.

8.    Existe diferencia entre nacionalización y expropiación como se ilustra en la Resolución No. 1803 de la Asamblea General de las Naciones Unidas de fecha 14 de diciembre de 1962. Esta resolución dispone:

> El derecho de los pueblos y de las naciones a la soberanía permanente sobre sus recursos naturales debe ejercerse en interés del desarrollo nacional y del bienestar del pueblo del respectivo Estado.
>
> * * *
>
> La nacionalización, la expropiación o la requisición deben fundarse en razones o motives de utilidad pública, de seguridad o de interés nacional, los cuales se reconocen superiores al mero interés particular o privado tanto nacional como extranjero. En esos casos se pagará al dueño la indemnización correspondiente, con arreglo a las normas en vigor en el Estado que adopte estas medidas en ejercicio de su soberanía y en conformidad con el derecho internacional. En cualquier caso en que la cuestión de la indemnización dé origen a un litigio, debe agotarse la jurisdicción nacional del Estado que adopte estas medidas.

9.    Esto también se ilustra en la Resolución No.3171 de fecha 17 de diciembre de 1973 de la Asamblea General de las Naciones Unidas, en la cual, se hace énfasis al derecho de los Estados del ejercicio pleno de la soberanía nacional y a



4

nacionalizar bienes para poder salvaguardar los recursos naturales: "Reiterando que el derecho inalienable de todos los Estados al pleno ejercicio de la soberanía nacional sobre sus recursos naturales ha sido reconocido repetidas veces por la comunidad internacional..." "Reiterando también que es una condición intrínseca para el ejercicio de la soberanía de cada Estado que dicho ejercicio sea pleno y efectivo sobre sus recursos naturales....." "Reafirmando el principio de inviolabilidad de que cada país tiene derecho a adoptar el sistema económico y social que considere más favorable para su desarrollo..." "Afirma que la aplicación del principio de la nacionalización de los Estados, como expresión de su soberanía para salvaguardar sus recursos naturales, implica que cada Estado tiene derecho a determinar el monto de la posible indeminización y las modalidades de pago, y que toda controversia que pueda surgir debe resolverse de conformidad a la legislación nacional de cada uno de los Estados que apliquen estas medidas."

10.    De igual manera, la Carta de los Derechos y Deberes Económicos de los Estados de 1974, ratificado por Ley de la República de Bolivia, en su artículo 2(c) establece que hay una clara diferencia entre nacionalización y expropiación. La Carta dice:

> "Nacionalizar, expropiar o transferir la propiedad de bienes extranjeros, en cuyo caso el Estado que adopte esas medidas deberá pagar una compensación apropiada, teniendo en cuenta sus leyes y reglamentos aplicables y todas las circunstancias que el estado considere pertinentes. En cualquier caso en que la cuestión de la compensación sea motivo de controversia, ésta será resuelta conforme a la ley nacional del Estado que nacionaliza y por sus tribunales, a menos que todos los Estados, y de acuerdo con el principio de libre elección de los medios".

En ambas, las Resoluciones de las Naciones Unidas y la Carta de los Derechos y Deberes Económicos de los Estados de 1974, se refieren a "nacionalización" y "expropiación", demostrando que estos son dos conceptos y actos legales distintos.

11.    El servicio de telecomunicaciones Boliviano es un servicio público para la legislación Boliviana, que utiliza el recurso natural espectro electromagnético. La



Constitución Política del Estado de Bolivia, en su Artículo 136 establece: "Son de dominio originario del Estado, además de los bienes a los que la ley da esa calidad, el suelo y el subsuelo con todas sus riquezas naturales, las aguas lacustres, fluviales y medicinales, <u>así como los elementos y fuerzas físicas susceptibles de aprovechamiento.</u>" El Articulo 133 de la Constitución establece: "El régimen económico propenderá al fortalecimiento de la independencia nacional y al desarrollo del país mediante la defensa y el aprovechamiento de los recursos naturales y humanos en resguardo de la seguridad del Estado y en procura del bienestar de los pueblos." Las "fuerzas físicas" incluyen el espectro electromagnético. En concordancia con las estipulaciones constitucionales, el servicio de telecomunicaciones boliviano administrado por ENTEL es efectivo a través de la explotación del recurso natural espectro electromagnético, el que es parte del espacio y soberanía Boliviano y, este recurso es inalienable e imprescriptible y está sujeto al control y administración por parte del Estado; más aún, la dotación del servicio básico de telecomunicaciones involucra derechos humanos fundamentales.

12.    Por tanto, bajo las leyes y prácticas bolivianas, la previsión constitucional concerniente a "expropiación" no se aplica a las nacionalizaciones realizadas mediante Decreto Supremo, y, no se requiere pago previo de compensación por la titularidad de los bienes nacionalizados que pasan al Estado. En las nacionalizaciones, la compensación puede ser determinada y pagada tiempo después de haber efectuado la nacionalización y la transferencia de la titularidad.

13.    Yo noto que E.T.I expresa que la transferencia de acciones de ENTEL antes poseídas por E.T.I. a la República no era efectiva bajo las leyes de Bolivia, aun cuando el Decreto Supremo decretaba su transferencia; en cumplimiento y en concordancia con la misma disposición legal, se emite un instructivo ministerial instruyendo al Secretario de ENTEL a registrar la transferencia de acciones al Ministerio de Obras Públicas, Servicios y Vivienda; y, en cumplimiento con ese instructivo, las acciones se registraron en el Libro de Acciones de ENTEL como



6

propiedad del Ministerio desde el 02 de mayo de 2008. E.T.I. argumenta, que el Ministerio, sin embargo, no es el propietario de las acciones bajo la legislación Boliviana debido a que el certificado accionario anteriormente bajo propiedad de E.T.I. no fue endosado al Ministerio. Esta no es una aseveración acertada de la legislación boliviana respecto a una nacionalización.

14.    Claramente, cuando ocurre una nacionalización, en contraposición con una compra venta, o inclusive con una expropiación, no es necesario ni se contempla un acto voluntario del anterior propietario de la acción nominativa, y, por tanto, no es y no puede ser un requisito legal el que el anterior propietario endose y transmita el certificado de registro al Estado. Siguiendo la misma línea, el ejercicio de la soberanía nacional a través de la nacionalización no es y no puede depender de las actuaciones de los accionistas anteriores de endosar los certificados de acciones. Sin embargo, como resultado legal inmediato del Decreto Supremo disponiendo la nacionalización, la titularidad del bien nacionalizado se transfiere inmediatamente al Estado. Aún si el Código de Comercio no estableciera una previsión específica para la transferencia de acciones sin endoso, la naturaleza de las nacionalizaciones crearían la necesidad de interpretar las normas legales bolivianas, de manera tal que permitirá ejercer el poder de soberanía del Estado para nacionalizar la propiedad.

15.    Más aun, el Código de Comercio, frente a este tipo de situaciones,  si permite la transferencia de acciones aun sin la devolución del anterior certificado de acciones endosado al Estado por el anterior titular.

16.    El artículo 250 del Código de Comercio determina que las sociedades deben tener un libro de registro de acciones, y, el artículo 251 establece la inscripción del accionista en el registro de accionistas.

17.    El Artículo 519 establece: "(APLICACIÓN DE OTRAS REGLAS). Serán aplicables a los títulos nominativos, en lo conducente, las disposiciones relativas a los títulos a la orden." Por tanto, las previsiones del Capítulo III del Código de Comercio

(relacionado a los Títulos a la Orden), incluyendo el Artículo 521, se aplican a los títulos nominativos.

18.    El Artículo 521 establece: "(TRANSMISIÓN POR MEDIO DISTINTO DEL ENDOSO). La transmisión de un título o la orden por medio distinto al endoso, subroga al adquirente de todos los derechos que el título confiera, pero lo sujeta a todas las excepciones personales que el obligado habría podido oponer al autor de la transmisión antes de ésta. El adquirente tiene derecho a exigir la entrega del título. El adquirente que justifique que se ha transmitido un título a la orden por medio distinto del endoso, puede solicitar del juez, en la vía voluntaria, que haga constar la transmisión en el título o en hoja adherida a él. La constancia que ponga el juez se tendrá como endoso."

