Ronald E.M. Goodman (RG 6698)
Paul S. Reichler
Janis H. Brennan
FOLEY HOAG LLP
1875 K Street, NW
Washington, DC  20006-1238
Telephone:  (202) 223-1200
Facsimile:  202-785-6687
*Counsel for Defendant the Republic of Bolivia*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.T.I. Euro Telecom International, N.V.,<br><br>Plaintiff,<br><br>v.<br><br>Republic of Bolivia and<br>Empresa Nacional de Telecomunicaciones<br>ENTEL S.A.,<br><br>Defendants. | CIVIL ACTION NO.<br>08-cv-4247 (LTS/FM)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW OF THE REPUBLIC OF BOLIVIA
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR ATTACHMENT IN
AID OF INTERNATIONAL ARBITRATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 4

      A.    THERE IS NO SUBJECT MATTER OR PERSONAL JURISDICTION AS TO
           BOLIVIA OR ENTEL ................................................................................. 4

      B.    BOLIVIA'S AND ENTEL'S ASSETS ARE IMMUNE FROM PREJUDGMENT
           ATTACHMENT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT
           BECAUSE NEITHER DEFENDANT HAS EVER EXPLICITLY WAIVED ITS
           IMMUNITY FROM PREJUDGMENT ATTACHMENT ....................................... 6

           1.    THE ASSETS OF BOTH BOLIVIA AND ENTEL ARE IMMUNE
                FROM PREJUDGMENT ATTACHMENT UNDER §1609 OF THE
                FOREIGN SOVEREIGN IMMUNITIES ACT, AND NEITHER HAS
                WAIVED THAT IMMUNITY ................................................................. 6

           2.    THIS COURT LACKS SUBJECT MATTER JURISDICTION TO
                ATTACH BOLIVIA'S INTEREST IN ENTEL'S ASSETS, EVEN IF
                ENTEL AND ITS PROPERTY DO NOT HAVE SOVEREIGN
                IMMUNITY. ...................................................................................... 16

      C.    THIS COURT LACKS *IN PERSONAM* JURISDICTION OVER BOLIVIA ...... 18

      D.    THIS COURT LACKS PERSONAL JURISDICTION OVER BOLIVIA
           BECAUSE PLAINTIFF HAS FAILED TO SERVE PROCESS AS REQUIRED
           BY §1608(a) OF THE FOREIGN SOVEREIGN IMMUNITIES ACT. ............. 19

      E.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF
           CAN BE GRANTED BECAUSE THE PROPERTY OF ENTEL MAY NOT BE
           ATTACHED TO SECURE A POSSIBLE ARBITRAL AWARD AGAINST
           BOLIVIA. ................................................................................................ 22

III.  CONCLUSION ................................................................................................... 23

Defendant the Republic of Bolivia ("Bolivia") submits this Memorandum in support of its Motion to Dismiss the Complaint for Attachment in Aid of International Arbitration filed by E.T.I. Euro Telecom International, N.V. ("Plaintiff").

## I.      <u>INTRODUCTION</u>

The Complaint must be dismissed, and the *Ex Parte* Order of Attachment issued on the basis of it must be dissolved, on any one of six independent grounds. *First*, this Court lacks both subject matter jurisdiction over this action and personal jurisdiction over Bolivia and Empresa Nacional de Telecomunicaciones Entel, S.A. ("Entel") because none of the exceptions to sovereign immunity set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. §§1330, 1602 *et seq.* (the "FSIA" or the "Act") is applicable to this case. Although Plaintiff is well-aware that the FSIA is dispositive as to jurisdiction in this case and has admitted that Bolivia is a sovereign State that has definitively expropriated Plaintiff's stock in Entel, its Complaint does not allege that any exception to the FSIA's immunity provisions applies. Nor can it, because there is no exception that would allow this Court to hear this case.

The court in London, England that had previously issued an *ex parte* order freezing Bolivia's and Entel's assets in the United Kingdom (including approximately US$49 million in Entel's account with Deutsche Bank there) has recognized that it, too, has no jurisdiction over Bolivia and Entel or their property. The London court discharged the freezing orders as to both Bolivia and Entel today, July 11, 2008, for lack of jurisdiction, including lack of jurisdiction under the UK Sovereign Immunity Act 1978 (the UK law parallel to the FSIA). In discharging the freezing order, the London court also found that, having invoked arbitration before the International Centre for the Settlement of Investment Disputes (ICSID) under the ICSID Convention, Plaintiff must accept the prohibitions on judicial involvement related to ICSID

proceedings that are inherent in the ICSID regime. There was no role for the London court in relation to an arbitration pending before ICSID.

*Second*, this Court lacks subject matter jurisdiction to order the attachment of Entel's bank accounts because those accounts are immune from prejudgment attachment under §1609 of the FSIA, absent Bolivia's and Entel's explicit waiver of that immunity. Neither Bolivia nor Entel has waived the immunity of their property from prejudgment attachment, whether explicitly or implicitly, and Plaintiff does not allege otherwise. Plaintiff's argument that Entel is not an agency or instrumentality of Bolivia, and thus that its bank accounts and other property are not entitled to immunity, is wrong. Plaintiff has made repeated and binding judicial admissions that Bolivia has expropriated its equity interest in Entel. Accordingly, there can no longer be any dispute that Entel is entitled to sovereign immunity and its property is immune from prejudgment attachment. Moreover, under both "federal common law" and Bolivian law, Bolivia acquired majority ownership of Entel when it nationalized Plaintiff's shares on May 1, 2008. Under any view, Bolivia is the owner of the shares formerly held by Plaintiff.

