Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile:  (212) 506-5151
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**E.T.I. EURO TELECOM INTERNATIONAL N.V.,**

Plaintiff,

-against-

**REPUBLIC OF BOLIVIA and
EMPRESA NACIONAL DE
TELECOMUNICACIONES ENTEL S.A.,**

Defendants.

---

08-CV-4247 (LTS)

**ORAL ARGUMENT AND
EVIDENTIARY HEARING
REQUESTED**

**SUR-SUR REPLY MEMORANDUM OF E.T.I. EURO
TELECOM INTERNATIONAL N.V. IN SUPPORT OF
ITS MOTION TO CONFIRM ORDER OF ATTACHMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 3

I.    BOLIVIA DOES NOT OWN ETI'S SHARES OF ENTEL STOCK ............... 3

II.   ETI PROPERLY ATTACHED ENTEL'S FUNDS MAINTAINED IN NEW
      YORK BANK ACCOUNTS ........................................................................ 9

III.  BOLIVIA AND ENTEL ARE NOT ENTITLED TO ASSERT ICSID'S
      EXCLUSIVITY PROVISIONS ................................................................... 14

IV.   THE COURT HAS JURISDICTION ........................................................... 17

V.    DEFENDANTS LACK STANDING ............................................................ 19

CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

### CASE LAW

ABKCO Indus., Inc. v. Apple Films, Inc.,
    39 N.Y.2d 670 (1976) ....................................................................................................11

Abrams v. Societe Nationale Des Chemins De Fer Francais,
    389 F.3d 61 (2d Cir. 2004)..............................................................................................6

Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.,
    475 F.3d 1080 (9th Cir. 2007) .......................................................................................14

Af-Cap Inc. v. Republic of Congo,
    383 F.3d 361 (5th Cir. 2004) .........................................................................................14

Af-Cap, Inc. v. Republic of Congo,
    462 F.3d 417 (5th Cir. 2006) .........................................................................................10

Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.,
    183 F.3d 1277 (11th Cir. 1999) .....................................................................................14

Alfred Dunhill of London, Inc. v. Republic of Cuba,
    425 U.S. 682 (1976)......................................................................................................12

Banco Nacional de Cuba v. Sabbatino,
    376 U.S. 398 (1964)........................................................................................................7

Bandes v. Harlow & Jones, Inc.,
    852 F.2d 661 (2d Cir. 1988)..........................................................................1, 9, 19, 20

Bankwest, N.A. v. Williams,
    347 N.W.2d 163 (S.D. 1984) ..........................................................................................5

Bates v. United Shoe Machinery Co.,
    216 F.140 (2d Cir. 1914)................................................................................................7

Borden, Inc. v. Meiji Milk Prods. Co.,
    919 F.2d 822 (2d Cir. 1990)..........................................................................................17

Compania de Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela,
    No. 07 Civ. 3179 (NRB), 2008 WL 1991105 (S.D.N.Y. Apr. 30, 2008) ....................3

Compagnie Noga d'Importation et d'Exportacion S.A. v. Russian Fed'n,
    361 F.3d 676 (2d Cir. 2004)............................................................................................4

Davis v. Commissioner,
    32 B.T.A. 943 (1935)..................................................................................................6

Delaware v. New York,
    507 U.S. 490 (1993)...............................................................................................12

Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003)............................................................................................4, 6

Heckler v. Community Health Servs.,
    467 U.S. 51 (1984)................................................................................................17

Hibbs v. Winn,
    542 U.S. 88 (2004)................................................................................................11

Horn v. Flora Mir Candy Corp.,
    No. 68-Civ-3656, 1973 WL 428 (S.D.N.Y. Sep. 24, 1973) .......................................7

Jones v. Jones,
    242 F. Supp. 979 (S.D.N.Y. 1965) ........................................................................10

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, M-18-
    302 (TPG),  2004 U.S. Dist. LEXIS 23870 (S.D.N.Y. Oct. 6, 2004), aff'd, 2006 U.S.
    App. LEXIS 5932 (2d Cir. Mar. 9, 2006), cert. denied, 127 S. Ct. 129 (2006)................13, 14

Kosakow v. New Rochelle Radiology Assocs.,
    274 F.3d 706 (2d Cir. 2001)..............................................................................16, 17

LNC Investments LLC v. Republic Nicaragua,
    396 F.3d 342 (3d Cir. 2005)..................................................................................14

LNC Investments, Inc. v. Nicaragua,
    No. 96 Civ. 6360, 2000 WL  745550 (S.D.N.Y. June 8, 2000)................................13

Liberian Eastern Timber Corp. v. Government of Republic of Liberia,
    650 F. Supp. 73 (S.D.N.Y. 1986), aff'd, 854 F.2d 1314 (2d Cir. 1987) ..................13

Menendez v. Saks & Co.,
    485 F.2d 1355 (2d Cir. 1973)................................................................................12

Peets v. Manhasset Civil Engineers, Inc.,
    68 N.Y.S.2d 338 (Sup. Ct. Nassau Cty. 1946)........................................................6

Republic of Iraq v. First National City Bank,
    353 F.2d 47 (2d Cir. 1965), cert. denied, 382 U.S. 1027 (1966) ...........................8, 9

Rosner v. Bank of China,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007)..................................................................3

S.E.C. v. John E. Samuel & Co.,
No. 72 Civ. 505, 1973 WL 361 (S.D.N.Y. January 2, 1973)............................................5

Shaffer v. Heitner,
    433 U.S. 186 (1977)....................................................................................18

Smith v. Universal Service Motors Co.,
147 A. 247 (Del. 1929) .................................................................................4

Texas v. New Jersey,
    379 U.S. 674 (1965)....................................................................................12

United Bank, Ltd. v. Cosmic International, Inc.,
    542 F.2d 868 (2d Cir. 1976)............................................................................8

United States v. Merchants Nat'l Trust & Sav. Bank,
    101 F.2d 399 (9th Cir. 1939) ..........................................................................6

Venconsul N.V. v. Tim Int'l N.V.,
No. 03 Civ. 5387 (LTS) (MHD), 2003 WL 21804833 (S.D.N.Y. Aug. 6, 2003) .........................17

W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,
    493 U.S. 400 (1990)....................................................................................8

Walker Int'l Holdings v. Congo,
    395 F.3d 229 (5th Cir. 2004) .........................................................................14

## STATUTES

C.P.L.R. § 5201.........................................................................................2

C.P.L.R. § 5201(a)..............................................................................3, 10, 11

