Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

E.T.I. EURO TELECOM INTERNATIONAL N.V.,

    Plaintiff,

-against-

REPUBLIC OF BOLIVIA and
EMPRESA NACIONAL DE
TELECOMUNICACIONES ENTEL S.A.,

    Defendants.

08-CV-4247 (LTS)

---

**MEMORANDUM OF E.T.I. EURO
TELECOM INTERNATIONAL N.V. IN SUPPORT OF
ITS MOTION FOR RECONSIDERATION AND FOR A STAY**

Plaintiff E.T.I. Euro Telecom International N.V. ("ETI") respectfully submits this memorandum in support of its motion for: (1) reconsideration of the Court's Memorandum Opinion and Order dated July 30, 2008 (the "July 30 Order") and, upon reconsideration, confirmation of the Court's Order entered on May 5, 2008 (the "May 5 Order"); (2) a stay of the July 30 Order pending a determination of ETI's motion for reconsideration;[1] or, in the alternative (3) dismissal of this action to permit ETI to pursue an appeal, together with a stay pending appeal.

## **PRELIMINARY STATEMENT**

By its July 30 Order, the Court denied ETI's motion to confirm the May 5 Order based on its conclusion that "[n]othing [in the record] suggests that [the attached bank accounts] were in any way earmarked, pursuant to any agreement or law, to entitle Bolivia to their contents." (July 30 Order at p. 6). ETI respectfully submits, however, that the Court overlooked Entel's own admission that the attached funds would be used to pay the tax debt that Bolivia has imposed on Entel. Specifically, Entel submitted a declaration of Entel's Finance Manager, Lorena Molina, in which Entel admits:

> [T]he National Tax Authority, which has responsibility for collecting income taxes . . . from companies, has imposed a tax on ENTEL that currently, with penalties and interest, is in excess of $60,000,000. <u>The freezing of these accounts makes it impossible for ENTEL to satisfy these taxes if these taxes are upheld</u>.

(Third Declaration of Lorena Molina ("Third Molina Declaration"), executed on June 1, 2008, ¶ 12 (emphasis added)). It is, moreover, undisputed that the attached accounts are used by Entel to pay taxes. (See id. ¶ 9 ("ENTEL regularly utilized these accounts for the purpose of paying

---

[1] On July 31, 2008, counsel to Entel submitted to the Court a Notice of Settlement and Proposed Order requesting that the Court, on August 6, direct the Clerk to pay to Entel the attached funds that have been deposited with the Clerk. Further to its request for a stay, ETI specifically requests that the Court take no action in respect of this proposed order pending its disposition of this motion and, if the Court adheres to the ruling in its July 30 Order, pending appeal.

dividends and tax payments."); see also Entel's June 11, 2008 Memorandum in opposition to ETI's Motion to confirm ("Entel Opposition Memo.") at p. 38; Reply Declaration of Franco Bertone ("Bertone Reply Declaration"), executed on June 23, 2008, ¶¶ 22, 28). Entel's concession demonstrates that the attached assets in fact were "earmarked" for payment of the tax debt, and that they were, accordingly, properly attached. Accordingly, ETI requests that the Court reconsider its July 30 Order and, on reconsideration, grant ETI's motion to confirm.

ETI further requests that the Court stay its July 30 Order pending a determination of this motion for reconsideration and, if reconsideration is denied, pending appeal. ETI will be irreparably injured absent such a stay. It is undisputed that Bolivia has expropriated ETI's interest in Entel without paying any compensation. While the "Supreme Decree" dated May 1, 2008 by which Bolivia admitted that it was expropriating ETI's interest in Entel stated that Bolivia would value ETI's expropriated equity stake within sixty days, or by July 1, 2008, that date has come and gone with no indication by Bolivia that it intends to pay anything. Indeed, high ranking representatives of the Bolivian Government have repeatedly stated that Bolivia does not intend to pay anything for ETI's equity stake in Entel, which is worth hundreds of millions of dollars. (See, e.g., ETI's Reply Memorandum ("ETI's Reply"), dated June 23, 2008, at pp. 1-2). Furthermore, the record amply demonstrates that if Entel, operating under Bolivia's de facto control, is permitted to move the attached funds out of New York, then there will be no assets for ETI to recover against in the event that it prevails in the pending ICSID arbitration. Bolivia yet again confirmed its refusal to comply with an ICSID award as recently as July 14, 2008, when Bolivia's Minister of Legal Defense for Nationalization, Sr. Hector Arcé, was quoted as stating that Bolivia refuses to participate in the ICSID arbitration and "does not allow [ICSID] to rule

