Ronald E.M. Goodman (RG 6698)
Paul S. Reichler
Janis H. Brennan
FOLEY HOAG LLP
1875 K Street, NW
Washington, DC 20006-1238
Telephone: (202) 223-1200
Facsimile: 202-785-6687
*Counsel for Defendant the Republic of Bolivia*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E.T.I. Euro Telecom International, N.V.,<br><br>           Plaintiff,<br><br>    v.<br><br>Republic of Bolivia and<br>Empresa Nacional de Telecomunicaciones<br>ENTEL S.A.,<br><br>           Defendants. | CIVIL ACTION NO.<br>08-cv-4247 (LTS/FM) |

**DEFENDANT THE REPUBLIC OF BOLIVIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION AND A STAY**

## TABLE OF CONTENTS

                                                                                                                **Page**

I.     INTRODUCTION ................................................................................................................1

II.    ARGUMENT........................................................................................................................1

        A.     ETI'S MOTION FOR RECONSIDERATION HAS NO MERIT BECAUSE THE COURT DID NOT OVERLOOK ANYTHING. ............................................1

        B.     A STAY OF THE COURT'S VACATUR OF THE ATTACHMENT IS NOT WARRANTED PENDING APPEAL..........................................................5

III.   CONCLUSION ...................................................................................................................9

## I. INTRODUCTION

Defendant the Republic of Bolivia respectfully submits this Opposition to Plaintiff ETI's Motion for Reconsideration and for a Stay. Plaintiff's Motion should be denied.

The portion of Plaintiff's Motion seeking reconsideration of the Court's July 30, 2008 Memorandum Opinion and Order can be disposed of summarily. Contrary to Plaintiff's assertion, the Court did not overlook any controlling factual matter and its Opinion was entirely correct. In particular, ETI's claim that the Court neglected the fact that Defendant Entel used the attached accounts to pay its tax obligations to Bolivia is belied by the express terms of the Opinion where the Court specifically acknowledged Plaintiff's argument that the accounts were used to pay Entel's taxes but correctly found the argument insufficient, as a matter of law, to render Entel's accounts attachable to secure a potential arbitral award against Bolivia.

ETI's request for a stay pending appeal can be denied with equal dispatch. None of the criteria courts consider on stay requests is present here. Plaintiff have no possibility of success on the merits of their appeal to the Second Circuit, the balance of hardships favors Defendants and the public interest strongly disfavors the attachment Plaintiff now seeks to preserve.

## II. ARGUMENT

### A. ETI'S MOTION FOR RECONSIDERATION HAS NO MERIT BECAUSE THE COURT DID NOT OVERLOOK ANYTHING.

ETI brings its Motion pursuant to Local Civil Rule 6.3 governing motions for reconsideration or reargument. *See* Local Civ. R. 6.3. To be entitled to reconsideration, the movant "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Ameritrust Co. Nat'l Assn. v. Dew*, 151 F.R.D. 237, 238 (S.D.N.Y. 1993) (former Rule 3(j)). Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by

the court." *Id.* The decision to grant or deny a motion for reconsideration is committed to "the sound discretion of the district court." *Mina Inv. Holdings v. Lefkowitz*, 184 F.R.D. 245, 250 (S.D.N.Y. 1999).

ETI has not demonstrated that the Court overlooked any factual matter, let alone a controlling one. The Court should therefore deny ETI's Motion and leave its original decision undisturbed. Plaintiff contends that the Court overlooked "Entel's own admission that the attached funds would be used to pay the tax debt that Bolivia has imposed on Entel." (Br. at 1 (citing Third Molina Decl. ).) This argument flies in the face of the express terms of the Court's July 30 Opinion. In fact, the Court explicitly took notice of the evidence that "Entel uses its New York accounts ... to pay taxes to Bolivia ...." (Slip Op. at 6 (citing Bertone Decl.).) It properly determined, however, that that evidence was irrelevant. (*See* Slip Op. at 6-7.) Entel's bank account assets do not themselves constitute the "debt" arguably attachable under CPLR §§ 5201(a) and 6202. Rather, that debt is the tax obligation itself. *See, e.g., Smith v. Amherst Acres, Inc.*, 350 N.Y.S.2d 236 (App. Div. 4th Dept. 1973) (judgment creditor may not levy against a mortgage held by judgment debtor's debtor; creditor's sole remedy is to levy on the debt itself).

