Michael Krinsky (MK 4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
    KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
Telephone: (212) 254-1111
Facsimile: (212) 674-4614

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP
180 Montgomery Street, # 2200
San Francisco, California 94104
Telephone: (415) 514-0200
Facsimile: (415) 544-0201

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF BOLIVIA, and EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL, S.A., <br><br> Defendants. | Case No. 08-cv-4247 (LTS/FM) |

---

**EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL S.A.'s
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR RECONSIDERATION AND FOR A STAY PENDING APPEAL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT

I.     The Motion for Reconsideration Should be Denied Both Because Plaintiff Has Failed to Meet the Standard for Reconsideration as Established in the Applicable Rules and Case Law, and On the Merits ............................................................... 1

II.    The Court Should Deny Plaintiff's Motion for a Stay Pending Appeal ............................................................................................. 7

III.   The Court Should Enter the Proposed Order Directing the Clerk to Return the Attached Funds, Whether or Not It Grants a Stay Pending Appeal ............................................................... 14

IV.   Any Final Judgment Dismissing this Action Should Be "With Prejudice" and Provide that Defendants are Entitled to Costs, Attorney's Fees and Damages ....................................................... 15

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ....................................................... 13

*Barcia v. Sitkin*, 2004 WL 691390 (S.D.N.Y. Mar. 31, 2004) ................................................. 8, 11

*Ciocca v. Neff*, 2006 WL 2864987 (S.D.N.Y. Oct. 5, 2006) ..................................................... 2, 3

*Cohen v. Metro. Life Ins. Co.*, 2008 WL 1826484
(S.D.N.Y. Apr. 22, 2008) .............................................................................................................. 7

*Cooper v. United States Postal Serv.*, 246 F.R.D. 415 (D. Conn. 2007) ........................................ 7

*Ex parte Rep. of Peru*, 318 U.S. 578 (1943) ................................................................................ 12

*Gala Enterprises, Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212
(S.D.N.Y. 1997) .......................................................................................................................... 5, 6

*Holmes v. Lorch*, 2004 WL 2102336 (S.D.N.Y. Sept. 21, 2004) .................................................. 1

*In Matter of Yohannes v. Debell Residential LLC*, 2007 WL 2034301
(S.D.N.Y. July 17, 2007) ............................................................................................................... 7

*In Re Westpoint Stevens, Inc. v. Aretex LLC*, 2007 WL 1346616
(S.D.N.Y. May 9, 2007) ............................................................................................................. 7, 8

*Int'l. Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 78 F.3d 1279
(2d Cir. 1994) ................................................................................................................................ 9

*Karaha Bodas Co., LLC v. Pertamina*, 2004 WL 2712556
(S.D.N.Y. Nov. 24, 2004) .......................................................................................................... 4, 5

*Karaha Bodas Co., LLC v. Pertamina*, 313 F.3d 70 (2d Cir. 2002) .......................................... 4, 5

*Leon v. Martinez*, 614 N.Y.S.2d 972 (1994) .................................................................................. 6

*Leyda v. AlledSignal, Inc.*, 322 F.3d 199 (2d Cir. 2003) ............................................................... 9

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2002 WL 31176862
(S.D.N.Y. Sept. 25, 2002) .............................................................................................................. 2

*Masella v. Blue Cross & Blue Shield of Conn., Inc.* 936 F.2d 98
(2d Cir. 1991) .................................................................................................................. 9

*Mina Inv. Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245 (S.D.N.Y. 1999) ....................... 1

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002) ........................................................... 8

*Permanent Mission of India to the United Nations v. City of New York,*
_ U.S. _ ,127 S. Ct. 2352 (2007) ................................................................................... 12

*Range Road Music, Inc. v. Music Sales Corp.,* 90 F. Supp. 2d 390
(S.D.N.Y. 2000) ................................................................................................................ 2

*Shrader v. CSX Transportation, Inc.,* 70 F.3d 255 (2d Cir. 1995) ................................. 2

*Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243 (1984) ..................... 13

