Robert L. Sills (RS 8896)
Steven J. Fink (SF 3497)
Ryan S. Lester (RL 5603)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **E.T.I. EURO TELECOM INTERNATIONAL N.V.,** | |
| Plaintiff, | |
| -against- | 08-CV-4247 (LTS) |
| **REPUBLIC OF BOLIVIA** and **EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL S.A.,** | |
| Defendants. | |

**REPLY MEMORANDUM OF E.T.I. EURO TELECOM
INTERNATIONAL N.V. IN FURTHER SUPPORT OF
ITS MOTION FOR RECONSIDERATION AND FOR A STAY**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ..................................................................................................... 1

I.      DEFENDANTS FAIL TO SUCCESSFULLY REFUTE  THAT THE COURT
      OVERLOOKED A CONTROLLING FACT ............................................... 1

II.     IN THE ALTERNATIVE, THE COURT SHOULD ENTER A FINAL
      JUDGMENT AND GRANT A STAY PENDING APPEAL ......................... 5

      A.     The Court Should Enter A Final Judgment ........................... 5

      B.     The Court Should Grant A Stay Pending Appeal ................... 6

CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

## CASE LAW

Bandes v. Harlow & Jones, Inc.,
    852 F.2d 661 (2d Cir.1988)..................................................................7, 9

Baumgold Bros., Inc. Schwarzschild Brothers, Inc.,
    93 N.Y.S.2d 658 (First Dep't 1949) ...........................................................4

Bouchard v. New York Archdiocese,
    No. 02 Civ. 5960 (GEL), 2004 WL 1752832 (S.D.N.Y. Aug. 4, 2004)....................2

Ciocca v. Neff,
    No. 04 Civ. 9978 (CSH), 2006 WL 3025883 (S.D.N.Y. Oct. 24, 2006)...................2

Cooper v. U.S. Postal Serv.,
    246 F.R.D. 415 (D.Conn. 2007)................................................................6

Gala Enterprises, Inc. v. Hewlett Packard Co.,
    970 F. Supp. 212 (S.D.N.Y. 1997) ...........................................................3

Jones v. Jones,
    242 F. Supp. 979 (S.D.N.Y. 1965) ...........................................................5

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, M-18-
    302 (TPG),  2004 U.S. Dist. LEXIS 23870 (S.D.N.Y. Oct. 6, 2004), aff'd, 2006 U.S.
    App. LEXIS 5932 (2d Cir. Mar. 9, 2006), cert. denied, 127 S. Ct. 129 (2006).........2

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,
    313 F.3d 70 (2d Cir. 2002)...................................................................3

Leon v. Martinez,
    84 N.Y.2d 83 (1994) .........................................................................3

Mina Inv. Holdings, Ltd. v Lefkowitz,
    184 F.R.D. 245 (S.D.N.Y. 1999) .............................................................1

Moscow Fire Ins. Co. v. Bank of New York & Trust Co.,
    161 Misc. 903 (Sup. Ct. N.Y. Cty. 1937) ....................................................9

Oates v. City of New York,
    No. 02 Civ. 5960 (GEL), 2004 WL 1752832 (S.D.N.Y. Aug. 4, 2004)....................2

<u>Pashaian v. Eccelston Props.</u>,
    88 F.3d 77 (2d Cir. 1996)..........................................................................8

<u>Smith v. Amherst Acres, Inc.</u>,
    350 N.Y.S.2d 236 (4th Dep't 1973) ..........................................................4

<u>In re Westpoint Stevens, Inc. v. Aretex LLC</u>,
    No. 06 Civ. 4128 (LTS) (JCF), 2007 WL 1346616 (S.D.N.Y. May 9, 2007)..........................7

## STATUTES

C.P.L.R. § 5201...........................................................................................1

C.P.L.R. § 5201(a) ...................................................................................3, 4

C.P.L.R. § 5201(b) .....................................................................................3

