FOLEY HOAG LLP
Ronald E.M. Goodman (RG6698)
Paul S. Reichler
Janis H. Brennan
1875 K Street, N.W.
Washington, D.C. 20006
(202) 223-1200
(202) 785-6687

*Attorneys for Defendant the Republic of Bolivia*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.T.I. EURO TELECOM INTERNATIONAL, N.V., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF BOLIVIA, and EMPRESA NACIONAL DE TELECOMUNICACIONES ENTEL S.A., <br><br> Defendants. | Case No. 08-cv-4247 (LTS)(FM) |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT THE REPUBLIC OF BOLIVIA'S
## MOTION FOR AN AWARD OF COSTS AND ATTORNEY'S FEES

Pursuant to New York CPLR § 6212 and the Court's July 30, 2008 Memorandum Opinion and Order, the Republic of Bolivia respectfully submits this Memorandum of Law in Support of its Motion for an Award of Costs and Attorney's Fees.

As set forth in detail below, Bolivia seeks an award of attorney's fees and costs as follows:

  Attorney's Fees:  $161,789

  Costs:  $25,439.87

      Total:                      $187,228.87

The fees and costs stated represent expenses incurred between May 9, 2008, when Bolivia first retained counsel, and August 24, 2008. Bolivia also seeks an additional award of fees and costs in an amount to be determined later for expenses incurred between today and the date on which the attached funds are returned to Entel and the Court enters final judgment dismissing Plaintiff's Complaint. With the Court's permission, Bolivia will submit an appropriate accounting upon the Court's final disposition of this action.

## I.    BACKGROUND

On May 5, 2008, Plaintiff E.T.I Euro Telecom International, N.V. ("ETI") obtained an *Ex Parte* Order of Attachment attaching over $39,000,000 in several New York bank accounts belonging to Defendant Empresa Nacional de Telecomunicaciones Entel S.A. ("Entel"). Plaintiff claimed that the attachment was necessary to secure a potential arbitral award against Defendant Bolivia in the International Centre for the Settlement of Investment Disputes ("ICSID"). On May 12, 2008, ETI moved to confirm the *ex parte* attachment. Bolivia and Entel opposed Plaintiff's motion on June 11, 2008. In response to Plaintiff's June 23, 2008 Reply, in which ETI advanced new legal and factual arguments, Bolivia and Entel sought and were granted leave to file a sur-reply brief, which they did on July 3.[1]

In their oppositions to Plaintiff's Motion to Confirm, Defendants invoked New York CPLR §6212 and argued that Plaintiff is liable for their damages and costs,

---

[1] On July 11, 2008, Defendants Bolivia and Entel also filed a Motion to Dismiss Plaintiff's Complaint. Defendants' Motions to Dismiss is based on grounds similar to those supporting their oppositions to Plaintiff's Motion to Confirm. Pursuant to order of the Court dated July 30, 2008, briefing on Defendants' Motions to Dismiss is currently being held in abeyance.

including attorney's fees, given the evident baselessness of the *ex parte* attachment ETI sought to confirm. Plaintiff conspicuously chose not respond to Defendants' requests for costs and damages either in its Reply or its subsequent Sur-Sur-Reply filed on July 14.

On July 30, 2008, this Court issued a Memorandum Opinion and Order denying Plaintiff's Motion to Confirm and vacating the *Ex Parte* Order of Attachment. In its Opinion, the Court denied without prejudice Bolivia's and Entel's request for damages and costs because the record was not then "clear as to what damages, including reasonable attorney's fees, may have been sustained by Entel and Bolivia by reason of the attachment of Entel's property." (July 30, 2008 Op. & Order at 8.) The Court instructed Defendants to "file and serve, with courtesy copies provided for chambers, separate motions, accompanied by evidentiary material and memoranda of law, detailing precisely what monetary amount each defendant seeks to recover pursuant to section 6212(e), no later than August 25, 2008." (*Id*. at 8.)

