UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

E.T.I. EURO TELECOM INTERNATIONAL
N.V.,

        Plaintiff,

  -v-                                              No.  08 Civ. 4247 (LTS)(FM)

REPUBLIC OF BOLIVIA, and EMPRESA
NACIONAL DE TELECOMMUNICACIONES
ENTEL S.A.,

        Defendants.

--------------------------------------------------------x

## AMENDED MEMORANDUM OPINION AND ORDER

        This Amended Memorandum Opinion and Order amends and supersedes the Memorandum Opinion and Order dated December 8, 2008.

        Defendants Republic of Bolivia ("Bolivia") and Empresa Nacional de Telecomunicaciones Entel S.A. ("Entel") separately move, pursuant to Fed. R. Civ. P. 54(d)(2) and N.Y. C.P.L.R. § 6212(e), for awards of costs and damages, including attorneys' fees, against Plaintiff E.T.I. Euro Telecom International N.V. ("ETI"), arising from the attachment of Entel's funds from May 5, 2008, until September 19, 2008.  Oral argument on Bolivia's motion was held on November 13, 2008.  Bolivia requests $204,223.45 in attorneys' fees and costs, and Entel requests $709,241.93 in attorneys' fees and costs and $894,139.82 in other damages.  The Court has reviewed thoroughly the parties' submissions and carefully considered all of the parties' arguments, including those raised in oral argument.  For the reasons that follow, Bolivia's motion is denied and Entel's motion is granted in part and denied in part, and judgment will be entered

against ETI and in favor of Entel in the amount of $1,369,476.97.

On May 5, 2008, the Court (Chin, J., sitting as Part I judge) granted ETI's application for an order of attachment against Entel's funds pursuant to Rule 64 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules, and denied ETI's application to attach Bolivia's funds.  ETI soon thereafter moved to confirm the attachment of Entel's funds.  On July 30, 2008, the undersigned denied ETI's motion to confirm the attachment pursuant to N.Y. C.P.L.R. § 6211(b) and, on September 19, 2008, all of the attached funds were released.

Article 62 of the New York State Civil Practice Law and Rules, the statute pursuant to which the attachment order was granted, provides in pertinent part:

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.  Plaintiff's liability shall not be limited by the amount of the undertaking.

N.Y. C.P.L.R. § 6212(e) (McKinney 1980).  The purpose of this provision is "to make the attaching plaintiff strictly liable for all damages occasioned by the wrongful attachment." Correspondent Servs. Corp. v. J.V.W. Investment Ltd., 524 F. Supp. 2d 412, 416 (S.D.N.Y. 2007) (quoting Roth v. Pritikin, 787 F.2d 54, 59 (2d Cir. 1986) (internal quotation omitted)).  In considering whether a sought-after award is appropriate, the Court examines whether the attorneys' fees, costs and damages purportedly incurred were the "natural and proximate consequence of the wrongful attachment."  Id. (quoting A.C. Israel Commodity Co. v. Banco Do Brasil, S.A., 270 N.Y.S.2d 283, 286 (N.Y. Sup. Ct. 1966)).  Familiarity with the parties' submissions and the transcript of the oral argument is presumed.

*Bolivia's Application*

The Court scheduled an oral argument on Bolivia's motion because the text of Rule 6212(e) appeared to preclude an award to a defendant, such as Bolivia, whose assets were not attached, the parties' written submissions did not address the issue, and there appeared to be no controlling authority on point.

Having considered thoroughly the parties' well-reasoned arguments presented at oral argument, the Court concludes that Bolivia is not entitled to an award under Rule 6212(e). Rule 6212(e) describes a plaintiff's liability to "<u>the</u> defendant" for damages sustained by reason of the attachment, if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to "an attachment of <u>the defendant's property</u>." (Emphasis supplied.) The Rule's reference to "the defendant" at the start of the sentence cannot be read in isolation from the reference to "the defendant's property" at the end of the sentence and, therefore, the Rule clearly contemplates that "the defendant" entitled to recover damages under Rule 6212(e) is the defendant whose property was actually attached. Nothing in the text of the Rule suggests a legislative intent to compensate defendants whose property was never attached in the first place. Because Bolivia did not own the assets that were attached, it cannot qualify as "the defendant" referred to in the statute.