19.    La primera parte del Artículo 521 establece que puede darse la transmisión por medio distinto al endoso, y que esta transmisión por otro medio subroga al adquirente de todos los derechos que el título confiera (aún cuando el adquirente no tenga un certificado endosado), y que, "el adquirente tiene derecho a exigir la entrega del título." Por tanto, el Código de Comercio reconoce que en ciertas circunstancias no es necesario el endoso para transferir acciones a título nominativo, y, que si una persona adquiere acciones nominativas por otros medios, esa persona tiene todos los derechos como accionista y puede solicitar a la sociedad la entrega de un nuevo título.

20.    Eso es exactamente lo que ocurrió con el Decreto Supremo No. 29544. Concordante con ese Decreto Supremo, la transmisión de acciones antes de propiedad de E.T.I. fueron transferidas al Ministerio en virtud de la autorización del Decreto Supremo – siendo esta una transferencia por medio distinto al endoso. Concordante con el Artículo 521, el Estado tiene el derecho a exigir la transferencia en el Registro de Acciones de la sociedad, lo cual se hizo mediante carta del Ministerio de Obras Publicas, Servicios y Vivienda y, dando cumplimiento a la instructiva de esta carta ministerial, ENTEL insertó la transferencia en el Libro de Registro de Acciones de



ENTEL, y emitió un nuevo folio que designa al Ministerio como titular transitorio de esas acciones.

21.    Yo noto que las últimas oraciones del Artículo 521 establecen: "el adquiriente que justifique que se ha transmitido un título a la orden por medio distintito del endoso, puede solicitar del juez, en la vía voluntaria, que haga constar la transmisión en el título o en hoja adherida a él. La constancia que ponga el juez se tendrá como endoso." La previsión de requerir voluntariamente a un juez una constancia es solamente una formalidad, y no es un requisito para que ocurra la transferencia. Un nuevo propietario de acciones puede requerir esta constancia por parte de un juez si quiere tener prueba definitiva de la transferencia de acciones por medio distinto al endoso. Pero, dicha constancia no es requerida para que haya ocurrido la transferencia.

22.    Por tanto, el Decreto Supremo No. 29544 y el registro de la transferencia en el Registro de Acciones de ENTEL en fecha 02 de mayo de 2008, en cumplimiento con el Decreto Supremo No. 29544 y el instructivo ministerial, es válido para transferir la titularidad al·Estado bajo la legislación Boliviana, en virtud de que este es un acto de nacionalización pero son consistentes con el Código de Comercio si fuera aplicable.

23.    También noto que E.T.I. clama que, en concordancia con el Artículo 254 del Código de Comercio, se prohíbe la transferencia de acciones sin endoso. Aun sin considerar lo anteriormente descrito concerniente a las "transmisiones por otros medio distintos al endoso," esta es una interpretación errónea del Artículo 254. El Artículo 254 establece que "la transmisión de acciones nominativas se *perfecciona* mediante el endoso y producirá efectos ante terceros a partir de su inscripción en el registro de acciones." La "Perfección" es un concepto distinto al de la "transmisión." Por tanto, el Artículo 254 expresa que la *perfección* ocurre con el endoso, pero que la *transmisión* de las acciones "producirá efectos... a partir de su inscripción en el registro de acciones."

24.    Yo noto que el Artículo 516 establece que: "Sólo será reconocido como tenedor legítimo quien figure a la vez, en el documento y en el registro



correspondiente." Como demostré anteriormente, el Artículo 516 no es siempre aplicable, debido a que el Código de Comercio expresamente reconoce la posibilidad de transmitir la titularidad de acciones sin el endoso del certificado.

25.    Las formalidades establecidas en el Código de Comercio no pueden, ni son atribuibles y relevantes para una nacionalización, pues, una nacionalización involucra el ejercicio soberano y derecho sobre los recursos naturales y servicios públicos estratégicos de un Estado en virtud a la Constitución Política del Estado y las Resoluciones emitidas por la Asamblea de las Naciones Unidas.

Declarado y suscrito el 01 de julio de 2008 en La Paz, Bolivia.

MARIA CECILIA ROCABADO
ABOGADO
M.C.A. 001873 - NIT: 202...
MAT. CONALAB 0:7·

10

## DECLARATION OF ACCURACY

I, Erik Meier Kirzner, hereby declare under penalty of perjury under the laws of the United States as follows:

I am fluent in Spanish and English and the foregoing is, to the best of my knowledge and belief, a true and accurate translation from Spanish to English of the Declaration of María Cecilia Rocabado.

Executed on July 3, 2008 in La Paz, Bolivia.

_____
ERIK MEIER KIRZNER

# EXHIBIT A

# CURRICULUM VITAE

## OF

## MARIA CECILIA ROCABADO TUBERT

**CURRICULUM VITAE**

**Personal Information**

Rocabado Tubert Maria Cecilia

Law Office "Rocabado – Tubert"
C. Yanacocha Edif. Asbun Nuevo 5th floor, of. 502

2783315 Home, 2406873 Of – 70594577 Cellular

Macerotu1@hotmail.com

**Work Experience**

2008    Lawyer since 1991

2008    Ministry of Internal Revenue. Consultant (Analysis of the existing interrelationship between the Systems of Administrative Organization, the System of Operative Programming and the Budget System. Proposal of adjustment of the contract models).

2008    Banco Union – Consultant on labor issues.

2007    INFOCAL Nacional. Complete Legal Counsel.

2007-2006    Center for Strategic Study and Analysis of Bolivia (Strategy). Consultant on the proposed constitutional text: Model of the State, political system, economic constitution, natural resources.

2007    Associate Judge of the Supreme Court of Justice

2006    National Service of Geology and Mine Technology "SERGEOTECMIN." Legal Director.

2006    Ministry of Hydrocarbons and Energy. Legal Director.

2006.    Ministry of Hydrocarbons and Energy. Dir. of Legal Analysis

2005    United Nations Organization for Agriculture and Food (FOA). Consultant: Project on Regulations for Ecological Production (approved).

2005-2004    Municipal Enterprise for Urban Maintenance. Legal Office.

2002    Project of Support to Educational Reform (for El Alto), Financed by the European Community and the GMEA. Consultant for Outside Contracts.

2002-2001    Honorable National Senate. Outside Consultant for the Electoral Law.

2001    Honorable Mayoralty of the Municipality of El Alto. Consultant: Boundaries La Paz – El Alto

2001    National Railroad Company (ENFE). Legal Department

2001    Unit of Coordination of the Agricultural Service Program (Project of the Inter American

Development Bank) Legal Director

2000    National Dialogue 2000. Political Agenda. Vice Presidency of the Republic. Outside consultant under the direction of Lic. Palmiro Soria.

2000    Municipal Enterprise for Urban Maintenance (E.M.M.U.). Legal Director

1999    Mayoralty of the Municipality of La Paz. Manager of the Enforcement Department.

1998    Department Road Service. Legal Director.

1999    Department Road Service. Consultant. Micro enterprise for road repair.

1996    Mayoralty of Municipality of La Paz. Outside consultant City Council

1995    Mayoralty of Municipality of La Paz. Consultant. Project on Municipal Development

1995    Mayoralty of Municipality, Municipal City Council. Outside consultant.

1994-1993    Mayoralty Municipal, Municipal City Council (Legal and Administrative commissions). Legal Advisor.

1993-1992    Formation and Training INFOCAL. Manager of the Legal Department.

1992    Savings and Credit Cooperative, Santisima Trinida. Manager of the Legal Department.

1991.    Department Electoral Court, Murillo Province. Secretary of the Chamber.

1991-1982    Legal Office of Dr. Manuel Morales Davila. Legal assistant.