*Third*, even if Entel were not an agency or instrumentality of Bolivia, this Court would still lack subject matter jurisdiction in this case. Plaintiff's new theory, advanced in its Reply to Defendants' Oppositions to its Motion to Confirm, disclaims any veil-piercing as a basis for attaching Entel's property to secure claims against Bolivia. It argues instead that Entel's accounts are attachable because Entel owes a tax debt to Bolivia. However, under clear precedent from this and other circuits, any interest that Bolivia may have in Entel's property as a source for satisfying tax obligations is entitled to sovereign immunity.

*Fourth*, in addition to dismissal for lack of subject matter and personal jurisdiction under the FSIA, the Complaint must be dismissed because Plaintiff has made no allegations, nor

can it, that Bolivia has the requisite minimum contacts with the forum to render the exercise of personal jurisdiction over it consistent with the Due Process Clause of the Constitution. It is Plaintiff's burden to establish that this Court's exercise of personal jurisdiction over Bolivia is consistent with the Due Process Clause, and it has utterly failed to do so.

*Fifth*, this Court lacks personal jurisdiction over Bolivia because Plaintiff has failed to serve process upon Bolivia as mandated by §1608(a) of the FSIA. Plaintiff has made no effort to comply with those mandatory service requirements. Instead, it purports to have served Bolivia by serving the Bolivian Ambassador to the United States in Washington, D.C. However, the courts of this and other circuits have universally rejected service of process upon an embassy or consulate, holding that it is improper under §1608(a). Plaintiff's other attempt at service of the Complaint -- via its own transmission by international courier to the Bolivian Minister of Foreign Relations, without a translation of the Summons, Complaint, and required Notice of Suit into Spanish – is also improper service under the plain language of §1608(a). Because there is no exception that would negate Bolivia's immunity from jurisdiction under the FSIA, there would be no point in allowing the Plaintiff more time to effect proper service under §1608(a).

*Sixth* and finally, the Complaint fails to state a claim upon which relief can be granted because Plaintiff cannot attach *Entel's* assets to secure a possible future arbitral award against *Bolivia.* Plaintiff acknowledges that the arbitration it commenced at the International Centre for the Settlement of Investment Disputes (ICSID) is against Bolivia and no other entity. Entel is not a party to the arbitration. Any arbitral award that might conceivably be entered, therefore, could only be against Bolivia. It could not be against Entel. Although Entel is an agency or instrumentality of Bolivia, it is, by Plaintiff's own acknowledgement, a separate corporate and legal entity duly established under the commercial laws of Bolivia. As such, it is not and cannot

be liable for Bolivia's debts, or for judgments or arbitral awards against Bolivia. In these circumstances, Entel's assets may not lawfully be attached to secure a potential arbitral award against Bolivia.

## II.    ARGUMENT

### A.    THERE IS NO SUBJECT MATTER OR PERSONAL JURISDICTION AS TO BOLIVIA OR ENTEL.

The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the United States courts. 28 U.S.C. §§1330(a), 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989)). Under the FSIA, a foreign state is immune from the jurisdiction of the federal and state courts of the United States unless one of the specific exceptions to immunity enumerated in §§1605 to 1607 of the FSIA applies. If none of the listed exceptions applies, no subject matter jurisdiction exists. 28 U.S.C. §§1330(a), 1604; *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. at 434-39; *Saudi Arabia v. Nelson*, 507 U.S. at 355; *Reino de Espana v. American Bureau of Shipping, Inc.*, 328 F.Supp.2d 489, 492 (S.D.N.Y. 2004) (LTS). It is the plaintiff's burden to identify an applicable exception to the immunity of a sovereign defendant. *Reino de Espana v. American Bureau of Shipping*, 2006 U.S. Dist. LEXIS 49545 (LTS) at *5-6 (S.D.N.Y. 2006) (*quoting Cabiri v. Govt. of the Republic of Ghana*, 300 F.3d. 230, 241 (2d Cir. 2002) ("'the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted'")); *Hirsh v. State of Israel*, 962 F.Supp. 377, 379-80 (S.D.N.Y. 1997) (citing *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) (same)).

Moreover, personal jurisdiction over a foreign state will exist under the FSIA only if (1) there is subject matter jurisdiction under one of the limited exceptions set forth in the Act, and

(2) service of process has been effected in accordance with the provisions of §1608.  If none of the exceptions to immunity applies, the court lacks both personal jurisdiction and subject matter jurisdiction.  28 U.S.C. §1330(b); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1992).

      While unreservedly admitting that Bolivia is a sovereign State, Plaintiff has failed to identify -- in either its Complaint or any of its other submissions in this case -- any exception that would strip Bolivia of its immunity under §1604.  Compl. ¶6.  Plaintiff has also failed to identify any exception to sovereign immunity that would confer subject matter and personal jurisdiction in this case as to Entel, an agency or instrumentality of Bolivia that is expressly treated as a "foreign state"[1] under the FSIA.  It does not matter that the Complaint is styled as one for "attachment in aid of international arbitration," which implicates the independent immunity accorded to Bolivia's and Entel's *assets* under §1609.  The legislative history of the FSIA makes clear that the Act and the jurisdictional standards apply to *all* proceedings against foreign states and their agencies and instrumentalities in the U.S. courts.  *See* H.R.Rep. No. 94-1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610 ("FSIA Legislative History") ("This bill, entitled the 'Foreign Sovereign Immunities Act of 1976,' sets forth *the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts in the United States*....Aside from setting forth comprehensive rules governing sovereign immunity, the bill prescribes:  the jurisdiction of U.S. district courts in cases involving foreign states....") (emphasis added).

---

[1] Section 1603(a) of the FSIA defines a "foreign state" to include "an agency or instrumentality of the foreign state."  Entel's status as an agency or instrumentality of Bolivia has already been demonstrated in the memoranda and evidence submitted by Bolivia and Entel to date, and they are only replicated here as necessary to frame the Court's adjudication of the issue.  *See* Section B(1) of this Memorandum, pp. 6-16; Bolivia's Opposition, pp. 13-14; Bolivia's Sur-Reply, pp. 3-10; Entel's Opposition, pp 4-13; Entel's Sur-Reply, pp. 6-11; Entel's Memorandum in Support of Motion to Dismiss, pp. 5-6.