C.P.L.R. § 5201(b)...................................................................................11

C.P.L.R. § 6202................................................................................2, 10, 11

C.P.L.R. § 6214(a)...................................................................................11

C.P.L.R. § 7502(c)..............................................................................18, 19

U.C.C. § 1-201(14) ....................................................................................5

U.C.C. § 8-104(a)(1) .................................................................................................5

U.C.C. § 8-301(a) .....................................................................................................5

22 U.S.C. § 1650a ...................................................................................................18

22 USC § 2370 ..........................................................................................................7

28 U.S.C. § 1603(b)(2) .............................................................................................4

28 U.S.C. § 1609 ...............................................................................................11, 12

## ADDITIONAL AUTHORITIES

28 Egon Guttman, <u>Modern Securities Transfers</u> § 6:2 (2007) ..............................5

I.C.S.I.D. Arbitration Rule 39(5) ............................................................................16

Restatement of the Law (Second) of Torts § 894 ..................................................17

David D. Siegel, <u>New York Practice</u> § 104 at 185-87 (4th ed. 2005) ..............18, 19

11 Weinstein, Korn & Miller, <u>N.Y. Civil Practice</u> ¶ 5201.01 (2008)................11, 19

Plaintiff E.T.I. Euro Telecom International N.V. ("ETI") respectfully submits this sur-sur-reply memorandum in further support of its motion to confirm the order of attachment entered by the Court on May 5, 2008 (the "May 5 Order") attaching certain assets of Empresa Nacional de Telecomunicaciones Entel S.A. ("Entel") found within the Southern District of New York.

## PRELIMINARY STATEMENT

Bolivia has expropriated ETI's investment in Entel, worth hundreds of millions of dollars, without paying anything for it. Indeed, even though the sixty-day period that Bolivia granted itself in its expropriation decree to value ETI's interest in Entel has passed, Bolivia still has not made any payment, or even communicated to ETI what it believes ETI's shareholding is worth.[1]

If the attached funds are released, ETI's anticipated ICSID award against Bolivia will be rendered ineffectual because there are no other assets to recover against. In fact, one of the very first acts that the government-appointed "intervenor" took was to try to gain control over the New York funds. (Declaration of Fabio Incutti, executed on May 5, 2008, ¶ 2). Nonetheless, Bolivia and Entel ask the Court to vacate the attachment and thereby leave ETI without any remedy for Bolivia's egregious breach of its international obligations. The Court should not permit its processes to be used in that way. See Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 667 (2d Cir. 1988) ("Without just compensation, such a taking is '"shocking to our sense of justice,"' and we need not enforce it...") (citations omitted).

Bolivia also artfully dodges the question whether it will participate in the ICSID arbitration, stating that it "has made no such decision," even as it seeks to invoke ICSID's

---

[1] Rather than disputing this or any other of the facts regarding its expropriation of ETI's interest in Entel, defendants submit "evidentiary objections" by which they apparently seek to disclaim the statements made to the Bolivian press by several high-ranking members of the Bolivian government. Even if these objections had any significance at this state of the proceeding, it would only be to emphasize the need for an evidentiary hearing in the event that the Court has any doubt that ETI has made the requisite showing.

exclusivity provisions. (Bolivia's Sur-Reply at pp. 13-14).[2] Bolivia is very careful <u>not</u> to say that it actually intends to participate in the ICSID arbitration, which it has, to date, done everything in its power to derail. Bolivia's semantic arguments cannot defeat ETI's showing that Bolivia, and thus Entel, has not only waived the right to rely on the ICSID exclusivity provisions, but that they are estopped from doing so. The Court should, moreover, reject Entel's highly misleading assertion that ETI was somehow responsible for delaying the ICSID arbitration. ETI actively sought to have an ICSID tribunal appointed, and promptly took all steps available under ICSID's procedures to bring that about. Only Bolivia's delaying tactics prevented this from happening, making it impossible for ETI to have a tribunal constituted before the nationalization decree was proclaimed.

<u>First</u>, it is undisputed that ETI still holds the share certificate evidencing its 50% share ownership in Entel, and Defendants fail to meet their burden to demonstrate that the shares have been transferred. Bolivia's Supreme Decree No. 29544 (the "Nationalization Decree") could not be more clear that the stock "<u>shall be</u> transferred," <u>i.e.</u>, that the Decree alone did not accomplish the transfer. The requisite steps to effect that transfer have never been made as a matter of either Bolivian law or federal common law. Thus, ETI still owns the shares, so that Entel is not an "agency or instrumentality" of Bolivia, and the Foreign Sovereign Immunities Act (the "FSIA") has no application in this proceeding.

<u>Second</u>, CPLR §§ 5201 and 6202 provide that a debt due to a judgment debtor from a third party is subject to attachment. Bolivia and Entel try to involve the FSIA through the back door, claiming that the tax debt that Entel owes Bolivia is Bolivia's property, and therefore immune from attachment. This argument, however, is flatly contradicted by Bolivia's admission, in its opposition memorandum, that "the four bank accounts that were attached pursuant to the <u>ex parte</u> Order of May 5th belong to Entel, not to Bolivia." (Bolivia's Opposition Memo. at p. 15; <u>see generally id.</u> at pp. 14-18; Entel's Opposition Memo. at pp. 25, 28). In any

---

[2] <u>Compare</u> July 14, 2008 Statement by Bolivian Nationalization Minister Hector Arce (Fourth Declaration of Robert Sills, executed on July 14, 2008, Exh. 3 ("Fourth Sills Decl.")).

event, Defendants' strained argument that Bolivia owns the assets that ETI seeks to attach relies on inapposite authorities, none of which applies the operative CPLR provisions or analyzes the question whether funds owed but not yet paid to a foreign state constitute property of the foreign state for purposes of the FSIA. They do not. Accordingly, while ETI properly attached these funds pursuant to CPLR § 5201(a), Bolivia's sovereign immunity cannot be extended to reach them.