over disputes related to investments." (Bolivia Seizes Funds Moved by Telecom Italia, Reuters, July 14, 2008, Exhibit 3 to the Fourth Declaration of Robert L. Sills executed on July 14, 2008).

In light of Bolivia's refusal to participate in the ICSID proceeding and its successful efforts to delay the constitution of the arbitral tribunal, this proceeding for an attachment presents ETI's only opportunity to secure its ability to enforce an ICSID award. Absent a stay, however, Bolivia and Entel will have the ability to transfer the attached funds out of the Court's jurisdiction. A stay is thus required to avoid the complete frustration of ETI's rights.

Finally, in the alternative, if the Court denies ETI's motion for reconsideration, or, on reconsideration, adheres to its original ruling, ETI requests that the court dismiss this action for the reasons given in its July 30 Order, thus providing ETI the opportunity to appeal.

## ARGUMENT

### I. THE COURT SHOULD RECONSIDER ITS JULY 30 ORDER

"Motions to alter or amend judgments under Rule 59(e) and for reconsideration under Local Civil Rule 6.3 are evaluated under the same standard." Degrafinreid v. Ricks, 452 F.Supp. 2d 328, 331 (S.D.N.Y. 2006). Local Rule 6.3 provides, in pertinent part, that "there shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." "Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions on factual matters that were put before it on the underlying motion." Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 250 (S.D.N.Y. 1999); see also Degrafinreid, 452 F.Supp. 2d at 331.

Here, the Court should grant ETI's motion for reconsideration because it overlooked Entel's admission that the attached funds were in fact "earmarked" to satisfy the tax debt that Bolivia has imposed on Entel. (Third Molina Declaration ¶ 12; see also id. ¶ 9; Declaration of

Franco Bertone ("Bertone Declaration"), executed on May 4, 2008, ¶¶ 22, 28). The Court explained its decision to deny ETI's confirmation motion as follows:

> Plaintiff has failed, however, to provide any explanation as to how Entel's New York bank accounts can themselves constitute "debt" owed to Bolivia. Nothing suggests that they were in any way earmarked, pursuant to any agreement or law, to entitle Bolivia to their contents. Cf. Karaha Bodas Co., LLC v. Pertaminia, 313 F.3d 70, 90-93 (2d Cir. 2002) (relying on Indonesian statutes and other written instruments to determine which portions of bank accounts belonged to or were owed to Indonesia). Plaintiff's own evidence demonstrates that the funds in Entel's bank accounts in New York were used and managed at the discretion of Entel. (See Bertone Decl. ¶¶ 22-30 (describing how Entel uses its New York accounts not only to pay taxes to Bolivia but also to receive revenues, safeguard converted currency, pay suppliers, etc.).) The fact that monies from the New York bank accounts may or may not ultimately be used to pay Entel's tax debt to Bolivia does not automatically render such accounts equivalent to the debt.
>
> ETI has brought an arbitration action against Bolivia, not Entel, and the attached bank accounts in New York undisputedly belong to Entel, not Bolivia. Plaintiff has made no proffer, other than the claim that Entel owes Bolivia $60 million-plus in taxes generally, as to how the monies in Entel's New York bank accounts constitute an attachable debt obligation of Entel to Bolivia. The order of attachment will therefore be vacated.

July 30 Order at pp. 6-7 (footnotes omitted).