ETI gets no mileage from its argument that money in Entel's bank accounts were "earmarked" to satisfy Entel's alleged tax debt to Bolivia because they "were the intended source from which the tax debt would be satisfied." (Br. at 4-5.) Even assuming that to be the case, it does not confer on Bolivia a legal entitlement to the monies in the accounts such that the accounts may themselves be said to constitute an attachable debt. Entel's mere intent based on an internal estimation of its future financial condition at the time the tax debt becomes payable is insufficient to give Bolivia a direct, attachable interest in those accounts, exactly as the Court

held. (*See* Slip Op. at 6 (stating that "[n]othing suggests that they [the bank accounts] were in any way earmarked, *pursuant to any agreement or law*, to entitle Bolivia to their contents") (citing *Karaha Bodas Co., LLC v. Pertamina*, 313 F.3d 70, 90-93 (2d Cir. 2002)) (emphasis added). ETI may disagree with the Court's decision but that does not provide a basis for a motion to reconsider under Local Rule 6.3. *See Ameritrust Co.*, 151 F.R.D. at 238 (in deciding a reconsideration and reargument motion, "the court must not allow a party to use the motion to reargue as a substitute for appealing"). The Motion for Reconsideration should therefore be denied.

Even if ETI were correct that the Court overlooked the ostensible fact that Entel intends to use the attached funds to pay its alleged tax debt to Bolivia at some point in the future, and even if that fact were sufficient to alter the Court's conclusion that the bank accounts do not themselves constitute an attachable debt, Plaintiff's Motion should still be denied. By its terms, the Court's disposition of the matter would have been no different had this fact indeed been overlooked. The allegedly overlooked fact thus was not controlling as the law requires. *See Ameritrust Co.*, 151 F.R.D. at 238 (stating that to be entitled to reconsideration, "the movant must demonstrate that the Court overlooked *controlling* decisions or factual matters") (emphasis added). At footnote 8 of its Opinion, the Court determined that "[t]o the extent that Plaintiff seeks to attach Entel's intangible <u>debt obligations</u> to Bolivia," those obligations were shielded from prejudgment attachment by the sovereign immunity of Bolivia's property under 28 U.S.C. § 1610(d). (Slip Op. at 7 n. 8 (citing *LNC Invs., Inc. v. Nicaragua*, 2000 WL 745550 (S.D.N.Y. 2000) (underlining in original).) Thus, even giving the fact Plaintiff now claims the Court overlooked all the weight ETI argues it should have, the result would have been just the same. Plaintiff's Motion to Reconsider should be denied for this reason too.

Quite apart from all of the above, there are still additional reasons Plaintiff's Motion to Reconsider is ill-founded and the Court's decision to vacate the attachment is correct. The evidence on which ETI relies in its Motion to Reconsider itself highlights one such reason. As quoted on the first page of Plaintiff's brief, paragraph 12 of the Third Molina Declaration states: "The freezing of these accounts makes impossible for ENTEL to satisfy these taxes *if* these taxes are upheld." (Br. at 1 (citing Third Molina Decl. ¶ 12) (emphasis added).) Ms. Molina's use of the conditional term "if" is an acknowledgement of the fact, discussed in Entel's July 3, 2008 Opposition to ETI's Motion to Confirm, that Entel's alleged tax debt is still subject to unresolved litigation in Bolivia. (Entel Opp. at 18 (citing Third Salinas Decl.).) This fact makes Entel's debt contingent, and therefore unattachable. Under New York law, "an indebtedness is not attachable unless it is absolutely payable at present or in the future, and not dependable upon any contingency." *Sheehy v. Madison Square Garden Corp.*, 266 N.Y. 44 (1934) (internal quotation marks and citation omitted); *see also* CPLR § 5201(a) (requiring that a debt be due "certainly or upon demand of the judgment debtor").

The other reasons the Court's July 30 decision to vacate the attachment is entirely correct have been amply set forth in both Bolivia's and Entel's papers opposing ETI's Motion to Confirm. They include: (1) the fact that Entel is an agency or instrumentality of the Bolivian State and its property is entitled to immunity from prejudgment attachment; (2) the law governing ETI's chosen forum, ICSID, specifically excludes recourse to domestic courts for prejudgment relief of any kind; and (3) the Court lacks the requisite personal jurisdiction over both Entel and Bolvia. Bolivia will not burden the Court by repeating those arguments; it merely incorporates them by reference here. Both individually and collectively, they confirm the

- 5 -

correctness of the Court's decision to vacate the attachment and constitute independent grounds for denying ETI's Motion to Reconsider.