*Weir v. Holland & Knight,* 2007 WL 2198385 (S.D.N.Y. July 27, 2007) ...................... 2

*Williams v. N.Y. York Dep't of Corr.,* 219 F.R.D. 78 (S.D.N.Y. 2003) .......................... 1

*Word v. Croce,* 2004 WL 434038 (S.D.N.Y. Mar. 9, 2004) ............................................ 1

**Statutes and Rules**

N.Y.C.P.L.R. § 6212 (e) ................................................................................................ 15

Fed. R. Civ. P. 59(e) ....................................................................................................... 1

Local Civil Rule 6.3 ..................................................................................................... 1, 9

**Legislative History**

H.R. Report No. 94-1487 (Sept. 9, 1976), *reprinted in*
1976 U.S.C.C.A.N. 6604 ............................................................................................... 12

**Other Authorities**

11 Charles A. Wright, et al., *Federal Practice & Procedure* § 2810.1
(1995) ............................................................................................................................... 2

Defendant Empresa Nacional de Telecomunicaciones Entel, S.A. ("ENTEL") respectfully submits this memorandum of law in opposition to plaintiff's motion for reconsideration of the Court's July 30, 2008 Memorandum Opinion and Order, and for a stay pending appeal.

### I. The Motion for Reconsideration Should be Denied Both Because Plaintiff Has Failed to Meet the Standard for Reconsideration as Established in the Applicable Rules and Case Law, and On the Merits

Plaintiff has moved for reconsideration under Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3, exclusively on the ground that this Court "overlooked Entel's [purported] admission that the attached funds were in fact 'earmarked' to satisfy the tax debt that Bolivia has imposed on Entel." Motion for Reconsideration ("MR") at 3. Aside from the obvious fact that ENTEL made no such admission, the motion for reconsideration should be denied as a threshold matter because plaintiff has failed to meet the requirements for consideration of such a motion.

"Applications to alter or amend judgments under Federal Rule of Civil Procedure 59(e) or for reconsideration under S.D.N.Y. Local Rule 6.3 are evaluated under the same standard." *Word v. Croce,* 2004 WL 434038, at *2 (S.D.N.Y. Mar. 9, 2004) (Swain, J.), citing *Williams v. N.Y. York Dep't of Corr.,* 219 F.R.D. 78, 83 (S.D.N.Y. 2003). As this Court has emphasized, reconsideration is "committed to the sound discretion of the district court," and "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Holmes v. Lorch,* 2004 WL 2102336, at *1 (S.D.N.Y. Sept. 21, 2004) (internal quotations and citations omitted) (Swain, J.); *see also, e.g., Mina Inv. Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245, 250 (S.D.N.Y. 1999) ("Local Rule 6.3 is to be narrowly construed and strictly applied . . .").

A party seeking reconsideration may do so only in the narrowest of circumstances. On the one hand, a "'motion to reconsider should not be granted where the moving party seeks

solely to relitigate an issue already decided.'" *Weir v. Holland & Knight*, 2007 WL 2198385, at *1 n. 1 (S.D.N.Y. July 27, 2007) (Swain, J.), quoting *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 256-257 (2d Cir. 1995). On the other hand, and most pertinent here, a party may not present new arguments or rely on facts not previously argued to the district court. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2002 WL 31176862, at *1 (S.D.N.Y. Sept. 25, 2002) (Swain, J.) (Rules "not intended to allow a party 'to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment'"), quoting 11 Charles A. Wright, et al., *Federal Practice & Procedure* § 2810.1, at 127-28 (1995). Rather, "'a motion for reconsideration is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were *put before it on the underlying motion* . . . and which, had they been considered, might have reasonably altered the result before the court.'" *Ciocca v. Neff*, 2006 WL 2864987, at *1 (S.D.N.Y. Oct. 5, 2006) (Swain, J.), quoting *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (emphasis in original).