C.P.L.R. § 6202...........................................................................................1

C.P.L.R. § 6212(e) ......................................................................................6

C.P.L.R. § 6214...........................................................................................1

N.Y. Bus. Corp. Law § 1202 .......................................................................9

N.Y. Bus. Corp. Law § 1203 .......................................................................9

N.Y. Bus. Corp. Law § 1207 .......................................................................9

N.Y. Bus. Corp. Law § 1218 .......................................................................9

N.Y. Civ. Prac. Act § 977-b.........................................................................9

Rule 6.3 of the Local Rules of the United States District Courts for the Southern and
    Eastern Districts of New York ................................................................2

## ADDITIONAL AUTHORITIES

7B McKinney's Consolidated Laws of New York Annotated, Civil Practice Law and
    Rules, C.P.L.R. 8001 to End, Table 2 (2008) .........................................9

Plaintiff E.T.I. Euro Telecom International N.V. ("ETI") respectfully submits this reply memorandum in further support of its motion for reconsideration of the Court's Memorandum Opinion and Order dated July 30, 2008 (the "July 30 Order") and, upon reconsideration, confirmation of the Court's Order entered on May 5, 2008 (the "May 5 Order"); or, in the alternative, dismissal of this action to permit ETI to pursue an appeal, together with a stay pending appeal. Defendants fail, in their oppositions, to successfully refute ETI's demonstration that the Court overlooked a controlling fact. Accordingly, the Court should grant ETI's motion for reconsideration and confirm the May 5 Order. Alternatively, the Court should enter a final judgment dismissing this action and grant a stay pending appeal to permit ETI to obtain appellate review.

## ARGUMENT

## I.    DEFENDANTS FAIL TO SUCCESSFULLY REFUTE THAT THE COURT OVERLOOKED A CONTROLLING FACT

Notwithstanding Defendants' strident tone in their papers opposing reconsideration and their effort to distract the Court's attention with a panoply of incorrect and/or irrelevant arguments, the fact remains that the Court overlooked Entel's admission that the attached funds were the intended source from which Entel's tax debt to Bolivia was to be satisfied. This fact is a controlling one, because it demonstrates that the funds were earmarked for payment to Bolivia, and that ETI, accordingly, properly attached them under the CPLR provisions that permit attachment of a debt owed to a prospective judgment debtor, as distinct from property of the judgment debtor. See, e.g., N.Y. C.P.L.R. §§5201, 6202, 6214. Reconsideration of the Court's Order is therefore appropriate. See Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 250 (S.D.N.Y. 1999). Defendants, fail to advance any valid argument to the contrary.

First, Entel's suggestion that ETI's Motion fails to meet the applicable legal standard because the Motion is based on an admission made by Entel rather than the contents of ETI's

own submissions is clearly wrong.  As the plain language of the very cases cited by Entel in its opposition and Local Rule 6.3 make clear, the relevant question is whether the Court overlooked a controlling fact included in the record on the underlying motion.  (See Entel's Opposition at 2, quoting Ciocca v. Neff, No. 02 CIV 5067 (LTS), 2006 WL 2864987, at *1 (S.D.N.Y. Oct. 5, 2006) (Swain, J.)).  The question is not which party introduced the controlling fact into the record.  See, e.g., Oates v. City of New York, No. 02 Civ. 5960 (GEL), 2004 WL 1752832, at *1 (S.D.N.Y. Aug. 4, 2004) (granting plaintiff's motion for reconsideration because the court overlooked the contents of an exhibit to a declaration submitted by defense counsel); see also Bouchard v. New York Archdiocese, No. 04 Civ. 9978 (CSH), 2006 WL 3025883, at *4 (S.D.N.Y. Oct. 24, 2006) ("As the wording of [Local Civil Rule 6.3] suggests, such motions [for reconsideration] are ordinarily made on the basis of the record existing at the time when the Court issued the challenged decision.").  Thus, ETI properly bases its motion for reconsideration on Entel's admission.