Even after the Court's July 30 Opinion and Order, Plaintiff has, by its conduct, required Bolivia and Entel to incur still more expenses defending this action. On August 1, 2008, Plaintiff filed a Motion for Reconsideration and for a Stay of the Court's Order, necessitating still further briefing from Defendants.

## II.   ARGUMENT

### A.   <u>Bolivia Is Entitled to All Costs and Damages, Including Attorney's Fees, under CPLR §6212(e)</u>

New York CPLR §6212(e) expressly provides for an award of all costs and damages, including reasonable attorney's fees, in cases where the plaintiff obtained but was not entitled to an attachment. It states:

> <u>Damages</u>.  The plaintiff *shall be liable* to the defendant for
> all costs and damages, including reasonable attorney's fees,

> which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.  Plaintiff's liability shall not be limited by the amount of the undertaking.

N.Y.C.P.L.R. §6212(e) (emphasis added).

The Second Circuit has held that the purpose of §6212(e) is "to make the attaching plaintiff *strictly liable for all damages* occasioned by a wrongful attachment…. The plaintiff's statutory liability for wrongful attachment includes 'reasonable attorney's fees' which may be sustained by reason of the attachment." *Roth v. Pritikin*, 787 F.2d 54, 59 (2d Cir. 1986) (emphasis added) (*quoting* the statute and commentary).  Federal courts applying New York law routinely enforce a defendant's right to costs and attorney's fees in cases where a plaintiff's complaint for attachment is not sustained.  *See*, *e.g.*, *Roth*, 787 F.2d at 58-59; *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 205 F.Supp.2d 191, 204-205 (S.D.N.Y. 2002) (the language of §6212(e) is unambiguous that a plaintiff is strictly liable for all damages resulting from a wrongful attachment); *Merck & Co., Inc. v. Technoquimicas S.A.*, No. 9 Civ. 5345 (NRB), 2001 WL 963977, at *2 n.5 (S.D.N.Y. Aug. 22, 2001) (noting that "[t]here is clear state and federal authority for the proposition that if a plaintiff seeks an attachment that is later vacated under §6212(e), the defendant may then seek attorney's fees from that plaintiff").  Foreign states that have been victims of unlawful attachments are treated no differently than private parties; they too are entitled to costs and fees under the CPLR.  *See Concord Reinsurance Co., Ltd. v. Caja Nacional De Ahorro y Seguro*, No. 93 Civ. 6606 (JSM), 1994 WL 260779 *2 (S.D.N.Y June 7, 1994) (vacating an attachment pursuant to the Foreign Sovereign Immunities Act and holding that the sovereign defendants were entitled to costs and damages including attorney's fees under the CPLR).

Given these lenient standards, there can be no question that Defendant Bolivia is entitled to an award of damages and costs, including attorney's fees, incurred in connection with defending itself against Plaintiff ETI's baseless attachment action.

### B. **Bolivia's Requested Attorney's Fees Are Reasonable**

New York CPLR §6212(e) provides for the recovery of "reasonable" attorney's fees. The determination of the fees' reasonableness is "committed to the sound discretion of the trial court upon due consideration of various factors…" *Webster v. Ragona*, 857 N.Y.S.2d 780, 783 (App. Div. 2008) (quoting *Sears v. First Pioneer Farm Credit, ACA*, 850 N.Y.S.2d 219 (App. Div. 2007)). The factors courts consider include: "(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved." *Diaz v. Audi of America, Inc.*, 858 N.Y.S.2d 179, 181 (App. Div. 2008) (citing *Matter of Freeman,* 355 N.Y.S.2d 336 (1974)); *see also Matter of Gaffney v. Village of Mamaroneck,* 801 N.Y.S.2d 400 (2005); *Steiger v. Dweck,* 762 N.Y.S.2d 84 (2003). Considered in light of all the pertinent factors, the fees Bolivia seeks are perfectly reasonable.

Bolivia is represented in this case by Foley Hoag LLP, an international law firm founded in 1943, with offices in Washington, D.C. and Boston, Massachusetts. (Declaration of Paul S. Reichler ¶ 6 (hereinafter "Reichler Decl.")). Paul S. Reichler, senior partner of Foley Hoag's Washington, DC office, has served as Bolivia's lead counsel and has supervised the work of the other Foley Hoag lawyers working on Bolivia's defense. (*Id.* at ¶¶ 1, 7.)