Bolivia argues that it is nonetheless entitled to damages because it ultimately recovered judgment dismissing Plaintiff's claims in this action, and the conditional clause "if the defendant recovers judgment" does not include any reference to the defendant's property. (<u>See</u> Tr. at 4.) However, the conditional clause also uses the operative term "the defendant" and, as explained above, such a reference cannot be read in isolation from the clear reference to "attachment of the defendant's property" contained in the same sentence. Therefore, the conditional clause is also properly read to refer to a party whose assets were actually attached. A

natural reading of this clause in the actual context of Rule 6212(e) as a whole makes clear that "if the defendant recovers judgment" addresses the scenario in which the party whose assets were attached vacates the attachment by succeeding on the merits of the action rather than by challenging the attachment directly, such as in instances where a direct challenge to the attachment of the defendant's property is not feasible or is unnecessary.  See Thropp v. Erb, 174 N.E. 67, 79 (N.Y. 1930) (awarding damages sustained by reason of an attachment, noting, "No contention can be seriously raised that this plaintiff could have rid himself of the warrant of attachment except by a trial on the merits.  No futile motion to vacate was necessary to complete the chain of causation between the warrant of attachment and the expenses incurred in the successful defense."); Maglificio Italiano Di Zironi Incerti Valentina v. Fidelity and Deposit Co. of Maryland, 35 A.D.2d 517, 517 (1st Dep't 1970) (citing "if the defendant recovers judgment" language, noting, "After levy was made on plaintiff-appellant's property, the [court] rendered judgment in favor of the [plaintiff-appellant] dismissing the complaint.  The complaint having been dismissed and the attachment vacated, there are no triable issues and all that remains is a determination of the damages.").  Therefore, while Bolivia did recover judgment in this action, it is not entitled to damages pursuant to Rule 6212(e).

   Construing the Rule as applying solely to actual owners of attached property is consistent with the purposes and origins of Rule 6212(e).  "Rule 6212(e) imposes strict liability for damage -- including attorneys' fees -- arising from the wrongful attachment of property."  Kidder, Peabody & Co. Inc. v. IAG Int'l Acceptance Group N.V., 28 F. Supp. 2d 126, 145 (S.D.N.Y. 1998).  Such strict liability is imposed because the "harsh nature of the attachment remedy consists of the 'dispossession' of the property 'of the owner prior to adjudication to determine the rights of the parties.'"  Id. (quoting Siegel v. Northern Boulevard & 80th Street Corp., 295 N.Y.S. 2d 804, 806

(1st Dep't 1968)); see also Siegel, 295 N.Y.S. 2d at 806-07 (attachment "violates every principle of proprietary right held sacred by the common law. . . . though the mere taking does not work any change in the ownership of the property, it seriously affects some of the most important incidents of that ownership, and may even be the means of thwarting the owner in his endeavors to meet the just demands against him") (quotation omitted); First Merchant Bank OSH, Ltd. v. Vill. Roadshow Pictures (U.S.A.) Inc., No. 01 Civ. 8370 (GEL), 2002 WL 1423063, *9 (S.D.N.Y. June 28, 2002) (Rule 6212(e) relief warranted in a case "in which a court had actually issued an order of attachment, and the party whose assets were thus encumbered was actually deprived of the use of its property" (emphasis added)).  The remedy provided by Rule 6212(e) recognizes and provides recompense for the peculiar harms that befall the entity possessing an ownership interest in the attached property.  As such, it would be anomalous to construe Rule 6212(e) as also encompassing non-owners whose interest in the attached property falls short of the proprietary rights that Rule 6212(e) was designed to vindicate.

        Bolivia argues that Rule 6212(e) should be construed liberally to permit Bolivia's recovery in this case, citing Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 62 N.Y. 2d 291 (N.Y. 1984), and N.Y. C.P.L.R. § 104, which provides that the C.P.L.R. must be "liberally construed to secure the just . . . determination of civil judicial proceedings."  N.Y. C.P.L.R. § 104 (McKinney 2003).  In Ford Motor, the New York Court of Appeals held that Rule 6212(e) should be construed liberally to protect the actual owner of the attached property, even if that owner was not technically a defendant in the action.  This principle, however, does not provide any basis for a further expansion of Rule 6212(e) to include non-owners who choose to participate in litigation concerning the attachment of their affiliates' property.  Moreover, unlike Bolivia's proposed construction of Rule 6212(e), Ford Motor's expansion of the term "the defendant" to include non-

defendant owners of the wrongfully attached property does not disturb Rule 6212(e)'s coherence with respect to its reference to the defendant and the defendant's property. Ford Motor thus neither requires nor invites an expansion of Rule 6212(e) to include non-owners of the attached property such as Bolivia.