**Other Significant Positions**
**Outside Private and Important Social Organizations**

Manager of Legal and Accounting Firm "Rocabado Tubert & Associates"

*Outside legal advisor to Corporations, Enterprises and Public Institutions*

Confederation of Self-Employed Workers

Bolivian Worker Central

Federation of Teachers of the UMSA (FEDSIDUMSA)

Workers Union of Pacajes Province, affiliated with the Federation of Agricultural Workers of Bolivia.

Federation of Rural Teachers of La Paz

Confederation of Rural Teachers of Bolivia

Outside counsel of the Law Office of Social Organizations, such as the Confederation of Light, Energy, Telecommunications, Water of Active and Retired Workers.

Outside Counsel of Law Office, Association of Police, lower level officials. Retired and Active Workers Group.

Outside Legal Advice of the Law Office to the Federation of Urban Teachers of the City of Santa Cruz.

Outside Legal Advice of the Law Office to the Permanent Assembly of Human Rights of La Paz.

Outside Legal Advice of the Law Office, Aurifera Cooperative Santa Fe (Small Mine)

Outside Legal Advice of Law Office, Association of Former Municipal Workers.

Outside Legal Advice of Law Office, Palace Hotel, Sucre.

Outside Legal Advice of Law Office, Workers Union of the Forno Textile Factory

Outside Legal Advice of Law Office, America Bottling SRL

Outside Legal Advice of Law Office, Association of Former Workers of the Domingo Soligno Bolivian Wool Factory

Organization of Relocated Mining Workers Enramada

Legal Assistant to the Enramada Mine Workers Union.

<u>Teaching</u>

2008    Thesis Advisor (Subject: Active and Passive Legal Insecurity en Public Service Transportation), student Adan Javier Gavincha Quisbert, UMSA, Legal Studies

2008    Thesis Advisor, Extraordinary Degree Plan by Thesis (Subject: Necessity for a New Law for Protection and Security in Radiology), student Ximena Lourdes Orellana Bellido. UMSA, Legal Studies.

2008    Thesis Advisor (Subject: Psychological Damage to Workers and its Incorporation in the Labor Law) student Erika Raquel Avila Bolivar UMSA, Legal Studies

2008    Thesis Advisor (Subject: Legal and Practical Bases for the Creation of Land Motor Vehicle Transportation Law in Bolivia) student Eliane Estrada Gerstenberger, UMSA, Legal Studies

2008    Thesis Advisor (Subject: Legal and Technical Limitations for Regulating Telecommunications Services in the improvement of the State Institutional System) student Varinia Irigoyen Colque UMSA, Legal Studies

2007    Thesis Advisor (Subject: Principles and Values of the Aymara Communitarian Justice System), student Paola Verena Tapia Telleria UMSA, Legal Studies.

2007    Advisor, Supervised Studies, student Rocio Vera Choque. UMSA, Legal Studies.

2007-2006    Member of the Degree Examination Tribunal in various specialties in the public area.

2006    Instructor, summer course on Communication and Transport Law, UMSA, Legal Studies.

2007-2006    Member of Tribunal, Degree Examination, Private Area, UMSA.

2008-2002    Instructor, Communication and Transportation Law, ITEM No. 7303 – with Merit Competition, UMSA, Legal Studies.

2006    Guest Instructor, Criminal Law Module I, Command of Military Institutes of the Army Military College of the "Col. Gualberto Villaroel" Army.

2004-2003    Guest Instructor, Module V, Oral Trial in the Criminal Process, Diploma Course in Penal Sciences, University of Aquino Bolivia (UDABOL)

2001    Member of Degree Examination Tribunal, Criminal Area, Delegate ICALP, "Franz Tamayo" Private University

2001-2000    Guest Instructor, Subject: Tax and Labor Legislation, Nur University.

2001    Chairperson of the Degree Examination Tribunal for Male Cadets, 4th Year, Procedural Law, National Police Academy.

2001    Thesis Advisor, Subject "Adoption and Its Legal Effects", Ramiro Oblitas Garcia (student), University of San Francisco de Asís

2000    Member of Degree Examination Tribunal for Male Cadets, 4th Year, National Police Academy

2000    Thesis Advisor, Subject "Necessity of Road Law and Modification of the Penal Code", Fernando E. Galindo Canedo (student), University San Francisco de Asís

1999    Member, Thesis Tribunal, Subject: "Bases for the Modernization of the Civil Registry System in Bolivia", UMSA School of Law and Political Sciences

1999    Thesis Tribunal, Subject: "Their Own Land for the Indigenous Peoples of Bolivian Amazonia," UMSA Institution, School of Law and Political Sciences

1999    Instructor, Municipal Law, UMSA, Legal Studies

1999    Instructor, Administrative Law, UMSA, Legal Studies

1998    Tribunal Member (1st Member), Degree Examination for Male Cadets, National Police Academy

1998    Guest Instructor, Constitutional Law
National Policy Academy

1998 – 1997    Instructor, Municipal Law, UMSA, Legal Studies

1997 – 1996    Instructor, Constitutional Law, UMSA, Legal Studies

1990 – 1989    Training of Research Workers in the Legal Area
Social Studies and Training Institute (I.N.E.S.C.)

1987    Teaching Assistant, Constitutional Law, UMSA, School of Law and Public and Legal Sciences

1986    Instructor, Criminal Procedures, Administration Course, Police, Higher Institute of Public Administration. ISAP.

1983    Teaching Assistant, Constitutional Law, UMSA, School of Law, Legal and Public Sciences

## Publications

2007    Periodical, *El Constituyente*. Article: Brief Reflection on the La Cruceña Autonomy Statute.

2007    Review. *Para Vivir Bien*. Article: "The Constituent Assembly: The Pillar of a Profound Change."

2003    National Bioethics Committee, Draft Design for the Project for Development of Special Standards for Medical Malpractice with the National Bioethics Committee. Published on the Internet.

2003    Law Review. Illustrious College of Attorneys of La Paz. Article: "Points on Constitutional Jurisprudence and Constitutional Justice."

1999    Commentator Participant. Commentaries and Opinion on the Wealth Investigation Bill (National Deputy Dr. Andrés Soliz Rada)

1991    Degree Thesis. The Revolution of 1552 and the Bolivian State (1952 – 1956)

## Honors

2007    Superior University of San Andrés. School of Law and Political Sciences, Legal Studies. "Honorary Degree." Honor for contribution to the training of professionals.

2007    Superior University of San Andrés. School of Law and Political Sciences. Legal Studies. "Honorary Degree." Honor for contribution to the training of professionals.

2007    Superior University of San Andrés. School of Law and Political Sciences. Legal Studies. Honor for contribution to the training of professionals.

2007    National College of Attorneys of Bolivia. For participation as a Lecturer on the "Community Justice Commission" and Professionalism

2007    National College of Attorneys of Bolivia. For participation as a Lecturer on the "Community Justice Commission" and Professionalism

2004    Medical College. Departmental Council of La Paz, for Services Rendered at the Bioethics Congress representing the College of Attorneys and Professionalism

1998    National Police Academy, for participation as a member of the Degree Examinations Tribunal

1998    National Policy Academy, Chair at the Alma Mater Institute "of the National Police for instruction and education at the Institution."

1997    Municipal Government of Batallas. Declared an Honored Guest by Municipal Ordinance No. 020/97

1991    Superior University of San Andrés. School of Law and Political Sciences, Legal Studies. Examination Instrument for the Bachelor's Degree with Full Approval and Honors

## Studies

## Languages

2007    Course in English
2007    Course in Aymara

## Professional Training

2007    UMSA. Master's in Penal Sciences Version I (Academic Years 1999 – 2000 – 2001). Post-Graduate School of Law and Political Sciences

2008 – 2007    UMSA (Currently taking a Specialization Course for the Master's and Doctoral Degrees in Constitutional Law). Post-Graduate School of Law and Political Sciences

2004    Universidad Militar de las Fuerzas Armadas. "Advanced National Studies School." Graduate in Advanced National Studies, Candidate for Thesis Defense for the Master's Degree in Security, Defense and Development

2003    University of the Andes and "Correspondence University of Colombia," Graduate in Constitutional Law

2000    UMSA, Assistant Rector, Center for Psychopedagogics and Research in Higher Education. Graduate in Organization and Pedagogical Administration of the Classroom in Higher Education

2001    School of Law of the University of Havana and the National Union of Cuban Jurists, Master's in Penal Science (Completion of the Modules for Master's Degree and preparation of thesis for degree)

2000-1999    UMSA, University of Havana Cuba.  Specialization in Penal Science.