None of the exceptions to sovereign immunity set forth in §§1605 to 1607 is, or could be, applicable to the Complaint. Plaintiff has failed entirely to meet its burden to identify an applicable exception. Indeed, it has not even tried to do so. On this basis alone, this Court is without subject matter jurisdiction over the Complaint and without personal jurisdiction over Bolivia or Entel. The Complaint must be dismissed.

**B.    BOLIVIA'S AND ENTEL'S ASSETS ARE IMMUNE FROM PREJUDGMENT ATTACHMENT UNDER THE FSIA BECAUSE NEITHER DEFENDANT HAS EVER EXPLICITLY WAIVED ITS IMMUNITY FROM PREJUDGMENT ATTACHMENT.**

**1.    The assets of both Bolivia and Entel are immune from prejudgment attachment under §1609 of the FSIA, and neither has waived that immunity.**

Even if subject matter jurisdiction over Bolivia and Entel existed under one of the exceptions to sovereign immunity set forth in §§1605 through 1607 of the FSIA -- which it does not -- there would still be no basis for the prejudgment attachment of Bolivia's or Entel's assets, since this Court must also have subject matter jurisdiction under §§1609 through 1611 in order to grant the prejudgment attachment of those assets.[2] Section 1609 states the fundamental rule that the property of foreign states, as well as their agencies and instrumentalities, is immune from attachment, except as otherwise specifically provided in §§1610 and 1611, or in existing international agreements to which the United States is a party. Specifically, §1609 provides:

---

[2] *Letelier v. Republic of Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984) (it was not Congress's purpose to lift execution immunity wholly and completely, even where subject matter jurisdiction over the foreign state exists; an exception to immunity of the foreign state's *property* must exist under §1610 before an execution may be properly issued) (emphasis added); *Liberian Eastern Timber Corp. v. Government of Republic of Liberia*, 650 F.Supp. 73, 76-78 (S.D.N.Y. 1986) (separately analyzing whether the Court had jurisdiction under §1605(a) of the FSIA to recognize and enforce an ICSID award rendered against Liberia and whether it had jurisdiction under §§1609 and 1610 to issue executions based upon a judgment recognizing the award; although jurisdiction existed under §1605(a)(6), the motion to vacate the executions was granted because there was no exception to immunity under §1610 of the FSIA); *LNC Invs. Inc. v. Republic of Nicaragua*, 115 F.Supp.2d 358, 361-363 (S.D.N.Y. 2000), *aff'd sub nom. LNC Invs. Inc. v. Banco Central de Nicaragua*, 228 F.3d 423 (2d Cir. 2000) (Nicaragua's subject matter jurisdictional waiver in loan agreement did not operate as a waiver of the immunity of its central bank's property from execution under §§1609 and 1611).

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

*See also Em Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007) ("The FSIA protects foreign states' property from attachment and execution, subject to existing international obligations, except under the conditions set forth in two other provisions of the FSIA, 28 U.S.C. §§1610 and 1611").

Section 1610(d), which establishes the conditions under which the property of a foreign state, or that of its agencies and instrumentalities, may be attached *prior to* judgment, is the provision that applies here.[3]  That section provides:

> The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if –
>
> > (1)    *the foreign state has explicitly waived its immunity from attachment prior to judgment*, notwithstanding any withdrawal of the waiver the foreign sovereign may purport to effect except in accordance with the terms of the waiver, and
> >
> > (2)    the purpose of the attachment is to secure satisfaction of judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.[4]

Section 1610(d) thus establishes that the property of a foreign state may be attached prior to judgment, but only when the state has "explicitly waived its immunity from attachment

---

[3] Sections 1610(a) through (c) apply to post-judgment attachment, that is, attachment of property *after* a final judgment or arbitral award has been issued. Section 1611 sets forth the special rules that are applicable only to the property of a foreign state's central bank, monetary authority or armed forces, and none of these institutions is involved in the present case. Section 1610(d) is the only provision in the FSIA that addresses prejudgment attachment, setting forth the conditions in which the immunity from attachment prior to judgment provided by §1609 is not available.

[4] Emphasis added.

prior to judgment." The Second Circuit has repeatedly upheld this principle, ruling that the assets of a foreign state may not be subjected to prejudgment attachment absent the State's explicit waiver of its immunity from attachment prior to judgment. *See, e.g., S&S Machinery Co. v Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983), *cert. denied*, 464 U.S. 850 (1983) ("*S&S Machinery*").

The Court of Appeals has explained that, to be considered "explicit" under §1610(d), the waiver must state in plain and unmistakable language that immunity from prejudgment attachment is waived. *S&S Machinery*, 706 F.2d at 416. In *S&S Machinery* the Second Circuit considered whether Romania had waived the immunity from *prejudgment* attachment of its agencies and instrumentalities by virtue of its acceptance of the following language in a Trade Agreement with the United States:

> They shall not claim or enjoy immunities from suit or execution of judgment or other liability in the territory of the other Party with respect to commercial or financial transactions, except as may be provided in other bilateral agreements.

*S&S Machinery*, 706 F.2d at 417. The Court of Appeals ruled that the waiver of immunity "from suit or execution of judgment or other liability" did not explicitly waive immunity from prejudgment attachment, as required by §1610(d), and thereby vacated the order of prejudgment attachment that had been issued by the District Court. *S&S Machinery*, 706 F.2d at 418.