## ARGUMENT

### I.    BOLIVIA DOES NOT OWN ETI'S SHARES OF ENTEL STOCK

It is undisputed that ETI holds a share certificate reflecting that it owns 50% of Entel's stock. As ETI demonstrated in its Reply, this fact alone demonstrates that ETI continues to own those shares as a matter of both Bolivian law and federal common law. (ETI's Reply at pp. 9-11). Even if ownership of the stock certificate were not enough, moreover, Defendants have failed to meet their burden to demonstrate that the shares were transferred. See, e.g., Compania de Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela, No. 07 Civ. 3179 (NRB), 2008 WL 1991105, at *4 (S.D.N.Y. Apr. 30, 2008) ("[T]he ultimate burden of persuasion remains with the alleged foreign sovereign."); Rosner v. Bank of China, 528 F. Supp. 2d 419, 423-24 (S.D.N.Y. 2007) (same). Thus, Entel is not an "agency or instrumentality" of Bolivia, and its assets are not shielded by Bolivia's sovereign immunity.[3]

A. **Bolivia's Effort To Transfer The Shares Was Not Effective**. Despite Defendants' efforts to reshape the facts, the Nationalization Decree did not, by its own terms, transfer the stock. The Decree was immediately effective upon its public proclamation. What it states, however, is not that the shares "are transferred," but instead that they "shall be" transferred. (Declaration of Franco Bertone, executed on May 4, 2008, Exh. 6). The only question, then, is

---

[3] Entel's repetition of its additional arguments – which already have been fully briefed – that Bolivia owns a majority "other ownership interest" in Entel, and that Entel is an "organ" of Bolivia, does not merit any further response.

whether Bolivia has since taken the steps necessary to transfer the shares as a matter of Bolivian law or federal common law. It has not.[4]

Specifically, Defendants point to a letter from Bolivian Minister of Public Works, Services and Housing, Oscar Coca, which requests that "the Office of the Secretary of the Board of Directors . . . record the above-mentioned stock in the Book of Stockholders under the name of the Ministry in my care." (Declaration of Javier Castro, executed on June 1, 2008 (the "Castro Decl."), Exh. E). An entry was then made in Entel's share registry purporting to record such a transfer. (Castro Decl., Exh. F).

Those steps do not demonstrate a transfer of ownership. Indeed, Defendants make no effort to distinguish the numerous authorities cited in ETI's Reply which demonstrate that a mere entry in a company's share registry is ineffective to transfer stock.[5] (ETI's Reply at pp. 9-11). Instead, they raise several arguments designed to distract the Court's attention from the governing law. None of those arguments has merit.

First, Bolivia's effort to distinguish the Supreme Court's mandate that corporate formalities be observed when determining "agency or instrumentality" status under the FSIA is directly contrary to Dole Food Co. v. Patrickson, 538 U.S. 468 (2003). In Dole, the Court analyzed the same provision of the FSIA that is at issue here – 28 U.S.C. § 1603(b)(2) – which requires majority share ownership to establish agency or instrumentality status. 538 U.S. at 477. The Court expressly recognized that "Congress intended statutory coverage to turn on formal corporate ownership." Id. at 474. Defendants' efforts to avoid this directly on-point Supreme

---

[4] Because the answer is the same under both Bolivian law and federal common law, the court need not "cut the Gordian choice-of-law knot" as to which law applies. See Compagnie Noga d'Importation et d'Exportacion S.A. v. Russian Fed'n, 361 F.3d 676, 685 (2d Cir. 2004).

[5] Bolivia does point to language in Smith v. Universal Service Motors Co., 147 A. 247 (Del. 1929), to the effect that ownership of newly issued stock does not strictly require the issuance of a stock certificate. Bolivia ignores, however, the operative language that "[A] certificate of stock, like all muniments of title, is a valuable paper, the possession of which evidence in permanent form the stockholder's ownership . . . ." Id. at 248 (emphasis added).

Court precedent is indicative of their inability to demonstrate that corporate formalities were complied with.

  <u>Second</u>, Entel's effort to obscure Bolivian law on this issue through the declaration of Maria Cecilia Rocabado is unsuccessful. As demonstrated in the Declaration of Ramiro Guevara executed on July 14, 2008 (the "July Guevara Decl."):

- Professor Rocabado misstates (and misquotes) Bolivian law in her effort to show that "nominative shares," such as ETI's shares in Entel, can be transferred by a mere entry in a company's share registry. They cannot, and Bolivia's actions fall far short of what would be required to effectuate a transfer; (July Guevara Decl. ¶¶ 5-6; <u>see also</u> the Declaration of Ramiro Guevara executed on June 23, 2008 ¶¶ 6-10); and

- Professor Rocabado is again wrong when she claims that shares can be "nationalized" under the Bolivian constitution without an advance payment of just compensation. (July Guevara Decl. ¶ 10) (Declaration of Maria Cecilia Rocabado, executed on July 1, 2008 (the "Rocabado Decl.") ¶¶ 3-4). As Mr. Guevara explains, there is no difference between "expropriation" and "nationalization" under Bolivian law. Thus, Defendants' argument fails for the additional reason that the claimed transfer was not complete, as a matter of Bolivian law, absent just compensation.

  <u>Third</u>, Defendants do not cite a single authority that stands for the proposition that a mere entry on a share registry is effective to transfer share ownership. (<u>See</u> ETI's Reply at p. 10). Indeed, the great weight of authority is to the contrary. The rule is that:

> The essential element of a "transfer" of a certificated security is a "delivery" of the certificated security, i.e. a "voluntary transfer of possession ." . . . . Transfer requires not only a physical act of delivery, but also a "volitional act by the transferor which manifests an intent to change ownership of the [security]" or to convey a security interest in the security.

28 E. Guttman, <u>Modern Securities Transfers</u> § 6:2 (2007) (<u>citing</u> U.C.C. §§ 1-201(14), 8-104(a)(1), 8-301(a); <u>S.E.C. v. John E. Samuel & Co.</u>, No. 72 Civ. 505, 1973 WL 361, at *2 (S.D.N.Y. January 2, 1973) ("Nothing less than physical delivery to the purchaser or his agent will complete the exchange of securities and thereby vest title in the purchaser.") (additional citations omitted); <u>Bankwest, N.A. v. Williams</u>, 347 N.W.2d 163, 164 (S.D. 1984) ("Without delivery, the agreement ... could not act to validly transfer ownership of the stock.")). Here

there has been no delivery, and ETI certainly did not intend to deliver its shares to Bolivia. Thus, no transfer has taken place.[6]