The Court's ruling disregarded Entel's express admission that "[t]he freezing of these accounts makes it impossible for Entel to satisfy these taxes. . . ." (Third Molina Declaration ¶ 12). This admission demonstrates that, contrary to the Court's analysis, this is not a case where attachment is inappropriate because the attached funds "may or may not" be used to satisfy a debt. (July 30 Order at p. 7). To the contrary, when Bolivia itself froze Entel's accounts located in Bolivia, it was able to pay itself only approximately $1.4 million in partial satisfaction of the approximately $56 million tax obligation (including interest and penalties). (See Third Declaration of Alejandro Salinas, executed on July 1, 2008, ¶ 9). Thus, the attached funds,

4

which historically had been used to pay taxes, by the Defendants' own admission were the intended source from which the tax debt would be satisfied. (Third Molina Declaration ¶¶ 9, 12; Entel's Opposition Memo. at p. 38; Bertone Reply Declaration ¶¶ 22, 28).

In short, the Court overlooked a controlling fact that goes to the heart of its July 30 Order. Accordingly, the Court should grant ETI's motion for reconsideration. Degrefinreid, 452 F.Supp. 2d at 331; Mino Inv., 194 F.R.D. at 250. On reconsideration, the Court should grant ETI's motion to confirm for all of the reasons set forth in ETI's submissions in support of that motion and for the reasons set forth herein.

## II.   THE COURT SHOULD STAY THE JULY 30 ORDER PENDING ITS DETERMINATION OF ETI'S MOTION FOR RECONSIDERATION

FRCP 62(b)(3) expressly authorizes the Court to grant a stay pending the disposition of a motion, such as ETI's motion for reconsideration, brought pursuant to FRCP 59. A stay is appropriate here because if Entel is permitted to move the attached funds out of the Court's jurisdiction, ETI will be severely prejudiced; there will be no assets available to execute against if it prevails in the ICSID arbitration. This result would be particularly unjust given the undisputed record that: (1) Bolivia has expropriated ETI's interest in Entel; (2) Bolivia has paid nothing, and does not intend to pay anything, for this valuable asset; (3) Bolivia is refusing to honor its obligations in the ICSID proceeding and has successfully delayed constitution of the arbitral tribunal, leaving ETI without any forum to seek a remedy; and (4) absent an attachment, no assets will be available to ETI to satisfy an ICSID award.

Rule 62 permits the Court to grant such a stay "[o]n appropriate terms for the opposing party's security. . . ." Here, the July 30 Order expressly provides that "[t]he Letter of Credit posted by ETI with the Clerk of the Court pursuant to the Ex Parte Order of Attachment shall not . . . be discharged." (July 30 Order at p. 8). Accordingly, security already is in place to protect Entel and Bolivia from any prejudice as the result of a stay.

5

Accordingly, the Court should stay the July 30 Order pending its determination of this motion for reconsideration.

### III. IN THE ALTERNATIVE, THE COURT SHOULD ENTER A FINAL ORDER DISMISSING THIS ACTION AND GRANT ETI A STAY PENDING APPEAL

If the Court denies ETI's motion for reconsideration or, on reconsideration, adheres to its prior ruling, it should at the very least afford ETI the ability to pursue an appeal. This requires both: (1) the entry of a final order dismissing this action; and (2) the entry of a stay pending appeal.

#### A. The Court Should Enter A Final Judgment Dismissing This Action

If the Court adheres to its denial of ETI's motion for attachment, then it will have disposed of the only issue presented in this case. Accordingly, it should enter a final judgment dismissing the action, and thus permit ETI to pursue an appeal.[2]

#### B. The Court Should Grant ETI a Stay Pending Appeal

FRCP 62(c) authorizes the Court to issue a stay pending appeal "on terms for bond or other terms that secure the opposing party's rights."

> The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

---

[2] The dismissal would, of course, be subject to further proceedings on the costs and damages, if any, to be awarded to Bolivia and Entel if ETI ultimately fails to obtain an order confirming the May 5 Order. See, e.g., Correspondent Services Corp. v. J.V.W. Invs., Ltd., 99 Civ. 8934 (RWS), 2003 U.S. Dist. LEXIS 1232, *10-11 (S.D.N.Y. January 31, 2003 ) (stating that both Rule 54(b) and Rule 58 provide sufficient ground on which to enter a final judgment even where a claim of attorneys' fees and expenses is pending; "there is no just reason for delay in the entry of a final judgment on liability, given that the largely ministerial task of determining the amount and reasonableness of attorneys' fees and expenses will not affect that judgment."); see also Wilmington Trust Co. v. Aerovias de Mex., S.A. de C.V., 893 F. Supp. 215, 223 (S.D.N.Y. 1995) (noting that where some -- but fewer than all -- claims in a lawsuit have been fully adjudicated, Rule 54(b) gives the Court discretion to certify a final judgment).

> issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Cooper v. United States Postal Serv., 246 F.R.D. 415, 417 (D. Conn. 2007) (quoting In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170-71 (2d Cir. 2007)). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." Id. at 417-18 (quoting In re World Trade Center, 503 F.3d at 170-71). Here, each of these factors weighs in favor of granting a stay.

First, ETI has made the requisite strong showing that it is likely to succeed on appeal. By Entel's own admission, the attached funds are "earmarked" for payment of the tax debt that Bolivia has imposed on Entel. Indeed, as Ms. Molina – Entel's Finance Manager – has conceded, Entel will use these funds to pay its tax debt in excess of $60 million. (Third Molina Declaration ¶ 12). The fact that the New York funds were to be used to pay this debt is further supported by the undisputed fact that the New York accounts have traditionally been used to pay taxes. (Bertone Declaration ¶¶ 22, 28; Third Molina Declaration ¶ 12; Entel's Opposition Memo. at p. 38). Thus, the record amply supports the conclusion that ETI properly attached these assets.

Second, ETI will be irreparably injured absent a stay. This is true for two reasons. Initially, neither Entel nor Bolivia has disputed anywhere in the voluminous record that absent an attachment, no assets will be available to ETI to satisfy an ICSID award. It is also undisputed that Bolivia has expropriated ETI's interest in Entel without paying any compensation. Thus, absent a stay, the almost certain outcome is that ETI will prevail in the ICSID arbitration, but this victory will be a Pyrrhic one because ETI will have no way to enforce its judgment.

Furthermore, the Court has not resolved the issue whether Bolivia has in fact accomplished a transfer of ETI's shares of Entel stock. It has not. (ETI's Reply at pp. 8-11,

ETI's Sur-Sur Reply Memorandum, dated July 14, 2008, at pp. 3-7). Thus, ETI, as 50% shareholder of Entel, will be irreparably injured if Bolivia is permitted to cause Entel to transfer the attached funds and use them for improper purposes, all without due authorization.

Third, Bolivia and Entel will not be substantially injured by a stay. As ETI already has shown, the attached funds are not the company's day-to-day operating accounts. (Bertone Declaration ¶ 36; Bertone Reply Declaration ¶ 5). Moreover, ETI has already posted a letter of credit, and the Court may, of course, direct such further security as it deems necessary to protect Bolivia and Entel.

Fourth, the public interest supports the entry of a stay. As the Second Circuit recognized in Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 667 (2d Cir. 1988), "[w]ithout just compensation, such a taking is . . . shocking to our sense of justice. . . ." Indeed, New York has a codified "public policy . . . to protect creditors and shareholders against [foreign] confiscatory decrees." Moscow Fire Ins. Co. v. Bank of New York & Trust Co., 161 Misc. 903, 924 (Sup. Ct. N.Y. Cty. 1937) (citing former N.Y. Civ. Prac. Act § 977-b, superseded by N.Y. Business Corporation Law §§ 1202, 1203, 1207 and 1218 (see 7B McKinney's Consolidated Laws of New York Annotated, Civil Practice Law and Rules, CPLR 8001 to End, Table 2(2008))).

In short the record amply supports a stay pending appeal. However, if the Court declines to grant a stay pending appeal, it should grant ETI a brief stay to provide ETI an opportunity to apply to the Second Circuit for a stay pending appeal. See Rodriguez v. DeBuono, 175 F.3d 227, 235-36 (2d Cir. 1999) ("Such brief stays for a matter of days are frequently issued when a district court denies an open-ended stay pending appeal. They give the appellate court an opportunity to decide whether an additional stay and an expedited appeal should be granted.").