### B. A STAY OF THE COURT'S VACATUR OF THE ATTACHMENT IS NOT WARRANTED PENDING APPEAL.

Entel is entitled to have the clerk return its money to it immediately. By its terms, the Court's July 30 Order is intended to have immediate effect (*see* Slip Op. at 8 (stating that the *ex parte* order of attachment "is hereby vacated"), and there is no provision of law that compels a different result. Federal Rule of Civil Procedure 62(a)(1) specifically provides that "an interlocutory or final judgment in an action for injunction" is immediately enforceable "unless the court orders otherwise." Fed. R. Civ. P. 62(a)(1).

In its Motion for Reconsideration, ETI asks the Court to order otherwise. Assuming the Court adheres to its prior decision, ETI asks the Court immediately to enter final judgment against it and then to stay that judgment pending appeal to the Second Circuit. (Br. at 6-8.) Plaintiff's stay request should be rejected.

ETI's request for a stay pending appeal is based on Rule 60(c) and is governed by the familiar four-part test applicable to any request for injunctive relief: (1) the applicant's likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other party; and (4) the public interest. *Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2d Cir. 1996). At least three of these factors militate strongly against a stay: ETI has no likelihood of success on the merits of its appeal, Defendants will be substantially injured if a stay is entered, and a stay would plainly violate the public interest. Moreover, Plaintiff has failed to show any likelihood it will suffer irreparable injury. ETI's stay request should therefore be denied.

In fact, Plaintiff's argument for a stay defeats itself. This is nowhere more evident than where Plaintiff argues that it is likely to succeed on the merits. Plaintiff argues that it will succeed upon appeal to the Second Circuit because "the attached funds are 'earmarked' for payment of the tax debt that Bolivia has imposed on Entel." (Br. at 7.) This is the same argument that the Court correctly rejected, as discussed above at pp. 2-3. It is one thing for Plaintiff to disagree with the Court and take an appeal. It is quite another for Plaintiff to ask the Court to find, as a basis for issuing a stay, that its own Opinion is likely to be reversed by the Second Circuit and therefore that "ETI has made the requisite strong showing that it is likely to succeed on appeal." (Br. at 7.) Yet, that is precisely what ETI asks of the Court. For the Court to find that ETI is likely to succeed on appeal, it must conclude that the Court of Appeals is likely to find its decision wrong. Accordingly, as long as the Court considers its Opinion is correct, there is no basis for issuing a stay pending appeal.

Plaintiff's argument that it will suffer irreparable injury in the absence of a stay is predicated on a series of unsupported assertions about possible future scenarios that, taken together, enter the realm of rank speculation. The assumptions on which Plaintiff's narrative depend include: that Bolvia will not pay just compensation for its nationalization of Entel (despite its promise to do so and its own law obligating it to do so); that Bolivia will not participate in the ICSID proceeding (despite its plain statement that it has no intention of absenting itself from those proceedings)[1]; that ETI will prevail before ICSID and be awarded damages by the ICSID tribunal above and beyond the amount Bolivia voluntarily pays ETI; that

---

[1] Contrary to Plaintiff's spurious assertions (Br. at 3), it is Plaintiff that is responsible for the delay in the constitution of the ICSID tribunal. As the English court sitting in the parallel U.K. proceeding observed in his decision vacating the attachment of Entel's accounts in that jurisdiction: "E.T.I. could have had the tribunal fully constituted long before now and before these proceedings were brought, had it availed itself of procedures available to it under the ICSID machinery." *ETI v. Bolivia*, Q.B., Judgment of 11 July 2008, ¶ 29 (previously submitted to the Court by Entel).

Bolivia will not satisfy the ICSID judgment[2]; that there will be no funds available to satisfy the award in an enforcement action in Bolivia or more than 100 other national jurisdictions where ICSID awards may be enforced; and that Entel will remove its money from the United States. If any one of these links breaks, Plaintiff's entire chain of reasoning fails. ETI therefore cannot establish that it *will* be injured absent a stay. At most, it can show only that there is a vanishingly remote possibility that it *might* be. This is not enough, particularly when considered together with the three other pertinent factors, all of which argue powerfully against a stay.

In contrast to the remote chance that ETI might be injured absent a stay, Defendants will certainly be substantially injured if a stay is entered. Entel has already been deprived of the use of $34 million dollars in its accounts for more than three months without reason. That is enough. As the Court determined, and as reiterated above, there never was and is not now any legitimate basis for depriving Entel of its access to bank accounts that it uses for any number of on-going business purposes, including receiving revenues, safeguarding converted currency, paying suppliers and the like. (*See* Slip Op. at 6-7.) Without access to these funds, Entel's business operations have been and will continue to be seriously impaired for however long the attachment remains in effect. This factor too thus weighs against the stay ETI seeks.