Plaintiff plainly fails to meet this threshold test. Plaintiff claims that the Court "overlooked" a statement in the Third Molina Declaration, submitted by ENTEL on June 11, 2008 in opposition to plaintiff's motion to confirm, that the attachments of the New York and London bank accounts made it impossible for ENTEL to meet its tax debts to the Republic of Bolivia. First, plaintiff does not and cannot show that it "put before" the Court the facts or argument it now makes. Nowhere in plaintiff's pleadings on the underlying motion to confirm the attachment did plaintiff even mention the Third Molina Declaration, let alone argue that the Third Molina Declaration (or any other evidence) showed that the assets held in the accounts were "earmarked" to pay an ENTEL tax debt.

In fact, to the contrary, plaintiff argued the exact opposite. In response to ENTEL's showing that, under plaintiff's new theory that plaintiff sought to attach ENTEL's debt, the attachments were barred by the Republic's immunity under the Foreign Sovereign Immunities Act, plaintiff affirmatively stated that "the attached funds have neither: (1) been abandoned; nor (2) *been designated for payment to a creditor."* Sur-Sur Reply Memorandum of E.T.I. at 12, n. 10 (emphasis added). Plaintiff certainly cannot premise a motion for reconsideration upon arguments and facts that it failed to "put before [the court] on the underlying motion," *Ciocca v. Neff,* 2006 WL 2864987, at *1, *and* upon which it expressly argued to the contrary.

Plaintiff had abundant opportunity to make whatever arguments it wished on the basis of the Third Molina Declaration, but it failed to do so until after the Court's decision. After ENTEL's submission of the Third Molina Declaration, plaintiff not only submitted an extensive reply brief (35 pages) but a Sur-Sur Reply Brief (20 pages) and yet failed to point the Court to the passage in the Third Molina Declaration that it now, much too late, asserts is dispositive and the Court overlooked.

Second, plaintiff has not and cannot show that the Court overlooked any such statement, even though plaintiff never "put [it] before" the court. The Court well understood that plaintiff argued that it was entitled to attach ENTEL's accounts "because they constitute debt that Entel allegedly now admits that it owes to Bolivia – namely, the $60 million-plus in taxes and penalties levied upon Entel by Bolivia." Slip Op. at 5-6 (footnote omitted). The Court also explicitly acknowledged evidence that ENTEL had used its New York accounts to pay taxes to Bolivia, as well as for other purposes, and that the accounts "may or may not ultimately be used to pay Entel's tax debt to Bolivia." *Id.* at 6-7.

The Court, however, drew a clear and dispositive distinction, as a matter of law, between

3

assets to which the Republic is *"entitled"* by *"agreement or law"* (*id.* at 6) (emphasis added), and assets as to which there is no such agreement or law. Nothing in the Third Molina Declaration is relevant to the legal distinction held by the Court to control: Nothing in that declaration suggests that the Republic is "entitled" to the New York accounts by "agreement or law." Nor, indeed, is there anything in that declaration to suggest that, contrary to the Court's finding, there is an "agreement or law" that limits ENTEL's "discretion" as to how to use those accounts, *id.* at 6, or that determines that the funds "may or may not ultimately be used to pay Entel's tax debt to Bolivia," *id.* at 7. Plaintiff's motion thus merely seeks to reargue questions of law submitted to and decided by the Court.

Indeed, this Court's distinction between assets in the possession of a debtor to which a creditor is "entitled" by "law or agreement," and assets of a debtor not so encumbered but which the debtor may use to pay its debt follows precisely from the Second Circuit's decision in *Karaha Bodas Co., LLC v. Pertamina,* 313 F.3d 70, 90-93 (2d Cir. 2002), upon which this Court relied, Slip Op., at 6, and on Judge Griesa's opinion on remand. *See Karaha Bodas Co., LLC v. Pertamina,* 2004 WL 2712556 (S.D.N.Y. Nov. 24, 2004). The Second Circuit opinion held that (with the exception of a small percentage known as the "Retention") funds in trust accounts in banks in New York in which only Pertamina (an entity owned by Indonesia) had authority to direct payment, were the property of Indonesia, not Pertamina (and hence could not be attached to satisfy a judgment against Pertamina), because Indonesian law established that the funds belonged to Indonesia. *See Karaha Bodas,* 313 F.3d at 92 ("Like a trustee, Pertamina possesses the remaining funds but has no ownership interest in them."). By contrast, the Retention was the property of Pertamina, even though it owed 80% of the Retention to Indonesia in taxes and dividends. *See Karaha Bodas,* 2004 WL 2712556, at *2 ("those amounts were not property of