Second, Defendants' effort to conflate the CPLR requirements for attaching a debt with those for attaching property of the judgment debtor are misguided.  Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara supports ETI's position because it demonstrates that the attached funds belong to Entel, not Bolivia, and therefore do not fall within the scope of the Foreign Sovereign Immunities Act.  See M-18-302 (TPG), 2004 U.S. Dist. LEXIS 23870 at *3 (S.D.N.Y. Oct. 6, 2004), aff'd, 2006 U.S. App. LEXIS 5932, 2006 WL 565694 (2d Cir. Mar. 9, 2006), cert. denied, 127 S. Ct. 129 (2006) ("Despite the fact that Indonesian law required the payment of the tax and the dividend, the District Court and the Court of Appeals did not hold that the tax and the dividend were the property of the government . . . . Those amounts were not property of the government until they were paid.").  The case does not

2

address, however, the sole issue upon which this Court based its ruling denying ETI's motion to confirm – i.e., the question of what is required under the CPLR to establish the existence of an attachable debt. Nor does the Second Circuit's opinion that preceded Judge Griesa's opinion bear upon this issue. Nonetheless, Entel focuses on this Second Circuit opinion, and cases cited therein, in its opposition. (See Entel's Opposition at 4-6). It does so to no avail.

Entel's reliance on the Karaha Bodas line of cases is misplaced for the simple reason that those cases address the question whether the judgment debtor has a sufficient interest in the property at issue to permit attachment pursuant to CPLR § 5201(b), not § 5201(a)'s requirements for attaching debt. See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 83 (2d Cir. 2002); Gala Enterprises, Inc. v. Hewlett Packard Co., 970 F. Supp. 212, 216-221 (S.D.N.Y. 1997); Leon v. Martinez, 84 N.Y.2d 83 (1994) (discussing requirements for an assignment to be effective).[1] As the Court recognized in its July 30 Order, "[i]t is undisputed that the attached New York bank accounts belong to Entel, not Bolivia." (July 30 Order at 4). Thus, these authorities – which could be relevant only if there were a dispute whether the funds were property of Bolivia – are irrelevant to the issue raised on this motion for reconsideration. Furthermore, because ETI seeks to attach a tangible asset owned by Entel, rather than "Entel's intangible debt obligations to Bolivia," Bolivia's sovereign immunity does not come into play. (See July 30 Order at 7 n. 8).

---

[1]  Gala Enterprises does contain a brief discussion of CPLR § 5201(a). 970 F. Supp. at 216. Its analysis turns, however, not on the question of "earmarking" on which the Court based its decision in the July 30 Order, but instead on the contingent nature of the "debt." Id. Here, the debt is not contingent, as demonstrated by the undisputed fact that Bolivia already has paid itself a portion of the debt out of Entel's assets. (Third Declaration of Alejandro Salinas, executed on July 1, 2008 ("Third Salinas Declaration"), ¶ 9).

Similarly, <u>Smith v. Amherst Acres, Inc.</u>, 350 N.Y.S.2d 236 (4th Dep't 1973), relied on by Bolivia, is inapposite. In that case, the judgment creditor sought to attach assets of a third party that were entirely unrelated to the obligation due from the third party to the judgment debtor. Here, in contrast, the attached funds were, by Entel's own admission, the intended source for payment of Entel's tax debt to Bolivia.[2] Thus, assuming that this Court's imposition of an "earmarking" requirement is appropriate in the first instance, that requirement is satisfied here, unlike in <u>Smith</u>.