As set forth in Mr. Reichler's Declaration and the billing statements attached to it, Bolivia seeks an award of attorney's fees totaling $161,789 for the period May 9, 2008 through August 24, 2008. (*Id.* at ¶ 3.) During that period, the following Foley Hoag attorneys worked at the following hourly rates on Bolivia's behalf:

| Attorney | Position | Hourly Rate |
|---|---|---|
| Paul S. Reicher | Partner | $625.00 |
| Ronald E.M. Goodman | Partner | 625.00 |
| Janis H. Brennan | Partner | 530.00 |
| Andrew Schwartz | Partner | 660.00 |
| Lawrence Martin | Partner | 505.00 |
| Geraldine Fischer | Associate | 435.00 |
| Kiran Ghia | Associate | 370.00 |
| Clara Brillembourg | Associate | 320.00 |
| Erica Jong | Associate | 295.00 |
| Analia Gonzalez | Associate | 180.00 |
| Daniel Firger | Summer Associate | 215.00 |
| Nicholas Renzlez | Paralegal | 150.00 |
| Joanne Blinn | Research Librarian | 150.00 |

The hourly rates listed and the total of fees incurred are emminently reasonable. In fact, for the reasons discussed immediately below, they are actually quite modest under the circumstances. *First*, as Mr. Reichler testifies on the basis of both personal knowledge and publicly-available billing rates for attorneys in New York City (where Plaintiff chose to bring this action) and Washington, D.C. (from where Foley Hoag has conducted its representation of Bolivia), the hourly rates listed above are either comparable to or less than those charged by firms with comparable levels of experience in the subject matters involved in this action. (*Id.* at ¶ 8.)

*Second*, virtually all of the Foley Hoag attorneys (Mr. Reichler, Mr. Goodwin, Mr. Martin, Ms. Brennan, Ms. Fischer, Ms. Brillembourg, Ms. Ghia, Ms. Jong, and Ms. Gonzalez) and the paralegal (Mr. Renzler) who worked on this case are part of Foley

Hoag's International Litigation and Arbitration Practice Group, which specializes in representing foreign States and their State-owned enterprises before the U.S. courts and international dispute resolution tribunals. Collectively, the members of Foley Hoag's International Litigation and Arbitration Practice Group who worked on this case have over 52 years' experience representing such clients before the U.S. courts in matters implicating the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1330, 1602 *et seq.* In addition to Bolivia, Foley Hoag has represented the following foreign States in over 30 cases before U.S. Courts since 1980: Thailand, the Philippines, Iraq, Nicaragua, Venezuela, Honduras, Guyana, Nigeria, Zambia, Liberia and Tanzania. (*Id.* at ¶¶ 9-10 & Annexes 2 and 3.)[2]

*Third*, the time required to address the legal issues in this case was substantial due to the number and complexity of the issues involved. Those issues include: (a) the immunity of Entel's and Bolivia's property from prejudgment attachment under §§1609 and 1610(d) of the FSIA; (b) the Bolivian and U.S. law applicable to Entel's status as an agency or instrumentality of Bolivia; (c) Plaintiff's argument that jurisdiction in this case was based upon the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"), and 22 U.S.C. §1650a; (d) the ICSID Convention's prohibition on the resort to national courts for prejudgment relief; (e) the impermissibility of attaching the assets of an agency or instrumentality of a foreign State

---

[2] In addition to its work for foreign States and State-owned enterprises in the U.S. courts, Foley Hoag's International Litigation and Arbitration Practice Group has represented the following States before international dispute resolution fora, and in their relationships with the U.S. Government and the international financial institutions located in the United States, among other matters: Malaysia, the Philippines, Vietnam, Angola, Tanzania, Kenya, Uganda, Djibouti, Lesotho, Cameroon, Namibia, Rwanda, Liberia, the Saharawi Republic, Guyana, Belize, Jamaica, Haiti, Costa Rica, Nicaragua, Guatemala, Honduras, Venezuela, Ecuador, Bolivia, Uruguay, Chile, France, Romania, China and Russia. (Reichler Decl. ¶ 11.)