Bolivia urges the Court to recognize that Bolivia, rather than Entel, is "the real" defendant in this case, arguing that ETI's sole purpose in seeking attachments in this action is to secure claims against Bolivia that are being arbitrated in the ICSID proceeding, and that Bolivia ought to be compensated for fighting off Plaintiff's attempts to obtain such security. However logical or compelling Bolivia's argument might seem, the Court is constrained by the language of Rule 6212(e), which focuses not on the party targeted by a particular action but on the party whose property was targeted by a particular attachment. Furthermore, it is not at all unusual, pursuant to the American Rule, for a defendant to bear its own costs in litigation even if the action brought against the defendant is entirely without merit. Indeed, exceptions to this rule are construed narrowly. See Ferreira v. Local No. 145 Serv. Trades, Chauffeurs, Salesmen and Helpers, 633 F. Supp. 133, 135 (D. Conn. 1985) ("Under the American Rule 'each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary.' The only exceptions are narrowly construed and not lightly expanded.") (citing Hensley v. Eckerhart, 461 U.S. 424 (1983); Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240 (1975)).

The Court is mindful that Bolivia claimed a 97.5% ownership interest in Entel at the start of this litigation, and that Bolivia asserted that Entel was entitled to the same immunities under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et. seq., because Entel was an "agency or instrumentality of a foreign state." See 28 U.S.C. §§ 1603, 1609, 1610(d). However,

Bolivia has also disavowed any ownership interest whatsoever in the assets that were attached in this action.  (See Bolivia's Opp'n to Mot. to Confirm Attachment at 15 ("Plaintiff fails to offer any evidence to link Bolivia to the four Entel bank accounts, except as owner of a majority of Entel's shares").)  To whatever extent Bolivia might have been indirectly harmed by the wrongful attachment, or whatever the status of Entel might have been for sovereign immunity purposes, Bolivia nonetheless was not the actual owner of the attached assets and therefore cannot avail itself of the narrow remedy provided by Rule 6212(e).

The Court has considered Bolivia's remaining arguments and finds them unpersuasive.  For the foregoing reasons, Bolivia's motion for costs and damages in the form of attorneys' fees and expenses will be denied.

*Entel's Application*

Entel requests $709,241.93 in attorneys' fees and costs and $894,139.82 in damages, and provides declarations and billing statements in support of these amounts.

The Court agrees with ETI that some of the attorneys' fees detailed in the billing statements are not properly compensable.  In the instant application, Entel deducted $97,552 from its total fees to exclude the costs of work done in the UK proceeding (see Decl. of Michael Krinsky dated Aug. 22, 2008 ("Krinsky I Decl."), at Ex. A Table 2).  In the UK proceeding, however, Entel made a fee application that identified approximately $134,000 of the fees as attributable to work in connection with that proceeding.  After ETI noted this discrepancy, counsel for Entel responded with a declaration averring that some of the time billed was spent on both actions, and that such time was simply apportioned between this action and the UK action for purposes of the instant application.  Entel gives no explanation whatsoever as to how this time was apportioned, nor does

it offer any explanation as to why $134,000 was sought in the UK proceeding.  Entel, furthermore, acknowledges that, if all of the time in question were attributed solely to the UK proceeding, the total deduction would be $132,395.25.  (See Decl. of Michael Krinsky dated Sept. 19, 2008 ("Krinsky II Decl."), at ¶ 9(a).)  Entel's response appears to be a concession that $132,395.25 of the billed time is not necessarily a natural or proximate consequence of the New York action.  For this reason, and in light of the Court's conclusion, explained infra, that the overall fees charged were somewhat excessive, an additional $34,643.25[1] will be deducted from the fees sought by Entel.

      The Court will also deduct $29,162.50 in fees for time spent on Entel's motion to dismiss the complaint, since dismissal of the complaint was not necessary to vacate the attachment and, thus, the motion to dismiss was not a natural or proximate result of the attachment.  The Court further deducts $8,921.31 in costs for specified entries describing airfare to and lodging in London (see Krinsky I Decl., Ex. B-2 at 8), and an additional $2,732 as a result of conceded accounting error (see Docket Entry No. 100).