1999    Post Graduate on Sexual Crimes, Post Graduate on Criminology, Post Graduate on Systems of Criminal and Procedural Guarantees, Post Graduate on Crimes against the Public Faith, Post Graduate on Psycho-social Focus of Delinquent Behavior, Post Graduate on Forensic Anthropology, Post Graduate on Economic Crimes, Administrative Corruption and the Rights of Consumers, Post Graduate on Criminalistic Issues: Participation, Guilt, Post Graduate on Criminal Issues, Post Graduate on Different Types of Procedures and Means of Legal Challenge, Post Graduate on Mediation, its Application in Different Social Environments, Post Graduate on Oral Trial in the Penal Process, Post Graduate on Toxicology, Post Graduate on Victimology as Science, Post Graduate on Theory of Proof.

1999    University of Mexico, D.F. (UNAM), Specialization in Industrial Property and Copyright.

1993    Technical Institute of Educational Computing (I.T.C.E.), Technician in Applications.

1991    UMSA, Provisional National Degree, "Lawyer"

1991    UMSA, Degree in Law

1981    Rosa Cattorno College, Bachelor in Humanities

1977    The Bolivian Institute, Typing, Calligraphy and English

**Seminars, Workshops and Others**

2008    School of Law and Political Science: "Nationalization of ENTEL, S.A."

2007    Amautica Society of Kollasuyo, "Philosophy and Community Justice"

2007    Bar Association of Bolivia, "Community Justice"

2005    International University of Mexico, D.F., "Bolivia, Constitutional Reality". Special
        Mention as Foreign Professional.

2001    Program "The Voice of the Lawyer" Radio Altiplano. Public debate forum.
        Representative of the Illustrious College of Lawyers, "Constitutional Reforms"

2001    Committee for Promotion of Ethics and Bioethics, Representative of the Illustrious
        College of Lawyers, Legal aspects of bioethics.

2000    Permanent Human Rights Assembly of Bolivia. Speaker in group discussion: Subject:
        Military Jurisdiction and Human Rights, the "Case of the Sharpshooter". "Military
        Jurisdiction and Human Rights."

2000    Permanent Human Rights Assembly of Bolivia. Debate: Defense of Human Rights.

2000    UMSA School of Law and Political Science, Current Research and Perspectives for
        Alternative Methodological Change for Graduation Thesis.

1992    UMSA School of Law and Political Science, Debate Forum on Constitutional Reform
        (participant lecturer)

1989    UMSA School of Law and Political Science, Course on Perspectives of Research
        Institutes, student leadership Student Center, Legal Studies. UMSA.

**Participation in Courses, Seminars and Others**

2007    American Association of Jurists, Subject: Social Justice, Democracy and Integration in
        America.

2007    Raul Walllenburg Human Rights and Humanitarian Law Institute, United Nations
        Institute for the Prevention of Crime and Treatment of Delinquents. General Department
        of the Prison System of the Republic of Bolivia, Subject: Third Congress on Internal
        Prison Reform.

2006    Illustrious College of Lawyers of La Paz, Subject: Second International Seminar on
        Current Criminal Law.

2005    AOPEB, FAO, GTZ, Ministry of Sustainable Development, SENASAG, MACA: II
        Regional Meeting of Organic Agriculture Authorities.

2004    The Southern Command of the United States and the Upper Level National Studies Col.
        "Eduardo Avaroa", Subject: Seventh Strategic Computerized Game NATIONLAB

2004    School of Upper Level National Studies.  Subject: "Constituent Assembly"

2003    Illustrious College of Lawyers of Law Paz, Private Legal Medical Association. Subject:
        1st Inter American Symposium on Legal Medicine

2003    School of Law and Legal Criminal Science.
        Subject: Master lecture on Criminal Law. Lecturer: Eugenio Zaffaroni

2003    Illustrious College of Lawyers of Las Paz and the Center of Conciliation and Arbitration.
        Subject: International Course-Workshop on Conciliation and Arbitration.

2003    Illustrious College of Lawyers of La Paz, Functions of Forensic Psychology Applications
        to Law.

2003    Illustrious College of Lawyers of La Paz, Bolivian Association of Bioethics, Genetic Law
        and Bioethics, Bioethics Seminar – Genetic Law.

2003    Ibero-american Association of Labor and Social Security Law, International Seminar on
        Labor and Social Security.

2003    Illustrious College of Lawyers of La Paz, Illustrious College of Lawyers of Madrid.
        "Master Lectures on International Commercial Arbitration, Electronic Commerce and the
        Importance of the International Criminal Court."

2002    Correspondence University of Colombia, Seminar on Inter-American Constitutional
        Justice.

2001    Ibero-American Association of Labor and Social Security, Bolivian Chapter,
        International Seminar on Labor and Social Security Law.

2000    School of Law and Legal Sciences, "Theory of Guilt in Modern Penal Law".

2000    Superior University of San Andres, University of Havana, Cuba, Post Graduate Program,
        "Workshop Course: the oral trial."

1999    Attorney General of the Republic, School of Law of Havana, Cuba, School of Law
        UMSA, International Scientific Conference on Criminal Law and the Challenges of the
        New Millennium.

1987    Ministry of Education and Culture SENLEP, UNESCO, Rights of Rural Women.

# CURRICULUM VITAE

# DE

# MARIA CECILIA ROCABADO TUBERT

## CURRICULUM VITAE

### Información Personal

Rocabado Tubert María Cecilia

Oficina Estudio Jurídico "Rocabado – Tubert"
C. Yanacocha Edif. Asbún Nuevo 5to Piso Of.502

2783315 Dom, 2406873  Of - 70594577 Celular

macerotu1@hotmail.com

### Experiencia de Trabajo

2008  Abogado en la profesión libre desde el año 1991.

2008  Ministerio de Hacienda. Consultoría (Análisis sobre la interrelación existente entre los Sistemas de Organización Administrativa, el Sistema de Programación Operativa y el Sistema de Presupuesto.  Propuesta de ajuste a modelos de contrato)

2008  Banco Unión .  Consultoría en materia laboral

2007  INFOCAL Nacional.   Asesoría Legal integral

2007-2006   Centro  de  Estudios  y  Análisis  Estratégicos  de  Bolivia (Estrategia).Consultor para propuesta texto constitucional: Modelo de Estado, sistema político, constitución económica, recursos naturales.

2007  Conjuez de la Corte Suprema de Justicia

2006  Servicio Nacional  de  Geología y Técnico de Minas "SERGEOTECMIN". Directora Jurídica

2006  Ministerio de Hidrocarburos y Energía. Directora Jurídica

2006  Ministerio de Hidrocarburos y Energía. Dir. Análisis Jurídico

2005  Organización de las Naciones Unidas para la Agricultura y la Alimentación (FAO).Consultor:   Proyecto Normas de Producción Ecológica (aprobada)

2005 - 2004 Empresa   Municipal  de Mantenimiento Urbano.  Dirección Jurídica.