To the same effect is *O'Connell Machinery Co. v. M.V. Americana*, 734 F.2d 115 (2d Cir. 1984), *cert. denied* 469 U.S. 1086 (1984). In *O'Connell* the Second Circuit held that Italy had not waived immunity from prejudgment attachment despite language in the Italian-U.S. Treaty of Friendship, Commerce and Navigation in which Italy expressly waived immunity "from execution of judgment, or from any other liability." *O'Connell*, 734 F.2d at 117. The Court of Appeals ruled that the language *did not* waive Italy's immunity from prejudgment

- 8 -

attachment, because it did not explicitly state that immunity from *prejudgment* attachment was waived: "Prejudgment attachment is permitted only where the foreign state explicitly has waived its immunity and the purpose of the attachment is not to obtain jurisdiction." *Id.* Neither an implicit waiver, nor a general waiver of immunity from suit, nor even a waiver of immunity from execution of a judgment, will satisfy §1610(d). What must be waived, explicitly and unambiguously, is immunity from *prejudgment* attachment.

Section 1610(d) contrasts sharply with §1610(a), which applies to post-judgment attachments. Unlike §1610(d), §1610(a) recognizes an *implicit* waiver of immunity in the case of *post-judgment* attachments. According to the Second Circuit: "the requirement that the waiver of immunity from prejudgment attachment be *explicitly* made is underscored both by the plain language of §1610(d) and by the contrast between §1610(d) and §1610(a)." *S&S Machinery Co.,* 706 F.2d at 416. Under §1610(a), a foreign state can waive immunity from attachment in execution of a judgment "implicitly as well as explicitly, while the immunity from *prejudgment attachment* can be waived only by unmistakable and plain language." *Id.* at 416 (emphasis in original). In holding that Romania's waiver of immunity "from suit or execution of judgment or other liability" did not constitute the explicit waiver of *prejudgment* attachment required by §1610(d), the Court of Appeals found it "obvious" that "waivers of immunity from suit or from execution of judgment have no bearing upon the question of immunity from prejudgment attachment." *Id.* at 417. The Court further explained that: "it would be improper for a court to subvert [§1610(d)] by substituting a judicially reconstituted gloss on a facially unclear document for an unequivocal waiver by the foreign state." *Id.* at 416.

In the present case, there has been no waiver of immunity from prejudgment attachment of any kind, let alone one that has been expressed in the kind of "unmistakable and plain

language" that the Court of Appeals has said is required by §1610(d). *S&S Machinery Co.,* 706

F.2d at 416. Indeed, Plaintiff has not even alleged an explicit waiver by either Defendant.

Rather, Plaintiff prefers to ignore the issue completely. It chose not even to mention the FSIA in

its Complaint, its motion papers, or its 23-page legal memorandum supporting a confirmation of

the *Ex Parte* Order of Attachment. The Court will undoubtedly draw its own conclusions from

Plaintiff's failure to do so.

In its Reply to Bolivia's and Entel's Oppositions to Plaintiff's Motion to Confirm the *Ex

Parte* Order of Attachment, Plaintiff attempts to rectify its oversight and argues that the

attachment it seeks to confirm is consistent with sovereign immunity principles. But how

Plaintiff does this speaks volumes as to the hollowness of its efforts. Plaintiff does *not* argue that

any statutory exception to sovereign immunity applies in this case – under either §§1605-1607,

relating to subject matter jurisdiction as to Bolivia or Entel, *or* §1610(d), relating to subject

matter jurisdiction over their respective property -- even though the FSIA provides the sole basis

for establishing subject matter jurisdiction over a foreign state, its agencies and instrumentalities,

or their property in the U.S. courts.

Instead, Plaintiff's argument turns entirely on the (erroneous) contention that Entel is not

an agency or instrumentality of Bolivia entitled to immunity. Accordingly, if Plaintiff is wrong

about this threshold fact (and it is), the case is over. No further inquiry is necessary in order to

dismiss the Complaint, which would also result in the denial of Plaintiff's Motion to Confirm

and the dissolution of the *ex parte* attachment.

The sole aim of Plaintiff's sovereign immunity argument is to show that Entel is not an

agency or instrumentality of Bolivia, and therefore not a "foreign state" within the meaning of

the FSIA. The parties agree that to be an agency or instrumentality, an entity must (1) be a

- 10 -

separate legal person; (2) be majority-owned by a foreign state, and (3) not be a citizen of the United States. 28 U.S.C. §1603(b). The only one of these requirements in dispute is the second; that is, whether Entel is majority-owned by Bolivia. Plaintiff attempts to refute the fact that Bolivia now holds a majority interest in Entel by claiming that it still "has possession of the share certificate evidencing its ownership" of 50% of Entel. Reply at 8. According to Plaintiff, this means that "ETI, not Bolivia, owns the stock" (*id*.) because "Bolivian law dictates that ownership of a share certificate is transferred only when … (1) the certificate is endorsed to the transferee; and (2) the endorsement is recorded in the registry of the relevant corporation." *Id*. at 9.

As Bolivia has already demonstrated in both its Opposition and its Sur-Reply, Plaintiff's argument fails, for two reasons. First, its argument flatly contradicts its repeated and binding judicial admissions, in its Complaint and its opening memorandum in support of its Motion to Confirm, that Bolivia fully expropriated (past tense) Plaintiff's equity interest in Entel. *See* Bolivia's Sur-Reply, pp. 3-10 and cases cited therein. Plaintiff's revised position that it retains its interest in Entel cannot be reconciled with these prior statements of fact, all of which constitute judicial admissions that are binding on Plaintiff and take the issue away from the fact-finder. Since Plaintiff previously admitted that "Bolivia has expropriated ETI's equity interest in Entel," its current argument that it, "not Bolivia, owns the stock" can and must be rejected without further inquiry. Accordingly, there can be no dispute either that Entel is entitled to sovereign immunity as an "agency or instrumentality" of Bolivia or that its property is immune from prejudgment attachment under §1609 of the FSIA.