The cases cited by Defendants are not to the contrary. In <u>Peets v. Manhasset Civil Engineers, Inc.</u>, 68 N.Y.S.2d 338 (Sup. Ct. Nassau Cty. 1946), although the defendant could not locate the share certificate at issue, the Court nonetheless found that he owned the stock because it was issued in his name and he had not endorsed it to anyone else. 68 N.Y.S.2d at 344. The Court observed, however, that even in those circumstances, the defendant's claim to ownership potentially could be trumped by an ownership claim made by one in physical possession of the certificate. <u>Id.</u> The other two cases cited by Bolivia are both tax rulings that analyze the significance of the timing of stock transfers under the tax code. <u>See generally</u> <u>Davis v. Commissioner</u>, 32 B.T.A. 943 (1935); <u>United States v. Merchants Nat'l Trust & Sav. Bank</u>, 101 F.2d 399 (9th Cir. 1939). They did not involve competing claims to stock ownership, and thus are inapposite.[7]

<u>Fourth</u>, Bolivia's over-reaching judicial estoppel argument is plainly wrong. ETI has consistently taken the position that Bolivia expropriated its interest in Entel by issuing the Nationalization Decree and sending in armed police to take over the company's facilities. As a consequence, ETI no longer enjoys any of the privileges attendant upon its ownership of the

---

[6] Bolivia could not now change this result by seeking a court order directing transfer. <u>Dole</u> held that the question whether a defendant is a foreign state within the meaning of the FSIA is determined on the basis of facts in existence at the time a suit is filed. 538 U.S. at 478-80 (holding that this reading of the FSIA "is consistent with the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought.") (citations and internal quotations omitted); <u>see also</u> <u>Abrams v. Societe Nationale Des Chemins De Fer Francais</u>, 389 F.3d 61, 64 (2d Cir. 2004) (citing <u>Dole's</u> "unequivocal[]" holding that "an entity's status as an instrumentality of a foreign state should be 'determined at the time of the filing of the complaint'").

[7] Moreover, the analysis in <u>Merchants Nat'l Trust & Savings Bank</u> depended on a statute that explicitly provided, under certain circumstances, for the transfer of the ownership of stock "ipso facto and by operation of law and without further transfer, substitution, act or deed . . ." 101 F.2d at 402 (<u>quoting</u> Section 31, California Bank Act). That self-executing statutory language stands in stark contrast to the Nationalization Decree's provision that ETI's shares "shall be" transferred.

Entel stock, including its right to manage the company. None of this means, however, that Bolivia has actually effectuated a transfer of the shares. It has not.

Fifth and finally, Bolivia's reductio ad absurdum is unavailing. It is not ETI's position that it would be impossible for Bolivia to transfer the stock without obtaining the share certificate. (Bolivia Sur-Reply, p.6 n.2). It is certainly the case as a matter of both Bolivian law and federal common law, for instance, that a court of competent jurisdiction can order a stock transfer, and that possession of a share certificate by a recalcitrant party following such an order would not establish ownership. (See July Guevara Decl. ¶ 6); see also Horn v. Flora Mir Candy Corp., No. 68-Civ-3656, 1973 WL 428, at *5 (S.D.N.Y. Sep. 24, 1973) Bates v. United Shoe Machinery Co., 216 F.140, 141 (2d Cir. 1914) ("It has been well-settled law for long that the transferee of shares of stocks may call upon a court of equity in order to get his name registered and a new certificate."). Bolivia, however, has failed to obtain or even to seek such an order, or to take any other step that could effectuate the transfer.

### B. The Act of State Doctrine Does Provide a Basis for Denying Confirmation.

Again evincing a lack of confidence in their own arguments, Defendants invoke the act of state doctrine in an effort to persuade the Court that it is not permitted even to consider the question whether share ownership has been transferred. (Entel's Sur-Reply at pp. 7-9; Bolivia's Sur-Reply at pp. 9-10.). That doctrine does not apply here for two independent reasons, each of which is dispositive of Defendants' arguments.

#### 1. ETI Does Not Challenge The Legality Or Validity Of Bolivia's Actions In This Proceeding.

First, the act of state doctrine applies only where a party challenges the legality or validity of a foreign sovereign's actions. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 417-18 (1964) ("To permit the validity of the acts of one sovereign State to be reexamined and perhaps condemned by the courts of another would very certainly 'imperil the amicable relations between governments and vex the peace of nations.") (citations omitted), amended, 22 U.S.C. §2370 (the "Hickenlooper amendment"). ETI makes no such challenge here; therefore, as recognized by the very authorities that Defendants rely on, the act of state

doctrine does not apply. See W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 405 (1990) ("Nothing in the present suit requires the Court to declare invalid, and thus ineffective as 'a rule of decision for the courts of this country,' the official act of a foreign sovereign." (internal citation omitted)).

Here, Bolivia claims that two of its actions are protected by the act of state doctrine. First, is the Nationalization Decree, stating that ETI's shares in Entel "shall be" transferred. The second is the letter from the Bolivian Ministry of Public Works, Services and Housing, requesting Entel to show Bolivia, rather than ETI, as the owner of the stock in Entel's records. ETI does not, for purposes of this motion, challenge the validity or legality of either of those acts. Rather, even accepting those acts to be valid and effective, as shown above, they simply have not effected a transfer ownership of ETI's shares in Entel. Thus, the act of state doctrine is not implicated.

**2. The Act of State Doctrine Does Not Apply To Assets Found Outside Bolivia's Territorial Boundaries.** The act of state doctrine is inapplicable for the additional reason that the doctrine applies only to property found within the territory of the foreign sovereign. See United Bank, Ltd. v. Cosmic International, Inc., 542 F.2d 868, 872 (2d Cir. 1976) ("[T]he act of state doctrine has territorial limitations . . ."). As the Second Circuit has explained:

> Under the traditional application of the act of state doctrine, the principle of judicial refusal of examination applies only to a taking by a foreign sovereign of property within its own territory; when property confiscated is within the United States at the time of the attempted confiscation, our courts will give effect to acts of state "only if they are consistent with the policy and law of the United States."

Republic of Iraq v. First National City Bank, 353 F.2d 47, 51 (2d Cir. 1965) (original source of quotation omitted), cert. denied, 382 U.S. 1027 (1966). It follows that, because the property at issue in this proceeding consists of funds maintained in New York, the act of state doctrine does not, and can not, apply.

Indeed, the Court's analysis in <u>Republic of Iraq</u> with respect to funds held in a New York bank account is directly analogous to the facts present here. At dispute in <u>Republic of Iraq</u> were monies and shares on deposit with the Irving Trust Company in New York belonging to the former King. <u>Id.</u> at 49. The successor Iraqi government issued an ordinance purporting to confiscate all property of the former royal family, then brought suit in this Court to recover the funds on the basis of that ordinance. <u>Id.</u> at 49-50. The Second Circuit held that the District Court's refusal to apply the act of state doctrine under those circumstances was proper, recognizing that "only a court in the United States could compel the bank to pay the balance in the account . . . The property here at issue thus was within the United States." <u>Id.</u> at 51.[8]

## II.    ETI PROPERLY ATTACHED ENTEL'S FUNDS MAINTAINED IN NEW YORK BANK ACCOUNTS

Having failed to demonstrate that Entel constitutes an "agency or instrumentality" of the Bolivian government, Defendants make a second, contradictory, effort to invoke the FSIA. Their argument, however, defies logic.