Finally, the public interest plainly counsels against the stay Plaintiff seeks. Plaintiff's own attempt to marshal the public interest in its favor fails badly. At page 8 of its brief, ETI argues that nationalization without compensation violates "our sense of justice." (Br. at 8.) But, of course, this argument is predicated on the same dubious assumptions of fact that Bolivia

---

[2] Plaintiff quotes a Reuters news report allegedly containing the statements of Bolivia's Minister of Defense for Legal Nationalization, Mr. Hector Arcé, to the effect that Bolivia will not comply with any ICSID award against it. It should go without saying, of course, that a newspaper report quoting an individual (who, it should be added, does not even speak English) does not constitute admissible -- or even reliable -- evidence of anything. Moreover, the quotation attributed to Mr. Acré does *not* represent official Bolivian policy.

highlighted above in connection with disproving ETI's claim that it will be irreparably injured without a stay; namely, that Bolivia decides not to pay just compensation; that ETI prevails in the ICSID action, *etc.* Such a speculative invocation of the nominal public interest is insufficient to outweigh the very real and very immediate public policy concerns a stay would implicate, as discussed immediately below.

It is the public policy of the United States, articulated in the clearest possible way in the U.S. Code, that the property of foreign states located in the United States is immune from prejudgment attachment absent an express waiver. 28 U.S.C. § 1610(d); *see also* Slip Op. at 7 n.8 (noting that "Plaintiff has failed to demonstrate that Bolivia has in any way consented to prejudgment attachment"). As other courts in this District have stated, "FSIA immunity is immunity not only from liability, but also from the costs in time and expense, and other disruptions attendant to litigation." *Compania de Bajo Caroni v. V.M.C. Mining Co.*, 2008 U.S. Dist. LEXIS 35544, at *29 (S.D.N.Y. 2008) (quoting *Kelly v. Syria Shell Petro.*, 213 F.3d 841, 849 (5th Cir. 200)). Tying up Bolivia's and Entel's sovereign property any longer than was necessary to determine the patent baselessness of the *ex parte* attachment ETI obtained from Judge Chin self-evidently runs afoul of these unambiguous public policies.

There are other public policy interests that weigh heavily against the stay ETI requests. As Bolivia detailed in its papers opposing ETI's Motion to Confirm, the law governing Plaintiff's chosen forum, ICSID, expressly excludes recourse to domestic courts for prejudgment remedies of any kind. *See* ICSID Convention, Art.26. The United States is a party to the ICSID Convention and is thus bound by Article 26 as a matter of international treaty law. It is, moreover, the clear policy of the United States Government that ICSID exclusivity is to be enforced. As the United States stated to the D.C. Circuit:

> [A] primary purpose of the Convention is to protect Contracting States against other forms of foreign or international litigation. The Convention therefore provides a role for domestic legal process only in the enforcement of ICSID awards, and even then, the power of review in domestic court is sharply limited.

Brief for the U.S., *Maritime Int'l Nominess Est. v. Guinea* (693 F.2d 1094 (D.C. Cir. 1982)), 20 I.L.M. 1436, 1483 (1981). Authoritative commentators have suggested that actions by U.S. courts in violation of the United States' international commitments under Article 26 -- including the issuance pre-judgment attachments and other provisional remedies -- could expose the United States to lawsuits by other nations party to the ICSID Convention. Permitting the inappropriate attachment of Entel's assets to last any longer than absolutely necessary thus violates these plain public policy interests.

For all these reasons, Plaintiff's stay request should be denied. There is no good reason the attachment ETI should never have been granted in the first place should continue. The Court's July 30, 2008 Opinion and Order should be given immediate effect.

### III.   CONCLUSION

WHEREFORE, Defendant Bolivia respectfully submits that Plaintiff's Motion for Reconsideration and for a Stay should be denied.

Respectfully submitted,

FOLEY HOAG LLP

By: /s/ Paul S. Reichler
    Ronald E.M. Goodman (RG 6698)
    Paul S. Reichler
    Janis H. Brennan
    1875 K Street NW
    Washington, D.C. 20006
    Telephone: 202-223-1200
    Facsimile: 202-785-6687

*Counsel for Defendant
  the Republic of Bolivia0*

Date: August 13, 2008