the government until they were paid.") Judge Griesa aptly observed that this is not "an astonishing proposition," noting that salary belongs to the taxpayer even if he or she owes taxes, and corporate revenue belongs to corporation, even if dividends are owed, *Karaha Bodas*, 2004 WL 2712556, at *2; there is nothing in the fact that the taxpayer or corporation may not have other liquid assets to use in paying taxes or dividends to alter these propositions.

The Court undoubtedly will recall that plaintiff relied on the *Karaha Bodas* opinions extensively in its briefs on the underlying motion, in arguing that the attached accounts belong exclusively to ENTEL. *See* Plaintiff's Reply Mem., at 18-20, 22; Plaintiff's Sur Sur-Reply Mem., at 13-14. The Court squarely addressed the argument and authority proffered by plaintiff but drew a different conclusion than had plaintiff: that because ENTEL owned the funds, the accounts may not be attached to secure a potential arbitral award against the Republic alone. Plaintiff now, once again, attempts to change its argument. It may not do so on a motion for reconsideration.

If, notwithstanding the above, the Court decides to reach the merits of plaintiff's motion, it should adhere to its decision. The Court's careful analysis is entirely sound as a matter of law, and it is supported by the record. Moreover, as the Court has recognized and as is also shown above, the Court's analysis is fully supported by the Second Circuit and district court decisions in *Karaha Bodas*. Indeed, plaintiff has not cited any case indicating disagreement with this Court's analysis, or supporting plaintiff's own implicit, contrary position on the law, and plaintiff has not demonstrated that the Court was wrong in finding support for its analysis in *Karaha Bodas*.

In contrast, numerous cases support this Court's analysis and *Karaha Bodas*. For example, the Second Circuit in *Karaha Bodas*, 313 F.3d at 92, quoted and cited *Gala*

*Enterprises, Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212, 217 (S.D.N.Y. 1997), which held that funds of a judgment debtor client held by an attorney in an escrow account may be attached "because the debtor retains sufficient control over the funds" by law and agreement, but a retainer fee for legal services is not attachable even though the client may have a claim for return of an equivalent amount in certain circumstances. *Gala Enterprises*, 970 F. Supp. at 219; *id* at 217 (under New York law a person has an "interest" in the funds "if any part of the money is within the present or future control of" that person) (internal quotations, brackets omitted). The Second Circuit also cited *Leon v. Martinez*, 614 N.Y.S.2d 972, 974-75 (1994), which held that when parties create assignment by agreement, assignment "vest[s] in the assignee a present right in the things assigned," and distinguished assignment from a promise to pay, which does not confer a legal interest in specific property on the promisee.

Moreover, plaintiff has failed to address the Court's further conclusion that "[t]o the extent that Plaintiff seeks to attach Entel's intangible debt obligations to Bolivia, such that any payment Entel might make toward its debt to Bolivia from its New York bank accounts would instead be directed to Plaintiff," the Foreign Sovereign Immunities Act would bar the attachment, because plaintiff has "failed to demonstrate that *Bolivia* has in any way consented to prejudgment attachment ... or that the intangible debt obligations constituted property used for commercial activity in the United States." Slip Op. at 7 n. 8 (emphasis added, underscore ommitted). Clearly, the same conclusion about the FSIA's application here would bar attachment on the theory – rejected by the Court but again apparently advanced by plaintiff – that *Bolivia* has an attachable interest in ENTEL's accounts. Indeed, this conclusion follows directly from and is mandated by the holding of the Second Circuit in *Karaha Bodas*. The Court's FSIA ruling itself is reason to deny the motion for reconsideration on its merits.