<u>Third</u>, Defendants' contention that the attached funds are not earmarked for payment of the tax debt by "agreement or law," notwithstanding Entel's admission that these funds would be used to pay the debt, is mere semantic gamesmanship. Entel has admitted that Bolivia "indubitably took over control" of the company, and it is also undisputed that Bolivia has paid itself $1.4 million of the tax debt from Entel's assets.[3] (Entel's Sur-Reply at 10; Third Salinas Declaration, ¶ 9). Under these circumstances, the Court should not credit Defendants' claim that the debt somehow remains contingent. <u>See</u> <u>Baumgold Bros., Inc. v. Schwarzschild Brothers, Inc.</u>, 93 N.Y.S.2d 658 (First Dep't 1949) (holding that defendant could not defeat attachment of debt by "special arrangement" with holder of debt to delay defendant's collection and thereby

---

[2]   Entel makes much of ETI's characterization of two inapposite Supreme Court cases that Entel cited in its Sur-Reply Memorandum opposing confirmation. (<u>See</u> Entel's Opposition at 3, citing ETI's Sur-Sur-Reply Memorandum at 12 n.10). In those cases, delivery of the property at issue had already been attempted, and thus ownership at least arguably had been transferred to the intended recipient. Here, in contrast, while the attached funds had been earmarked for payment to Bolivia (thus making them subject to attachment pursuant to CPLR § 5201(a) even under the Court's analysis), they remain Entel's – not Bolivia's – assets, and thus do not fall within the scope of Bolivia's sovereign immunity.

[3]   According to the Third Salinas Declaration, filed by Entel, the Bolivian government has recovered approximately $1.4 million of Entel's tax obligation to date, not $8 million as originally reported in the press and referenced in the Court's opinion.

evade attachment); see also Jones v. Jones, 242 F. Supp. 979, 982 (S.D.N.Y. 1965) ("Payment by the debtor *** is evidence *** from which an acknowledgment of the residue of the debt may be implied.").

Fourth and finally, Entel's claim that the facts have changed because the freeze order in a related UK proceeding has been lifted does not alter the result. Defendants do not show that Entel has in fact obtained the use of the UK funds. In fact, ETI has contested Defendants' authorization to transfer the funds, and to the best of ETI's knowledge, the UK funds have not been transferred. In any event, even by Entel's own description, the UK funds are inadequate to satisfy the $60 million tax obligation. (See Entel's Opposition at 7). Thus, Defendants have offered nothing upon which the Court could properly rely to refute Entel's admission that "[t]he freezing of these accounts makes it impossible for ENTEL to satisfy these taxes . . . ." (Third Declaration of Lorena Molina, executed on June 1, 2008, ¶ 12). Accordingly, there remains a more than sufficient basis to confirm the attachment.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ENTER A FINAL JUDGMENT AND GRANT A STAY PENDING APPEAL

### A.    The Court Should Enter A Final Judgment

If it denies ETI's motion for reconsideration or, on reconsideration, adheres to its July 30 Order, the Court should enter a final judgment dismissing this action, thus permitting ETI to appeal. Entel and Bolivia do not oppose the entry of a final judgment, although Entel does seek to impose a number of unjustifiable conditions on the dismissal. They should not be countenanced.

First, Entel's request that the Court enter a final judgment with prejudice "to prevent ETI from again seeking to attach ENTEL or the Republic of Bolivia's assets, in aid of the ICSID arbitration" is misguided. (Entel's Opposition at 15). ETI does not oppose the entry of a final

judgment with prejudice as to the narrow relief at issue in this proceeding. The only issue that the Court has ruled on, however, is whether ETI has made a sufficient showing that it is entitled to attach the funds in Entel's New York bank accounts. The Court should reject Entel's overreaching request for a broad judgment that would purport to preclude ETI from seeking attachment of other assets that are not the subject of the Court's ruling – apparently including, under Entel's formulation, post-judgment as well as pre-judgment attachment.