in order to secure a potential judgment against the foreign State itself; (f) Plaintiff's new theory, advanced in its Reply, that the prejudgment attachment was proper because Entel's bank accounts represented a "debt" owed by Entel to Bolivia; (g) the sovereign nature of a tax debt owed to a foreign sovereign; (h) the provisions of the Netherlands-Bolivia Bilateral Investment Treaty; (i) whether Entel's funds were "used for a commercial activity in the United States" within the meaning of Section 1610(d) of the FSIA; (j) the lack of subject matter jurisdiction as to Bolivia under §§1604 and 1605 of the FSIA; (k) the lack of personal jurisdiction over Bolivia; (l) Plaintiff's failure to serve process as required by §1608(a) of the FSIA; (m) the applicability of the Act of State doctrine; (n) Bolivian law on the effect of that State's nationalization of Entel's shares; and (o) the issues presented on Plaintiff's Motion for Reconsideration and a Stay.

*Fourth*, at least one of the questions presented in this litigation – whether the ICSID Convention precludes resort to national courts – constitutes an issue of first impression in the U.S. courts. As a result, substantial research into the academic literature, the decisions of other national courts on the issue, and the U.S. Government's position was required in order to present appropriate arguments in Bolivia's Opposition and Sur-Reply.

*Fifth*, Plaintiff's abrupt change in its legal theory as to why Entel's bank accounts could be attached to secure a possible arbitration award against Bolivia between its opening memorandum in support of its Motion to Confirm and its reply brief required Bolivia to prepare and file a sur-reply. Plaintiff's actions in filing a Motion for Reconsideration and for a Stay, similarly added to the briefing required in the case.

*Sixth*, although the bank accounts attached by the *Ex Parte* Order of Attachment belong to Entel, and not Bolivia, the vacatur of the *Ex Parte* Order of Attachment was of significant benefit to the Bolivian people -- an obvious concern to Bolivia. The unfreezing of the bank accounts helps ensure Entel's access to the funds that it needs to continue to provide, and to improve, telecommunications services and infrastructure that are essential to the Bolivian people.

Based on all the above, the fees Bolivia seeks to recover are entirely reasonable and therefore fully recoverable.

### C. **Bolivia Is Entitled to an Award of the Costs of This Litigation**

As set forth in the Reichler Declaration and the billing statements attached to it, Bolivia has, as of August 24, 2008, incurred costs totaling $25,439.87. Those costs consist primarily of long distance telephone and facsimile charges, photocopying, express couriers, secretarial overtime, local transportation and on-line legal research charges.[3]

### III.    CONCLUSION

For the foregoing reasons, this Court should award Bolivia attorneys fees in the amount of $161,789 and costs in the amount of $25,439.87, for a total of $187,228.87 covering the period May 9, 2008 through August 24, 2008. The Court should also award Bolivia additional attorney's fees and costs in an amount to be determined at an appropriate later moment for amounts incurred after August 24, 2008 through the date on which the attached funds are returned to Entel and the Court has entered final judgment dismissing this action.

---

[3] As set forth in the Reichler Declaration, the expenses incurred by Bolivia in connection with Foley Hoag's supervision of its defense of Plaintiff's parallel litigation in the courts of England have been deducted from the billing statements attached as Annex 1 to his Declaration. (Reichler Decl. ¶ 13.)

Dated: August 25, 2008

        Respectfully submitted,

        **FOLEY HOAG LLP**


        By: /s/ Ronald E.M. Goodman
           Ronald E.M. Goodman (RG6698)
           Paul S. Reichler
           Janis H. Brennan
           1875 K Street, N.W.
           Washington, D.C. 20006
           Telephone: (202) 223-1200
           Facsimilar: (202) 785-6687
           *Attorneys for Defendant*
             *the Republic of Bolivia*