      The Court has also reviewed thoroughly Entel's billing statements and supporting declarations as a whole, and finds that the attorneys' fees and costs incurred by Entel in defending this action were greater than reasonably necessary, notwithstanding the substantial sums that were attached.  Accordingly, after applying the aforementioned deductions, the Court will further reduce Entel's sought-after fees and costs by 25%.

      With respect to the damages sought, Entel submits evidence correctly calculating the interest that would have been earned during the period of attachment, assuming an interest rate of 9%, minus the interest actually earned on the attached funds.  The Court rejects ETI's argument that

---

[1] The difference between $132,395.25 and $97,552.

the New York statutory interest rate of 9%, see N.Y. C.P.L.R. § 5004, is inapplicable.  In this case, the attachment at issue was granted pursuant to state law.  See Fed. R. Civ. P. Rule 64.  "Under New York law there is a presumption of damages for the loss of use of an attached asset, and courts use the legal measure of interest as the measure of that damage."  Correspondent Servs. Corp. v. J.V.W. Investment Ltd., 524 F. Supp. 2d 412, 423 (S.D.N.Y. 2007) (citing Subin v. United States Fid. and Guar. Co., 12 A.D.2d 49, 51 (N.Y. App. Div. 1960)); see also Concord Reinsurance Co., Ltd. v. Caja Nacional de Ahorro y Seguro, No. 93 Civ. 6606 (JSM), 1994 WL 260779, *2 (S.D.N.Y. June 7, 1994) (to same effect).  Therefore, the statutory interest rate of 9% is an appropriate rate for use in calculating damages arising from the attachment.

ETI also contends that no interest damages should be granted with respect to approximately $5 million that was attached but was not transferred by the depository bank to the Clerk of Court as required by the May 5, 2008, attachment order.[2]  Because an order of attachment restraining those funds was issued, Entel was barred from withdrawing or using the attached funds, regardless of whether the funds were subsequently deposited with the Clerk of Court.  See First Merchant Bank OSH, Ltd. v. Village Roadshow Pictures (U.S.A.) Inc., No. 01 Civ. 8370 (GEL), 2002 WL 1423063, *9 (S.D.N.Y. June 28, 2002) (interest damages on funds recoverable under Section 6212(e), where an order of attachment was issued on the funds, even if the sheriff did not actually levy the attachment as ordered by the court).  The fact that the attached funds continued accruing interest is irrelevant, as state law clearly contemplates that, in the awarding of damages

---

[2]   (See Docket Entry No. 102 (July 29, 2008, letter to the Court from bank seeking to clarify whether bank should deposit funds with the Clerk of Court).)

under Section 6212(e), the 9% statutory interest rate is to be offset by any interest actually earned on the attached funds.  See Richman v. Richman, 52 A.D.2d 393, 395 (App. Div. 3d Dep't 1976) ("damages are limited to the legal rate of interest for the time the moneys were attached less any interest or dividends that the attached funds may have earned during the period of attachment").  Therefore, Entel's request for an award of simple interest on the funds that were attached but not deposited with the Clerk of Court is proper.[3]

The Court has considered ETI's remaining objections to Entel's proposed fee and damages award and finds them to be without merit.  For the above reasons, the Court grants judgment against ETI and in favor of Entel in the amount of $475,337.15 in attorneys' fees and costs[4] and $894,139.82[5] in damages, pursuant to N.Y. C.P.L.R. § 6212(e), for a total of $1,369,476.97.

## CONCLUSION

For the aforementioned reasons, Bolivia's motion is denied and Entel's motion is granted to the extent explained above.  The Clerk of Court is respectfully requested to enter

---

[3] Entel also requested initially that part of the interest calculated be compounded, but later withdrew that request.  (See Reply at 5.)

[4] This figure was calculated by subtracting the deduction amounts of $34,643.25, $29,162.50, $8,921.31 and $2,732 from $709,241.93, the original amount sought after, which equals $633,782.87, which in turn was reduced by 25% to reach $475,337.15.

[5] This figure was derived from the calculations detailed in Entel's submissions.  As explained above, this sum represents the interest earned on the attached funds during the period of attachment at the interest rate of 9%, less interest actually earned on the attached funds.

judgment against Plaintiff ETI and in favor of Defendant Entel in the amount of $1,369,476.97, to terminate Docket Entry Nos. 78 and 82, and close this case.

    SO ORDERED.

Dated:    New York, New York
           December 9, 2008

/s/ LAURA TAYLOR SWAIN
United States District Judge