2002  Proyecto de  Apoyo a la Reforma Educativa (Par El Alto) Financiado por la Comunidad Europea  y  el GMEA. Consultor Externo Contrataciones

2002 - 2001 Honorable  Senado  Nacional. Consultor Externo para Ley Electoral

2001  Honorable Alcaldía Municipal de El Alto. Consultor: Limites La Paz-Alto

2001  Empresa  Nacional de Ferrocarriles (ENFE). Dirección Jurídica

2001  Unidad de  Coordinación del Programa de  Servicio Agropecuario (Proyecto Banco Interamericano de Desarrollo). Director Jurídico

2000  Dialogo Nacional 2000 Agenda Política Vice Presidencia de la Republica. Consultor Externo bajo la dirección de Lic. Palmiro Soria

2000  Empresa   Municipal  de Mantenimiento Urbano (E M.M.U.). Director Jurídico

1999  Honorable Alcaldía Municipal de La Paz. Responsable Dirección Coactiva

1998  Servicio Departamental de Caminos. Director Jurídico

1999  Servicio Departamental de Caminos. Consultor Micro empresa para mantenimiento vial.

1996  Honorable Alcaldía Municipal de La Paz. Consultor Externo Concejo

1995  Honorable Alcaldía Municipal de La Paz. Consultor Proyecto de Fortalecimiento Municipal.

1995  Honorable Alcaldía Municipal, H. Concejo Municipal. Consultor externo

1994 – 1993  Honorable Alcaldía Municipal, H. Consejo Municipal (Comisiones Jurídicas y Administrativas). Asesor Jurídico

1993 -1992  Formación y Capacitación INFOCAL. Responsable del Departamento Jurídico

1992  Cooperativa de Ahorro y Crédito Santísima Trinidad. Responsable Departamento Jurídico

1991  Corte Departamental Electoral Provincia Murillo. Secretaria de Càmara

1991 - 1982  Estudio Jurídico Dr. Manuel Morales Dávila. Asistente jurídico

**Otras Asesorías de Carácter**
**Privado Externo y Organizaciones Sociales Sobresalientes**

Responsable Estudio Jurídico y Auditoria  "Rocabado  Tubert & Asociados"

Asesoramiento jurídico externo a Corporaciones, Empresas e instituciones públicas

Confederación de Trabajadores por Cuenta Propia

Central Obrera Boliviana.

Federación de Docentes de la UMSA (FEDSIDUMSA)

Sindicato de Trabajadores de la Provincia Pacajes, afiliada a la Federación de Trabajadores Campesinos de Bolivia

Federación de Maestros Rurales  de La Paz

Confederación de Maestros Rurales de Bolivia

Asesoramiento Externo del Estudio Jurídico a Organizaciones Sociales como Confederación Luz, Fuerza, Telecomunicaciones, Aguas de Activos y Jubilados

Asesoramiento Externo del Estudio Jurídico, Asociación de Policías, Sub oficiales y Clases. Grupo de Jubilados y Activos

Asesoramiento Externo del Estudio Jurídico, a Federación de Maestros Urbanos de la Ciudad de Santa Cruz

Asesoramiento Externo del Estudio Jurídico, Asamblea Permanente de los Derechos Humanos de La Paz

Asesoramiento Externo del Estudio Jurídico, Cooperativa  Aurífera Santa Fe (Minería Pequeña)

Asesoramiento Externo del Estudio Jurídico, Asociación  de Ex trabajadores Municipales

Asesoramiento Externo del Estudio Jurídico, Sucre  Palace Hotel

Asesoramiento Externo del Estudio Jurídico, Sindicato de Trabajadores de da Fabrica Textil Forno

Asesoramiento Externo del Estudio Jurídico, Embotelladora América  SRL

Asesoramiento Externo del Estudio Jurídico, Asociación de Ex Trabajadores de la Fabrica Lanificio Boliviana Domingo Soligno.

Organización de Trabajadores Relocalizados Mineros Enramada

Asistente Jurídico del Sindicato de Trabajadores Mina Enramada

**Docencia**

2008    Tutora de tesis (Tema:  La Inseguridad Jurídica Activa y Pasiva en el transporte de Servicio Publico), universitario  Adan Javier Gavincha Quisbert  UMSA Carrera de Derecho

2008     Tutora de tesis  Plan Extraordinario de Titulación por Tesis (Tema: Necesidad de una Nueva Ley de Protección y Seguridad Radiológica), universitaria  Ximena Lourdes Orellana Bellido.  UMSA Carrera de Derecho

2008    Tutora de tesis (Tema: El Daño Psicologico Laboral y su Incorporación En la Ley General del Trabajo) universitaria Erika Raquel Ávila Bolívar  UMSA Carrera de Derecho

2008    Tutora de tesis (Tema: Fundamentos Jurídicos y Fácticos para la creación de una Ley de Transporte Automotor Terrestre en Bolivia) universitaria Eliane Estrada Gerstenberger  UMSA Carrera de Derecho

2008    Tutora de tesis (Tema: Limitaciones Jurídicas y Técnicas para Regular el Servicio de las Telecomunicaciones en mejora del Sistema Institucional del Estado) universitaria Varinia Irigoyen Colque  UMSA Carrera de Derecho

2007    Tutora de tesis (Tema: Principios y Valores de la Justicia Comunitaria Aymará) universitaria Paola Verena Tapia Telleria  UMSA Carrera de Derecho

2007    Tutora Trabajo Dirigido universitaria Rocio Vera Choque  UMSA Carrera de Derecho

2007- 2006 Miembro de Tribunal de exámenes de Grado en diversas especialidades del área pública

2006 Docente del curso de verano de la materia Derecho de Comunicación y Transporte, UMSA Carrera de Derecho

2007 –2006 Miembro Tribunal, Examen de Grado Área Privada Delegada UMSA

2008 - 2002 Docente Derecho de Comunicación y Transporte,  ITEM No.7303 – con Concurso de Meritos, UMSA Carrera de Derecho

2005 Docente Invitada, Modulo Derecho Penal I, Comando de Institutos Militares del Ejercito Colegio Militar del Ejercito "Cnl. Gualberto Villaroel"
        :

2004-2003   Docente  Invitada,  Modulo  V  La  Oralidad  en  el  Proceso Penal"Diplomado Ciencias Penales , Universidad  de Aquino Bolívia (UDABOL)

2001 Miembro Tribunal, Examen de Grado Área Penal, Delegada ICALP, Universidad Privada "Franz Tamayo"

2001 – 2000 Docente Invitada,  Materia:  Legislación Tributaria y Laboral, Universidad Nur

2001 Presidente del Tribunal, Examen de Grado de los  Caballeros   Cadetes 4to Curso, Derecho Procesal, Academia Nacional de Policía

2001  Tutora de Tesis, Tema "La Adopción y sus Efectos Jurídicos", Ramiro Oblitas García (alumno), Universidad  San Francisco de Asís

2000  Miembro Tribunal, Examen de Grado de los Caballeros Cadetes 4to Curso Academia Nacional de Policia

2000  Tutora de Tesis , Tema "Necesidad  de una Ley de la Calzada y Modificación del Código Penal", Fernando E.Galindo Canedo (alumno), Universidad    San Francisco de Asís

1999  Miembro  Tribunal de Tesis, Tema  "Bases para la   Modernización  del Sistema  del Registro  Civil   en Bolivia" UMSA Facultad de   Derecho y Ciencias Políticas

1999  Tribunal  de Tesis, Tema "Territorio Propio para los Indígenas  de  la Amazonía Boliviana", Institución UMSA Facultad de   Derecho y Ciencias Políticas

1999  Docente Derecho Municipal, UMSA Carrera de Derecho

1999  Docente Derecho Administrativo, UMSA Carrera de Derecho

1998  Miembro Tribunal (1er Vocal), Examen Grado del  los Caballeros Cadetes Academia Nacional de  Policía

1998  Docente Invitada, Derecho Constitucional Academia Nacional de Policía

1998  - 1997  Docente Derecho Municipal, UMSA Carrera de Derecho

1997 – 1996  Docente Derecho Constitucional, UMSA Carrera de Derecho

1990  –  1989  Capacitación de Trabajadores de Investigación en el Área Jurídica Instituto de Estudio Sociales y  Capacitación (I.N.E.S.C.)