Second, even if Plaintiff were permitted to escape the consequences of its prior representations to the Court, the result would be no different whether the issue were considered

under what Plaintiff calls "federal common law" or Bolivian law. In all cases, Plaintiff's mere retention of its share certificate would be insufficient to establish its actual ownership of the Entel shares.[5]

Turning first to so-called "federal common law," Plaintiff's reliance on *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), is wholly misplaced. *See* Bolivia's Sur-Reply, pp. 6-7. The issue in *Dole* was whether a wholly owned subsidiary of a corporation that was itself majority owned by a foreign State could be deemed an agency or instrumentality of that State. The Supreme Court held that it could not; only corporations *directly held* by the foreign state itself are agencies or instrumentalities. This, of course, has no bearing on the question here; that is, whether the mere possession of a share certificate is determinative of actual ownership.

In fact, the prevailing rule at common law (whether federal or state) is that actual ownership is not determined by the mere fortuity of who happens to have the stock certificate. At best, possession of a stock certificate constitutes *evidence* of ownership, but it is not determinative of the issue. One of Plaintiff's own cases makes the point clearly. In *Smith v. Universal Services Motors*, 147 A. 247, 248 (Del. 1929), the Delaware Court of Chancery stated: "The status of stockholder in a corporation is not dependent on the issuance to him of a certificate of stock. The certificate is only an evidence of ownership -- a muniment of title." *See also Peets v. Manhasset Civil Eng'rs, Inc.*, 68 N.Y.S.2d 338, 344 (Sup. Ct. 1946) ("The certificate of the corporation for the shares, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts").

---

[5] The consequences of Plaintiff's argument bear noting. If Plaintiff is correct, a company could prevent a sovereign nation from consummating its nationalization of an enterprise through the simple expedient of refusing to turn over its share certificate. The absurdity of that position speaks for itself.

Not surprisingly, actual ownership is determined by the underlying reality. *Davis v.*
*Commissioner of Internal Rev.*, 32 B.T.A. 943, 946 (1935) ("A certificate of stock merely
evidences ownership, it is not the stock itself. If certificates representing the shares of stock
distributed to these petitioners had never been delivered to them by the executors, they would
nevertheless have been the owners of interests in the respective corporations from [the date of
the decree]"); *United States v. Merchants Nat'l Trust & Savs. Bank*, 101 F.2d 399, 403 (9th Cir.
1939) (a statutory transfer of stock occurs at the instant the law dictates without regard to the
endorsement and/or surrender of the physical stock certificates); *see* Bolivia's Sur-Reply, pp. 7-
8.

Here, the underlying reality is clear. Pursuant to Supreme Decree No. 29544 dated May
1, 2008, Bolivia immediately acquired title to Entel by operation of law when it nationalized its
stock. Moreover, pursuant to the nationalization decree, Bolivia took physical possession of
Entel's premises and its assets on May 1, 2008, replaced Entel's management and immediately
began operating the company. Compl. ¶¶ 27, 31. As of that date, it owned Entel. In its Reply,
Plaintiff argues that the nationalization decree did not become effective immediately. Reply at
11. This is yet another example of Plaintiff contradicting its prior judicial admissions. In both
its Complaint and its opening memorandum, Plaintiff expressly stated that the nationalization
decree "became immediately effective." Compl. ¶26; Plaintiff's Opening Memorandum at 10.
This admission may not be retracted now. At any rate, the terms of the decree are clear on their
face: "The stock of the capitalizing company ETI Eurotelecom International NV *is hereby*
*nationalized* in its entirety ..." (emphasis added).

The result is the same under Bolivian law. Plaintiff's argument that ownership of
a share of stock is not transferred until the certificate is endorsed confuses two distinct

- 13 -

concepts under Bolivian law: expropriation and nationalization. In cases, as here, of nationalization, the transfer of the nationalized asset is effected pursuant to the terms of the nationalization decree. *See* Declaration of Maria Cecilia Rocabado, ¶14, submitted with Entel's Sur-reply. Moreover, Plaintiff is simply wrong that Bolivian law requires the return of an endorsed share certificate to effect a transfer of the prior holder's interest. In fact, the Bolivian Commercial Code explicitly contemplates the transfer of shares without the return of the prior share certificate. In particular, Article 521 of the Commercial Code provides that, when a transfer occurs by means other than the endorsement of the share certificate, the acquiree not only has all rights as a shareholder but also may demand of the company that it deliver a new certificate to him. *Id.* ¶20.

Even taking the terms of Article 524, on which Plaintiff relies, on its own terms, it is clear that it does not mean that Plaintiff retains ownership of the Entel shares. That provision provides that the transfer is "perfected" by the endorsement but is "effective" vis-à-vis the company and third parties as of registration in the share registry.[6] *Id.* ¶ 23. Because, pursuant to the May 1 nationalization decree, the shares were recorded in ENTEL's Share Registry as being owned by the Ministry of Public Works, Services and Housing as of May 2, 2008, the transfer is clearly effective vis-à-vis the company and third parties.[7]

Finally, even if U.S. and Bolivian law were not so clear, and did not lead to exactly the same conclusion, Plaintiff's case would still fail. Under the Act of State doctrine, Bolivia is the

---

[6] "Perfection" refers to the priority of rights among creditors, not about rights between the prior holder and a new holder. (Rocabado Declaration ¶ 23.)

[7] Bolivia notes that the lone Bolivian law "expert" on whom Plaintiff relies, Mr. Ramiro Guevara, is hardly a neutral or objective witness. He is a well-known opponent of the Bolivian government who frequently works as an advocate on behalf of investors in proceedings against the government. He is, for example, counsel of record for the claimant in *Química Borax v. Bolivia*, ICSID Case No. ARB/06/2, a separate ICSID case registered on February 6, 2006.

sole judge of the validity of its actions. As the Supreme Court stated in *Banco Nacional de Cuba v. Sabbatino*: "The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." 376 U.S. 398, 401 (1964); *see also Banco de España v. Federal Reserve Bank of N.Y.*, 114 F.2d 438, 443 (2d Cir. 1940) (the question of the validity under Spanish law of a secret decree, or of any other step in the purported acquisition of title to the subject silver by the Spanish government, is not open to question by the court; it has been squarely held that the courts of this country will not examine the acts of a foreign sovereign within its own borders, in order to determine whether or not those acts were legal under the municipal law of the foreign state).