Defendants first argue that there is no tax debt due from Entel to Bolivia. They then argue that if there is a debt, Entel's New York funds belong to Bolivia by virtue of the existence of that debt. Defendants are wrong on both counts. First, Bolivia and Entel should not be heard to dispute the existence of the tax debt now that Bolivia has attached Entel's Bolivian accounts, assumed day-to-day control of Entel, and actually paid itself a portion of the debt. Second, the New York funds are Entel's assets maintained in Entel's bank accounts. See Bolivia's Opposition Memo. at p. 14 ("[T]he four attached bank accounts are Entel's assets, titled in

---

[8] Entel argues in a footnote that the act of state doctrine applies in this proceeding because "the property at issue here has its situs in the foreign state: the situs of stock in ENTEL is in Bolivia, where the corporation was organized and is domiciled . . . ." (Entel's Sur-Reply at n.7). This contention is meritless. The property at issue in this proceeding consists of Entel funds maintained in New York bank accounts. See May 5 Order at pp. 1-2. It is the situs of the New York funds, and not the situs of the shares by which Bolivia purported to obtain control and ownership of those funds, that governs this Court's application of the act of state doctrine. See Republic of Iraq, 353 F.2d at 51; see also Bandes, 852 F.2d at 667 (affirming the district court's conclusion that the situs of the funds at issue was the location of the entity holding said funds).

Entel's name and maintained by it for several years, in the regular course of its business.").
While ETI is entitled under the CPLR to attach those funds, and recover against them if it
succeeds in the ICSID arbitration, this does not somehow transform the funds into property of
Bolivia.

A. **There Is An Attachable Debt.** Defendants' contention that there is no debt flies in
the face of the facts. The Third Declaration of Alejandro Salinas, executed on July 1, 2008 (the
"Salinas Decl.") admits that the Bolivian government not only "froze ENTEL's bank accounts in
Bolivia" on May 2 – the day after the Nationalization Decree was issued – but paid itself $1.4
million out of those accounts in partial satisfaction of the $56 million tax obligation (including
interest and penalties) assessed by Bolivia. (Salinas Decl. ¶ 9). While Entel vigorously
contested the tax claim under ETI management, and ETI continues to believe that the tax is
baseless (and indeed, part of Bolivia's campaign to expropriate ETI's interest in Entel without
paying anything for it), neither Bolivia nor Entel can be heard to dispute that the tax debt now
exists. See Jones v. Jones, 242 F. Supp. 979, 982 (S.D.N.Y. 1965) ("Payment by the debtor * * *
is evidence * * * from which an acknowledgment of the residue of the debt may be implied.").

Furthermore, Mr. Salinas's assertions that (1) "Entel continues to contest the validity of
the assessment of taxes, interest and penalties," and (2) Entel faces the potential of double
liability if ETI succeeds in recovering against those assets, cannot be credited. By Bolivia's own
admission, it "indubitably took control of ENTEL immediately upon the decree of
nationalization. . . ." (Salinas Decl. ¶¶ 11, 15; Entel's Sur-Reply at p. 10). Bolivia and Entel
should not now be permitted to use Bolivia's control over Entel to manipulate the facts and
manufacture defenses that do not otherwise exist. See Af-Cap, Inc. v. Republic of Congo, 462
F.3d 417, 425 (5th Cir. 2006) ("[A] court [should] consider whether the use of the property in
question was being manipulated by a sovereign nation to avoid being subject to garnishment
under the FSIA.").

B. **CPLR §§ 6202 and 5201(a) Permit ETI to Attach a Debt Owed to Bolivia, Not
Only Property of Bolivia.** As ETI demonstrated in its Reply, the FSIA's scope is limited to

"the property in the United States of a foreign state." 28 U.S.C. § 1609; (see generally ETI's Reply at pp. 18-20). The CPLR, in contrast, permits attachment not only of the "property" of a prospective judgment debtor, but separately of "any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor. . . ." CPLR § 5201(a); see also CPLR § 6202; see also, e.g., CPLR § 6214(a). Here, ETI has attached funds, maintained by Entel in Entel's New York bank accounts, that are owed to Bolivia, so that the FSIA does not apply because those funds are not the property of Bolivia.

Entel cites Weinstein, Korn and Miller for the proposition that under the CPLR, "debt owed to [a] judgment debtor is property of [the] judgment debtor (2008)." (Entel's Sur-Reply at p. 2, citing 11 Weinstein, Korn & Miller, N.Y. Civil Practice ¶ 5201.01). Entel's contention is simply wrong. Entel refers to a discussion in Weinstein, Korn & Miller about circumstances in which the scope of CPLR § 5201(b) (permitting the attachment of property of a judgment debtor) may be broader than that of § 5201(a) (permitting the attachment of debts due to the judgment debtor). The authority cited in Weinstein, Korn & Miller for this proposition is the New York Court of Appeals' decision in ABKCO Indus., Inc. v. Apple Films, Inc., 39 N.Y.2d 670, 385 N.Y.S.2d 511 (1976). In ABKCO, the Court of Appeals held only that intangible contract rights may constitute property for purposes of CPLR § 5201(b) even if the right to receive payments under the contract is not "past due" or "certain" as would be required for attachment of a debt under § 5201(a).[9] See 39 N.Y.2d 670, 675 (1976). This analysis is irrelevant here because Entel's tax obligation to Bolivia is not a contract right. Indeed, Entel's argument proves too much, because if every debt under CPLR § 5201(a) also constituted property under § 5201(b), then § 5201(b) would be rendered superfluous. See Hibbs v. Winn, 542 U.S. 88, 101 (2004) (applying the "rule against superfluities" whereby "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ...").

---

[9] Here, the fact that Bolivia already has paid itself a portion of the tax debt out of Entel's assets conclusively demonstrates that the CPLR § 5201(a) requirements are satisfied.