Although irrelevant as a matter of law, as shown, we note finally that even the factual inferences plaintiff attempts to draw from the Third Molina Declaration are untenable. Among other matters, Molina was expressly referring to the accounts frozen in both London and New York; as our filings show, the High Court and the Court of Appeal subsequently vacated the *ex parte* restraint on the London account, in the sum of approximately $50 million (as compared to an asserted tax debt that, with penalties and fines, is around $60 million). Molina did not state that the New York accounts themselves would be the actual source of any tax payments.[1] And whether or not ENTEL even owes this tax debt is still in litigation brought by ENTEL in Bolivia. *See* Third Declaration of Alejandro Salinas Vilela, filed July 3, 2008. All this, however, is of no moment, because, as the Court held and plaintiff has nowhere contradicted, there is no law or agreement entitling Bolivia to the New York accounts.

II.   **The Court Should Deny Plaintiff's Motion for a Stay Pending Appeal**

The Court should deny plaintiff's motion for a stay pending appeal and, instead, leave the plaintiff to seek a stay, if it is so advised, in the Court of Appeals.

A district court's grant or denial of a stay pending appeal of a non-money judgment, as here, lies within the Court's sound discretion. *See, e.g., Cohen v. Metro. Life Ins. Co.*, 2008 WL 1826484, at *1 (S.D.N.Y. Apr. 22, 2008) (Swain, J.).[2] Quoting *Cooper v. United States Postal*

---

[1] To the contrary, Molina emphasized that the funds attached in New York and London "represent essentially all of the accumulated hard currency assets of ENTEL, . . . [which] ENTEL regularly needs to engage in hard currency transactions, such as buying equipment from abroad, purchasing services from foreign vendors, and paying some interconnection fees to telephone companies from other countries." Third Molina Declaration, ¶ 4.
    Plaintiff repeatedly insists that ENTEL has a net asset value in excess of $600 million, *see, e.g*, plaintiff's Reply Mem., at 1; therefore, even on plaintiff's own submission, assets other than the New York and London accounts could be used to pay the tax debt. Plaintiff also insists that ENTEL generates excess net cash of $40-50 million per year, *id.* at 4.

[2] *See also, e.g., In Matter of Yohannes v. Debell Residential LLC*, 2007 WL 2034301 at *5; (S.D.N.Y. July 17, 2007) (Swain, J.); *In Re Westpoint Stevens, Inc. v. Aretex LLC*, 2007 WL 1346616, *5 (S.D.N.Y. May 9, 2007) (Swain, J.).

7

*Serv.*, 246 F.R.D. 415, 417 (D. Conn. 2007), plaintiff acknowledges, MR at 6-7, that, in exercising the court's discretion:

> The four factors to be considered …are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

"The burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied for not meeting the standard," *Barcia v. Sitkin*, 2004 WL 691390, at *1 (S.D.N.Y. Mar. 31, 2004) (Carter, J.).

Even when the three other factors are "strong" in its favor (which is *not* the case here, *infra*), the stay applicant must show at least "a substantial possibility of success on the merits." *In Re Westpoint Stevens, Inc. v. Aretex LLC*, 2007 WL 1346616, at *4 (S.D.N.Y. May 9, 2007) (Swain, J.), citing *Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002) (stay denied because stay applicant did not have "substantial possibility of prevailing on his appeal," even though balance of injury tipped strongly in favor of stay applicant, who faced imminent deportation if stay not granted. *Mohammed*, at 103).

In a brief and cursory argument hardly appropriate when taking the measure of this Court's careful and thoughtful opinion, MR at 7-8, plaintiff falls woefully short of discharging its "heavy" burden of establishing a "favorable balance" of the four traditional factors. Indeed, plaintiff has not shown a possibility of success on the merits that is "substantial" enough to warrant a stay even if the three other factors were "strong" in its favor, which they are not.

> **"Whether the stay applicant has made a strong showing that he is likely to succeed on the merits."**

Plaintiff seeks a stay *exclusively* on the basis of the argument that it presents on its motion for reconsideration, and has the temerity to suggest that it has "made the requisite strong showing that it is likely to succeed on appeal" on that argument. MR at 7. This cannot suffice.