Second, Entel again overreaches by asking the Court to enter a judgment "provid[ing] that defendants are entitled pursuant to N.Y.C.P.L.R § 6212(e) to costs, reasonable attorney's fees and damages sustained by reason of the attachment . . . ." (Entel's Opposition at 15). This request is inconsistent with the terms of the Court's July 30 Order, which denied without prejudice Defendants' request for damages, including reasonable attorneys' fees. (July 30 Order at 8). Instead, the dismissal should be without prejudice to a determination whether an award of costs, reasonable attorneys' fees or other damages is appropriate, and if so, how much is to be awarded, in accordance with the procedures specified in the Court's July 30 Order. [4]

**B.    The Court Should Grant A Stay Pending Appeal**

Notwithstanding Defendants' exhortations to the contrary, the four factors to be considered in issuing a stay pending appeal weigh strongly in ETI's favor here. See Cooper v. U.S. Postal Serv., 246 F.R.D. 415, 417 (D. Conn. 2007). Accordingly, the Court should issue a stay if it denies ETI's motion for reconsideration or, on reconsideration, adheres to its prior ruling.

---

[4] Entel similarly fails to offer any explanation why the attached funds should be distributed to Entel's New York counsel, as contemplated by Entel's proposed order, instead of being returned to the banks that held the funds pre-attachment. If granted, this relief will put Bolivia and Entel (under Bolivia's de facto control) in a better position than they were in before the attachment.

First, ETI has demonstrated that it is likely to succeed on the merits. It certainly has shown "a substantial possibility, although less than a likelihood, of success on the merits," which, as Entel admits, is all that is required where the other three factors support granting the stay, as is the case here. (Entel's Opposition at 8 (quoting In Re Westpoint Stevens, Inc. v. Aretex LLC, No. 06 Civ. 4128 (LTS)(JCF), 2007 WL 1346616, at *4 (S.D.N.Y. May 9, 2007) (Swain, J.))).

Fundamentally, ETI has a strong probability of prevailing on appeal because the Court overlooked that there is, in fact, evidence in the record that the attached funds are earmarked for payment of Entel's tax debt to Bolivia, as discussed in Part I, supra. Bolivia's suggestion that ETI's position "is the same argument that the Court correctly rejected" is wrong, because the Court did not take this controlling fact into account. See Bolivia's Opposition at 6. Thus, even if the Court were correct that attachment would be permitted here only if the attached funds were "earmarked, pursuant to an[] agreement or law" for payment to Bolivia – a proposition for which the Court does not cite to any authority interpreting the relevant CPLR provisions – that standard is satisfied here.

ETI's likelihood of success on appeal is all the stronger in light of (1) the compelling and largely uncontested facts demonstrating that it is entitled to relief, and (2) the Second Circuit's refusal to enforce expropriations done in violation of international law as to assets found in the United States. See Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 667 (2d Cir. 1988).

Entel's additional argument that ETI has not demonstrated a likelihood of success on appeal because it has not addressed in its motion for reconsideration "all the grounds that ENTEL and Bolivia advanced but that the Court did not reach" is plainly wrong. (Entel's

Opposition at 9). ETI need not and will not now rehash those issues, which already have been extensively briefed to the Court.[5]

Second, Defendants fail to successfully refute ETI's showing that it will be irreparably injured absent a stay. While Bolivia and Entel claim that ETI's injury is speculative, the opposite is true. Under the express terms of its own Nationalization Decree, Bolivia was required to value ETI's equity interest in Entel by July 1, 2008, then pay ETI for that interest. (Declaration of Franco Bertone, executed on May 4, 2008, Exh. 6, Art. 3). It is undisputed, however, that Bolivia has neither paid ETI nor even announced what it believes ETI's interest in Entel is worth, although Bolivia's self-imposed deadline passed almost two months ago. Taken together with the fact that one of the first acts of the Bolivian Government-installed "Intervenor" was to attempt to gain control over the attached bank accounts, as well as Bolivia's pattern of conduct designed to obstruct the ICSID arbitration, ETI has easily shown that it faces irreparable injury. See, e.g., Pashaian v. Eccelston Props., 88 F.3d 77, 86-87 (2d Cir. 1996) ("[A]lthough injuries compensable by monetary damages ordinarily do not give rise to irreparable harm, a preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.") (internal citations and quotes omitted).