1987  Auxiliar de Docencia Derecho Constitucional, UMSA Facultad de Derecho Ciencias Jurídicas  Públicas

1986  Docente  de Procedimiento  Penal,  Curso  Administración.  Policial, Instituto Superior de Administración .Publica ISAP

1983  Auxiliar de Docencia Derecho Constitucional, UMSA Facultad de Derecho Ciencias Jurídicas  y Públicas

### Producción  Intelectual

2007  Periódico El Constituyente. Artículo   Breve Reflexión al Estatuto de la Autonomía Cruceña

2007  Revista  Para Vivir Bien. Artículo " La Asamblea Constituyente el Pilar de un Cambio profundo"

2003  Comité Nacional de Bioética, Proyecto de diseño del Proyecto para la elaboración de la Normativa Especial sobre la Mala Praxis Medica con el Comité Nacional de Bioética. Publicación en Internet

2003  Revista Lex  Ilustre Colegio de Abogadosde La Paz, Artículo "Apuntes Sobre Jurisprudencia Constitucional y Justicia Constitucional "

1999  Participe  Comentarista Comentarios y opinión de proyecto de Ley Investigación de Fortunas  (Diputado Nacional Dr. Andrés Soliz Rada)

1991  Tesis de Grado La Revolución  de 1552 y el Estado Boliviano (1952 – 1956)

### Menciones Honoríficas

2007 Universidad Mayor de San Andrés. Facultad de Derecho y Ciencias Políticas, Carrera de Derecho. "Diploma al Merito" Mención por aporte a la formación de profesionales

2007 Universidad Mayor de San Andrés. Facultad de Derecho y Ciencias Políticas, Carrera de Derecho. "Diploma de Honor" Mención por aporte a la formación de profesionales

2007 Universidad Mayor de San Andrés. Facultad de Derecho y Ciencias Políticas, Carrera de Derecho. Mención por aporte a la formación de profesionales

2007   Colegio Nacional de Abogados de Bolivia. Por Participación como Expositora en la "Comisión Justicia Comunitaria" .y   Profesionalismo

2007 Colegio Nacional de Abogados de Bolivia. Por Participación como Expositora en la "Comisión Justicia Comunitaria" .y   Profesionalismo

2004 Colegio Medico Consejo Departamental de La Paz. Por Servicios Prestados en el Congreso de Bioetica Representante del Colegio de Abogados y Profesionalismo

1998   Academia de Nacional de Policía, Por participación como miembro de Tribunal de los Exámenes de Grado

1998 Academia de Nacional de Policía, Catedrático del Instituto "Alma Mater de la Policía Nacional por tarea educativa docente prestada a la Insitución"

1997 Gobierno   Municipal de Batallas. Se declara Huésped Ilustre mediante Ordenanza Municipal  No.020/ 97

1991 Universidad Mayor de San Andrés Facultad de Derecho y Ciencias Políticas Acta de Examen de Licenciatura con Aprobación Plena y Mención Honrosa

### Estudios Realizados

### Idiomas

2007   Curso Idioma Ingles
2007   Curso Idioma Aymara.

### Formación Profesional

2007   UMSA   Maestría en Ciencias Penales versión I (Curso 1999-2000-2001) Post grado Facultad de Derecho y C.Políticas

2008-2007 UMSA   (Actualmente cursante de la Especialización para Maestría y Doctorado en Derecho Constitucional). Post grado Facultad de Derecho y C.Políticas

2004   Universidad Militar de las Fuerzas Armadas "Escuela de Altos De Estudios Nacionales", Diplomado de Altos Estudios Nacionales, Postulación a defensa de Tesis de Grado para la Maestría en Seguridad Defensa y Desarrollo

2003   Universidad de Los Andes y "Universidad Externado de Colombia", Diplomado en Derecho Constitucional

2000 UMSA, Vicerrectorado Centro Psicopedagógico y de Investigación en Educación Superior Diplomado en Organización y Administración Pedagógica del Aula en Educación Superior

2001  Facultad de Derecho de la  Universidad La Habana y la Unión Nacional de Juristas de Cuba Maestría Ciencias  Penales (conclusión de Módulos de Maestría y preparación de tesis de grado)

2000-1999    UMSA,   Universidad La Habana Cuba. Especialización en Ciencias Penales.

1999  Post Grado sobre Delitos Sexuales,      Post  Grado  sobre  Criminología, Post Grado sobre Sistemas de Garantías Penales y Procesales, Post Grado sobre Delitos contra la Fe Pública, Post Grado sobre Enfoque Psicosocial del Comportamiento Delincuencial,     Post Grado sobre Antropología Forense, Post Grado sobre Delitos Económicos, La Corrupción Administrativa y los Derechos del Consumidor, Post Grado sobre Temas sobre Derecho Penal Sustantivo. La Participación, La Culpabilidad, Post Grado sobre Temas de Criminalística, Post Grado sobre Distintos Tipos de Procedimientos y Medios de Impugnación, Post Grado sobre La Mediación, su Aplicación en Diferentes Ámbitos Sociales, Post Grado sobre La Oralidad en el Proceso Penal ,La Conexidad Sustantiva. Principios Generales en el Proceso Penal,  Post Grado sobre Toxicología, Post Grado sobre La Victimología como Ciencia, Post Grado sobre Teoría de Prueba,

1999  Universidad México D. F.(UNAM), Especialización Propiedad  Industrial y Derecho de Autor

1993  Instituto Técnico de Computación Educativa  (I. T. C. E.), Técnico en Aplicaciones

1991  UMSA, Titulo en Provisión Nacional "Abogado"

1991  UMSA, Licenciada en Derecho

1981  Colegio Rosa Cattorno, Bachiller en Humanidades

1977  The Bolivian Institute, Dactilografía, Caligrafía e Ingles

**Expositor en  Seminarios
Talleres y Otros**

2008  Facultad de Derecho y Ciencias Políticas:  "Nacionalización de ENTEL SA."

2007  Sociedad Amaútica del Kollasuyo, "Filosofía y Justicia Comunitaria"

2007  Colegio de Abogados de Bolivia, "Justicia Comunitaria"

2005  Universidad Internacional de México, D,F,  "Bolivia.  Realidad Constitucional". Mención Especial a Profesional Extranjero.

2001  Programa "La Voz del Abogado" Radio Altiplano".Foro debate público Representante del Ilustre Colegio de Abogados, "Reformas Constitucionales"

2001  Comité Impulsor de Ética y Bioética, Representante del Ilustre Colegio de Abogados, Aspectos jurídicos de bioética

2000  Asamblea Permanente de Derechos Humanos de Bolivia. Expositor grupos de reflexión,Tema: La Jurisdicción Militar y los Derechos Humanos "Caso Franco Tirador". "Jurisdicción .Militar y derechos humanos"

2000  Asamblea Permanente de Derechos Humanos de Bolivia.  Foro debate, Tema Defensa de los Derechos Humanos

2000  UMSA Facultad de Derecho y Ciencias Políticas, Investigación Actual y Perspectivas de Cambio Alternativas Metodológicas para Tesis de Grado

1992  UMSA Facultad de Derecho y Ciencias Políticas, Foro    Debate  Sobre Reforma a  La Constitución (Disertante Participante)

1989    UMSA Facultad de Derecho y Ciencias Políticas, Cursillo sobre Perspectivas de los Institutos de Investigación,Dirigente estudiantil Centro de Estudiantes Carrera Derecho. UMSA.