The doctrine applies equally here. The validity of Bolivia's acquisition of title to Plaintiff's former equity interest in Entel is not open to question before this Court. By Supreme Decree No. 29544 dated May 1, 2008, Bolivia acquired title to Entel by nationalizing its stock. When it did so, Entel immediately became an agency or instrumentality of Bolivia entitled to sovereign immunity as to the jurisdiction of this Court over it and its property.

Simply put, Bolivia and Entel are both indisputably "foreign states" under the FSIA, and both are therefore entitled to immunity from prejudgment attachment of their property absent their explicit waiver of immunity from such attachment. Since there has been no such waiver, their immunity under §1609 prevails, and this Court has no subject matter jurisdiction to attach their property under the FSIA. As a consequence, the Complaint must be dismissed and the *Ex Parte* Order of Attachment entered on May 5, 2008 must be dissolved.

- 15 -

**2.**    **This Court lacks subject matter jurisdiction to attach Bolivia's interest in Entel's assets, even if Entel and its property do not have sovereign immunity.**

In its Opposition to Plaintiff's Motion to Confirm, Bolivia showed that Entel's accounts may not be attached to secure a potential arbitration award against Bolivia even if one assumes away Entel's sovereign immunity. Entel is not a party to the underlying ICSID arbitration and no claims have been made against it. Bolivia's Opposition at pp. 14-18; Section E below. Plaintiff's Reply understandably chooses not to attack this point frontally. Indeed, it expressly disclaims any veil-piercing theory as a basis for attaching Entel's property to secure claims against Bolivia. Reply at 16. What Plaintiff chooses to argue instead is something it did not argue before: it can attach Entel's assets under CPLR § 6214(a) because Entel owes a tax debt to Bolvia. Unfortunately for Plaintiff, this novel argument does not work either; Bolivia's interest in the Entel accounts has sovereign immunity.

Plaintiff's argument that it may attach Bolivia's money in Entel's accounts relies exclusively on the decision in *Karaha Bodas Co., LLC v. Perusaham Pertambangan Minyak*, 2004 U.S. Dist LEXIS 23870, *4-6 (S.D.N.Y 2004). According to Plaintiff, *Karaha* stands for the proposition that a court may attach Bolivia's sovereign assets in Entel's hands. Reply at 19. In truth, however, *Karaha* stands for no such thing; that case could scarcely be less analogous to this one. *Karaha* was not only a post-judgment attachment case, the judgment at issue was against the state-owned company (which had waived sovereign immunity), not against Indonesia itself. The question was thus whether Indonesia could use its sovereign interests in the judgment debtor's accounts to shield those accounts from execution. The Court found it could not.

The contrast with this case is obvious. Here, the prospective judgment debtor is not the state-owned company but rather the state itself. There has been no waiver of sovereign immunity, either by the state-owned company or the state. The question is thus whether the

- 16 -

prospective judgment debtor, Bolivia, can block the attachment of third-party accounts when the only alleged basis for the attachment is the sovereign's interest in those accounts. The two cases from this District to answer analogous questions, *Liberian Eastern Timber Corp. v. Liberia,* 650 F. Supp. 73 (SDNY 1986) and *LNC Invests., Inc. v. Nicaragua,* 2000 WL 745550 (SDNY 2000), came to exactly the same answer: the sovereign assets were immune from attachment.

In the *Liberia* case, the plaintiff sought to enforce a judgment against Liberia by serving writs of execution on ship-owners located in the United States, as well as Liberian agents appointed to collect tonnage fees, registration fees and other taxes from the ship-owners. 650 F. Supp. at 77. Judge Weinfeld held that such debts "are tax revenues for the benefit of the Government of Liberia," and that Liberia's sovereign immunity from post-judgment attachment prohibited such execution. *Id.* In the *Nicaragua* case, Judge Keenan vacated orders restraining two U.S. airlines from paying taxes owed to Nicaragua because they were "immune from attachment and execution under the FSIA." 2000 WL 745550 at *5. Decisions from outside this Circuit have uniformly reached identical results. *See, e.g., AF-CAP v. Chevron Overseas (Congo) Limited,* 475 F. 3d 1080, 1085 (9th Cir. 2007) (relying on the Republic of Congo's immunity to block execution against tax obligations of Chevron-Texaco to that government); *Walker Intl Holdings Ltd v. Republic of Congo,* 395 F.3d 229, 232 (5th Cir. 2004) (rejecting the argument that because the garnishee's property "is not the property of the ROC ... the FSIA is inapplicable").

Plaintiff acknowledges the *Liberia* and *Nicaragua* cases (albeit in a footnote) and boldly dismisses Judges Weinfeld and Keenan as "simply wrong." Reply at 19 n.7. Yet, Plaintiff does not ever bother to explain itself. Nor does it even mention the numerous out-of-circuit cases cited just above. Instead, it chooses to put its misplaced trust in *Karaha.* Bolivia is confident the

- 17 -

Court will draw its own conclusions from the fact that Plaintiff chooses to rest its argument on one irrelevant case while simultaneously disregarding multiple on-point precedent. Bolivia does note, however, that there is a stark contradiction at the heart of Plaintiff's argument. It is this: from one side of its mouth, Plaintiff argues that the Court may attach Entel's accounts under CPLR § 6214(a) because the money in them really belongs to Bolivia. Yet, from the other side of its mouth, Plaintiff simultaneously argues that the accounts are not shielded by Bolivia's sovereign immunity because the money in them still belongs to Entel. Bolivia lauds the perfect circularity (and the *chutzpah*) of Plaintiff's argument. It does not, however, constitute the basis for a decision in accordance with the law. Bolivia's interest in Entel's accounts is entitled to sovereign immunity, and Bolivia has not waived that immunity, explicitly or otherwise. As a result, the accounts retain their immunity under §1609 of the FSIA, and the Complaint must be dismissed, and the *Ex Parte* Order of Attachment must be dissolved, because this Court lacks subject matter jurisdiction to order their prejudgment attachment.[8]