**C. Entel's Reliance on Authorities Applying Escheat Principles is Misplaced.** Entel relies on two inapposite Supreme Court opinions for the proposition that "a debt is property of the creditor, not of the debtor." <u>Texas v. New Jersey</u>, 379 U.S. 674, 680 (1965); <u>Delaware v. New York</u>, 507 U.S. 490, 498, 503 (1993). (<u>See</u> <u>generally</u> Entel's Sur-Reply at p. 2). Neither of these cases addresses either (1) New York's statutory scheme for pre-judgment attachment; or (2) what constitutes "property . . . of a foreign state" for purposes of 28 U.S.C. § 1609. To the contrary, as the Second Circuit has recognized, both <u>Texas</u> and <u>Delaware</u> are limited to the narrow question of the situs of abandoned assets for purposes of determining which state has the right to escheat those assets:

> [T]he Supreme Court's concern in those cases was to establish principles of comity which would avoid the odious possibility of double taxation or double liability. In both cases the Court recognized the difficulty of applying to intangible obligations, which "have no actual territorial situs," the general rule permitting states to tax or escheat only that property found within its territory and concluded that for such purposes intangible obligations would be "treated" as if localized at the creditor's domicile. <u>The policy which underlay the Court's situs determination for purposes of enforcing tax or escheat claims has no relevancy or application to claims based upon a foreign government's purported confiscation.</u>

<u>Menendez v. Saks & Co.</u>, 485 F.2d 1355, 1365 (2d Cir. 1973) (<u>reversed on other grounds, sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba</u>, 425 U.S. 682 (1976)) (emphasis added).[10]

Both Bolivia and Entel admitted in their original submissions that "the four bank accounts that were attached pursuant to the <u>Ex Parte</u> Order of May 5th belong to Entel, not to Bolivia." (Bolivia's Opposition Memo. at p. 15; <u>see also</u> Entel's Opposition Memo. at pp. 25,

---

[10] <u>Texas</u> and <u>Delaware</u> are distinguishable, moreover, for the additional reason that the abandoned property at issue in those cases consisted of checks that had been written but not cashed and other assets intended for delivery to an identified party who had not claimed them. Thus, the only step remaining for the creditor was to accept delivery of the asset, and no one else had a claim to ownership of the property. Here, in contrast, the attached funds have neither: (1) been abandoned; nor (2) been designated for payment to a creditor. Instead, they are Entel's assets that Entel maintained in New York bank accounts until they were attached by ETI and deposited with the Clerk of the Court.

28). They were right then, and wrong now that they have taken the opposite position. At bottom, Entel's argument that Bolivia "owns the debt" is irrelevant. Even if in some abstract sense Bolivia owns a tax obligation due from Entel, it does not own the funds that ETI has attached.

**D. None of the Remaining Authorities Cited by Defendants Are on Point.** Both Bolivia and Entel rely heavily on Liberian Eastern Timber Corp. v. Government of Republic of Liberia, 650 F. Supp. 73 (S.D.N.Y. 1986), aff'd, 854 F.2d 1314 (2d Cir. 1987), and LNC Investments, Inc. v. Nicaragua, No. 96 Civ. 6360, 2000 WL 745550 (S.D.N.Y. June 8, 2000), for the proposition that the FSIA's scope can be extended to a debt owed to a foreign state. (Entel's Sur-Reply at p. 3; Bolivia's Sur-Reply at pp. 11-12). While those courts did, without discussion, apply an FSIA analysis in the context of a judgment creditor's effort to recover assets due from a third party to a foreign state, no party raised, and the courts did not consider, whether this was appropriate in light of the distinction that the CPLR draws between property of the judgment debtor and debts due the judgment debtor, and defendants do not claim to the contrary. Thus, Liberian Eastern Timber and LNC Investments do not provide any guidance on this issue.

In contrast, the more recent decision in Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, M-18-302 (TPG), 2004 U.S. Dist. LEXIS 23870 (S.D.N.Y. Oct. 6, 2004), aff'd, 2006 U.S. App. LEXIS 5932 (2d Cir. Mar. 9, 2006), cert. denied, 127 S. Ct. 129 (2006) ("Pertamina") expressly recognized the distinction between property of a foreign state and a debt owed to the foreign state. As the Court explained, amounts due to the government "were not property of the government until they were paid." Id. at *5. Defendants nowhere take issue with this analysis, instead claiming that the posture of that case was somewhat different from this one. The Court's analysis, however, is directly on point. Indeed, even as Entel describes Pertamina, "the issue was whether a judgment against a state owned commercial company that had waived immunity could be executed against assets held in its own name where the non-waiving state claimed that the assets belonged to it." (Entel's Sur-Reply at p. 4). Those assets were subject to execution precisely because they did not belong to the foreign state.

Pertamina, 2004 U.S. Dist. LEXIS 23870, at *5-*6. Just as the Court determined in Pertamina that the assets at issue did not belong to Indonesia simply because they were ultimately due to Indonesia, the funds in Entel's bank accounts do not belong to Bolivia simply because Entel owes a tax debt to Bolivia.[11]

In short, none of the authorities cited by Defendants answers the question whether funds due, but not yet paid, to a foreign state constitute property of that state. They do not, as the Court correctly explained in Pertamina, which states the rule that should be followed here.

## III.    BOLIVIA AND ENTEL ARE NOT ENTITLED TO ASSERT ICSID'S EXCLUSIVITY PROVISIONS

Defendants' continued efforts to invoke the ICSID exclusivity provisions despite Bolivia's boycott of the ICSID proceeding are not persuasive.

**A. Bolivia Has Waived Its Right To Invoke ICSID's Exclusivity Provisions.** As demonstrated in ETI's Reply, Bolivia has waived the right to invoke the ICSID exclusivity provisions. Indeed, on May 2, 2007, Bolivia denounced the ICSID Convention, and has consistently maintained since then that the Convention became ineffective from that point forward. Consistent with that view, Bolivia has refused to participate in the arbitration. (See

---

[11] Defendants' citation to out-of-circuit authorities is equally unavailing. Two of the opinions they cite do not make even oblique reference to the question whether assets owed to a foreign state constitute property of that state, and are thus utterly irrelevant. See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277 (11th Cir. 1999); LNC Investments LLC v. Republic Nicaragua, 396 F.3d 342 (3d Cir. 2005). Two of the other opinions cited by Defendants are equally irrelevant because, unlike here, the party seeking to enforce the judgment at issue took the position that the assets being executed upon belonged to the foreign state that had waived immunity and therefore, as in the two Southern District of New York opinions cited by Defendants, there is no discussion of whether amounts due to the foreign state constitute property of the foreign state. See Af-Cap Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1092-93 (9th Cir. 2007) ("Af-Cap [the party seeking to enforce the judgment at issue] maintains that the obligation of [Chevron] to pay bonuses to the Congo is the Congo's property. . . ."); Af-Cap Inc. v. Republic of Congo, 383 F.3d 361 (5th Cir. 2004). Finally, in Walker Int'l Holdings v. Congo, 395 F.3d 229 (5th Cir. 2004), the funds at issue already had been paid to the Congo, and the third-party debtor posted a surety bond representing the payment amount to support a stay pending appeal. 395 F.3d at 232. Because the funds at issue already had been paid to the Congo, there could be no serious argument that they did not in fact belong to the Congo.

generally ETI's Reply at p. 27). Under those circumstances, Bolivia cannot invoke the ICSID rules that it claims are inapplicable.