*First*, and dispositively, the Court, as ENTEL urges above, should not even consider the motion for reconsideration on its merits because it fails to meet the requirements of Local Rule 6.3, as set forth in Point I, *ante*. If the Court denies the motion on that basis – as, we respectfully submit, it should – its order would be subject to review by the Court of Appeals only for abuse of discretion; there is no possibility of plaintiff convincing the Court of Appeals to reverse the Court under that standard. Plaintiff could not otherwise present the merits of its argument to the Court of Appeals, since, as this Court would have held, plaintiff did not present the argument in a timely way below. *See, e.g., Leyda v. AlledSignal, Inc.*, 322 F.3d 199, 207 (2d Cir. 2003); *Masella v.Blue Cross & Blue Shield of Conn., Inc.* 936 F.2d 98, 107-08 (2d Cir. 1991).

*Second,* and also dispositively, plaintiff's new argument is not only untimely but frivolous on its merits, as shown above.

*Third*, and also dispositively, plaintiff, to prevail on appeal, would not only have to convince the Court of Appeals to reverse this Court on the grounds it reached, but also to find for plaintiff on *all* the grounds that ENTEL and Bolivia advanced but that the Court did not reach. *See, e.g., Int'l. Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 78 F.3d 1279, 1285-86 (2d Cir. 1994 ( appellate court can sustain judgment on any grounds presented below). These include that Bolivia's immunity from prejudgment attachment is necessarily attributable to ENTEL under the controlling authority of this Circuit because plaintiff is seeking to secure a claim against Bolivia; ENTEL itself is protected by the FSIA against prejudgment attachment as an agency or instrumentality of a foreign state; the Court lacks subject matter jurisdiction; the

ICSID Convention bars pre-award attachments by a national court; the Court lacks the necessary personal jurisdiction over ENTEL; and the jurisdictional and other requirements of the CPLR are not satisfied

Plaintiff does not even address the question whether it has a likelihood (or substantial possibility) of prevailing on the issues that the Court did not reach. In itself, this is reason for denial of its motion for a stay, since plaintiff has the burden on its motion in all respects.[3] In any event, it is respectfully submitted that, as shown by the respective briefs of the parties on the motion to confirm, plaintiff has not carried its "heavy" burden of making a "strong showing that he is likely to succeed on the merits" in the Court of Appeals on these points, or even that it has shown a "substantial possibility" of doing so.

*Fourth*, the unanimous judgment of the English Court of Appeal and the judgment of the English High Court against plaintiff belie plaintiff's suggestion that it is likely to prevail on appeal here, or even has a substantial possibility of success on appeal. The Court of Appeal and the High Court vacated plaintiff's restraint of ENTEL's London bank account because, *inter alia*, of Bolivia's sovereign immunity, the prohibitions of the ICSID Convention and ETI's failure to articulate a plausible rationale for restraining ENTEL's accounts to secure a possible arbitral award against Bolivia. *See* ENTEL's Notice and Submission of Court of Appeal's Judgment in Parallel English Action, filed July 29, 2008, and ENTEL's Notice and Submission of High Court of Justice's Judgment in Parallel English Action, filed July 21, 2008.

**"Whether the applicant will be irreparably injured absent a stay;" "whether issuance of the stay will substantially injure" ENTEL**

---

[3] Plaintiff should not be heard to address these issues in its reply brief on the instant motion; it has the burden on its motion for reconsideration, and has engaged in a lamentable practice throughout this litigation, of addressing obvious and critical matters for the first time in its reply papers.