Moreover, Defendants offer no rebuttal of ETI's additional showing that, because Bolivia has failed to accomplish a transfer of ETI's shares of Entel's stock, ETI remains a shareholder and, as such, will be irreparably injured if Bolivia is permitted to cause Entel to transfer the attached funds and use them for improper purposes, all without due authorization.

_____

[5] Similarly, the outcome of the appeal in a related proceeding in the United Kingdom, based on English law, is irrelevant here.

Third, neither Bolivia nor Entel presents any actual evidence that it will be substantially injured by a stay. Defendants' assertions that the attached funds are needed for legitimate corporate purposes are disproven by the declarations of Entel's former CEO, Franco Bertone. (See, e.g., Reply Declaration of Franco Bertone, executed on June 23, 2008, ¶¶ 5, 14-21). In any event, Defendants do not dispute that ETI's letter of credit is adequate to protect them against any purported injury.

Fourth, Defendants' contention that the public interest weighs against granting a stay is without merit. It remains undisputed that Bolivia has expropriated ETI's interest in Entel and has paid ETI nothing in return. Indeed, Entel in its own brief all but describes Bolivia's actions as an "expropriation[] in violation of international law," without even bothering to deny that this is what happened here. (Entel's Opposition at 14). ETI's showing that there is a strong public interest in protecting assets found in the United States from such seizures in violation of international law, moreover, stands unchallenged. See Bandes, 852 F.2d at 667; Moscow Fire Ins. Co. v. Bank of New York & Trust Co., 161 Misc. 903, 924 (Sup. Ct. N.Y. Cty. 1937) (citing former N.Y. Civ. Prac. Act. § 977-b, superseded by N.Y. Bus. Corp. Law §§ 1202, 1203, 1207 and 1218 (see 7B McKinney's Consolidated Laws of New York Annotated, Civil Practice Law and Rules, CPLR 8001 to End, Table 2 (2008))).

In contrast, Defendants' arguments that 1) there is a strong policy rationale underlying the Foreign Sovereign Immunity Act and 2) attaching the assets of a foreign sovereign is otherwise against public policy, fail because both of these arguments depend on the assumption that the attached funds are sovereign assets. (Bolivia's Opposition at 8; Entel's Opposition at 12-13). Yet, as the July 30 Order makes plain, the Court has not reached that issue. (July 30 Order at 5 and n.6). Therefore Defendants' arguments do not provide a valid basis to deny a stay.

Defendants also have the audacity to argue that denying a stay would promote the public interest in supporting the ICSID Convention, despite Bolivia's calculated and well-documented refusal to abide by the express terms of the ICSID Convention that has necessitated the present proceeding in the first instance. This is mere sophistry.

In short, the relevant factors all militate in favor of granting a stay.

## CONCLUSION

For the above-stated reasons, and those set out in ETI's previous submissions, the Court should grant ETI's motion for reconsideration and, upon reconsideration, grant ETI's motion to confirm the May 5 Order. In the alternative, the Court should (1) dismiss this action, and (2) grant ETI a stay pending appeal.

Dated: New York, New York
      August 25, 2008

                Respectfully submitted,

                ORRICK, HERRINGTON & SUTCLIFFE LLP

                By: _____
                Robert L. Sills (RS 8896)
                Steven J. Fink (SF 3497)
                Ryan S. Lester (RL 5603)
                ORRICK, HERRINGTON & SUTCLIFFE LLP
                666 Fifth Avenue
                New York, New York 10103
                Telephone: (212) 506-5000
                Facsimile: (212) 506-5151

                Attorneys for Plaintiff E.T.I. Euro Telecom
                International N.V.