**Participación en**
**Cursos y Seminarios**
**y otros**

2007    Asociación Americana de Juristas, Tema: Justicia Social, Democrática e Integración en América

2007    Instituto Raul Wallenberg de Derechos Humanos y Derecho Humanitario , Instituto de las Naciones Unidad para la Prevención de Delitos y Tratamiento del Delincuente, Dirección General del Régimen Penitenciario de la República de Bolivia, Tema: Tercer Congreso de Criminología Reforma Penitenciaria Interna

2006    Ilustre Colegio de Abogados de La Paz, Tema: II Seminario Internacional de Actualización en Derecho Penal

2005    AOPEB, FAO, GTZ, Ministerio de Desarrollo Sostenible, SENASAG, MACA: II Encuentro Regional de Autoridades Competentes de la Agricultura Orgánica

2004    El Comando Sur de los Estados Unidos y la Escuela de Altos De Estudios Nacionales Cnl. "Eduardo Avaroa", Tema: VII Juego Estratégico Computarizado NATIONLAB

2004    Escuela de Altos De Estudios Nacionales Tema: "Asamblea Constituyente"

2003    Ilustre Colegio de Abogados de La Paz Asociación Medica Legal Privada Tema: 1er Simposio Iberoamericano de Medicina Legal

2003    Facultad de Derecho y Ciencias Jurídicas Penales Tema: Conferencia Magistral de Derecho Penal Expositor Eugenio Zaffaroni

2003    Ilustre Colegio de Abogados La Paz y El Centro de Conciliación y Arbritaje Tema: Curso — Taller Internacional de Conciliación y Arbitraje

2003    Ilustre Colegio de Abogados La Paz, Funciones de La Psicología Forense Aplicaciones al Derecho

2003    Ilustre Colegio de Abogados La Paz Asociación Boliviana de Bioética Derecho Genético y Bioética, Seminario Bioética – Derecho Genético

2003    Asociación Iberoamericana de Derecho del Trabajo y Seguridad. Social, Seminario Internacional de Derecho del Trabajo y de Seguridad Social

2003    Ilustre Colegio de Abogados La Paz , Ilustre Colegio de Abogados de Madrid "Conferencia Magistrales sobre Arbitraje Comercial Internacional Comercio Electrónico y La Importancia de la Corte Penal Internacional"

2002    Universidad Externado de Colombia, Seminario en Justicia Constitucional Interamericana

2001    Asociación Iberoamericana de Derecho del Trabajo y Seguridad Social Filial Bolivia, Seminario Internacional de Derecho del Trabajo y de Seguridad Social

2000    Facultad de Derecho y Ciencias Jurídicas, "Teoría de la Culpabilidad en el Derecho Penal Moderno"

2000    Universidad Mayor de San Andrés, Universidad La Habana Cuba, Programa Post – Grado, "Curso Taller El Juicio Oral"

1999   Fiscalía General de la República, Facultad Derecho de La Habana Cuba,
       Facultad de Derecho de la U.M.S.A., Jornada Científica Internacional Sobre
       Derecho Penal y los Desafíos del Nuevo Milenio.

1987   Ministerio de Educación y Cultura   SENLEP, UNESCO, Derechos de la
       Mujer Rural

**TransNet USA, Inc.**
235 West 102ⁿᵈ Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of   Curriculum Vitae of María Cecilia Rocabado Tubert  written in   Spanish  .

New York, July 03, 2008.

TransNet USA, Inc.

_____
Kamran Bayegan, President

Sworn to and subscribed before me on
July 03, 2008.

SUSAN E. GEDDES
Notary Public
State of New York
No.: 01GE4642769
Qualified in Nassau County
Commission Expires:
31 August 2009

# EXHIBIT B

# BOLIVIAN COMMERCIAL CODE

Article 239.- (PROVISIONAL TITLES OR CERTIFICATES). Titles may represent one or more shares and be nominative or bearer.

If the shares have not been totally paid for, the company shall only issue provisional certificates in nominative form. In this case the bearer certificates are void.

Once the total amount of the shares is paid, the interested parties may demand the extension of the definitive titles. As long as that delivery is not fulfilled, the provisional certificate shall be considered definitive and negotiable.

CHAPTER II
NOMINATIVE SHARES

Article 516.- (NOMINATIVE SHARES). The title-value shall be nominative when in it or in the regulation that governs its creation, the inscription of the holder is required in the registry that the creator of the title shall keep. Only the one who appears in both the document and the corresponding registry shall be recognized as the legitimate holder.

Article 517.- (NOTATION OF THE TITLE). The creator of the title may not deny notation in the registry of the transfer of the title, except for just cause or by judicial order to the contrary.

Article 518.- (TRANSFER OF THE TITLE). The transfer of a nominative title by endorsement shall give the endorsee the right to obtain the mentioned inscription in the article above. The creator of the title may demand that the signature of the endorser be authenticated by whatever legal means.

Article 519.- (APPLICATION OF OTHER RULES). The pertinent dispositions related to titles to the order of are applicable to nominative titles.

CHAPTER III
TITLES TO THE ORDER OF

SECTION I
TITLES TO THE ORDER OF

Article 520.- (TITLES TO ORDER OF). The securities issued in favor of determined persons, which are expressed "to the order of" or which "are negotiable," shall be to the order of and shall be transferred by endorsement and delivery of the title, without the need of registration on behalf of the creator.

Article 521.- (TRANSFER BY MEANS OTHER THAN ENDORSEMENT).  The transfer of certificates to the order of by means other than by endorsement subrogates the acquirer to all the rights that the certificate confers, but subjects him to all the personal exceptions that the debtor could have made to the author of the transfer before it.  The acquirer has the right to demand the delivery of the certificate.

The acquirer that justifies that a certificate to the order of has been transferred by a means other than by endorsement, can voluntarily ask a judge to attest to the transfer on the certificate or on a page attached to it. The attestation of the judge shall have the effect of endorsement.

## CODIGO DE COMERCIO
## DECRETO LEY Nº 14379

**GRAL. HUGO BANZER SUAREZ**
**Presidente de la República**

**CONSIDERANDO:**

Que, mediante Decreto Supremo Nº 06038 de 23 de marzo de 1962 fueron organizadas las Comisiones Codificadoras para la elaboración de proyectos de nuevos cuerpos legales, con el propósito de renovar la vieja estructura jurídica del país.

Que, por Decreto Supremo Nº 10426 de 23 de agosto de 1972, fueron promulgados los Códigos de Familia, de Comercio, Penal y de Procedimiento Penal, puestos en vigencia en virtud del Decreto Supremo Nº 19772 de 1º de marzo de 1973.

Que no obstante su promulgación, el Código de Comercio por Resolución Suprema Nº 167823 de 7 de mayo de 1973 y Decreto Supremo Nº 11007 de 31 de julio 1973, se dispuso que con carácter previo y antes de su vigencia sea coordinado y revisado con el fin de evitar contradicciones e interpretación que desnaturalicen el espíritu del mismo, trabajo que fue encomendado a una Comisión designada para tal efecto;

Que, la referida. Comisión ha entregado el Proyecto de Código de Comercio luego de efectuar un detenido y prolijo estudio, reformulado el primitivo proyecto y compatibilizándose con los nuevos Códigos Civil y Procedimiento Civil aprobados y promulgados por Decreto Supremo Nº 12760 de 6 de agosto de 1975 y puesto en vigencia a partir del 2 de abril de 1976.

Que, con este nuevo instrumento normativo, se concreta la general aspiración de dotar al país de un nuevo cuerpo legal que a más de permitir la promoción y desarrollo de la actividad comercial en general en armonía con las modernas corrientes que informan la materia, coadyuvará en forma positiva a los planes y programas del Gobierno Nacional para impulsar decididamente el fortalecimiento económico del país y las perspectivas que tiene el proceso de integración.

Que se hace necesario su aprobación y promulgación para regular las relaciones jurídicas derivadas de la actividad comercial, completando así la obra codificadora iniciada en 1972;

**POR TANTO;**
**SE RESUELVE:**

Art. 1º.- Apruébase y promúlgase como Ley de la República el Código de Comercio en su Título Preliminar y sus Cuatro Libros con 1.693 artículos y cinco disposiciones transitorias, en sustitución del texto promulgado mediante Decreto Supremo Nº 10426 de 23 de agosto de 1972.

Art. 2º El Código de Comercio entrará en vigencia en todo el territorio de la República a partir del 6 de agosto del presente año. (Vigente desde el lo. de enero de 1978).