## C.    THIS COURT LACKS *IN PERSONAM* JURISDICTION OVER BOLIVIA.

Besides Plaintiff's failure to show the applicability of any exception to Bolivia's or Entel's sovereign immunity or their property's immunity from prejudgment attachment, the Complaint must also be dismissed because of Plaintiffs' inability to demonstrate that Bolivia has

---

[8] As already demonstrated by Bolivia in its Opposition and Sur-Reply, Plaintiff's reliance upon the UN Convention on the Recognition and Enforcement of Arbitral Awards ("New York Convention") and the ICSID Convention for jurisdiction in this matter is wholly misplaced, for several reasons. First, it ignores the fact that the FSIA provides the sole basis of subject matter jurisdiction over Bolivia, Entel, and their property in the United States. *See, e.g., Saudi Arabia v. Nelson*, 507 U.S. at 355. Second, there is no provision in the New York Convention that could even arguably constitute a waiver -- explicit or otherwise -- of the immunity of Bolivia's and Entel's property from prejudgment attachment. Finally, far from supporting subject matter jurisdiction in this case, the ICSID Convention affirmatively *prohibits* all judicial proceedings in aid of ICSID arbitrations prior to the issuance of a final arbitral award, except where the parties to the arbitration have agreed that the courts would have a role. There is no document in which Plaintiff and Bolivia, or the Netherlands (on behalf of Netherlands investors, including Plaintiff) and Bolivia, stipulated that judicial proceedings such as the pending case could be brought while an ICSID arbitration is pending. As a result, Plaintiff cannot now, in this case, seek -- and this Court may not grant -- a prejudgment attachment that Plaintiff has already waived by submitting to ICSID arbitration.

the requisite minimum contacts with the forum (in this case, the United States) to render the

exercise of personal jurisdiction consistent with the Due Process Clause of the Constitution. *See*

*Texas Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 313-14 (2d Cir.

1981); *Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 479

F.Supp.2d 376, 383-86 (S.D.N.Y. 2007).  It is Plaintiff's burden to establish Bolivia's

"continuous and systematic" presence in the United States, such that this Court's exercise of

jurisdiction over it would not offend traditional notions of fair play and substantial justice.

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 479 F.Supp.2d

at 379, 383-86.  Plaintiff has not made (and cannot in good faith make) any allegations that

Bolivia is present in the United States, much less continuously and systematically.  The

Complaint thus provides no basis for the Court to exercise personal jurisdiction over Bolivia.

**D.     THIS COURT LACKS PERSONAL JURISDICTION OVER BOLIVIA
       BECAUSE PLAINTIFF HAS FAILED TO SERVE PROCESS AS
       REQUIRED BY §1608(a) OF THE FSIA.**

With the enactment of the FSIA, Congress prescribed the exclusive procedures for

service on a foreign sovereign in both the state and federal courts of the United States.

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) (quoting the

FSIA Legislative History at 24 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6623);

*MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 919 (D.C. Cir. 1987);

*Lucchino v. Foreign Countries of Brazil, South Korea, Spain, Mexico & Argentina*, 631 F.Supp.

821, 824 (E.D. Pa. 1986); *2 Tudor City Place Assocs. v. Libyan Arab Republic Mission to U.N.*,

470 N.Y.S.2d 301, 303 (N.Y. Civ. Ct. 1983).

Plaintiff admits that Bolivia is a foreign sovereign state. *See* Compl. ¶6.  Section 1608(a)

of the FSIA, which governs service upon foreign states, permits service of process on Bolivia by

one of four methods only. *See* 28 U.S.C. §1608(a)(1), (2), (3) and (4).  These methods are not

optional. The courts have been unequivocal that they must be followed strictly, and in the

sequence set forth in §1608(a). *Finamar Investors Inc. v. Republic of Tadjikistan*, 889 F. Supp.

114, 116-118 (S.D.N.Y. 1995) (service of process was defective because it failed to strictly

comply with the methods prescribed by §1608(a); actual notice of the complaint is irrelevant in

the context of a foreign state); *Gray v. Permanent Mission of People's Republic of Congo to*

*United Nations*, 443 F.Supp. 816, 821 (S.D.N.Y.) (holding that deviation from the requirements

of §1608(a) are impermissible), *aff'd*, 580 F.2d 1044 (2d Cir. 1978); *Transaero*, 30 F.3d at 153-

54 (holding that strict adherence to the terms of §1608(a) is required); *Trans Commodities, Inc.*

*v. Kazakstan Trading House, S.A.*, No. 96 CIV. 9782 (BSJ), 1997 WL 811474, at *4 & n.3

(S.D.N.Y. 1997) (service upon foreign sovereign must be effectuated via rigid adherence to

§1608(a)'s literal requirements; whether foreign sovereign received actual notice is irrelevant;

New York state court default judgment against Kazakstan vacated due to plaintiff's failure to

comply strictly with §1608(a) in original action).

     As required by §1608(a)(2), Plaintiff should have served the Complaint via the Inter-

American Convention on Letters Rogatory ("Inter-American Convention"), to which the United

States and Bolivia are parties and which is the "applicable international convention on service of

judicial documents" governing the service of process between the two countries. Failing

successful service via the Inter-American Convention, Plaintiff should have sent a copy of the

Complaint, plus the summons, a notice of suit and a translation of each of those documents into

the Spanish language, to the Minister of Foreign Relations of Bolivia. The service should have

been sent by the Clerk of the Court, and delivery should have been confirmed with a signed

receipt from an appropriate receiving official. *See* §1608(a)(3). Plaintiff failed to fulfill the

requirements of these or any other method of service set forth in the FSIA – the only ones available to it.