Neither Bolivia nor Entel cites a single case to refute ETI's waiver argument. Bolivia's artfully worded "affirmation" that it has not decided to absent itself from the ICSID arbitration, moreover, is meaningless. Bolivia's actions speak louder that its words; it has failed to perform any of its obligations under ICSID procedures. Whether or not Bolivia takes any affirmative action to "absent" itself from the ICSID proceeding is, moreover, irrelevant given that it has never appeared in that proceeding in the first place. Indeed, Bolivia does not offer a single declaration, or any other evidence, to refute the repeated statements by high ranking government officials that Bolivia refuses to participate in the ICSID arbitration. (Reply Declaration of Robert L. Sills, executed on June 23, 2008 ("Sills Reply Decl."), Exhs. 2, 4, 14).

Bolivia's further argument that the ICSID exclusivity provisions are not waivable misses the point, because Bolivia's argument depends on the notion that it has "consented" to the ICSID arbitration. (Bolivia's Sur-Reply at p. 15). According to Bolivia, however, its denunciation of the ICSID Convention demonstrates that it has not given such consent. (Sills Reply Decl. Exh. 2). It cannot now have it both ways, and undo its waiver by disavowing this contention, which lies at the heart of its litigation strategy.[12]

**B. Bolivia And Entel Are Estopped From Asserting The ICSID Exclusivity Provisions.** Defendants are similarly estopped from invoking the ICSID exclusivity provisions. ETI relied on Bolivia's participation in the ICSID proceeding to which it had agreed by treaty. While ETI does not dispute that Bolivia has the right to raise jurisdictional objections before an ICSID arbitral panel, Bolivia's tactical refusal even to participate in the arbitrator selection process, and hence in the formation of a tribunal, has deprived ETI of its right to seek conservatory relief under the ICSID rules. Under these circumstances, Bolivia and Entel are

---

[12] Entel's illogical argument that "Bolivia is entitled to invoke all the rules and protections of ICSID" despite Bolivia's refusal to participate in the ICSID arbitration fails for the same reason. (Entel's Sur-Reply at p. 14).

equitably estopped from raising the ICSID exclusivity provisions. (See ETI's Reply at pp. 24-25). Defendants' responses again lack merit.

First, Entel's argument that ETI, not Entel, is responsible for delaying the constitution of the ICSID tribunal – an argument that even Bolivia does not advance – is, at best, misleading. Entel's claim that ETI could have earlier invoked an ICSID rule under which ICSID may select all three arbitrators ignores the fact that by doing so, ETI would have had to sacrifice the right to appoint its own arbitrator.[13] (See Fourth Sills Decl., ¶ 6). Beginning with its initial filing with ICSID, ETI acted promptly, and repeatedly, to seek Bolivia's agreement to a procedure for arbitrator selection in mistaken reliance on Bolivia's good faith. (Sills Reply Decl. Exh. 7). When Bolivia violated the ICSID rules by failing to respond, Entel asked that ICSID apply its default procedures for selecting a panel. ETI made this request on the first day that it was permitted to do so under ICSID's procedures. (Sills Reply Decl. Exh. 8). Because of Bolivia's stalling tactics, however, ICSID did not confirm that the default procedures would be followed until April 25, 2008. (Sills Reply Decl. Exh. 9). Bolivia issued the Nationalization Decree four business days later, on May 1. Accordingly, ETI had no opportunity even to appoint its own arbitrator, not to mention request that ICSID select Bolivia's arbitrator and a third arbitrator to preside over the tribunal, until it was too late to obtain conservatory relief.[14]

Second, Entel's contention that equitable estoppel is unavailable on the theory that Bolivia made no material misrepresentation to ETI is also wrong. A "material misrepresentation" for estoppel purposes does not require an intent to deceive. Kosakow v. New

---

[13] The right for a party to name an arbitrator is a valuable one, and is the ordinary procedure before ICSID and virtually all other arbitral forums. Bolivia, in effect, argues that ETI should have anticipated Bolivia's refusal to participate in the process to which it bound itself by treaty, and which ETI was pursuing expeditiously, and picked some other mechanism. In any event, there is no basis upon which to conclude that a tribunal would have been seated any more quickly under Entel's hypothetical scenario, especially given Bolivia's efforts to prevent the ICSID case from moving forward.

[14] Entel's contention that ETI could have applied for conservatory relief before the tribunal was constituted is technically correct, but irrelevant. Under ICSID, procedures, only the tribunal can award such relief, and the rule contemplates the prompt constitution of a tribunal. (ICSID Arbitration Rule 39(5)).

Rochelle Radiology Assocs., 274 F.3d 706, 726 (2d Cir. 2001) ("[W]e hold that a party may be estopped where that party makes a definite misrepresentation (or, in the present case, a misrepresentation by silence) and had reason to believe the other party would rely upon it, regardless of whether the person making the representation intended to deceive."); see also Heckler v. Community Health Servs., 467 U.S. 51, 59 (1984); Restatement of the Law (Second) of Torts § 894, Comment b on Subsection (1) ("The rule stated in this subsection is operative although the one making the representation believes that his statement is true."). ETI relied to its detriment on Bolivia's statement in the BIT that it consented to abide by ICSID's rules and procedures. Bolivia and Entel are now estopped from seeking shelter under ICSID's procedures given that Bolivia's statement has been proven false by its refusal to comply with those same procedures.

Third, and finally, ETI relied to its detriment on Bolivia's promise in the BIT to comply with ICSID's procedures. Specifically ETI acted under the reasonable understanding that Bolivia would raise any jurisdictional objections – whether based on its denunciation of the ICSID Convention or otherwise – before the tribunal, once constituted. Instead, Bolivia has hindered the constitution of the tribunal, prejudicing ETI by precluding it from seeking conservatory relief in the ICSID arbitration. Bolivia is, accordingly, estopped from invoking ICSID's exclusivity provisions.