10

To weigh in favor of a stay, the claimed injury to the stay applicant must be "irreparable," "actual and imminent, not remote or speculative." *Barcia v. Sitkin*, 2004 WL 691390, at 1 & n. 5 (citing Supreme Court and Second Circuit authority). Plaintiff's showing does not suffice. For plaintiff to suffer any injury at all, (a) Bolivia must fail to pay compensation to ETI, notwithstanding the provisions of its nationalization decree that, on its face, provide for compensation in conformity with the Bolivia-Netherlands BIT and international law; (b) the ICSID panel must rule that it has jurisdiction over ETI's claim, despite Bolivia's reasoned objection that its denunciation of the ICSID Convention *before* ETI submitted an ICSID arbitration demand deprived ICSID of jurisdiction (a position supported by the leading authority on the ICSID Convention), *see* Ex. 2 to Reply Declaration of Robert Sills, filed June 23, 2008; (c) the ICSID panel must rule that Bolivia has violated the Bolivia-Netherlands BIT and ETI is entitled to damages above whatever compensation Bolivia may offer; (d) Bolivia must have decided not to pay the ICSID award; and (e) ETI must have been unable to obtain satisfaction of the ICSID award through the formidable non-judicial international pressures on states to honor ICSID awards and judicial mechanisms that the 143 state parties to the ICSID Convention are obligated to provide for the enforcement of ICSID awards.

The injury to ENTEL, on the other hand, need not be irreparable but only "substantial," and it is clearly so. On its face, continuation of the attachment deprives ENTEL, a going business concern, of the use and free disposition of substantial funds, a major portion of its liquid assets. Nothing more need be shown. Further, ENTEL has always drawn on these accounts for a variety of purposes, *see* First and Third Molina Declarations, filed June 11, 2008, and additionally wishes to draw upon them for current infrastructure improvement programs. *See* Declaration of Joel Flores Carpio, ¶¶ 9-21, filed June 11, 2008.

**"Where the public interest lies"**

The public interest strongly favors vacating the attachments without delay, now that the Court, after extensive litigation and careful consideration, has found the attachment to be unwarranted.

The seizure of a foreign state's assets, or that of its instrumentalities – particularly prejudgment – can give rise to "serious friction in United States' foreign relations," and cause "significant irritation" to foreign governments. H.R. Report No. 94-1487 (Sept. 9, 1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6625-26 ("House Report") (explaining FSIA's prohibition against prejudgment attachments save in narrowly circumscribed circumstances). *See also, e.g., Ex parte Rep. of Peru,* 318 U.S. 578, 588 (1943) (may "embarrass" conduct of foreign relations; presents "serious challenge" to "dignity" of foreign state). These concerns are necessarily and forcefully present here: the Court did not decide whether ENTEL is an "agency or instrumentality" under the FSIA but there is no doubt that *Bolivia* asserts ownership of ENTEL and exercises all the incidents of ownership. Further, the Court has recognized that Bolivia's sovereign immunity is implicated, and held that the narrowly circumscribed exceptions to prejudgment immunity are not present, that is, explicit waiver and that the property is used for a commercial activity in the U.S. Slip Op., at 7, n. 8.

Further, the FSIA reflects the United States' assessment of its obligations under international law. *See, e.g., Permanent Mission of India to the United Nations v. City of New York,* _ U.S. _ ,127 S. Ct. 2352, 2355 (2007). ENTEL and Bolivia have advanced substantial – indeed, we would submit, persuasive – arguments that the attachment violates the FSIA, and hence international law. The Court had no need to reach many of these arguments, but the substantial risk and the international appearance that the United States is violating international

law will remain as long as the attachment remains. It is a risk and appearance made even more acute by the English Court of Appeal having held that the restraint of ENTEL's accounts does violate sovereign immunity. The United States has a strong interest in adhering to its international law obligations vis-à-vis Bolivia, and being perceived as doing so, and a strong interest in being known as a faithful adherent of international law generally. *Cf. Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984).

Similarly, ENTEL and Bolivia have advanced substantial – and, we again submit, persuasive – arguments that the attachment violates the ICSID Convention. Indeed, the English High Court squarely held that restraint of ENTEL's bank accounts violates the ICSID Convention, and the English Court of Appeal expressed agreement. The United States has strongly emphasized the importance to the multinational ICSID regime and, consequently, to United States interests, in United States courts meticulously adhering to the ICSID Convention's prohibition against national courts providing relief prior to issuance of an ICSID award, and has even warned that their doing so can give rise to international claims against the United States for violating the Convention. *See* ENTEL Mem. in Opposition, at 20-21, 23-24. Once again, now that the Court has found the attachments unwarranted, there should be no further injury to the ICSID regime and the United States' interests in its integrity and reputation by continuation of the attachment.