Art. 3º Encomiéndase al Ministerio de Finanzas el estudio y conclusión de los siguientes proyectos: Ley de Bancos y otras entidades financieras; Ley de Entidades Aseguradoras; Ley Orgánica de la Comisión Nacional de Valores y el Reglamento de la Oferta Pública. Al Ministerio de Industria, Comercio y Turismo: el estudio y elaboración de los Proyectos de Reglamento del Registro de Comercio y de la Dirección de Sociedades por Acciones estableciendo su organización interna, funcionamiento, atribuciones y responsabilidades. Estos Proyectos serán presentados con la debida anticipación a la vigencia del Código de Comercio.

Art. 4º.- Abrógase el Código Mercantil de 13 de noviembre de 1834, sus Leyes complementarias y modificatorias, derogándose todas las disposiciones contrarias al presente Código.

Art. 232. - (INSCRIPCION, TRAMITE, RECURSO Y PUBLICIDAD). Aprobada la constitución de la sociedad anónima por la junta general constitutiva, se procederá conforme a los artículos 129 y 132.

Art. 233.- (FUNDADORES). Son fundadores de una sociedad anónima:
1)      Las personas que otorguen la escritura de constitución de la sociedad cuando se efectúe en acto único, y
2)      En la formación por suscripción pública, los que firmen el programa.

Art. 234.- (ENTREGA DE FONDOS A LOS ADMINISTRADORES). A la presentación del certificado de inscripción de la sociedad en el Registro de Comercio, el Banco fiduciario pondrá los fondos y bienes recibidos de los suscriptores a disposición de los administradores de la sociedad.

Art. 235.- (ENTREGA DE DOCUMENTACION POR LOS PROMOTORES). Los promotores están obligados a entregar a los directores o administradores toda la documentación relativa a la organización de la sociedad y la correspondiente a los actos realizados durante la formación de la misma, debiendo, además, devolvérseles los documentos pertinentes a los actos no aprobados por la junta de accionistas.

Art. 236.- (RESPONSABILIDAD DE LOS FUNDADORES). Los fundadores responden ilimitada y solidariamente por las obligaciones contraídas para la constitución y formación de la sociedad, inclusive de los gastos y comisiones del Banco fiduciario, aún en el caso de haber fracasado el programa.

Constituida la sociedad, ésta asume las obligaciones contraídas legítimamente por los fundadores, reembolsándoseles los gastos efectuados, previa aprobación de la junta general.

Art. 237.- (BENEFICIOS PARA PROMOTORES Y FUNDADORES). Los promotores y los fundadores no pueden recibir ningún beneficio que disminuya el capital social. Cualquier pacto en contrario es nulo.
La retribución que se conceda a los promotores y fundadores de las utilidades anuales, no excederá en ningún caso del diez por ciento, ni podrá extenderse por más de diez años, a partir de la constitución de la sociedad. Esta retribución no podrá cubrirse sino después de pagado a los accionistas un dividendo mínimo del cinco por ciento sobre el valor pagado de sus acciones.

SECCION III
ACCIONES

Art. 238.- (CONCEPTO Y VALOR NOMINAL). El capital social está dividido en acciones de igual valor. Tienen un valor nominal de 100 pesos bolivianos o múltiplos de cien.

Art. 239.- (TITULOS O CERTIFICADOS PROVISIONALES). Los títulos pueden representar una o mas acciones y ser nominativas o al portador.
Si las acciones no se hubieran pagado en su totalidad, la sociedad emitirá solamente certificados provisionales en forma nominativa. En éste caso los certificados al portador son nulos.
Una vez cubierto el importe total de las acciones, los interesados pueden exigir la extensión de los títulos definitivos. En cuanto no se cumpla con tal entrega, el certificado provisional será considerado definitivo y negociable.

Art. 240.- (INDIVISIBILIDAD DE LAS ACCIONES Y CONDOMINIO). Las acciones son indivisibles con relación a la sociedad.
En caso de existir varios copropietarios, la sociedad sólo reconoce un representante común para ejercer los derechos y cumplir las obligaciones sociales, el cual será nombrado por aquellos, o por el juez existiendo desacuerdo. En éste caso, se aplicarán las disposiciones del Código Civil en materia de condominio.

Art. 241.- (PROHIBICION DE EMITIR ACCIONES BAJO LA PAR). Las sociedades anónimas no pueden, en caso alguno, emitir acciones por un precio inferior a su valor nominal.
Puede emitirse acciones con prima autorizada por la junta extraordinaria, conservando su igualdad en cada emisión.
El importe de la prima, descontando los gastos de emisión, constituirá una reserva especial.

Art. 514.- (TENEDOR LEGITIMO). Se considera tenedor legitimo del título a quien lo posea conforme a la norma de su circulación.

Art. 515.- (PLAZOS DE GRACIA). En los títulos-valores no se admiten plazos de gracia, legales ni judiciales.

CAPITULO II
TITULOS NOMINATIVOS

Art. 516.- (TITULOS NOMINATIVOS). El título-valor será nominativo, cuando en él o en la norma que rige su creación, se exija la inscripción del tenedor en el registro que llevará el creador del título. Sólo será reconocido como tenedor legítimo quien figure a la vez, en el documento y en el registro correspondiente.

Art. 517. - (ANOTACION DEL TITULO). El creador del título no puede negar la anotación en su registro de la transmisión del título, salvo justa causa u orden judicial en contrario.

Art. 518.- (TRANSMISION DE UN TITULO). La transmisión de un título nominativo por endoso dará derecho al endosatario para obtener la inscripción mencionada en el artículo anterior. El creador del título puede exigir que la firma del endosante sea autenticada por cualquier medio legal.

Art. 519.- (APLICACION DE OTRAS REGLAS). Serán aplicables a los títulos nominativos, en lo conducente, las disposiciones relativas a los títulos a la orden.

CAPITULO III
TITULO A LA ORDEN

SECCION I
TITULOS A LA ORDEN

Art. 520.- (TITULOS A LA ORDEN) Los títulos-valores expedidos a favor de determinada persona, en los cuales se expresa "a la orden" o que "son negociables", serán a la orden y se transmitirán por endoso y entrega del título, sin necesidad de registro por parte del creador.

Art. 521. - (TRANSMISION POR MEDIO DISTINTO DEL ENDOSO). La transmisión de un título o la orden por medio distinto al endoso, subroga al adquirente de todos los derechos que el título confiera, pero lo sujeta a todas las excepciones personales que el obligado habría podido oponer al autor de la transmisión antes de ésta. El adquirente tiene derecho a exigir la entrega del título.
El adquirente que justifique que se ha transmitido un título a la orden por medio distinto del endoso, puede solicitar del juez, en la vía voluntaria, que haga constar la transmisión en el título o en hoja adherida a él. La constancia que ponga el juez se tendrá como endoso.

SECCION II
ENDOSOS

Art. 522.- (REQUISITOS FORMALES EN EL ENDOSO). El endoso debe constar en el título o en hoja adherida al mismo, en caso de no ser posible hacerlo en el documento, y deberá llenar los siguientes requisitos:
1)      Nombre del endosatario;
2)      Clase de endoso;
3)      Lugar y fecha del endoso, y
4)      Firma del endosante.

Art. 523.- (EFECTOS DE LA OMISION DE REQUISITOS). La omisión de los requisitos indicados en el artículo anterior, produce los siguientes efectos:
1)      Si se omite el nombre del endosatario, se entenderá como endoso en blanco;
2)      Si se omite la clase de endoso, se presume que el título fue transmitido en propiedad, sin que admita prueba en contrario en perjuicio de terceros de buena fe;

## **DECLARATION OF ACCURACY**

I, Erik Meier Kirzner, hereby declare under penalty of perjury under the laws of the United States as follows:

I am fluent in Spanish and English and the foregoing is, to the best of my knowledge and belief, a true and accurate translation from Spanish to English of various sections of the Bolivian Commercial Code.

Executed on July 3, 2008 in La Paz, Bolivia.

_____
ERIK MEIER KIRZNER