Instead of complying with the service methods mandated by §1608(a), Plaintiffs filed with this Court a return of service on May 12, 2008 purporting to have served Bolivia via Federal Express, sent by an attorney at the law firm representing Plaintiff to His Excellency Gustavo Guzman, the Bolivian Ambassador to the United States in Washington, D.C., and to His Excellency David Choquehuanca Cespedes, the Bolivian Minister of Foreign Relations and Culture in La Paz, Bolivia.   Neither of these transmissions meet the mandatory requirements for service under §1608(a).

First, Congress, in enacting the FSIA, and the courts of this and the other circuits have universally rejected service upon an embassy or consulate, holding that it is improper service upon a foreign state under §1608(a) of the FSIA. *Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 253 (7th Cir. 1983) (quoting the FSIA Legislative History at 26, *as reprinted in* 1976 U.S.C.C.A.N. at 6625) (The FSIA Legislative History makes clear that service upon Nicaragua's Ambassador to the United States is not a permissible construction of section 1608(a)). *See also Transaero*, 30 F.3d at 153-154 (holding that strict adherence to §1608(a) is required and that service on the Bolivian Ambassador and Consul General in Washington, D.C. was improper); *40 D 6262 Realty Corp.*, 447 F.Supp. at 711-712 (service on Permanent Mission of United Arab Emirates in New York was not permissible under §1608(a)); *Liu v. Naomi*, No. 99-7544, 2000 WL 339364, at *1 (2d Cir. Mar. 29, 2000) (personal service upon Consul General of Japan was not effective service of process under §1608(a)).  Second, service upon the Bolivian Minister of Foreign Relations, by the Plaintiff and not by the Clerk of the Court and

without a translation of the Summons, the Complaint and a Notice of Suit into the Spanish language, fails even to meet the plain language of §1608(a)(3).

Plaintiff has had ample opportunity to effect service on Bolivia under §1608(a)(2) or (3), but it has not even attempted to do so. In the absence of proper service under §1608(a), this Court lacks personal jurisdiction over Bolivia. Because Plaintiff has failed to serve Bolivia as required under the FSIA, there is no subject matter or personal jurisdiction as to Bolivia. The Complaint must therefore be dismissed. *See Alberti*, 705 F.2d at 253, 256-57 (affirming dismissal because it would be "a waste of judicial resources to allow plaintiffs to go through the motions of service if the suit will be later dismissed on some other ground"); *see also Bybee v. Oper der Standt Bonn*, 899 F.Supp. 1217, 1222 (S.D.N.Y 1995) (same).[9]

**E.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE PROPERTY OF ENTEL MAY NOT BE ATTACHED TO SECURE A POSSIBLE ARBITRAL AWARD AGAINST BOLIVIA.**

Independent of the fact that neither Bolivia nor Entel has explicitly waived the immunity of its property from prejudgment attachment, *Entel's* property cannot be attached for the purpose of securing satisfaction of a possible arbitral award *against Bolivia*, which – Plaintiff acknowledges – is the only party to the ICSID proceeding upon which it relies for an order of prejudgment attachment in this proceeding. Compl., ¶¶2, 23; Pl. Mem., pp. 2, 9. As a separate legal entity, Entel is not and cannot be liable for an arbitral award, or a judgment on an arbitral

---

[9] Plaintiff may be expected to argue that its service of the Summons and Complaint upon the Bolivian Ambassador to the United States and the Bolivian Minister of Foreign Relations by Federal Express courier service comported with the instructions of Judge Chin on page 3 of the *Ex Parte* Order of Attachment. However, with all due respect to Judge Chin, variances to the strict requirements of service of a complaint upon a foreign state in accordance with §1608(a) of the FSIA are not permitted. Plaintiff was required to serve the Complaint upon Bolivia as required by §1608(a).

award, rendered against Bolivia, and its assets cannot be attached to secure payment of a future

ICSID award against Bolivia.

In its Opposition, Bolivia fully briefed why Entel's assets cannot be attached to secure

claims against Bolivia, and it sees no need to burden the Court with repeating those arguments

here. *See* Bolivia's Opposition, pp. 14-18. Bolivia relies upon its previous submissions on this

issue, and notes that, in its Reply, Plaintiff expressly abjures any veil-piercing argument as a

basis for attaching Entel's property to secure payment of a future ICSID award against Bolivia.

However, Plaintiff has taken no steps to amend its Complaint to reflect its new -- but equally

unavailing -- theory that Entel's property is attachable because it owes a tax debt to Bolivia. As

a result, the Complaint fails to state a claim upon which relief can be granted, and it must be

dismissed and the *Ex Parte* Order of Attachment issued on the basis of the Complaint must be

dissolved.

### III.    CONCLUSION

For all the foregoing reasons, together with those stated in Bolivia's Opposition and Sur-

Reply and in Defendant Entel's submissions, Plaintiff's Complaint for Attachment in Aid of

International Arbitration must be dismissed, with prejudice, and the attachments of Entel's bank

accounts dissolved forthwith. In addition, as set forth in Bolivia's previous submissions,

Plaintiff should be required to pay the costs and damages, including attorneys' fees, incurred in

opposing the Complaint and Plaintiff's Motion to Confirm the *Ex Parte* Order of Attachment.

Respectfully submitted,

FOLEY HOAG LLP

By: _Ronald E. M. Goodman_
Ronald E.M. Goodman (RG 6698)
Paul S. Reichler
Janis H. Brennan
1875 K Street NW
Washington, D.C.  20006
Telephone:  202-223-1200
Facsimile:  202-785-6687

*Counsel for Defendant the Republic of Bolivia*

Date:  July 11, 2008

- 24 -