## IV.    THE COURT HAS JURISDICTION

Defendants largely rehash their incorrect arguments that the Court lacks subject matter and personal jurisdiction. ETI will not burden the Court by repeating its demonstration that the Court in fact has jurisdiction, but briefly responds to Defendants' efforts to confuse the issue.

**A. The Court Has Subject Matter Jurisdiction.** Defendants offer no rational explanation why the Second Circuit's decision in Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822 (2d Cir. 1990), and this court's decision in Venconsul N.V. v. Tim Int'l N.V., No. 03 Civ. 5387 (LTS) (MHD), 2003 WL 21804833 (S.D.N.Y. Aug. 06, 2003), fail to establish that the Court has subject matter jurisdiction in this proceeding. In fact, those authorities conclusively

demonstrate that the Court does have jurisdiction for the reasons set forth in ETI's Reply at pages 20-22.

Defendants' only response is that 22 U.S.C. § 1650a somehow deprives the Court of jurisdiction (Entel's Sur-Reply at pp. 14-15; Bolivia's Sur-Reply at p. 13), but that is plainly wrong. As ETI demonstrated in its Reply, the statute provides an independent basis for federal subject matter jurisdiction in proceedings to enforce ICSID awards. (ETI's Reply at pp. 20-22). While the statute carves ICSID awards out from the Federal Arbitration Act's otherwise redundant grant of jurisdiction to enforce arbitral awards, § 1650a by its explicit terms makes clear that it does not deprive the Court of any other jurisdiction available under the Federal Arbitration Act. Nor do Defendants cite any binding, or even persuasive, authority to support their strained argument to the contrary. The fact that 22 U.S.C. § 1650a replaces the jurisdictional basis to enforce arbitral awards under the Federal Arbitration Act has no impact on the scope of the Court's jurisdiction.

**B. Entel's Objection On Personal Jurisdiction Grounds Has Not Become Any Stronger By Its Repetition.** Entel again misstates the law in its misguided effort to establish that this proceeding should be dismissed for lack of personal jurisdiction. Such dismissal is not warranted.

First, Entel's effort to revive its argument based on Shaffer v. Heitner is misplaced. ETI does not seek an attachment "in aid of jurisdiction", as Entel argues.[15] (Entel's Sur-Reply at p. 16). Rather, it seeks attachment to secure at least partial payment of the anticipated ICSID award. As the very practice commentary that Entel cites makes clear, the Court has quasi in rem jurisdiction in such a proceeding, and Shaffer does not change that fact. D. Siegel, New York

---

[15] CPLR § 7502(c)'s prohibition on attachment in aid of jurisdiction is directed to procedures, such as the one that the Supreme Court rejected in Shaffer, where the presence of property in the forum state was used to force a non-resident defendant to defend an action on the merits in the forum state at the risk of forfeiting the property. Shaffer v. Heitner, 433 U.S. 186 (1977). It has no application in enforcement proceedings or proceedings, such as this one, that seek to attach property to secure payment of an anticipated judgment. Cf. Schaffer, 433 U.S. at 210 n. 36.

Practice § 104 at 185-87 (4th ed. 2005) ("<u>Shaffer</u> authorizes <u>quasi in rem</u> jurisdiction when the forum has the requisite minimal contacts in the <u>International Shoe</u> sense."); (<u>see generally</u> ETI's Reply at pp. 29-30). Entel does nothing to refute ETI's showing that Entel has the requisite minimum contacts to justify an exercise of <u>quasi in rem</u> jurisdiction in this proceeding for pre-judgment attachment. (<u>See</u> ETI's Reply at pp. 30-31).

Second, Entel's new argument that ETI is required to demonstrate that the Court has personal jurisdiction over <u>Bolivia</u> is based on a misreading of Weinstein, Korn & Miller's discussion of CPLR § 7502(c). It is clear from the context of that discussion that the use of the word "respondent" refers to the party that is the subject of the provisional relief being requested. Here, that party is Entel. <u>See also, e.g.</u>, 11 Weinstein, Korn & Miller § 5201.04 (2008) ("A debt incurred outside of New York and between parties who are nonresidents of New York is subject to execution under CPLR 5201(a), provided that the judgment creditor can obtain jurisdiction over the <u>garnishee</u> within the State."). As demonstrated above and in ETI's Reply, there is an adequate <u>quasi in rem</u> jurisdictional basis here as to Entel, which is all that is required in light of Entel's contacts with the State of New York.

## V.    <u>DEFENDANTS LACK STANDING</u>

Under <u>Bandes v. Harlow & Jones, Inc.</u>, 852 F.2d 661 (2d Cir. 1988), Defendants lack any property interest in ETI's 50% share of the attached funds. <u>Id.</u> at 663. Despite Defendants' protestations to the contrary, moreover, the Second Circuit expressly recognized in <u>Bandes</u> that a party not entitled to improperly confiscated assets lacks standing to challenge the disposition of those assets:

> Because we have determined that the sum is properly reserved for the minority shareholders, G. Bandes has no claim to that portion of the fund <u>and therefore lacks standing to challenge either the notice provision or the judgment that the unclaimed funds will escheat to the state.</u>

Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 668 (2d Cir. 1988) (emphasis added).  Similarly, Defendants lack standing to challenge the attachment of ETI's allocable share of the funds in Entel's New York bank accounts.

Here, too, the undisputed facts demonstrate that Bolivia has confiscated ETI's interest in Entel without compensation.  Accordingly, putting to one side the lack of merit of Defendants' substantive arguments, they lack standing with respect to ETI's allocable share of the funds at issue because of  Bolivia's unlawful confiscation of ETI's property.

## CONCLUSION

For the above-stated reasons, and those set out in ETI's previous submissions, the Court should grant ETI's motion to confirm the May 5 Order.

Dated: New York, New York
        July 14, 2008                        Respectfully submitted,

                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

                                             By: _____
                                             Robert L. Sills (RS 8896)
                                             Steven J. Fink (SF 3497)
                                             Ryan S. Lester (RL 5603)
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             666 Fifth Avenue
                                             New York, New York 10103
                                             Telephone: (212) 506-5000
                                             Facsimile: (212) 506-5151

                                             Attorneys for Plaintiff E.T.I. Euro Telecom
                                             International N.V.