Finally, the attachment has involved the United States in an international dispute over whether Bolivia has violated a bilateral treaty between Bolivia and the Netherlands at the direction of Bolivia's President and Ministers of State, a dispute that concerns the particularly sensitive issue of a sovereign's nationalization of foreign-owned property. As the Supreme Court observed in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 430 (1964), few issues

13

are as sensitive in international relations. Having found the attachment unwarranted, the Court should not prolong the United States' involvement in this controversy any longer.

As it did throughout the litigation – without effect – plaintiff seeks to align itself with those who have made claims in the courts of this country against giving extraterritorial effect to expropriations in violation of international law. *See* MR at 8. As we have previously shown, plaintiff stands on an entirely different footing here, since, among other reasons, it has not brought that claim in this Court but something entirely different, a demand that the Court assist the ICSID arbitration by providing security for a possible ICSID award; and the ICSID Convention would bar such a claim in any event (ICSID arbitration is "to the exclusion of any other remedy," Art. 26).

### III. The Court Should Enter the Proposed Order Directing the Clerk to Return the Attached Funds, Whether or Not It Grants a Stay Pending Appeal

On July 31, 2008, ENTEL submitted, on the requisite notice, a proposed Order directing the Clerk of the Court to release the attached funds, which is necessary to effectuate this Court's July 30th Memorandum Decision and Order. The Clerk approved ENTEL's proposed Order as to form and forwarded it to Chambers. Plaintiff did not submit a counter-order.

In the event the Court denies the instant motion for reconsideration, it should, at the same time, issue ENTEL's proposed Order. If the Court grants a stay pending appeal, it, of course, would expressly stay the Order. Not entering the proposed Order will cause future delay and burden, and, importantly, will run the risk of obscuring any dispute between the parties over the control and disposition of the released funds. If there is such a dispute, it should be resolved by this Court now and presented, if needed, for appellate review along with the Court's underlying decision.

### IV. Any Final Judgment Dismissing this Action Should Be "With Prejudice" and Provide that Defendants are Entitled to Costs, Attorney's Fees and Damages

Plaintiff requests that, if its motion for reconsideration is denied, the Court enter a final judgment dismissing this action, because the Court's July 30, 2008 Memorandum Opinion and Order "will have disposed of the only issue in this case," MR at 6, presumably meaning plaintiff's entitlement to an attachment of ENTEL's bank accounts. ENTEL has no objection to the entry of final judgment against plaintiff, provided that the judgment of dismissal be "with prejudice." This is necessary to provide finality and to prevent ETI from again seeking to attach ENTEL or the Republic of Bolivia's assets in aid of the ICSID arbitration.

ENTEL further submits that the final judgment, if entered, should provide that defendants are entitled pursuant to N.Y.C.P.L.R. § 6212 (e) to costs, reasonable attorney's fees and damages sustained by reason of the attachment, *see* Slip. Op. at 7-8, but that the Court should determine the award in the proceeding and on the schedule set by the Court in its Memorandum Opinion and Order, at 8. (Additional proceedings may be required after the completion of appellate litigation, if any.)

In no circumstance should release of the attached funds be delayed on account of the need to determine defendants' application for costs, attorney's fees and damages.

### CONCLUSION

For the foregoing reasons, and for those previously stated, as well as those set forth by the Republic of Bolivia, plaintiff's motion for reconsideration and for a stay pending appeal should be denied.

Dated:  August 14, 2008

                                              Respectfully submitted,

*(signature)*
Michael Krinsky (MK 4503)
Eric M. Lieberman (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.

Terry Gross (TG 3249)
GROSS BELSKY ALONSO LLP

*Counsel for Empresa Nacional de Telecomunicaciones Entel S.A.*

16